UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
UNITED STATES,

                                     **MEMORANDUM & ORDER**
                                       **04-CR-1016 (NGG)**

       v.

RONELL WILSON,

                 Defendant.
--------------------------------------------------X
GARAUFIS, District Judge.

       Defendant Ronell Wilson ("Defendant" or "Wilson") is charged in a twenty-three count

indictment with, *inter alia*, murdering undercover New York Police Department ("NYPD")

Detectives Rodney Andrews and James Nemorin on March 10, 2003.[1] Specifically, in

connection with his alleged membership in the street gang known as the "Stapleton Crew," the

criminal enterprise alleged in the Indictment, Wilson is charged with the following: engaging in

and conspiring to engage in a pattern of racketeering activity; committing obstruction of justice

murder, murder in aid of racketeering, carjacking; use of a firearm and causing death through the

use of a firearm; robbery and robbery conspiracy; narcotics distribution and narcotics conspiracy;

use of a firearm in connection with narcotics trafficking; conspiring to murder rival gang

---

[1] In the initial Indictment, four co-defendants, Michael Whitten, Paris Bullock, Angel
Rodriguez, and Jamal Brown, were indicted with Wilson in a thirty-count indictment. These four
co-defendants have since pleaded guilty to racketeering and narcotics-related charges and are
awaiting sentencing before this court.
       On June 9, 2006, the Government filed a Superseding Indictment (S-1) in this case, which
removes Wilson's four co-defendants from the Indictment. (See Docket Entry No. 109). As the
Superseding Indictment was filed after briefing on these motions, so as not to confuse the subject
matter contained in the parties' submissions, citations to the Indictment in this M&O are to the
original thirty-count Indictment, and *not* to the Superseding Indictment, unless specifically noted
as a citation to S-1. The substance of the motions has not been affected by the superseder. (See
Transcript of Status Conference Dated June 16, 2006 ("Oral Arg. Tr."), at 2).

members; and conspiring to murder "John Doe."[2]

Based upon the seven potential capital counts charged in the Indictment, the Government filed a Notice of Intent to Seek the Death Penalty against Wilson on August 2, 2005. Jury selection in the Defendant's death penalty trial is scheduled to begin the week of September 11, 2006.

Currently pending before the court are a number of substantive and death penalty-related pre-trial motions submitted by the Defendant. The Defendant moves to suppress certain post-arrest statements and pieces of evidence seized from the Defendant on May 2, 2002 and March 12, 2003, and to suppress identifications of the Defendant by Government witnesses. The Defendant also moves to strike certain language from the Indictment and for a bill of particulars with respect to the charges in the Indictment and the aggravating circumstances alleged in the Notice of Intent to Seek the Death Penalty (hereinafter "NOI"). In his death-penalty related motions, the Defendant moves for a declaration that the Federal Death Penalty Act of 1994 ("FDPA") is unconstitutional and to dismiss the Government's NOI. Alternatively, the Defendant requests dismissal of certain aggravating factors from the Government's Notice of Special Findings ("NOSF") and NOI. Oral argument on the motions was held before this court on June 16, 2006.

I will address each motion in turn below. As the Defendant filed each motion separately

---

[2] The Indictment against Wilson also includes a Notice of Special Findings (NOSF) section, which tracks the language of the four "gateway" statutory aggravating factors which must be proved to make a defendant "eligible" to receive a sentence of death. See 18 U.S.C. § 3591(a)(2). The NOSF also tracks the language of three of the statutory aggravating factors provided in 18 U.S.C. § 3592(c), which the jury can consider in rendering a sentence of death in a federal capital case.

and the Government replied in an "Omnibus Response in Opposition to the Defendant's Substantive and Death Penalty Related Motions" (hereinafter "Govt. Resp."), I will address the motions in the order in which the Government responded in its responsive brief.

For the reasons set forth below, the Defendant's motions are granted in part and denied in part.

## I.     Defendant's Motion for a Bill of Particulars

The Defendant moves for a bill of particulars on the grounds that Wilson has been charged with "extremely serious and far-ranging offenses" implicating four co-defendants and others, which include murder and murder conspiracy charges "intertwined with [ ] expansive racketeering and drug charges." (Defendant's Memorandum of Law in Support of Pretrial Motion for a Bill of Particulars and to Strike Language in the Indictment ("Def.'s Mem. Supp. BOP"), at 4). Conceding that the Government has turned over "numerous documents in discovery" that Defense counsel has reviewed, the Defendant claims that his alleged position in the charged racketeering enterprise is unspecified and that the discovery provided "does not provide essential particulars about the charges." (Id.).

The Government responds to the Defendant's motion by asserting that a bill of particulars is unnecessary in this case because the Indictment "explains in detail" the crimes for which the Defendant is charged, and because the Defendant has been provided "extensive pretrial discovery," which in combination have "sufficiently apprised" the Defendant of the charges against him. (Govt. Resp. at 6). The Government contends that, "in the face of the precisely drawn Indictment and copious discovery, it is clear that the [D]efendant is seeking a bill of particulars as a general investigative tool." (Id. at 7). In its brief, the Government addresses each

of the Defendant's requests and explains the manner in which the Indictment and turned-over discovery adequately apprise the Defendant of the nature of the charges and aggravating factors it intends to prove at trial, obviating the need for a bill of particulars under controlling precedent. (See Govt. Resp. at 7-17). I will discuss each below.

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars in order to enable him "to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). The decision whether to order the filing of a bill of particulars is one that rests within the sound discretion of the district court. United States v. Barnes, 158 F.3d 662, 665-66 (2d Cir. 1998); United States v. Urso, 369 F.Supp.2d 254, 271 (E.D.N.Y. 2005) (Garaufis, J.). A bill of particulars is warranted "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) (quoting United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) (internal quotation marks omitted)).

Judges of this district have characterized the test as one of necessity: "Where 'facts supplemental to those contained in the indictment . . . are necessary to apprise the defendant of the charges against him with sufficient precision,' a bill of particulars is appropriate." United States v. Weinberg, 656 F.Supp. 1020, 1029 (E.D.N.Y. 1987) (McLaughlin, J.) (overruled on a different point) (internal citation omitted) (citing United States v. Persico, 621 F.Supp. 842, 868 (S.D.N.Y. 1985)). Thus, the "ultimate test" in determining whether a bill of particulars is appropriate is "whether the information is necessary, not whether it is helpful to the defendant." Weinberg, 656 F. Supp. at 1029 (citations omitted). A bill of particulars is not a discovery

4

device and is not meant to force the government to disclose its evidence or its legal theory. See United States v. Gottlieb, 493 F.2d 987, 994 (2d Cir. 1974); United States v. Hotte, No. 97 CR 0669, 1997 WL 694718, at *3 (E.D.N.Y. Nov. 6, 1997) (Johnson, J.). Moreover, the Second Circuit has instructed that a bill of particulars should not be granted where the Government has made sufficient disclosures concerning its evidence and witnesses by means other than the indictment. Walsh, 194 F.3d at 47.

With these principles in mind, I will now consider the Defendant's requests. I note, however, at the outset that although the aforementioned general principles and precedent cited by both parties guide my analysis, they provide no clear-cut answer on whether a bill of particulars is necessary in this specific case. As Judge Sand of the Southern District of New York has explained:

> The line that distinguishes one defendant's request to be apprised of necessary specifics about the charges against him from another's request for evidentiary detail is one that is quite difficult to draw. . . . It is not surprising, therefore, that more than one court has observed that the precedents furnish little help in disposing of requests for bills of particulars in criminal cases.

United States v. Bin Laden, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000) (internal quotation and citations omitted). Thus, I am mindful of the precedent of this Circuit and of my responsibility to analyze specifically the facts and circumstances of this case. I will now discuss each of the Defendant's requests.

### A.    *Racketeering Related Charges*

#### i.    *First Set of Requests*

The Defendant's first set of requests pertain to the Racketeering and Racketeering Conspiracy charges: Count 1 (Racketeering), Count 2 (Racketeering Conspiracy), Counts 5 and 6

(Murder in Aid of Racketeering), and Counts 26 and 28 (Conspiracy to Murder in Aid of Racketeering).[3]  Defendant's first request is for a description of how the Defendant and his four co-defendants functioned as an enterprise separate from the commission of the charged predicate acts alleged to constitute a pattern of racketeering. (Def.'s Mem. Supp. BOP at 6).  The Government correctly argues that a bill is not warranted as to the enterprise allegation. Paragraphs 3 and 4 of the Indictment outline the manner in which the Stapleton Crew is alleged to have functioned as an enterprise under the RICO statute, stating that the gang was involved in a number of criminal activities and the various means and methods used in furtherance of the enterprise's conduct.  (Indictment ¶¶ 3, 4).

I am unpersuaded by the precedent of United States v. Bailey, 689 F.Supp. 1463 (N.D. Ill. 1987), to which the Defendant cites.  In Bailey, the Illinois district court held that a bill of particulars was appropriate on the allegation of the enterprise's existence in a RICO charge where the indictment described the enterprise as follows: "a union or group of individuals associated in fact for the purpose of defrauding and obtaining money and property from various insurance companies by means of staging fake automobile accidents and subsequently submitting fraudulent personal injury claims, medical bills and wage losses to such insurance companies." Bailey, 689 F.Supp. at 1473.  To understand the import of Bailey, it is useful to compare it with a subsequent case out of the same district, United States v. Wolf, No. 92 CR 737, 1993 WL 169271 (N.D. Ill. May 18, 1993), which provides as much support for the opposite outcome.  In Wolf, the indictment alleged as follows: "This enterprise was involved in the real estate business, including investing in, repairing, and managing real estate. In connection with its real estate

---

[3] This M&O refers to counts in the original, not Superseding Indictment.  See n. 1, supra.

business, this enterprise employed people and purchased goods and services, including employing tradespeople and purchasing materials to repair and maintain real estate, purchasing insurance and employing an inspector." Wolf, 1993 WL 169271, *12 (N.D.Ill.) (N.D.Ill.,1993). The Wolf court distinguished Bailey, explaining that "[u]nlike the indictment in Bailey, [the Wolf indictment] provides specific details about the operation of the charged enterprise, how it affected interstate commerce, and how it had an existence separate from the alleged racketeering activity." No bill was ordered in Wolf. Id.

The differing outcomes in Bailey and Wolf illustrate the fine line between an adequate and an inadequate indictment. In this case, I find the Indictment sufficiently alleges that the Stapleton Crew operated as an enterprise within the meaning of the RICO statute, such that the Defendant can defend himself against those charges. The Indictment alleges that the enterprise was involved in narcotics distribution, robberies, the sale of firearms, preserving and protecting its power, territory and profits through the use of intimidation, violence and threats of violence, promoting and enhancing its criminal activities and keeping victims in fear of it through violence, intimidation and threats of violence. (Indictment ¶ 3). The Indictment further alleges means and methods of the enterprise. (Id. ¶ 4). As the Indictment presents sufficient detail as to the operation of the enterprise and how it affected interstate commerce, this motion for a bill of particulars by the Defendant is DENIED.

ii. *Second Set of Requests*

The Defendant next requests that the Government "specify the manner in which Mr. Wilson was either employed by or associated with the Stapleton Crew and the manner in which he participated in the operation or management of the enterprise," as is alleged in the Indictment

and required to prove a RICO count. (Def.'s Mem. Supp. BOP at 6). The Government responds

that this bill is "not necessary to permit Wilson to prepare for trial or avoid unfair surprise."

(Govt. Resp., at 10). This specific request was discussed at oral argument. (See Transcript of

Status Conference Dated June 16, 2006 ("Oral Arg. Tr."), at 23-4). Defense counsel argued that

they were not privy to the manner in which Wilson was employed or associated with the crew.

Stating that they could "figure it out" with respect to Wilson's co-defendants "based on their

records, based on who they were arrested with, on drug cases or robbery cases," Defendant's

counsel argued that it is not possible to do the same with respect to Wilson. (Oral Arg. Tr. at 23).

The Government responded by pointing to my decision in Urso, see 369 F.Supp. 2d at 271-73,

maintaining that it is not required to disclose "the when's, the where's or the with who's of an

agreement." (Oral Arg. Tr. at 23).

I noted at argument, and affirm here, that the Urso decision does not "totally inform[] the

decision in this case" because that case concerned the mafia, an enterprise "rich in history" and

with an "identifiable structure" testified to in numerous federal cases. (Id. at 24). Nonetheless, I

am denying the Defendant's request for a bill on the manner in which he was employed by or

associated with the Stapleton Crew. Based upon the detailed Indictment, the discovery produced

by the Government, and the defense team's acknowledged investigative efforts, I find that a bill

of particulars on this matter is not necessary to apprise the Defendant of the charges against him.

###### iii.     Third, Fifth and Sixth Sets of Requests

The Defendant's third, fifth and sixth requests seek the dates on which Wilson and his co-

defendants allegedly joined the racketeering enterprise and related conspiracies, and the date(s)

and location(s) of any related meetings Wilson attended, the dates Wilson and the other

defendants last participated in the conspiracies, and the nature of overt acts committed by Wilson in furtherance of the conspiracies and with whom he did so.  (Def.'s Mem. Supp. BOP at 6-8).

As a general rule, a defendant is not entitled to receive details of the government's conspiracy allegations in a bill of particulars.  United States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), aff'd, 875 F.2d 857 (2d Cir. 1989).  Details regarding the date on which the conspiracy was formed, or when each participant entered into the conspiracy need not be revealed before trial.  United States v. Persico, 621 F. Supp. 842, 868 (S.D.N.Y. 1985); Urso, 369 F. Supp. 2d at 272-73.  This determination is supported by the fact that "[t]he government is not required to prove . . . exactly when or how a conspiracy was formed or when a particular defendant joined the scheme."  United States v. Bin Laden, 92 F. Supp. 2d at 242 (internal quotation and citations omitted).  Thus, the Defendant's request for this information is easily denied.

iv.    *Fourth Set of Requests*

The fourth specific request by the Defendant seeks a bill identifying the names of all alleged co-conspirators and "others" with whom Wilson allegedly acted and conspired.  (Def.'s Mem. Supp. BOP, at 7).  On this question, courts in this Circuit are split.  See Urso, 369 F. Supp. 2d at 273 (noting that there is "no clear line dividing cases" in which such requests have been granted or denied).  In this case, I adopt the same position as I did in Urso: identifying alleged co-conspirators in a bill of particulars is inappropriate in cases where the defendant is charged with "extreme acts of violence" in order to protect the government's investigation and the safety of unindicted co-conspirators.  Id.; see also United States v. Coffey, 361 F.Supp.2d 102, 122 (E.D.N.Y. 2005) ("Courts have been highly reluctant to require a bill of particulars when

defendants have asked for specific identities of co-conspirators or others allegedly involved.");

United States v. Santiago, 174 F. Supp. 2d 16, 35-36 (S.D.N.Y. 2001); United States v.

Nachamie, 91 F. Supp. 2d 565, 572-73 (S.D.N.Y. 2000).  In the present case, Wilson is charged

with intentional murder and with conspiring to murder.  Moreover, with respect to the need to

protect the safety of cooperating witnesses, the Government informed the court at oral argument

that "as recently as a couple of weeks ago," two of Wilson's initial co-defendants, currently

detained at the Metropolitan Detention Center ("MDC"), assaulted another MDC inmate believed

to be a cooperator in his case.  (Oral Arg. Tr. at 21).  Therefore, I find that disclosure of the

identities of co-conspirators is not warranted, and I accordingly deny the Defendant's motion.

     *v.*      *Seventh, Eight and Ninth Sets of Requests*

In his final three requests pertaining to the racketeering and related racketeering

conspiracy counts, the Defendant moves for an order directing a bill of particulars on (1) how the

murders of Detectives Nemorin and Andrews "served to maintain or increase Mr. Wilson's

position in the Stapleton Crew;" (2) how conspiring to murder "members or associates of a rival

group known as the 456 crew" and to murder "John Doe" served to maintain or increase his

position in the Stapleton crew; and (3) the identity of the members or associates of the rival 456

crew, whom Wilson allegedly conspired to murder and the identity of "John Doe."

With respect to the first two requests concerning how certain alleged acts served to

maintain or increase Wilson's position in the Stapleton crew, the Defendant is not entitled to this

disclosure through a bill of particulars.  To grant the Defendant's motion would be to allow the

bill of particulars to serve as a general discovery tool.  Coffey, 361 F.Supp.2d at 122 ("While the

information defendants seek might be useful or helpful, in light of the ample notice and

specificity provided by the indictment and additional evidence and information supplied, defendants' motion for a bill of particulars is denied with prejudice.  To hold otherwise, would convert a motion for bill of particulars into a motion for wide-sweeping and burdensome discovery which is plainly not contemplated by Fed.R.Crim.P. 7(f).");  see also United States v. Kyongja Kang, No. 04 CR 87, 2006 WL 208882, *1 (E.D.N.Y. Jan. 25, 2006) ("It is not the function of a bill of particulars to obtain a preview of, and to proscribe, the government's evidence before trial; to learn the legal theory upon which the Government will proceed.").

Wilson also seeks the identities of the alleged victims of the charges of Conspiracy to Murder in Aid of Racketeering put forth in counts twenty-six and twenty-eight of the original Indictment.  The Indictment identifies the victims as "members and associates of a rival group known as the 456 crew," and as "John Doe, a person whose identity is known to the grand jury," respectively.  The Government responds to Wilson's motion by stating that a bill is not necessary because there has been additional discovery provided to the Defendant on these counts.  (Govt. Resp. at 12).  Specifically, the Government proffers that it has turned over copies of crime scene photographs, a DVD recording relating to a drive-by shooting, ballistic reports and evidence vouchers.  (Id.; see also Oral Arg. Tr. at 22 (describing "additional evidence" turned over since filing of motions)).  The specific identities of these persons, however, has not been turned over.[4]

To the extent that the Government knows the identities of the alleged victims of these charged crimes and has not disclosed this information, a bill of particulars is warranted.  See United States v. Orena, 32 F.3d 704, 714 -715 (2d Cir. 1994).  In Orena, the defendant moved for

---

[4] Wilson's attorney conceded at oral argument that she believes she knows who John Doe is, but is "not sure" and thus seeks confirmation to adequately prepare for trial.  (Oral Arg. Tr. at 20).

a bill or particulars identifying the victims of an alleged murder conspiracy. The government responded to the motion by disclosing the identities of twelve intended victims, and the defendant's motion was denied. The circuit court, however, in dicta, noted that the "government provided all the information that was available to it," citing United States v. Bennett, 36 F.R.D. 103, 104 (E.D.S.C.1964) for the proposition that "'[a]n indictment should name . . . the persons defrauded when they are known by the government.'" This dicta has been interpreted by other courts of this circuit to require the government to turn over the identities of victims of an alleged murder conspiracy if known to the government. See United States v. Solovey, No. 04-CR-244, 2005 WL 1279228, *3 (W.D.N.Y. May 31, 2005). Thus, the Government is directed to turn over to the Defendant within seven (7) days of the date of this Order – to the extent that the information is known to the Government – the identities of the alleged victims of the conspiracies to murder in aid of racketeering charges, "members of a rival group known as the 456 Crew" and "John Doe."

**B.** *Narcotics Related Charges*

Wilson also moves for bills of particulars pertaining to the following counts in the original Indictment: Count 17 (Conspiracy to Distribute Cocaine Base), Count 18 (Narcotics Distribution), and Racketeering Act ("RA") 3 (Narcotics Distribution). (Def. Mem. Supp. BOP, at 8-12). The narcotics charges cover a time period from October 1999 through March 2003. (Indictment ¶¶ 57, 58, 18-20). Wilson maintains that the bare-bones assertions set forth in the Indictment as to these drug-related charges, and the lack of discovery concerning these charges, have left him unable to defend himself against them. Specifically, Wilson urges that the following is required in order to adequately prepare for his defense: dates and locations on

which/where Wilson and other defendants allegedly joined and participated in the drug

conspiracy; details of each overt act allegedly committed by Wilson and other defendants in

furtherance of the conspiracy; the names of Wilson's alleged co-conspirators; and Wilson's role

in the alleged conspiracy.

For the same reasons discussed above with respect to the racketeering charges, Wilson's

request for particulars as to the dates and locations of joining and participation in the conspiracy

by himself and others is denied; his request for the names of alleged co-conspirators is similarly

denied.  See United States v. Kee, No. S1 98 CR 778, 2000 WL 760096, at * 3  (S.D.N.Y. June

12, 2000).

Wilson's request for particulars on each overt act committed in furtherance of the

narcotics conspiracy and his request for particulars as to his alleged role in the narcotics

distribution conspiracy is a tougher question.  To support his request, Wilson relies on United

States v. Barnes, 158 F. 3d 662 (2d Cir. 1998), in which the Second Circuit held that the trial

judge should have ordered a bill of particulars (although it was harmless error not to have done

so) where the narcotics conspiracy charge, covering over three years, merely tracked the language

of the statute, as the Indictment in this case does.  The court stated: "Since the Indictment

provided not a shred of detail, the defendant was entitled to be otherwise apprised of the conduct

that he was alleged to have undertaken in furtherance of this multi-faceted, if not multiple,

conspiracy."  The Government argues that Barnes is distinguishable because it apparently alleged

a more complex conspiracy that involved several types of drugs, whereas the Wilson Indictment

concerns only cocaine.

The distinction the Government proposes, based on the type of narcotic alone, is at best

weak.  The court finds that this case is sufficiently analogous to <u>Barnes</u> to warrant ordering a bill of particulars with respect to the narcotics conspiracy charge and Wilson's alleged role in the conspiracy.   Furthermore, because the conspiracy provision of the Controlled Substances Act, 21 U.S.C. § 846, does not require an indictment to list any overt acts taken in furtherance of the conspiracy, "[a] bill of particulars is all the more important in a narcotics conspiracy case because the indictment itself provides so little detail."  <u>United States v. Ramirez</u>, 54 F. Supp. 2d 25, 30 (D.D.C. 1999).

Therefore, the court grants the Defendant's motion for a bill of particulars as to Defendant's request number seven pertaining to the narcotics related charge: "the role Mr. Wilson played in the narcotics trafficking conspiracy."  (Def.'s Mem. Supp. BOP, at 12).  The court is not expressly requiring the Government to provide the Defendant with overt acts committed in furtherance of the conspiracy.  Rather, the Government must provide meaningful discovery within seven (7) days of the date of this Order that will apprise the Defendant in greater detail of the narcotics conspiracy charged in the Indictment such that he can sufficiently prepare to defend against the charge.

   **C.    *Robbery and Firearms Related Charges***

In Counts 12-16 and Racketeering Acts 6 and 7 of the original Indictment, Wilson is charged with Robbery, Robbery Conspiracy, and related firearms crimes for conduct that occurred on or about May 2, 2002.  (Indictment ¶¶ 23-27, 52-56).  Again, Wilson moves for a bill of particulars providing relevant dates and locations concerning the alleged conspiracy, identities of co-conspirators, and further details of the role Wilson played in the alleged conspiracy.  (Def. Mem.  Supp. BOP, at 12-13).  Again, for the same reasons discussed above, the Defendant's

motion is denied.  The Indictment and discovery adequately apprise Wilson of the charges

against him, and a bill of particulars is therefore unnecessary.

### D. *Aggravating Factors Alleged in the Indictment and NOI*

Wilson moves as well for a bill of particulars with respect to the three statutory

aggravating factors charged in the Indictment's Notice of Special Findings (NOSF), and the five

non-statutory aggravating factors noticed in the Government's Notice of Intent to Seek the Death

Penalty (NOI).  Courts have found authority under Fed. R. Crim. P. 7(f) to order bills of

particulars in connection with aggravating factors the Government intends to prove at the

sentencing phase of a capital prosecution for the same reason that bills are authorized with

respect to charges in an indictment, i.e. to ensure that a criminal defendant is able to adequately

prepare his defense.  See e.g., Bin Laden, 126 F. Supp. 2d 290, 304-305 (S.D.N.Y. 2001)

(ordering limited bill of particulars pursuant to Rule 7(f) specifying the particularized categories

of "injury, harm, and loss" that will be proffered through victim impact evidence at sentencing);

but see United States v. Llera Plaza, 179 F.Supp.2d 464, 472 (E.D. Pa. 2001) ("[T]he court

concludes that . . . Rule 7 is not applicable to NOIs submitted to satisfy FDPA requirements.");

United States v. Kaczynski, CR-96-259, 1997 WL 716487, at *19 (E.D. Cal. Nov. 7, 1997)

(finding that "by its express language, Fed. R. Crim. P. 7 applies only to informations and

indictments.  Since aggravating factors are neither offenses nor elements of substantive offenses

that must be alleged by indictment, Fed. R. Crim. P. 7 does not govern the nature or specificity of

notice required under § 3593(a)").

In the absence of authority pursuant to Rule 7(f), courts have nonetheless ordered bills

supplementing noticed aggravating factors on Constitutional grounds.  These courts have found

15

that the Constitution – either in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment – guarantees criminal defendants a meaningful opportunity to present a complete defense and that this guarantee grants authority to order bills of particulars in connection with aggravating factors in the sentencing phase of a death penalty case. See Llera Plaza, 179 F.Supp.2d at 471-72 (citing cases). Thus, whether by way of Rule 7(f) or inherent authority, if warranted, this court can order the bills Wilson seeks. United States v. Karake, 370 F.Supp.2d 275, 279-80 (D.D.C. 2005) ("it has been uniformly recognized that if the death penalty provides insufficient notice to the defendant, the Court retains inherent authority to require the government to provide more specifics in order to give the defendant the opportunity to prepare for the penalty phase").

i. <em>Pecuniary Gain</em> and <em>Substantial Planning and Premeditation</em>

Wilson requests that the Government be ordered to specify the thing of "pecuniary value" for which he allegedly committed the capital offenses charged in the Indictment. (Def.'s Mem. Supp. BOP, at 15). The Government responds that the Indictment and discovery "trace the prosecution's theory of the case" and therefore a bill on these aggravators is not warranted. (Govt. Resp., at 15). Specifically, Wilson is aware that the Government intends to prove that the victims had arranged to buy weapons from Wilson and other members of the Stapleton Crew, that the Defendant and associates in turn intended to rob Detectives Andrews and Nemorin of the "buy" money, and that Wilson ultimately murdered the two detectives. Thus, the Defendant will face no surprise at trial or the sentencing phase of how the Government intends to prove the factors of pecuniary gain and substantial planning and premeditation. See Lerra Plaza, 179 F. Supp. 2d at 472 (holding that the defendants were given adequate notice of the facts the

16

government will use to establish the statutory aggravating factors of procurement of offense by payment, pecuniary gain, and substantial planning and premeditation because the Indictment and the government's discovery disclosures trace the prosecution's theory of the case). This request for a bill is therefore denied.

<em>ii. Obstruction of Justice</em>

Wilson next moves for an order requiring the Government to "state how the deaths of [Detectives Nemorin and Andrews] were intended to obstruct justice." (Def.'s Mem. Supp. BOP, at 16). The Government's response is simply that the Defendant "does not cite any authority to support this request because there is none." (Govt. Resp., at 16). As a preliminary matter, the court notes that the Government's response is incorrect; there is precedent – albeit non-binding – for ordering the Government to provide greater specificity with respect to an obstruction of justice sentencing factor. See United States v. Harris, 332 F. Supp. 2d 692, 696-7 (D.N.J. 2004) (noting that the court heard arguments on defendant's objection "to the lack of specificity" with which the obstruction-of-justice sentencing factor was noticed, and that the court "for reasons stated on the record" ruled that the Government should provide greater specificity for the obstruction of justice factor).

Nonetheless, although this court could order particulars with respect to the obstruction of justice aggravating factor, such an order is neither required nor warranted in this case. At oral argument, the Government sufficiently explained its obstruction of justice theory. The Government explained that it intends to prove that, by killing Detectives Andrews and Nemorin, Wilson killed "two people who could have provided information to federal authorities" about "all the crimes basically committed by the Stapleton Crew charged in the Indictment." (Oral Arg.

17

Tr., at 28). In light of this disclosure, no bill is required with respect to the obstruction of justice aggravating factor.

### iii. *Future Dangerousness of the Defendant*

The Government has provided notice that it intends to prove the aggravating factor of future dangerousness by presenting evidence of, at least, one or more of the following: a continuing pattern of violence; a lack of remorse; a low rehabilitative potential; and membership in a criminal street gang. The Government avers that Wilson already has sufficient notice of what evidence will be presented at trial with respect to this aggravating factor. Specifically, the Government proffers that, among other evidence, it intends to rely on "the acts charged in the indictment, the defendant's prior convictions and his well-documented prison infractions . . . ." (Govt. Resp., at 16).

Wilson relies primarily on three cases in which courts directed particulars to be provided on the elements of future dangerousness. In United States v. Rodriguez, 380 F. Supp. 2d 1041, 1058 (D.N.D. 2005), the court ordered the government to provide an outline of the evidence it intended to rely upon to prove the non-statutory aggravating factor of future dangerousness, but provided little, if any, analysis on the decision except to say that it was justified to allow the defendant to properly defend against the charges. In United States v. Llera Plaza, 179 F. Supp. 2d 464, 474 (E.D.Pa. 2001), the court similarly ordered the government to submit an outline of intended evidence. There, the court required that the outline include a description of any unadjudicated act of misconduct that the government intends to prove given the "potential problems with the reliability of such evidence and the risk that it may mislead." Finally, in United States v. Glover, 43 F. Supp. 2d 1217, 1227 (D. Kan. 1999), the court directed the

government to more specifically articulate *to the court* the nature of the "lack of remorse" aggravating factor by setting out the factual basis on which it intended to show the defendant's lack of remorse, so that the court could decide whether a pretrial evidentiary hearing was warranted.  Although these cases support the Defendant's position that a bill on future dangerousness can be appropriate in certain circumstances, the cases provide little guidance as to application in Wilson's case.  Of course, the granting or denial of a bill or particulars is within the court's discretion.

"The Government is not required to provide specific evidence in its notice of intent." United States v. Battle, 173 F.3d 1343, 1347 (11th Cir. 1999).  Indeed, the notice provision of the FDPA states that the Government must provide notice "setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death."  18 U.S.C. § 3592(a)(2).  There is no mention of providing notice of the specific evidence that will prove the factors.  Nonetheless, courts have recognized that, "at a minimum, due process requires a defendant to receive sufficient notice of aggravating factors to enable him to respond and to prepare his case in rebuttal."  Llera Plaza, 179 F. Supp. 2d at 471. "In evaluating whether due process is satisfied, the Death Penalty Notice must be considered in conjunction with the offenses as charged in the indictment, which can provide the requisite specificity to an otherwise insufficient notice."  Id.  Here, the Government maintains, and the court agrees, that Wilson has been provided adequate notice to prepare his defense.  Between the NOI, the NOSF, the Indictment, and particularly the predicate acts charged in the Indictment, and the voluminous discovery turned over to the Defendant, Wilson has been provided adequate notice of the evidence the Government will present on the future dangerousness aggravating

factor. The Defendant's motion for a bill is therefore denied.

iv. *Victim Impact Evidence*

Finally, Wilson moves for an order compelling the Government to provide specific information about the nature, extent and scope of the loss, injuries and harm suffered by the victims, their families and their colleagues in the NYPD.[5] (Def. Mem. Supp. BOP, at 19). Again, Wilson finds support for his position in a number of cases from other districts. See Glover, 43 F. Supp. 2d at 1225 (ordering particulars on the victim impact aggravator because "the defendant is entitled to greater specificity regarding this factor, to wit, which members of the family have suffered, the nature of their suffering, and the nature of the "permanent harm"); United States v. Cooper, 91 F. Supp. 2d 90, 111 (D.D.C. 2000) (requiring the government to include "more specific information concerning the extent and scope of the injuries and loss suffered by each victim, his or her family members, and other relevant individuals, and as to each victim's 'personal characteristics' that the government intends to prove"); Llera Plaza, 179 F. Supp. 2d at 475 ("in order to allow the defendants to adequately prepare responses to sentencing phase evidence, and in order to allow the court to determine if a pre-sentencing hearing will be necessary to review that evidence, the government will be ordered to submit an outline of its proposed victim impact evidence"). The Defendant also cited the Southern District case of Bin Laden, in which Judge Sand required "a limited bill of particulars specifying the particularized categories of 'injury, harm, and loss' that will be proffered at sentencing." Bin Laden, 126 F. Supp. 2d at 304.

---

[5] Note that Wilson also moves to strike entirely from the NOI victim impact evidence by colleagues at the NYPD concerning the effect of these murders on the NYPD's ability to perform its law enforcement duties. This motion will be discussed infra.

In its response, the Government only addressed the holding in <u>Bin Laden</u>, correctly noting that Judge Sand's holding rested at least in part on fact that there was an "extraordinary" number of victims, most of whom were located abroad in that case, a factual circumstance distinguishable from the instant case. (<u>See</u> Govt. Resp., at 16-17). While the Government correctly distinguishes the <u>Bin Laden</u> holding, it fails to address the many other courts that have found it appropriate to provide particulars as to the victim impact evidence that will be presented at trial. As the Government has failed to provide any compelling reason for why this motion should be denied, I am inclined to follow the trend apparent in the cases cited above and to direct the Government to provide particulars on its victim impact evidence.

The category of "victim impact" is vast. The Defendant is entitled to have some sense of how this will be proved an aggravating factor that the jury could consider in coming to an "*individualized* determination on the basis of the character of the individual and the circumstances of the crime" of whether Wilson should receive a death sentence. <u>Zant v. Stephens</u>, 462 U.S. 862, 879 (1983) (emphasis in original). Therefore, the Defendant's motion is granted, and the Government is directed to provide to the Defendant within forty-five (45) days of the date of this Order specifics on the nature, extent, and scope of the harm suffered by the victims' family members whom the Government alleges to have suffered severe and irreparable harm.

## II.    Defendant's Motion to Strike Certain Language in the Indictment and NOI

Wilson moves to strike from the Indictment and the NOI certain words and phrases he believes are mere surplusage and therefore inflammatory and prejudicial. (<u>See</u> Def. Mem. Supp. BOP, at 21-22). Specifically, the Defendant requests that all references to him committing the

charged crimes "*with [unidentified] others*" in a specified location "*and elsewhere,*" be stricken,

along with use of the phrases "*among other things*" and "*including but not limited to*" throughout

the Indictment and NOI. The Defendant argues that these phrases "suggest that Mr. Wilson

engaged in additional criminal activities that, for some reason, have not been explicitly charged,

and, similarly, a broader scope of illegal activity on the part of the alleged racketeering enterprise

and other counts in which he is implicated." (<u>Id.</u> at 21). He contends that these phrases "do not

serve any valid purpose" but rather invite "unfair and prejudicial speculation by the jury," and

therefore should be stricken. (<u>Id.</u> at 22).

     This court has authority pursuant to Fed. R. Crim. P. 7(f) to strike surplusage from an

indictment. Such a motion "will be granted only where the challenged allegations are 'not

relevant to the crime charged and are inflammatory and prejudicial.'" <u>United States. v. Scarpa</u>,

913 F.2d 993, 1013 (2d Cir. 1990) (quoting <u>United States v. Napolitano</u>, 552 F.Supp. 465, 480

(S.D.N.Y. 1982) (citing authorities)). Language will not be stricken, regardless how prejudicial

it may be, if evidence of the allegation is admissible and relevant to the charge. <u>Scarpa</u>, 913 F.2d

at 1013; <u>see</u> <u>also</u> <u>United States v. DePalma</u>, 461 F.Supp. 778, 797 (S.D.N.Y. 1978). Moreover,

in a RICO case, courts of this district have repeatedly refused to strike allegations of organized

crime connections that "serve to identify the 'enterprise' and the means by which its members

and associates conduct various criminal activities." <u>Scarpa</u>, 913 F.2d at 1013 (quoting

<u>Napolitano</u>, 552 F.Supp. at 480); <u>see</u> <u>also</u> <u>United States v. Rastelli</u>, 653 F. Supp. 1034, 1055

(E.D.N.Y. 1986); <u>United States v. Santoro</u>, 647 F.Supp. 153, 176-77 (E.D.N.Y. 1986), aff'd

mem., 880 F.2d 1319 (2d Cir. 1989).

     Wilson's motion to strike this language is premature. The mere fact that the Indictment

and NOI contain references to such unknown persons does not lead to the conclusion that the defense will be prejudiced by the jury inferring that the charged conspiracy was broader than the evidence will support. See United States v. Parker, 165 F.Supp.2d 431, 474 -75 (W.D.N.Y. 2001) ("The jury will [ ] be instructed that the conspiracy must be established by the Government's evidence. Thus, if the Government fails to support the allegation regarding other unknown co-conspirators, it is more likely that such failure could undermine the jury's assessment of the strength of the Government's case than that it will work to the disadvantage of the defense.")

Therefore, it is premature to rule on this motion before the Government presents its evidence. If the Government furnishes evidence of the allegation that is admissible and relevant, the challenged references cannot be considered prejudicial surplusage. Wilson's motion to strike surplusage from the Indictment and NOI is thus denied without prejudice.

## III. Defendant's Motion to Suppress Evidence, Statements and Identifications

Wilson moves to suppress several pieces of evidence that the Government intends to admit at trial. First, he seeks to suppress evidence obtained on May 2, 2002, after his arrest in Richmond County, New York. Wilson maintains that the police did not have probable cause to arrest him on that date, and thus that the statement, Miranda waiver, and firearm obtained as a result of the arrest must be suppressed. Wilson further maintains that the New York Police Department ("NYPD") lacked probable cause to arrest him on March 12, 2003 for the murders of Detectives Andrews and Nemorin that had occurred two days prior. He seeks suppression of evidence obtained as a result of this arrest. Finally, Wilson requests suppression of pretrial photographic and lineup identifications on the grounds that they were unduly suggestive. In the

23

alternative to suppression, Wilson claims he is entitled to an evidentiary hearing to determine whether probable cause existed to arrest him in the first instances, and to a Wade hearing to determine the propriety of the lineup identifications. (See generally Defendant's Memorandum of Law in Support of Motion to Suppress ("Def.'s Mem. Supp. Suppression")).

A.   *Wilson's May 2, 2002 and March 12, 2003 Arrests*

Wilson proffers that his arrests on both May 2, 2002 and March 12, 2003 were without probable cause. Relying on the "fruit of the poisonous tree" doctrine, he therefore moves to suppress all evidence obtained therefrom. The Defendant's allegations, however, do not justify a hearing or suppression. As the court finds that there is no need to hold even an evidentiary hearing on the issue of probable cause, this opinion need not address the merits of whether the NYPD had probable cause on the two dates in question. For the reasons set forth below, Wilson's motions to suppress, and for suppression hearings, are denied.[6]

It is well settled that a defendant does not have a right to an evidentiary hearing under all circumstances. See United States v. Viscioso, 711 F.Supp. 740, 745 (S.D.N.Y. 1989); United States v. Culotta, 413 F.2d 1343, 1345 (2d Cir. 1969), cert. denied, 396 U.S. 1019 (1970); United States v. Florack, 155 F.R.D. 49, 56-7 (W.D.N.Y. 1994). To warrant such a hearing, a defendant must demonstrate "that disputed issues of material fact exist." Viscioso, 711 F.Supp. at 745 (internal quotation omitted). Moreover, the showing must be made by an affidavit of someone with personal knowledge of the underlying facts. Id.; Gillette, 383 F.2d 843, 848 (2d Cir. 1967); see also, United States v. Vasta, 649 F.Supp. 974, 986 (S.D.N.Y. 1986) ('to raise a factual issue

---

[6] I note for the record that were the court to address the merits, it would find that probable cause existed for both arrests for the reasons set forth in the Government's brief. (See Govt. Resp., at 22-26).

... such that a hearing is required, the defendant must support his claim with an affidavit based on personal knowledge'). Where a defendant's allegations of factual dispute are "general, conclusory or based on conjecture" no hearing is required.  Viscioso, 711 F.Supp. at 745. Indeed, courts in this district consistently deny hearings where defendants have failed to provide affidavits alleging facts based on personal knowledge.  See, e.g. United States v. Larranga Lopez, No. 05-CR-655, 2006 WL 1307963, *3 (E.D.N.Y. May 11,  2006) (Townes, J.) (citing EDNY cases).

In the present case, Wilson alleges that his arrests lacked probable cause, but he has failed to supply the court with affidavits of persons with personal knowledge of the facts sufficient to justify a hearing.  See Gillette, 383 F.2d at 848-49 ("The affidavit submitted for appellant is insufficient in that it does not, for example, allege personal knowledge on the part of appellant's attorney; accordingly, there was no factual issue to be resolved and the denial of a hearing was correct.").  In other words, Wilson has not demonstrated that a factual issue exists, and therefore the court denies the request for a hearing.

With respect to his May 2, 2002 arrest, Wilson submits no affidavit alleging factual dispute.  His brief in support of his motion to suppress merely states that because Wilson's indictment for felony possession of a weapon was dismissed and sealed six weeks after his arrest, a hearing is warranted.  (Def.'s Mem. Supp. Suppression, at 7-8).  Wilson's argues that "a logical reading of the events that transpired leads to the conclusion that Ronell Wilson's arrest, detention, and questioning were absent probable cause as evidenced by the dismissal of his case six weeks after his arrest."  (Id. at 8).  Putting aside the fact that the Defendant's conclusion is hardly a "logical reading" of the events, it remains that Wilson has not provided an affidavit of

someone with personal knowledge of the underlying facts to justify a hearing. His conclusory allegations are mere conjecture, and his request for a hearing and to suppress the fruits of his May 2, 2002 arrest are therefore denied.

In connection with his motion to suppress the fruits of his March 12, 2003 arrest (or alternatively for an evidentiary hearing on the matter), Wilson has submitted the affidavit of Angle Torres, a defense investigator. (Def. Ex. 2). Torres's affidavit declares that, in his capacity as an investigator with the New York State Capital Defender Office assigned to investigate Wilson's case, he interviewed the driver of the car in which Wilson was arrested on March 12, 2003. Torres attests that the driver told him that on that date, after picking up two black males, his car was surrounded by police vehicles with guns drawn. Torres wrote in his affidavit that the driver states that he did not violate any traffic law and that the two men in his car were not doing anything illegal. (See id.).

Under the law of this circuit and district, cited above, the affidavit of Torres is insufficient to support an evidentiary hearing. Torres is an investigator who was not present at the scene of the arrest on March 12, 2003. He has no personal knowledge of the circumstances of the arrest, and Wilson has therefore failed to raise a factual dispute that requires a hearing. See Gillette, 383 F.2d at 848-49. Wilson's motion to suppress the fruits of his March 12, 2003 arrest, or in the alternative for a suppression hearing, is denied.

**B.** *Lineup Identifications*

On March 12, 2003, following his arrest, the Defendant appeared in a lineup of six persons that was viewed by four witnesses at the 120th Precinct in Staten Island. Of the four

lineups, three identifications of Wilson were made. (Def. Mem. Supp. Suppression, at 5).[7]

Wilson's attorney, Larry Simon, was present at the lineups. In an affirmation submitted in

connection with the Defendant's motion, Simon affirms that before the witnesses viewed the

lineups, he objected to the fillers. (Def. Ex. 5). Specifically, Simon attests that he registered his

objections that the fillers did not appear to be of similar age to Wilson and that the fillers had a

darker skin complexion that Wilson. (See id.). On these bases, Wilson now seeks a Wade

hearing on the suggestiveness of the lineups, urging this court to determine the admissibility of

the resulting lineup identifications at trial. See United States v. Wade, 388 U.S. 218 (1967).

A defendant's right to due process includes the right not to be the object of pretrial

identification procedures that are "so impermissibly suggestive as to give rise to a very

substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377,

384 (1968). The Second Circuit has held:

> [W]e will exclude a pre-trial identification only if it was both produced through an
> unnecessarily suggestive procedure and unreliable. Even if the procedure was
> unnecessarily (or impermissibly) suggestive, therefore, a district court may still
> admit the evidence "if, when viewed in the totality of the circumstances, it
> possesses sufficient indicia of reliability."

United States v. Bautista, 23 F.3d 726, 729-30 (2d Cir. 1994) (quoting Simmons, 923 F.2d at

950)). A request for a Wade hearing is generally granted where "any question is raised

concerning the suggestibility of the identification procedure." United States v. Persico,

CR-92-00351, 1994 WL 36367, *23 (E.D.N.Y. Jan. 28, 1994) (Sifton, J.); see also United States

v. Archibald, 734 F.2d 938, 940-941, modified on other grounds, 756 F.2d 223 (2d Cir. 1984);

---

[7] A law enforcement witness who was involved in the investigation of the murders of
Detectives Andrews and Nemorin did not identify Wilson at the lineup. (Def. Mem. Supp.
Suppression, at 5).

Watkins v. Sowders, 449 U.S. 341, 346-47 (1981).

Wilson has raised concerns over the differing skin tones and ages between himself and the five fillers used in the lineups. Attached to his motion papers is a colored photo-copy of the six men, including himself, who participated in the lineup. (Def. Ex. 7). The court has examined this photograph. All six men are African-American, wearing casual apparel and baseball hats turned backwards.

First, Wilson argues that "the fillers in the line up did not appear to be of similar age to Mr. Wilson." (Def. Mem. Supp. Suppression, at 5). The court disagrees. The six men in the picture all appear to be of similar age, namely in their early twenties. Indeed, the Government proffers that two of the five fillers were the same age as Wilson was at the time, i.e. nineteen years-old, and one was one year younger. (Govt. Resp. at 28). There is no mention of the ages of the other two individuals in the lineup. Nonetheless, the court finds that all of the men appear to be of the same general age, and that there is no suggestibility question raised in this regard. See Roldan v. Artuz, 78 F. Supp. 2d 260, 273-74 (S.D.N.Y. 2000) (Batts, J.) ("Even if all of the lineup fillers were older, however, this is not enough to constitute an unduly suggestive lineup."); Castaneda v. Artuz, No. 97 CV 2262, 1998 WL 938860, at *6 (E.D.N.Y. Nov. 18, 1998) (Raggi, J.).

With respect to the skin tone of the participants in the lineup, however, the Defendant's claim has merit. It is clear from the photograph that there is a noticeable difference between the lighter skin tone of Defendant Wilson, and the darker skin of the five other men. Thus, the allegation of suggestiveness based on skin tone is, in the least, legitimate. Of course, in a police identification lineup, "there is no requirement that . . . the accused . . . be surrounded by persons

28

nearly identical in appearance, however desirable that may be." United States v. Reid, 517 F.2d

953, 966 n.15 (2d Cir. 1975); see also Agosto v. Kelly, No. 88-CV-1336, 1989 WL 79484, *3

(E.D.N.Y. July 9, 1989).  Moreover, the court is aware of cases from district courts in this circuit

that have held that differences in skin tone do not render a lineup impermissibly suggestive.  See

e.g., Roldan, 78 F. Supp. 2d at  273-74 ("Differential in skin color between lineup participants

does not violate due process."); People v. Ashby, 692 N.Y.S.2d 109 (2d Dep't 1999) ("While it is

true that one of the fillers had a skin tone lighter than that of the defendant, the lineup was

otherwise comprised of individuals with similar characteristics.").

    Nevertheless, the photograph depicts a clear difference in skin tone.  Given the preference

in this circuit for pre-trial Wade hearings to ensure the protection of a criminal defendant's due

process rights, I find that a Wade hearing is warranted in this case.  In light of the photograph

demonstrating the visible skin tone difference, the court is obliged to consider the totality of the

circumstances surrounding the lineups to determine the admissibility of this identification

evidence.  The Defendant's motion for a Wade hearing is therefore granted, and will be

scheduled after consulting with the parties at the status conference to be held on the Tuesday July

18, 2006.

## C. *Photographic Identifications*

    Wilson also challenges the admissibility at trial of a witness photo array identification

that took place on April 27, 2003.  A redacted copy of the photo array was disclosed by the

Government to the Defendant, and has been submitted to the court in connection with this

motion.  (Def. Ex. 8).  There are six African-American individuals depicted in the black-and-

white array, each with a dreadlock hairstyle.  Defense counsel concedes: "On it's face, counsel

cannot argue that the composition of the array is impermissibly suggestive." (Def. Mem. Supp. Suppression, at 6). Nonetheless, Defendant argues that because he has not received the police reports "describing the events surrounding the conduct of [the array identification]," he should be granted a <u>Wade</u> hearing so that the court can determine whether the identification was conducted in an impermissibly suggestive manner. (<u>Id.</u>).

Wilson is correct in asserting that "[t]he fairness of a photo array depends on a number of factors, including the size of the array, the manner of presentation by the officers, and the array's content." <u>United States v. Maldonado-Rivera</u>, 922 F.2d 934, 974 (2d Cir. 1990). If pretrial procedures were not suggestive, "any remaining questions as to reliability, such as the witness's inability to identify the same person at trial, go to the weight of the identification and not to its admissibility, and the identification therefore is generally admissible without any further reliability inquiry." <u>United States v. Thai</u>, 29 F.3d 785, 808 (2d Cir. 1994); <u>see also</u> <u>Maldonado-Rivera</u>, 922 F.2d at 974-76. Moreover, even if pretrial procedures have been unduly suggestive, an in-court identification may still be permitted if the court determines that the identification is independently reliable. <u>Thai</u>, 29 F.3d at 808; <u>United States v. Butler</u>, 970 F.2d 1017, 1021 (2d Cir. 1992). In assessing reliability, several factors must be considered, including "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." <u>Thai</u>, 29 F.3d at 808 (quoting <u>Neil v. Biggers</u>, 409 U.S. 188, 199-200 (1972)). These factors are evaluated in light of the totality of the circumstances.

While Wilson's claims of suggestivity are speculative at this point, he has raised a

concern, and the most cautious route would be to address this issue at the <u>Wade</u> hearing to establish that the photo array procedures were not unduly suggestive. See <u>Persico</u>,1994 WL 36367, at *23. The Defendant's motion for a hearing on the admissibility of the photo array identification is therefore granted.

**IV.     Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional**

Wilson has also moved to declare the Federal Death Penalty Act unconstitutional and to dismiss the Government's Notice of Intent to seek the death penalty. (See <u>generally</u> Def.'s Memorandum of Law in Support of Motion to Declare FDPA Unconstitutional). Although defense counsel has articulately and comprehensively briefed this motion, and the Government has likewise responded to the Defendant's arguments, I will not address the merits of this motion. As I indicated at oral argument (<u>see</u> Oral Arg. Tr., at 17-18), because the Second Circuit has squarely rejected the arguments put forth by the Defendant, I am compelled to uphold the constitutionality of the FDPA without further discussion. See <u>United States v. Quinones</u>, 313 F.3d 49 (2d Cir. 2002).

**V.     Defendant's Motion to Dismiss Special Findings and to Strike Aggravating Factors**

Wilson moves next to dismiss certain findings set forth in the Notice of Special Findings ("NOSF") and to strike various statutory and non-statutory aggravating factors set forth in the Notice of Intent to Seek the Death Penalty ("NOI"). (See <u>generally</u> Defendant's Memorandum of Law in Support of Pretrial motion to Dismiss Specific Findings in NOSF and to Strike Factors in NOI ("Def.'s Mot. NOSF/NOI")). The Indictment against Wilson charges seven capital counts in connection with the murders of Detectives Andrews and Nemorin: two counts of obstruction-of-justice murder (Counts Three and Four); two counts of murder in aid of racketeering (Counts

Five and Six); carjacking (Count Seven); and two counts of causing death through the use of a firearm (Counts Ten and Eleven).[8]

The Indictment contains a "Special Findings" section which tracks the four threshold intent factors contained in 18 U.S.C. § 3591(a)(2).[9]  In addition, the NOSF provides notice of three statutory aggravating factors enumerated in 18 U.S.C. § 3592(c) for the jury's consideration.  These factors also largely track the statutory language:

1. Defendant, in the commission of the charged offenses, intentionally killed more than one person in a single criminal transaction.
2. Defendant committed the offense for pecuniary gain.
3. Defendant committed the offenses after substantial planning and premeditation.

(Indictment ¶¶ 80-82 (quoting 18 U.S.C. § 3592(c)(16),(8) and (9)).[10]  The NOI filed by the Government also notices five non-statutory aggravating factors that the Government will seek to prove in support of a death sentence:

1. Obstruction of Justice: Defendant killed the victims in an effort to obstruct justice.
2. Status of the Victims: Defendant murdered two law enforcement officers during

---

[8] In the Superseding Indictment (S-1), these capital counts are identical.

[9] 18 U.S.C. § 3591(a) authorizes the death penalty against one whom has been found guilty of an "offense for which a sentence of death is provided" if determined beyond a reasonable doubt that the defendant:
(A) intentionally killed the victim;
(B) intentionally inflicted serious bodily injury that resulted in the death of the victim;
(C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or
(D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.
18 U.S.C. § 3591(a).

[10] In the Superseding Indictment, these factors are noticed at ¶¶ 63-65.

the course of their duties.

3.      Contemporaneous Convictions: Defendant faces contemporaneous convictions for multiple attempted murders and other serious acts of violence.

4.      Future Dangerousness: Defendant represents a continuing danger to the lives and safety of others and is likely to commit criminal acts of violence in the future that would constitute a continuous and serious threat to the lives and safety of others.

5.      Victim Impact Evidence: Defendant caused loss, injury, and harm to the victims and the victims' families.

(NOI, at 4-6, ¶ C).

Under the FDPA, once a defendant is found guilty of a capital offense, the jury must determine whether the defendant is eligible for the death penalty. In this eligibility phase, the government must prove the existence of one of the four culpable mental states enumerated in 18 U.S.C. § 3591(a)(2)(A)-(D), see footnote 9, supra, and the existence of at least one statutory aggravating factor set forth in section 3592(c). In the eligibility phase, these factors must be proven beyond a reasonable doubt. 18 U.S.C. § 3591(a)(2); 3593(c).

Once the defendant is found eligible to receive a sentence of death, the jury must decide whether the death penalty is justified in the particular case by making findings as to the presence of any aggravating or mitigating factors and then weighing those factors against one another. 18 U.S.C. § 3593(c)-(d); see also 18 U.S.C. § 3592 (outlining mitigating and aggravating factors that can be considered and noting that the jury "may consider whether any other aggravating factor for which notice has been given exists."). Statutory and non-statutory aggravating factors must be found beyond a reasonable doubt and unanimously by the jury. 18 U.S.C. § 3593(c)-(d). For mitigating factors, the defendant has the burden of establishing their existence "by a preponderance of the information"[11] and any single juror who finds the existence of a mitigating

---

[11] Under the FDPA, "evidence" admitted in the sentencing phase is referred to as "information" because the formal rules of evidence do not apply.

factor established may consider that factor "regardless of the number of jurors who concur that the factor has been established.  Id.

The court plays an important role in ensuring that sentencing is carried out in a manner consistent with the requirements of the Constitution.  The court's screening of aggravating factors is essential in directing and limiting the sentencing jury's discretion to prevent arbitrary and capricious imposition of the death penalty.  See Arave v. Creech, 507 U.S. 463, 470-71 (1993).  "[A]ggravating circumstances must be construed to permit the sentencer to make a principled distinction between those who deserve the death penalty and those who do not." Lewis v. Jeffers, 497 U.S. 764, 776 (1990) (citation omitted).  An aggravating factor that is unconstitutionally vague, overbroad, duplicative or irrelevant cannot be considered by a death penalty jury.  See United States v. Cisneros, 363 F.Supp.2d 827, 833-4 (E.D.Va. 2005) (citing cases).

With this backdrop in mind, Wilson now moves to dismiss and/or strike certain of the factors noticed in the NOI and NOSF.  Each request will be considered in turn.

A.      ***Motion to Strike Non-Statutory Aggravating Factors in the NOI as Violative of the Indictment Clause***

The Defendant moves to strike all of the findings alleged in the NOI that are not charged in the Indictment – i.e. the five non-statutory aggravating factors noticed in the NOI – on the grounds that because these factors were not found by the grand jury, their inclusion violates the Indictment Clause.  This motion, in effect, re-argues the Defendant's broader motion that the FDPA violates the Indictment Clause in light of the Supreme Court's holdings in Apprendi v.

34

United States, 530 U.S. 466 (2000),[12] Ring v. Arizona, 536 U.S. 584 (2002),[13] Blakely v. Washington, 542 U.S. 296 (2004),[14] and United States v. Booker, 543 U.S. 220.[15]  The Defendant asserts that because the jury has to consider the noticed non-statutory aggravating factors, which were not presented to the grand jury or charged in the Indictment but are nonetheless essential to the punishment under Blakely, in weighing whether a sentence of death is justified, to the extent that death is imposed, the court will be imposing a sentence beyond the maximum sentence a judge may impose based solely on the facts reflected in the jury verdict or admitted by the defendant.  This, the Defendant argues, violates the aforementioned Supreme Court rulings.  (See Def.'s Mot. NOSF/NOI, at 14-15).

For the same reasons I have declined to address the merits of the constitutionality of the FDPA, I also decline to address the merits of this motion as well.  I note, however, that every circuit that has addressed this issue has rejected the Defendant's arguments.  See United States v.

_____

[12] In Apprendi, the Court held that the due process clause and Sixth Amendment required that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

[13] In Ring v. Arizona, the Court extended the holding of Apprendi to the capital sentencing context.  536 U.S. at 597, 609.

[14] In Blakely, the Court applied Apprendi to Washington's sentencing statute and held that he relevant statutory maximum for Apprendi purposes is the "maximum a judge may impose based solely on the facts reflected in the jury verdict or admitted by the defendant.  In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."  542 U.S. at 303-4.

[15] In Booker, the Court extended Blakely to hold that the Federal Sentencing Guidelines, to the extent that they were mandatorily applied, violated the Sixth Amendment right to jury trial. 542 U.S. at 250.

<u>Purkey</u>, 428 F.3d 738, 762 (8th Cir. 2005); <u>United States v. Higgs</u>, 353 F. 3d 281, 296-98 (4th Cir. 2003); <u>but</u> <u>see</u> <u>United States v. Green</u>, 372 F. Supp. 2d 168, 174 (D. Mass. 2005) (holding that any non-statutory aggravating factors involving unadjudicated crimes unrelated to the charged offense must be found by grand jury before they can be used to justify a death sentence).

I have already noted that controlling precedent in this circuit mandates holding the FDPA constitutional.  In accordance with that holding, I reject the Defendant's argument that inclusion of the non-statutory aggravating factors in the NOI, which have not been presented to the grand jury, violates the Indictment Clause.  Non-statutory aggravating factors need not be pled before the grand jury because they do not increase the maximum punishment to which a defendant is subject because such factors are neither sufficient nor necessary under the FDPA for the imposition of a death sentence. The jury is first required to find the defendant eligible for a death sentence beyond a reasonable doubt.  <u>See</u> e.g., <u>Purkey</u>, 428 F. 3d at 749; <u>Higgs</u>, 353 F. 3d at 298 (The Fifth Amendment does not require the government to charge non-statutory aggravating factors in the indictment because "the finding of a non-statutory factor alone will not support imposition of the death penalty.").

For these reasons, inclusion of the non-statutory aggravating factors in the NOI does not violate the Indictment Clause, and Wilson's motion to strike is DENIED.

**B.**     ***Motion to Dismiss from the Indictment the Statutory Aggravating Factor of "Substantial Planning and Premeditation" as Facially Defective***

Wilson next moves to strike the statutory aggravating factor of "Substantial Planning and Premeditation" from the NOSF on the grounds that it is facially defective.  (<u>See</u> Def. Mot. NOSF/NOI, at 17-21).  First, the Defendant urges that the NOSF incorrectly quotes 18 U.S.C. §

3592(c)(9).  The NOSF included in the *original* Indictment states that the Defendant "committed the offenses charged in Counts Three, Four, Five, Six, Seven, Ten and Eleven after substantial planning and premeditation."  (NOSF ¶ 82).  However, the statutory language characterizes this statutory aggravating factor as existing if a defendant "committed the offense after substantial planning and premeditation *to cause the death of another person . . . ."*  18 U.S.C. § 3592(c)(9) (emphasis added).[16]  The Defendant's position is that the grand jury *may* have only heard evidence of Wilson's substantial planning and premeditation to rob Detective Nemorin, whereas specific planning *to murder* is required by the statute.  (See Def.'s Mot. NOSF/NOI, at 20). Thus, Wilson argues, the Indictment is defective because it omits an essential element of the statutory aggravating factor.

The Government concedes that the statutory aggravating factor of substantial planning and premeditation must apply specifically to the alleged murders (see Govt. Resp., at 69); and notwithstanding the omission of the "to cause the death of another person," a reasonable reading of the original Indictment clearly links the aggravating factor to the alleged murders.  The NOSF charges that Wilson committed Counts Three, Four, Five, Six, Seven, Ten and Eleven after substantial planning and premeditation.  With the exception of count Seven, which alleges carjacking, the enumerated Counts are all murder charges (obstruction-of-justice murder,  murder in aid of racketeering, causing death through the use of a firearm) and all explicitly charge the murder of Detective Nemorin and Andrews.  Thus, it cannot be said that the aggravating factor is defective because it inadequately puts the Defendant on notice as to the charges he faces.  United

---

[16] Note that in the NOI, the Government correctly cited the entirety of the statutory language.  (NOI, at 3).

States v. Hernandez, 980 F.2d 868, 871 (2d Cir. 1992) (despite omission of words "with intent to distribute" in indictment count charging narcotics conspiracy, language used in the caption and the citation to the statute allegedly violated sufficiently apprised defendant of charges); see also United States v. Doe, 297 F.3d 76, 85 (2d Cir. 2002) ("This Circuit has allowed a lone statutory citation to charge an element of a crime only when, despite the omission of the element itself from the indictment's text, a reading of the indictment in its entirety allowed inference of the final element.").

In addition, in the Superseding Indictment the Government modified the language of this aggravating factor to correct for the omission, which effectively moots the Defendant's argument. The Superseding Indictment states that Wilson "committed the murders charged in Counts Three, Four, Five, Six, Seven, Ten and Eleven after substantial planning and premeditation *to cause the death of Detective James Nemorin and Detective Rodney Andrews.*" (S-1, ¶ 65) (emphasis added).

The Defendant's motion to strike the statutory aggravating factor of substantial planning and premeditation is therefore DENIED.

### C. Motion to Strike Non-Statutory Aggravating Factor of "Status of Victims" as Duplicative of "Victim Impact" and "Obstruction of Justice"

Wilson next moves to strike the non-statutory aggravating factor of "status of victims" from the NOI on the grounds that it is wholly subsumed within the non-statutory aggravating factors of victim impact evidence and obstruction of justice, and is therefore duplicative. (See Def.'s Mot. NOSF/NOI, at 22-5; see also Def.'s Omnibus Reply Mem., at 4-6). The Defendant's position is that the NOI improperly counts the victims' status as law enforcement officers three

times in the three above-mentioned non-statutory aggravating factors.

Judge Sand was presented with an identical motion in <u>Bin Laden</u>, and aptly summarized the governing principles as follows:

> [T]here do exist circumstances in which two non-identical aggravating factors should be deemed impermissibly duplicative. Under a weighing death penalty scheme such as the FDPA, an aggravator that is entirely a subset of another "has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus unconstitutionally." (<u>United States v. McCullah</u>, 76 F. 3d 1087, 1111 (10th Cir. 1996)). Such skewing occurs because the jury will be presented with an extra aggravating factor on death's side of the coin. And though trial courts may appropriately instruct juries to avoid simply counting the number of aggravators, "the mere finding of an aggravating factor cannot but imply a qualitative value to that factor. (<u>Id.</u> at 1112). This danger of double-counting is inherent in any sentencing framework that seeks to channel a jury's discretion by confining its decision-making to a comparative evaluation of formalized categories.

<u>Bin Laden</u>, 126 F. Supp. 2d at 299. Judge Sand held that an aggravating factor "that is necessarily and wholly subsumed by a different aggravator within the same death penalty notice is invalid <u>per se</u> and should not be submitted to the penalty jury for sentencing consideration." <u>Id.</u> On the facts of that case, the court declined to strike the three aggravating factors of "grave risk of death to additional persons," "multiple killings or attempted killings," and "victim impact evidence," finding them each sufficiently distinct from one another in that the first related to the defendant's mental state toward unintended victims, the second focused on the defendant's desire to kill more than one person, and the third "highlights the objective human effects of Defendants' actions, as distinct from Defendants' subjective mindset." <u>Id.</u> at 300.

However, with respect to the two non-statutory aggravating factors of "serious injury to surviving victims" and "victim impact evidence," Judge Sand found the former entirely and wholly subsumed by the latter because "both function to provide the jury with details concerning

the widespread human trauma allegedly caused by the accused's criminal conduct."  Id.  Again,

Judge Sand's explanation is informative:

> Certainly, the deleterious effects of a capital defendant's actions are an
> appropriate subject of sentencing consideration.  Yet, the Government's attempt to
> spin off multiple freestanding aggravators from what should really only be one
> represents a strategy that should not be permitted.  What is most problematic is
> the fact that, because such parsing of categories serves no evidentiary purpose
> (since such evidence would still be admitted under the aegis of the umbrella
> aggravator), the sole motivation for doing so is to ratchet up the number of
> aggravating factors and give the government free reign to trump whatever
> mitigating factors are raised by the jury.  Rather than risk confusing jurors with
> unnecessarily complex jury instructions . . . we think it wiser simply to
> consolidate the two non-statutory aggravators in question.

Id.

In the current case, Wilson argues that the Government is attempting to "spin off multiple

freestanding aggravators from what should really be one."  (Def.'s Mot. NOSF/NOI, at 23).  The

Government responds that these factors, though based on the same underlying facts, can be

submitted to the jury so long as they "both focus on different aspects of the crime and its results."

See United States v. Webster, 162 F.3d 308, 324 (5th Cir. 1998) (finding two factors non-

duplicative because "one factor addresses directly [defendant's] conduct and intent (the 'manner'

of commission), and the other the impact of that conduct and intent"); see also Medlock v. Ward,

200 F.3d 1314, 1319 (10th Cir. 2000) (finding two aggravators do not "necessarily subsume" one

another because one goes to defendant's future dangerousness, while the other goes to the nature

of defendant's crime).

This court finds that the non-statutory aggravating factor of "status of victims" is not

wholly subsumed by the aggravators of "obstruction of justice" or "victim impact evidence,"

even  though all three aggravator categories are premised on the fact that the victims were law

enforcement officers.  The status of the victims in the current case is an important consideration in the sentencing phase.  As the Supreme Court has explained: "To be sure, the fact that the murder victim was a peace officer performing his regular duties may be regarded as an aggravating circumstance.  There is a special interest in affording protection to these public servants who regularly must risk their lives in order to guard the safety of other persons and property."  Roberts v. Louisiana, 431 U.S. 633, 636  (1977).  Next, the aggravator noticed in the NOI that "the Defendant killed the victims in an effort to obstruct justice," NOI at 4, does not subsume the "status of the victims" aggravator.  The status of victims aggravator concerns the value we, as a society, place on the role of police officers.  The alleged "obstruction of justice" factor will presumably depend on the fact that the victims were police officers and that their murders were committed to prevent them from communicating information they possessed about the commission of federal offenses.  This is distinct from the status of victims aggravating factor. The obstruction of justice factor, in contrast, refers to the Defendant's alleged motive in carrying out the alleged murders.

Finally, the "victim impact" evidence which relates to the victims' role as police officers is also sufficiently distinct from the status of the victims aggravating factor.[17]  Of course, in the current case there is significance to the fact that the victims were police officers because their deaths have impacted the New York City Police Department.  But this is, in effect, merely coincidental.  The effect their deaths has had on co-workers exists independently of the fact that they are police officers.  Again, the status aggravator concerns the special protection that we

---

[17] The Defendant's motion to preclude this victim impact evidence in its entirety will be addressed infra.

afford law enforcement officers due to the risks they take on; the victim impact evidence concerns the effects of these deaths on co-workers. That both happen to be linked to the fact that the victims were police officers does not render these non-statutory aggravating factors duplicative.

Thus, for the reasons stated above, the court finds that the non-statutory aggravating factor of status of the victims is not duplicative, and the Defendant's motion to strike it from the NOI is denied.

**D.** ***Motion to Strike Non-Statutory Aggravating Factors of "Contemporaneous Convictions" and "Future Dangerousness" as Duplicative***

Wilson also moves to strike the non-statutory aggravating factor of "contemporaneous convictions" from the NOI, arguing that it is wholly subsumed in and duplicative of the "future dangerousness" aggravating factor. (See Def.'s Mot. NOSF/NOI, at 25-31). The NOI notices the fact that the Defendant "faces contemporaneous conviction for multiple attempted murders and other serious acts of violence," and the fact that the Defendant "represents a continuing danger to the lives and safety of other persons." (NOI, at 4). With respect to the future dangerousness aggravator, the Government states in the NOI that it will provide evidence of the following: (a) Wilson has engaged in a continuing pattern of violence; (b) Wilson's lack of remorse for the capital offenses charged; (c) Wilson's low potential for rehabilitation; and (d) Wilson's membership in criminal street gang. (Id. at 4-5).

Wilson specifically argues that both the freestanding "contemporaneous conviction" aggravator and the "continuing pattern of violence" component of the future dangerousness aggravator are both subsumed by the "low rehabilitative potential" component of the future

dangerousness factor. Wilson suggests that only the "low rehabilitative potential" component

remain, and that the other two factors be stricken. Wilson also maintains that the "membership

in a criminal street gang" component of the future dangerousness factor should be stricken as

duplicative of the contemporaneous conviction factor, arguing that by proving the RICO charges,

the Government will prove his involvement in a criminal enterprise, and on the grounds that it is

unconstitutionally vague. (Id. at 28-31).

The Government responds that although these two non-statutory aggravating factors rely

on some of the same evidence, they "deal[] with entirely different issues." (Govt. Resp., at 73).

Namely, the contemporaneous conviction factor concerns the harm to society that Defendant's

past conduct has caused, whereas the future dangerousness factor contemplates harm to society

that the Defendant can reasonably be expected to cause in the future from prison. (See id.). That

the demonstration of future conduct looks to, among other things, Wilson's past conduct, the

Government urges, does not render these two factors duplicative.

The court agrees with the Government's position. The aggravating factors of

contemporaneous conviction and future dangerousness are not impermissibly duplicative of one

another because they focus on different harms, and each are properly considered by the jury in

the sentencing phase. See Johnson v. Gibson, 169 F.3d 1239, 1252 (10th Cir. 1999) ("[T]he

aggravating circumstance of future dangerousness and prior felony conviction are not

duplicative. The former is supported by evidence of the petitioner's potentiality for future

dangerous acts, the latter by evidence of petitioner's past acts."); United States v. Mayhew, 380

F. Supp. 2d 936, 954 (S.D. Ohio 2005) (finding statutory aggravating factor of previous

conviction of violent felony involving firearm not duplicative with the nonstatutory aggravator of

43

future dangerousness because "the fact of the conviction, in and of itself, does not prove future dangerousness.").

Finally, Wilson has also moved to strike the "membership in a criminal street gang" component of the future dangerousness factor on the grounds that it is unconstitutionally vague. (Def.'s Mot. NOSF/NOI, at 30-31). In the NOI, the Government notices as a component of the non-statutory aggravating factor of future dangerousness, its intent to prove that "the Defendant has demonstrated an allegiance to and active membership in the Stapleton Crew, an organization falling within the definition of criminal street gangs set forth in 18 U.S.C. § 521(a)." (NOI, at 5). The Defendant's motion to strike the criminal street gang membership component was not expressly addressed in the Government's responsive brief. (See Def.'s Omnibus Reply Mem., at 9 (noting the Government's failure to address the issue)). Additionally, although the issue was raised by Defendant's counsel at oral argument (see Oral Arg. Tr., at 39), it was again not addressed by the Government. Nonetheless, I have considered the request, and for the reasons set forth below, deny the Defendant's motion to strike.

In connection with a vagueness challenge to an aggravating factor, the Supreme Court has relied on "the basic principle that a factor is not unconstitutional if it has some 'common-sense core of meaning . . . that criminal juries should be capable of understanding.'" Tuilaepa v. California, 512 U.S. 967, 973-74 (1994) (quoting Jurek v. Texas, 428 U.S. 262, 279 (1976) (White, J., concurring in judgment)).

Wilson relies primarily on the case of United States v. Cisneros, 363 F. Supp. 2d 827 (E.D. Va. 2005), to support his motion to strike. There, the Virginia district court considered whether to strike a non-statutory aggravating factor noticed in the NOI that stated that the

defendant "poses a future danger based upon the probability that he would commit criminal acts of violence that would constitute a continuing threat to society" as demonstrated by the fact that while incarcerated the defendant "continued to conduct and influence MS-13 gang business occurring outside the correctional institution."  Cisneros, 363 F. Supp. 2d at 841.  The court granted the defendant's motion to strike the phrase *continued to conduct and influence MS-13 gang business*, on the grounds that it was "vague and undefined, and thus, [] more prejudicial than probative to whether [the defendnant] poses a future danger to society, and it will be confusing and misleading to the jury if permitted."  Id.   The court explained:

> The government has not defined what "gang business" is or what it means to "conduct and influence" gang business. Although the government is not required to present all the evidence it will use in support of an aggravating factor, the evidence in support of an aggravating factor must be reliable, must not mislead the jury or confuse the issues, and it must be more probative than prejudicial. 18 U.S.C. § 3593(c). Here, the vagueness of the words "gang business" confuses the issues and may be misleading to the jury. "Gang business" is not, of necessity, criminal. Having a conversation with a fellow gang member does not necessarily constitute a crime. Similarly, the meaning of "conduct and influence" is also unclear. Finally, as previously stated, the purpose of the sentencing phase is to determine whether this defendant is eligible for and deserving of the death penalty, not to try Mr. Cisneros's gang membership in and of itself or the gang he was a member of.

Id.

In the current case, Wilson urges that the component of future dangerousness of "membership in a criminal street gang," which the Government has noticed, is similarly unconstitutionally vague, and more prejudicial than probative.  The court disagrees, and moreover finds the factor at issue here easily distinguishable from the one struck in the Cisneros case.  In Wilson's case, the Government intends to prove Wilson's demonstrated "allegiance to and active membership in the Stapleton Crew" as a factor to be considered by the

jury in deciding whether he poses a threat of future dangerousness. This is certainly relevant and probative on the factor of future dangerousness.

Moreover, there is nothing vague about the concept of an *allegiance to or membership in* a gang. It plainly means that Wilson was a member of this gang, a fact that the Government will certainly attempt to prove during the guilt phase to meet its burden of proof on the RICO charges. In Cisneros, the infirmity arose from the vagueness of the concept of "gang business" and "conducting and influencing" such business. Here, there is no such vagueness, as the ideas of "membership in" and "allegiance to" both have a "common-sense core of meaning" that any juror would understand. Tuilaepa, 512 U.S. at 973-74. In addition, I find that the probative value of Wilson's membership in a dangerous gang is not outweighed by any prejudice of proving this fact. Future dangerousness is a permissible non-statutory aggravating factor to be considered by the jury, and Wilson's membership in a criminal street gang is a relevant and probative fact to be evaluated in determining whether the factor of future dangerousness has been proved.

Therefore, Wilson's motions to strike the contemporaneous conviction aggravating factor, and the two components of the future dangerousness factor (continuing pattern of violence and membership in a gang) are denied.

E.     ***Motion to Preclude Victim Impact Evidence from Colleagues and Co-Workers of the Victims***

Wilson's final motion is to preclude the introduction at the sentencing phase of victim impact evidence of the harm suffered by the victims' employer and colleagues, viz. the NYPD. (Def.'s Mot. NOSF/NOI, at 31-3). In the NOI, the Government noticed the non-statutory

46

aggravating factor of "Victim Impact Evidence," stating the following:

> As reflected by the victims' personal characteristics as human beings and the impact of the offenses on the victims and the victims' families, the defendant caused loss, injury and harm to the victims and the victims' families, see Payne v. Tennessee, 501 U.S. 808, 825-827 (1991), including, but not limited to, the following . . .
> (c) Impact of the Offense on the Employer and Colleagues of the Victims
>> The victim's employer, the New York City Police Department, and the victims' colleagues within the New York City Police Department have suffered substantial and irreparable harm.

(NOI, at 5-6); see also 18 U.S.C.A. § 3593(a)(2) (permitting victim impact evidence). Wilson maintains that to permit evidence of the effects of the victims' deaths on the NYPD violates the Eighth Amendment, as interpreted by the Supreme Court in Payne v. Tennessee, 501 U.S. 808 (1991), and the plain language of 18 U.S.C. § 3593(a).[18]

In Payne, the Supreme Court, overruling two earlier cases,[19] held that the Eighth Amendment is not violated when the government uses victim impact evidence at the penalty phase of a capital trial because this evidence is relevant to the jury's decision about whether the death penalty should be imposed. Payne, 501 U.S. 808 at 827. The Court expressed that there is "nothing unfair about allowing the jury to bear in mind [the harm to the victim's family] at the same time as it considers the mitigating evidence introduced by the defendant." Id. at 826.

---

[18] 18 U.S.C. § 3593(a) states: "The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information."

[19] The Court overruled Booth v. Maryland, 482 U.S. 496 (1987), and South Carolina v. Gathers, 490 U.S. 805 (1989), which held that the Eighth Amendment bars the admission of victim impact evidence during the penalty phase of a capital trial and statements made by a prosecutor to the sentencing jury regarding the personal qualities of the victim, respectively. Payne, 501 U.S. at 829-30.

Unquestionably, <u>Payne</u> controls on the question of admissibility at the penalty phase of victim impact evidence of harm suffered *by the victim and his/her family*. Indeed, the statute codifies this holding. <u>See</u> 18 U.S.C. § 3593(a)(2) (authorizing evidence of "the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information"). The admission of impact evidence of the victims' employer and colleagues is a less settled question. Wilson correctly argues that the statute does not explicitly allow this type of evidence. The Government, however, has drawn the court's attention to the fact that several lower courts appear to have interpreted <u>Payne</u> to allow such evidence at the sentencing phases of capital cases. Thus, the motion requires a further analysis.

The Defendant would like to characterize the Government's intention to admit this evidence as an attempt to demonstrate to the jury that because the victims here were police officers, Wilson is more blameworthy (and therefore a more appropriate candidate for the death penalty) than if the victims were citizens not so committed to protecting society. The Government, however, responds that colleagues from the NYPD should be permitted to testify "because of the context in which they knew and interacted with the victims, [they] can provide crucial yet otherwise unavailable testimony regarding the victim's devotion to their duties as public servants and their 'uniqueness as individual human beings.'" (Govt. Resp., at 78 (quoting <u>Payne</u>, 501 U.S. at 823)). The Government further states that this evidence will demonstrate that the murders of Detectives Andrews and Nemorin had a "deleterious effect on the ability of the New York City Police Department to stem the trafficking of illegal firearms in New York City." (<u>Id.</u>).

In the <u>Payne</u> decision, there are two references to victim impact evidence concerning the

loss suffered by the *community*, as opposed to simply the family. In Justice O'Connor's concurrence, she explains her view that "[a] State may decide that the jury, before determining whether a convicted murderer should receive the death penalty, should know the full extent of the harm caused by the crime, including its impact on the victim's family *and community*. Payne, 501 U.S. at 829 ( O'Connor J., concurring) (emphasis added). Although obviously relevant to the Government's argument, this of course is not part of the holding of Payne, but rather dicta from the concurrence. Second, the Payne majority opinion cites a statement of Justice White from the dissenting opinion of Booth v. Maryland, one of the cases that Payne overruled: "'The State has a legitimate interest in counteracting the mitigating evidence which the defendant is entitled to put in, by reminding the sentencer that just as the murderer should be considered as an individual, so too the victim is an individual whose death represents a unique loss *to society* and in particular to his family." Payne, 501 U.S. at 826 (quoting Booth, 482 U.S. at 517 (White J., dissenting) (citation in original omitted) (emphasis added)). Again, although supportive of the Government's position, this statement is hardly dispositive on the issue. These two statements do, however, reflect, at minimum, an understanding that impact on the larger community is arguably relevant at the penalty phase of a capital case.

The Payne decision is perhaps more informative on this particular question inasmuch as the Court, in its opinion, addressed the defendant Payne's concern "that the admission of victim impact evidence permits a jury to find that defendants whose victims were assets to their community are more deserving of punishment than those whose victims are perceived to be less worthy." Payne, 501 U.S. at 823 (citing Booth, 482 U.S., at 506, n. 8). The Court responded to this argument as follows:

49

> As a general matter, however, victim impact evidence is not offered to encourage comparative judgments of this kind – for instance, that the killer of a hardworking, devoted parent deserves the death penalty, but that the murderer of a reprobate does not.  It is designed to show instead each victim's "uniqueness as an individual human being," whatever the jury might think the loss to the community resulting from his death might be.

Id.  This would suggest that evidence of the loss to the NYPD demonstrating that because the victims were police officers Wilson is particularly blameworthy for their murders, is not appropriate victim impact evidence.  Evidence of this nature encourages the very "comparative judgments" that the Supreme Court suggests victim impact evidence should avoid.  In light of the arguments articulated at oral argument (see Oral Arg. Tr., at 40-43), however, I believe that it is not the Government's intention to present this evidence to support "comparative judgments" by the jury, but rather to portray a very particularized loss to society that has resulted from the deaths of these individual human beings.

Ultimately, I am persuaded to follow the precedent of the Eleventh Circuit in the case of United States v. Battle, 173 F.3d 1343 (11th Cir. 1999).  There, the defendant, while a federal inmate serving a life sentence, murdered a corrections officer employed at the prison.  At the sentencing phase of the defendant's capital prosecution, the court permitted the testimony of three prison guard officials on the effects of the victim's death on the particular prison and, also, the impact a death sentence would have at the prison.  See Battle, 173 F.3d at 1348.  In sum, the guards testified to the fact that the murder had emboldened the prisoners to be more threatening toward prison officials, and to the fact that a death sentence would send a strong message to the inmates to "think several times before they continue with the same attitude that they have."  Id.  The court rejected the defendant's argument that admission of this victim impact evidence

violated the Eighth Amendment and the holding of Payne. The Eleventh Circuit explained: "The guards' victim impact testimony was relevant and permissible. The heart of their testimony was to describe the harm caused at the Atlanta prison by the murder of a correctional officer who was killed just because he was a correctional officer." Id.

Without question, the Battle case is distinguishable on a critical point. There, it was easy and reasonable to conclude that the murder of a corrections officer at a specific prison severely disrupted that prison's ability to regulate and control its prison population. This impact was specific and particularized to that scenario. In the current case, prior to oral argument, it appeared that the Government was arguing that the NYPD and New York City as a whole should be viewed as analogous to the Atlanta prison implicated in the Battle case. That analogy is a stretch as the NYPD operates on a much larger scale than an individual prison. Certainly, the loss of two NYPD officers is a tragic loss for all of New York City. However, the deaths of Detectives Andrews and Nemorin can hardly be said to threaten the NYPD's ability *in general* to police this city, and the Government makes no such claim.

However, at oral argument, the Government explained more fully its position, i.e. that the testimony of NYPD coworkers will be presented to demonstrate "the chilling effect" these murders had specifically on undercover detectives within the NYPD. (Oral Arg. Tr., at 42). The Government espoused that the testimony will concern the fact that as a result of these murders, undercover detectives were "refusing to go out on the street, do these operations because of the danger, how some even retired from undercover work, said I'll be a police officer but I will not do undercover work anymore." (Id. at 42-3). Such testimony is much more closely analogous to the testimony permitted in Battle, as it addresses a specific and particularized harm to society that

51

has resulted from the commission of these crimes.

Moreover, at oral argument the Government explicitly represented that this sort of victim impact evidence, if presented during the penalty phase, will be limited. The Government stated:

> I want to make it clear, we don't intend to have a day of testimony on this issue. It's the sort of testimony that will come in through the testimony of witnesses who counsel has conceded, colleagues, who otherwise would be clearly relevant at as fact witnesses.

(Id. at 43). The court expects the Government to abide by this commitment.

Accordingly, the Defendant's motion to preclude victim impact evidence of the substantial and irreparable harm suffered by the NYPD as a result of the alleged murders is denied. The Government will be permitted to present limited victim impact evidence of this nature, restricted to the chilling effect these murders had on the work of undercover police detectives within the NYPD.

## VI.    Conclusion

For the aforementioned reasons, the court rules as follows:

The Defendant's motion for a bill of particulars in connection with the RICO-related charges is DENIED except to the extent that the Government is directed to turn over to the Defendant within seven (7) days the identities of the alleged victims of the conspiracies to murder in aid of racketeering charges "members of a rival group known as the 456 Crew" and "John Doe," if known to the Government.

The Defendant's motion for a bill of particulars in connection with the narcotics-related charges is DENIED except to the extent that the Government is directed to turn over particulars to the Defendant within seven (7) days as to "the role Mr. Wilson played

in the narcotics trafficking conspiracy" consistent with this opinion.

The Defendant's motion for a bill of particulars in connection with the robbery and firearms charges is DENIED in its entirety.

The Defendant's request for a bill of particulars in connection with the aggravating factors alleged in the NOI and NOSF is DENIED with respect to the factors of pecuniary gain and substantial planning and premeditation, obstruction of justice, and future dangerousness. With respect to the non-statutory aggravating factor of victim impact evidence, the Defendant's motion is GRANTED, and the Government is directed to provide to the Defendant within forty-five (45) days specifics on the nature, extent, and scope of the harm suffered by the victims' family members whom the Government alleges to have suffered severe and irreparable harm.

The Defendant's motion to strike language in the Indictment and NOI as surplusage is DENIED WITHOUT PREJUDICE.

The Defendant's motion to suppress evidence obtained as a result of his May 2, 2002 and March 12, 2003 arrests is DENIED.

The Defendant's motion for a <u>Wade</u> hearing on the admissibility of line up and photo array identifications is GRANTED.

The Defendant's motion to declare the Federal Death Penalty Act unconstitutional is DENIED.

The Defendant's motion to strike from the NOI the non-statutory aggravating factors as violative of the Indictment Clause is DENIED.  The Defendant's motion to dismiss from the Indictment the statutory aggravating factors of substantial planning and

premeditation, status of victims, contemporaneous convictions, and the components of future dangerousness of continuing pattern of violence and membership in a gang is DENIED.

Finally, the Defendant's motion to preclude victim impact evidence of the substantial and irreparable harm suffered by the NYPD as a result of the alleged murders is DENIED. The Government will be permitted to present limited victim impact evidence of this nature, restricted to the chilling effect these murders had on the work of undercover police detectives within the NYPD.


SO ORDERED.

Date:  July 14, 2006                                      _____/s/_____
           Brooklyn, N.Y.                                Nicholas G. Garaufis
                                                                     United States District Judge