UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

                                            **MEMORANDUM & ORDER**
                                              04-CR-1016 (NGG)

    v.

RONELL WILSON,

                Defendant.
-----------------------------------------------------------X

GARAUFIS, United States District Judge.

      This Memorandum and Order addresses the Government's motion to empanel an anonymous and partially sequestered jury for the upcoming death penalty trial in this case. Jury selection is scheduled to begin on September 11, 2006. The Government requests (a) that the names, addresses and workplaces of members of both the <u>venire</u> and <u>petit</u> juries not be revealed; and (b) that the jurors take lunch together and be escorted to and from the courthouse each day in a manner to be arranged by the United States Marshals Service. It is the Government's position that the Defendant's history of violent activity, his ability to interfere improperly with the judicial process, and the likely publicity this trial will attract all warrant the utilization of an anonymous and semi-sequestered jury. The Defendant objects to the use of an anonymous jury, arguing that it would unfairly prejudice the Defendant and is not necessary on the facts of this case.

      Because I find that empaneling an anonymous and partially sequestered jury is necessary to protect the interests of the public and the jurors, and that doing so will not prejudice the Defendant's interests in conducting a meaningful *voir dire* or in maintaining a presumption of innocence, the Government's motion is GRANTED.

**I.     Applicable Law**

The Second Circuit has upheld the use of an anonymous jury where "first, [there is] strong reason to believe that the jury needs protection and, second, reasonable precaution is taken to minimize the effect that such a decision might have on the jurors' opinions of the defendants." United States v. Amuso, 21 F.3d 1251, 1264 (2d Cir. 1994) (internal citations omitted). The Court of Appeals emphasizes that "the empaneling of an anonymous jury and its potential impact on the constitutionality of a trial must receive close judicial scrutiny and be evaluated in the light of reason, principle and common sense." United States v. Vario, 943 F.2d 236, 239 (2d Cir. 1991). Mere invocation of words such as "organized crime" will not warrant an anonymous jury. Rather "something more" must be shown, such as a "demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf or a showing that trial evidence will depict a pattern of violence by the defendants and his associates such as would cause a juror to reasonably fear for his own safety." Id. at 241.

This court must also weigh several factors in determining whether to empanel an anonymous jury, including the following: (1) the dangerousness of the defendant, demonstrated by the seriousness of the charged crimes, including whether the defendant is charged with participating in a large-scale criminal enterprise, and the defendant's criminal history, see e.g., United States v. Paccione, 949 F.2d 1183, 1192 (2d Cir. 1991); United States v. Tutino, 883 F.2d 1125, 1132-33 (2d Cir. 1989); United States v. Thomas, 757 F.2d 1359, 1364-65 (2d Cir. 1985); United States v. Melendez, 743 F. Supp. 134, 137 (E.D.N.Y. 1990) (Spatt, J.); (2) whether the defendant or his associates have engaged in past attempts to interfere with the judicial process, for example through jury tampering, see e.g., Paccione, 949 F.2d at 1192; Tutino, 883 F.2d at

1132-33; Melendez, 743 F. Supp. at 137; (3) whether the defendant has access to means to harm the jury, see e.g., Melendez, 743 F. Supp. at 137; United States v. Coonan, 664 F. Supp. 861, 862 (S.D.N.Y. 1987); and (4) whether the trial is likely to attract media attention, as may be illustrated by the nature and degree of pretrial publicity, see e.g., Paccione, 949 F. 2d at 1192; Vario, 943 F.2d at 240; United States v. Persico, 832 F.2d 705, 717 (2d Cir. 1987); Melendez, 743 F. Supp. at 137.

I will address these factors in turn below.

## II.     Discussion

### A.     The Affidavit of Thomas Shelton

In connection with its motion, the Government submitted the affidavit of Special Agent Thomas Shelton of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("Shelton Affidavit"). The Shelton Affidavit was initially filed ex parte and under seal, although the Government referenced its existence in its publicly filed Memorandum of Law in Support of its Motion for an Anonymous Jury ("Gov't Mem. L. Supp."), and asked this court to rely on its contents in reaching a decision on the motion. The Defendant, in an Affirmation ("Sharkey Aff.") attached his responsive Memorandum of Law Opposing Government's Motion for an Anonymous Jury ("Def. Mem. L. Opp'n"), objected to "the consideration of any information contained in Mr. Shelton's affidavit by the Court, unless it is disclosed to the defense and we have an opportunity to respond." (Sharkey Aff. ¶ 4). The Defendant also asked the court to admonish the Government for not having filed its entire motion under seal in light of the fact that its references to the sealed Shelton Affidavit and accusations of uncharged criminal misconduct made therein were accessible to the media and therefore could prejudice the Defendant's right to

an impartial jury and fair trial.  (See id.).

Indeed, following the parties' submissions on the anonymous jury motion, the Tribune Company, publisher of *Newsday*, Daily News L.P., publisher of the *New York Daily News*, NYP Holdings, Inc., publisher of the *New York Post*, and the New York Times Co., publisher of the *New York Times* (collectively "the Press") moved to intervene for the purpose of moving to unseal the Shelton Affidavit.  (See Tribune Letter Mot. dated Aug. 11, 2006).  The Press argued it has a First Amendment right to access the sealed affidavit absent a sufficient showing by the Government of the need to maintain its non-disclosure.

The Defendant's request that this court not consider the Shelton Affidavit, as well as the Press's motion to intervene to seek to unseal the document, were mooted as of August 14, 2006, at which time the Government agreed to publish the Shelton Affidavit with the redaction of a single paragraph.  This court agreed that redaction of paragraph six of the Shelton Affidavit was necessary to protect witnesses in this trial, but that the remainder of the document should be disclosed, and therefore considered by the court in connection with this motion.  The Shelton Affidavit (minus paragraph six) was published on the court's Electronic Case Filing system (ECF), providing access to it by the public, the Defendant and the Press.  (See Docket Entry No. 136).[1]  Accordingly, the Defendant's motion to remove the Shelton Affidavit from the court's consideration and the Press's motion to intervene are hereby denied as moot.  The court has not considered the substance of paragraph six of the Shelton Affidavit in reaching a decision on this

---

[1] After reviewing the Shelton Affidavit, the Defendant submitted a reply renewing its objection to the Government's motion for an anonymous jury.  (See Def.'s Ltr. Reply, dated Aug. 18, 2006; Docket Entry No. 150).  This reply has been considered by the court in deciding this motion.

motion.

B. **Need for Protection**

In this case, the Defendant is charged with intentionally murdering two police officers in an attempt to obstruct justice. These charges are of the utmost seriousness, indeed as serious as any charge can be, and demonstrate both the extreme dangerousness of the defendant and a willingness to obstruct justice. Based on these charges alone, I would seriously consider empaneling an anonymous jury. However, in addition to the charges of murdering Detectives Rodney Andrews and James Nemorin, the indictment also alleges that the Defendant is part of a criminal enterprise known as the "Stapleton Crew," a violent organization that engages in acts of robbery, murder and narcotics trafficking. Indeed, at the sentencing of Wilson's four co-defendants that took place before this court on August 2, 2006, the co-Defendants[2] confirmed, by way of their prior allocutions, the violent nature of the Stapleton Crew. In short, the Defendant's criminal history and his participation in a large scale criminal enterprise without question show that he is dangerous and weigh heavily in favor of using an anonymous, partially-sequestered jury in this trial.

In addition, the Government affirms, through the Shelton Affidavit, that Wilson was a member of the Stapleton Crew and that this organization has "other members and associates who are currently, and will be, at large at the time of the trial." (Shelton Aff. ¶ 4). Thus, the Defendant – through his criminal associates who continue to be at liberty – is in a position to interfere with the jury. This factor also weighs in favor of empaneling an anonymous and semi-

---

[2] The co-defendants, all of whom pled guilty to charges in this case, were Michael Whitten, Paris Bullock, Angel Rodriguez, and Jamal Brown.

5

sequestered jury.

The Shelton Affidavit further attests to the Defendant's and his associates' history of interference with the judicial process. (Shelton Aff. ¶¶ 5, 7). Specifically, while the Defendant was in state custody at Rikers Island prior to this case being transferred to Federal Court for prosecution, Wilson "ordered another prisoner to attack a corrections officer and the other prisoner did so." (Id. ¶ 5). Moreover, there are instances of Wilson's criminal associates having attempted to "coerce witnesses not to testify or cooperate with authorities," including a May 2006 incident in which co-defendants Michael Whitten and Angel Rodriguez were involved as "lookouts for a fellow Blood gang member during a brutal assault of an individual cooperating with prison officials in an unrelated investigation." (Id. ¶ 7). This history of interference with the judicial process also warrants the use of an anonymous, semi-sequestered jury, as requested by the Government.

Finally, the media attention this case has attracted from its start, and that which it is expected to attract throughout the trial, justifies use of an anonymous, partially-sequestered jury. Articles surrounding proceedings in this case regularly appear in local and national news publications, including the *New York Times, New York Post*, *Newsday*, the *New York Daily News*, and the *Staten Island Advance,* among others. The extensive pre-trial press coverage is undisputed, and indeed is illustrated by the Press's motion to intervene filed earlier this week. Moreover, given that this is a death penalty prosecution, the fact that the victims were police officers, and the media attention to date, this court assumes that press coverage will likely increase as the trial unfolds. The intense media interest in this case may alone justify utilization of an anonymous jury to protect the jurors both from the Defendant and his associates and from

6

unwanted harassment from the general public and media itself.

In sum, for all the reasons discussed above, I find that maintaining anonymity of the members of the jury and sequestering the jury as they travel to and from the courthouse and during recesses is the only appropriate way to adequately protect them. Accordingly, the Government's motion to empanel an anonymous and semi-sequestered jury is granted.

### C. Reasonable Precautions

Despite the clear indications that an anonymous jury is warranted in this case, I take very seriously the Defendant's constitutional rights to a fair trial and an impartial jury. As Judge Glasser described in United States v. Bellomo, 263 F.Supp.2d 557, 559 (E.D.N.Y. 2003), it is important "that a balance be struck between the government's interest in the integrity of the judicial process and the defendant's interest in preserving and safeguarding the presumption of innocence." To implement a fair balance, reasonable precautions must be taken to minimize any potential prejudice, particularly with respect to Defendant's right to a meaningful *voir dire* and Defendant's right to maintain a presumption of innocence. See United States v. Amuso, 21 F.3d 1251, 1264 (2d Cir. 1994).

I shall now explain the steps the court will take to protect the Defendant's right to a meaningful *voir dire*. The court will provide to each potential juror an extensive questionnaire, developed in consultation with government and defense attorneys. All specific identifying pedigree information will be removed from the questionnaire and placed in safekeeping with the Clerk of Court. Neither the parties nor their counsel will have access to this protected information. Each prospective juror will be questioned in person by the court, in an individually sequestered setting, after consultation with counsel, to uncover any potential bias. Through the

questionnaire and the individual questioning, the parties will be apprised of all relevant information concerning each potential juror, despite the fact that the name, address, and place of employment of jurors will not be disclosed. This process will ensure that the Defendant has a meaningful opportunity to conduct *voir dire* and make informed choices during jury selection. See United States v. Barnes, 604 F.2d 121, 140 (2d Cir. 1979) ("As long as a defendant's substantial rights are protected by a voir dire designed to uncover bias as to issues in the cases and as to the defendant himself, then reasonable limitations on the questioning should not be disturbed on appeal.")

In order to protect the Defendant from being tried by a jury that is prejudiced as to the guilt or violent nature of the Defendant, prospective jurors will be given a neutral explanation for the security measures. I will instruct the prospective jurors that the reason for their anonymity and partial sequestration is to maintain their personal privacy and their ability to render a fair verdict in light of the media and public attention that this trial is likely to receive. I will also instruct the jurors that transportation is being provided to protect their privacy and to ensure a timely start to each day of what promises to be a long trial. I find that these explanations are plausible, appropriate and nonprejudicial. See United States v. Aulicino, 44 F.3d 1102, 1116 (2d Cir. 1995).

**III.     Conclusion**

This court finds that an anonymous and partially sequestered jury is warranted, indeed necessitated, in this case to protect the jurors and the integrity of the judicial process. Measures put in place will sufficiently protect the Defendant's right to an impartial jury and fair trial, and thus use of the anonymous, semi-sequestered jury will not unfairly prejudice the Defendant. Therefore, for all of the reasons stated herein, I GRANT the Government's motion to empanel an anonymous and partially sequestered jury.

SO ORDERED.

Dated: August 21, 2006                             /s/
Brooklyn, N.Y.                                     Nicholas G. Garaufis
                                                   United States District Judge