UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                **MEMORANDUM & ORDER**
                                                04-CR-1016 (NGG)

    v.

RONELL WILSON,

            Defendant.
----------------------------------------------------------X
GARAUFIS, United States District Judge.

       This Memorandum & Order addresses the outstanding disputed issues between the Government and the Defendant concerning the jury questionnaire to be provided to prospective jurors for empaneling an anonymous and partially-sequestered jury in the Defendant's upcoming death penalty trial. Jury selection is scheduled to begin on September 11, 2006.

       At issue are five questions the Defendant requests the court to include in the questionnaire. The Government objects to the inclusion of these five questions. The questions in dispute are as follows:

       **Defense Proposed Question #60:**

              If you had to decide whether a person convicted of murder should receive a sentence of life without the possibility of release or be sentenced to death, what would you want to know [about]?

              A.     The Crime: _____

              B.     The Defendant: _____

              C.     The Victim: _____

**Defense Proposed Question # 61:**

> What else would be important to you in making the decision to choose between the sentence of the death penalty or life in prison without the possibility of release?

**Defense Proposed Question # 70:**

> If Ronell Wilson is found guilty of murder for the intentional killings of Detectives Nemorin and Andrews, without any legal excuse or justification, the defense might present evidence at a sentencing phase of the trial about Ronell Wilson's childhood and background in support of a sentence other than the death penalty. How relevant is information like that to you when making a decision about punishment for murder?

**Defense Proposed Question #78:**

> What are your opinions about psychiatrists, psychologists, or other mental health professionals who come to testify in some criminal cases?

**Defense Proposed Question #82(b) and (c):**

> (b) Do you believe that everyone who commits the same crime should be punished in the same way?
> Please explain: _____
>
> (c) Do you believe that how a person turns out as an adult depends a lot on how that person was raised as a child?
> Please explain: _____

The parties' disagreement over whether these questions should be included in the jury questionnaire raises the issue of whether so-called "case-specific" questioning is appropriate in *voir dire* in a capital case. The Defendant "seek[s] information about the particular kinds of mitigating evidence that Mr. Wilson contemplates relying on at a sentencing hearing." (Def.'s Ltr. dated Aug. 18, 2006, at 2). The Government objects, arguing that case-specific questions that probe jurors about how they might respond to mitigating and aggravating factors presented at

trial is neither constitutionally mandated, nor befitting the selection of a death penalty jury. (See Govt. Ltr. dated Aug. 20, 2006).

This court finds that the five questions posed by the Defendant, concerning potential mitigating and/or aggravating factors to be raised at the penalty phase, are not constitutionally required in order to select a jury that is both "life qualified" and "death qualified" pursuant to Morgan v. Illinois, 504 U.S. 719 (1992) and Witherspoon v. Illinois, 391 U.S. 510 (1968). Moreover, for the reasons explained in detail below, the court believes that such questioning is not necessary to serve the primary goal of voir dire, i.e. to ensure a fair trial by empaneling an impartial jury.

The Defendant has urged this court to follow the reasoning of Judge Mark Bennett, articulated in United States v. Johnson, 366 F. Supp. 2d 822 (N.D. Iowa 2005), and relied upon by Judge William Sessions in United States v. Fell, 372 F. Supp. 2d 766 (D. Vt. 2005), and to include these questions in the questionnaire.[1] In the Johnson opinion, Judge Bennett succinctly

---

[1] In Johnson, the district court considered "the proper degree of case-specific questioning, if any, that is permissible in the course of life- or death-qualifying prospective jurors" in that federal death-penalty case. Johnson, 366 F. Supp. 2d at 824. In the decision, Judge Bennett discussed at length the Supreme Court's holding in Morgan, as well as post-Morgan cases from lower courts interpreting the decision. The Johnson decision proposed that applicable state and federal case law identified at least five categories of "Morgan questions": (1) abstract questions; (2) defendant's status questions; (3) case-categorization questions; (4) case-specific questions; and (5) stake-out questions. See id. at 834-5. Distinguishing other decisions holding to the contrary (notably United States v. McVeigh, 153 F. 3d 1166 (10th Cir. 1998)), Johnson held that "in this case, 'case specific' questions are appropriate – indeed, necessary – during *voir dire* of prospective jurors to allow the parties to determine the ability of jurors to be fair and impartial *in the case before them*, not merely in some "abstract" death penalty case." Id. at 849 (emphasis in original).

In Fell, the Vermont district court agreed with the reasoning of Johnson that "not all case-specific questions are stake-out questions." Fell, 372 F. Supp. 2d at 770-71 (citing Johnson, 366 F. Supp. 2d at 841-45). The court held that it would "permit counsel to ask questions raising case-specific facts if the questions are reasonably directed towards discovering whether the juror

3

framed the issue as to the propriety or impropriety of case-specific questioning in capital *voir dire*:

> While the decision in Morgan establishes the minimum inquiry constitutionally required to life-qualify a jury, it does not, on its face, require, permit, or prohibit any degree of case-specificity in voir dire questions for the purpose of life- or death-qualifying prospective jurors, because the inquiry proposed by the defendant in that case did not involve any case-specific component. Thus, the vexing question left unanswered in Morgan is whether any case-specific inquiry is appropriate to determine whether a juror can truly consider both a life and a death sentence in a particular case – in other words, can a determination be made on a juror's ability to impose either sentence "no matter what the facts are,"(the question as proposed by the defendant), or "regardless of the facts and circumstances of conviction," (the question as framed by the Court), without some inquiry into the juror's response to the facts of the particular case?

Johnson, 366 F. Supp. 2d at 831 (quoting Morgan, 504 U.S. at 723, 735).

Initially, I agree with Judge Bennett on two important points: (1) that Morgan did not go so far as to preclude case-specific questions; and (2) that the critical issue, therefore, is whether the case-specific questions proposed by Defendant Wilson are *appropriate* given that they are not constitutionally required.  See Johnson, 366 F. Supp. 2d at 844-45); Fell, 372 F. Supp. 2d at 769. In conducting my analysis, I find Judge Bennett's discussion of the distinction between a "case-specific" question and a "stake-out" or "pre-commitment" question both useful and important. Judge Bennett explained:

> [I]t is a misconception to assume that any "case-specific" question is necessarily a "stake-out" question. Rather, the proper tests for whether a question is a "stake-out" question are the following: (1) Does the question ask a juror to speculate or precommit to how that juror might vote based on any particular facts? or (2) Does it seek to discover in advance what a prospective juror's decision will be under a certain state of the evidence? or (3) Does it seek to cause prospective jurors to pledge themselves to a future course of action and indoctrinate them

---

will be able to fairly and impartially weigh aggravating and mitigating factors." Id. at 773.  The court stated that "any questions that attempt to commit the juror to a particular position will be struck." Id.

> regarding potential issues before the evidence has been presented and they have been instructed on the law? While any "case-specific" question that asks how a prospective juror would vote on life or death, if presented with proof of certain facts, is a "stake-out" question, and does attempt to "pre-commit" the juror to a certain position, a properly framed case-specific question does not necessarily do any of these things.

Johnson, 366 F. Supp. 2d at 845.

I agree that certain case-specific questions can be appropriate in capital voir dire. Such questions may be proper, indeed necessary, if they deal with subject matter that would demonstrate impermissible bias on the part of a juror. See Fell, 372 F. Supp. 2d at 770 (suggesting that "a trial court should allow [case-specific] questions to be asked when they are reasonably directed toward discovering juror bias"). However, I also firmly believe that case-specific questioning cannot and should not be used to provide a roadmap to attorneys as to which mitigating or aggravating factors it should present or stress to the jury at the penalty phase of a capital prosecution.

The problem that arises, and indeed that is highlighted by the instant dispute between the Government and the Defendant, is that there is no clear line of demarcation between a case-specific question that *on its face* is not a stake-out question, and a case-specific question that, albeit open-ended, begs follow-up questions that inevitably lead to stake-out questions. The Defendant's proposed questions #60, #61, #70 and #82(b) and (c), I believe, can accurately be characterized as the latter. These questions do not directly ask the prospective juror to "stake-out" or "pre-commit" to a position regarding specific mitigating or aggravating evidence that might be presented at trial. Rather, they are open-ended questions broadly querying the juror's thoughts about types of mitigation or aggravation evidence that might influence their decision on

5

whether to impose the death penalty or life imprisonment without the possibility of release. As written, I cannot say that these questions are impermissible stake-out questions. However, I am acutely mindful of the principal goal of voir dire, i.e. to unearth potential bias on the part of jurors. The open-ended questions posed by the Defendant will not unearth such biases. Rather, they simply provide a starting point for an inquiry into the prospective juror's opinion on how he or she will treat mitigation or aggravation evidence presented at trial. These questions do not serve the goal of uncovering impermissible bias, but only beg follow-up questions that trend toward stake-out or pre-commitment questions. In other words, they "seek to discover in advance what a prospective juror's decision will be under a certain state of the evidence." Johnson, 366 F. Supp. 2d at 845. Thus, I find questions #60, #61, #70 and #82(b) and (c) both unnecessary and inappropriate.

The potential jurors in this matter will be provided an extensive questionnaire with over eighty questions designed to uncover bias on the part of jurors. The questionnaire adequately addresses each potential juror's views on the possibility of a death sentence being imposed in this case and will unearth any impermissible bias of which the Defendant, the Government and the court need be aware. With individual voir dire to question each juror as follow-up to the written questionnaire, the court is convinced that it will be able to select a jury that is "life-qualified" and "death-qualified" in accordance with Morgan and Witherspoon, and that will be fair and impartial. The Defendant's proposed questions #60, #61, #70 and #82(b) and (c) therefore will not be included in the questionnaire.

The final question at issue is Defendant's proposed question # 78, which asks the potential juror's opinions about "psychiatrists, psychologists, or other mental health professionals

6

who come to testify in some criminal cases." The Defendant posits two theories upon which this question should be included. First, the Defendant argues that it is an appropriate case-specific question concerning possible mitigation evidence. For the same reasons discussed above with respect to the other four questions, this court rejects the argument. The questionnaire will unearth case-specific bias that is appropriately queried in capital voir dire, but there is no need or proper basis to elicit a juror's specific opinions on how he or she would credit mitigation or aggravation evidence presented through expert witnesses.

Secondly, the Defendant urges that question #78 be included so the Defendant can determine, and follow-up on if necessary, a juror's expertise in the areas of psychiatry, psychology, or mental health in general to avoid a juror improperly sharing his or her expertise during jury deliberations. See People v. Maragh, 94 N.Y.2d 569, 574 (2000) (reversing conviction, holding a "grave potential for prejudice is also present [ ] when a juror who is a professional in everyday life shares expertise to evaluate and draw an expert conclusion about a material issue in the case that is distinct from and additional to the medical proofs adduced at trial").

The "expertise" problem presented by Maragh is adequately dealt with in other questions in the proposed questionnaire. Specifically, question #18(a) asks the following: "Have you ever taken any courses or worked in fields of law, criminal justice, criminology, drug abuse counseling, psychology or other related areas? If yes, please list the courses or experiences?" (Gov't Proposed Jury Questionnaire, Aug. 22, 2006 Draft). Additionally, numerous questions query the potential juror's line of employment, as well as the employment of his or her spouse or domestic partner, and any adult children. (See id., questions # 14, 15, 19, 20). Moreover,

question #24, which asks questions in several parts concerning any organizations or volunteer groups to which the juror or his or her spouse/domestic partner belongs or supports also may cover the "expertise" issue. Finally, question #30(a), which asks the juror to "list any hobbies, special interests or specialized training" that he or she has, also probes any relevant expertise on the part of the juror.

In sum, the questionnaire adequately deals with the issue presented in <u>Maragh</u> in that it makes a reasonable and sufficient attempt to uncover any true expertise on the part of a potential juror in mental health related fields. There is no need to question jurors on how they will approach expert testimony presented on mental health issues; that is an inappropriate line of questioning at <u>voir dire</u>. Thus, the Defendant's proposed question #78 will not be included in the questionnaire.

**Conclusion**

For the reasons stated above, the Defendant's five proposed questions (#60, #61, #70, #78 and #82(b) and (c)) will be excluded from the jury questionnaire. The parties are directed to jointly submit to the court for its review a <u>final draft</u> of the jury questionnaire, incorporating all changes agreed to by the parties and ordered by the court, no later than Monday August 28, 2006 at 9:00 a.m, so that it may be discussed at the status conference scheduled for 2:00 p.m. that afternoon.


SO ORDERED.

Dated: August 23, 2006                             /s/
Brooklyn, N.Y.                                    Nicholas G. Garaufis
                                                  United States District Judge