UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA

                                                **MEMORANDUM & ORDER**
      v.                                              04-CR-1016 (NGG)

RONELL WILSON,

               Defendant.
-----------------------------------------------------X
GARAUFIS, District Judge.

       The Government alleges that Ronell Wilson ("Wilson") murdered undercover New York Police Department Detectives Rodney Andrews and James Nemorin on March 10, 2003.[1] Based on these and other allegations, the Government charges Wilson with two counts of murder in aid of racketeering, two counts of robbery conspiracy, one count of attempted robbery, one count of carjacking, two counts of use of a firearm, and two counts of causing death through use of a firearm. (Second Superseding Indictment, Docket Entry No. 179.)

       The Government intends to seek the death penalty against Wilson. Jury selection began on September 25, 2006 when approximate 600 prospective jurors received preliminary instructions from this court and filled out extensive questionnaires. This court is currently conducting voir dire of those jurors who were not excluded for cause by consent of the parties based upon the responses in their questionnaires.

       Before the court are the Wilson's motions to have Jurors 3, 19, and 35 excluded for cause and the Government's motions to have Jurors 7, 31, and 34 excluded for cause. For the reasons

---

      [1] Four co-defendants (Michael Whitten, Paris Bullock, Angel Rodriguez, and Jamal Brown) were originally indicted with Wilson. (Indictment, Docket Entry No. 1.) Those four have since pled guilty to racketeering and narcotics-related charges and have been sentenced.

1

set forth below, Wilson's motions are GRANTED with respect to Juror 35 and DENIED with respect to Jurors 3 and 19 and the Government's motions are GRANTED with respect to Juror 31 and DENIED with respect to Jurors 7 and 34. Jurors 7, 19, and 34 are deemed qualified and Jurors 31 and 35 are excluded for cause. Juror 3 will be brought back for additional voir dire, after which Wilson may renew his motion to have Juror 3 excluded for cause.

**I.      Legal Background**

In order to serve on a jury in a death penalty case, a juror must be both "death qualified" and "life qualified." A juror is not death qualified if "the juror's views [against the death penalty] would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" Wainwright v. Witt, 469 U.S. 412, 424 (1985) (quoting Adams v. Texas, 448 U.S. 38, 45 (1980)).

A juror is not life qualified if he would automatically impose a death sentence after a guilty verdict, without considering mitigating factors. Morgan v. Illinois, 504 U.S. 719, 735-39 (1992).[2] As with death qualification, the test is whether the juror's views would "prevent or substantially impair" the performance of his duties as a juror in accordance with his instructions and his oath. Morgan at 732-33.

The Supreme Court has thoughtfully "decline[d] to require the judge to write out in a separate memorandum his specific findings on each juror excused," correctly noting that "[a] trial judge's job is difficult enough without senseless make-work." Witt, 469 U.S. at 430. I will

---

[2] Federal law provides that "[i]n determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor, including . . . factors in the defendant's background, record, or character or any . . . circumstances of the offense that mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a)(8).

nevertheless endeavor to explain my decisions to exclude (or not) in writing when I find that the moving party has offered a credible basis for its motion and issuing a written opinion will provide the parties meaningful guidance and facilitate efficient voir dire of similar jurors.

## II.     Wilson's Motions

### A.     Juror 3

Wilson moved to exclude Juror 3 for cause on the ground that she indicated on her questionnaire that "a sentence of life in prison without the possibility of release is a more severe form of punishment than a sentence of death." (Answer to Question 68.)  I will refer to this belief as "penalty inversion."

As I explained at sidebar, I am concerned that this juror's penalty inversion would cause her to consider evidence of mitigation as a reason to vote for rather than against a sentence of death. (Oct. 11, 2006 Tr. at 127.)  This would be contrary to the applicable statutory scheme, which requires jurors determining whether to impose a sentence of death to consider "factors in the defendant's background, record, or character or any other circumstance of the offense *that mitigate against imposition of the death sentence*."  18 U.S.C. § 3592(a)(8) (emphasis added).

After reviewing the record, I remain concerned that Juror 3 might give unlawful effect to mitigation evidence but I am not convinced that she would do so.  The defense correctly notes that under Zant v. Stephens, 462 U.S. 862 (1983), "a jury's decision to impose death" should be set aside if a juror "attaches the 'aggravating' label to . . . conduct that actually should militate in favor of a lesser penalty[.]"  Zant at 885.  Although this juror's penalty inversion suggests that she might attach the "aggravating" label to mitigating factors, it may also be the case that she was merely trying to explain that she would personally prefer to receive the death penalty rather than

life imprisonment were she ever convicted of a capital crime. If that is what she intended, then I am not convinced that she would consider mitigation evidence presented by Wilson as a basis for sentencing him to death rather than life.

Because it is not clear that this juror would properly consider mitigation evidence in determining whether to sentence Wilson to death, I will call her back for additional voir dire. I encourage the parties to submit proposed questions that will help me determine whether this juror would treat mitigating factors as aggravating.

### B.   Juror 19

Wilson moved to strike Juror 19 for cause on the theory that he is biased in favor of police officers, a class that includes the victims in this case and prospective witnesses for the Government. (Oct. 11, 2006 Tr. at 206.) This argument is based primarily on the juror's statement that he works in close proximity to police officers on Staten Island and has heard officers discussing this case, although he has not personally discussed it with them. (Id. at 195.)

I find that this juror is not biased in favor of law enforcement. In so finding, I rely on statements he made in his questionnaire and at voir dire. In his questionnaire, he indicated that he holds no opinions or beliefs concerning law enforcement that would affect his ability to evaluate the evidence in this case fairly and impartially. (Answer to Question 39(a).) He also answered three more specific questions in the questionnaire in a manner indicating a lack of bias. First, he answered "no" to the question, "Do you have any bias, sympathy, or prejudice toward the police or government?" (Answer to Question 47.) Second, he answered "yes" when asked if he could follow the rule of law that "[a] law enforcement witness's testimony is not to be given any more or less credence than any other witness's testimony simply because that witness is a

4

law enforcement officer[.]" (Answer to Question 51(b).) Third, he answered "no" when asked if the fact that the victims in this case were two police officers who died while working undercover would affect his ability to fairly and impartially evaluate the evidence in this case. (Answer to Question 53.)

Nothing the juror said at voir dire suggested that these answers were incorrect or insincere. When asked whether the fact that his father-in-law is a retired police officer would have any effect on his ability to fairly and impartially consider the testimony of law enforcement officers, he answered "no." (Oct. 11, 2006 Tr. at 186.) In addition, he stated at voir dire that he believes his brother was treated unfairly by the New York City Police Department when he was removed from his position as a police officer without a pension – a fact that would suggest bias against rather than in favor of law enforcement.[3] (Id. at 196-97.) For these reasons, I find no basis to strike him for cause on the ground of bias.

Wilson also argued that Juror 19 is not life qualified because he would not consider evidence of mitigation during the penalty phase of this trial, if any. (Id. at 206-07.) I find no basis for such a conclusion. The juror answered "yes" when asked at voir dire if he would "consider all the factors that the court directs you to consider when making . . . an evaluation and determination" as to which punishment – life imprisonment without possibility of release or the death penalty – is appropriate. (Id. at 194-95.)

Wilson argued that this answer is not credible and that the juror gave this answer because "he wants to get on the jury for a specific reason." (Id. at 211.) I disagree. As I have already

---

[3] The juror represented, however, that the circumstances of his brother's removal would have no bearing on his ability to consider the testimony of law enforcement officers in this case. (Oct. 11, 2006 Tr. at 184.)

5

explained, if the juror wanted to get on the jury, he would not have volunteered to the court that he has read media accounts of this case in direct violation of this court's instructions, nor would he have volunteered that he overheard police officers discussing this case. (Id. at 214-16.) Because I find that this juror was forthcoming, thoughtful, sincere, and credible, I give credence to his statements to the effect that he would consider evidence of mitigation as instructed by this court.

Finally with regard to this juror, I note that Wilson argued as an alternative ground for striking him that he breached his anonymity by revealing where he works. I reject that argument. This juror stated that he works for a contractor that works at the Staten Island Homeport Navy Base two days each week. (Id. at 195.) This fact does not provide sufficient specificity regarding the juror's identity to justify dismissal for breach of anonymity. Many tradespeople work at installations such as the Staten Island Home Port. This juror is not permanently employed at that location, nor is he an employee of the United States government at that location. His statements regarding his employment therefore do not provide a basis for dismissal.

For the foregoing reasons, I find that this juror is qualified, and I deny Wilson's motion to have him excluded for cause.

### C. Juror 35

Wilson also moved to have Juror 35 excluded for cause on the ground that he exhibited sympathy toward police officers. I agree, and find that unlike Juror 19, this juror is likely to be unduly influenced by his sympathy for the police in performing both his general duty of determining guilt or non-guilt and his more specific duty of evaluating the testimony of law enforcement officers.

6

This juror's father is a retired New York City police officer. (Oct. 12, 2006 Tr. at 346.) At voir dire, after I explained that the victims in this case were police officers, this juror stated – in stark contrast to Juror 19's credible statements of lack of bias – "growing up the son of a police officer, I would feel I might have, I guess, some inkling towards showing sympathy or compassion for someone related to a police officer or a police officer."[4] (Id. at 347.) When asked if he would be able to set aside those personal feelings and determine guilt or non-guilt based on the law and what he heard in the courtroom, this juror answered, "I would hope so, but depending on, like you said, what I would hear in this courtroom. I wouldn't know until, you know, I would actually hear it." (Id. at 347-48.)

I then asked this juror if he would give any special consideration to the testimony of law enforcement officers. (Id. at 348.) He answered, "Quite possibly. Not just knowing police officers but having one, you know, as my father would probably force me to believe that I may, I guess, value the opinion of one over another." (Id.) Because this answer was not perfectly clear, I explained that it is the jury's role as the trier of fact "to evaluate the testimony of the witnesses and to decide what to believe." (Id. at 349.) I then asked this juror, "Would you be able to put aside any biases that you may have based on the fact that your father was a police officer and follow the court's instructions as to how to go about considering the testimony of police officers, among others?" (Id.) He answered, "I assume I would be able to, you know, take everyone's testimony for what it was and determine, I guess, what I felt to be fact and what I didn't." (Id.)

---

[4] This juror also explained that he has benefitted from his father's service as a police officer. When asked if he had ever been stopped by law enforcement, this juror stated that he had been pulled over for traffic infractions and that "[u]sually I would tell them my father was a cop and they would let me go." (Oct. 12, 2006 Tr. at 349-50.)

This juror's references to hopes, possibilities, assumptions, and guesses do not satisfy me that he is qualified to serve in this case. I credit his straightforward answers proclaiming a bias in favor of law enforcement police, which are quite understandable given the facts of his life. Given the unusual dual role that law enforcement officers will play in this case, Wilson's motion to exclude this juror for cause is therefore granted.

### III. The Government's Motions

#### A. Juror 7

The Government moved to exclude Juror 7 for cause on the ground that she is not "death qualified." In so arguing, the Government relied on this juror's written statement that voting for the death penalty would "haunt" her. (Answer to Question 63(a).) This written response required clarification because it was preceded by the juror's erroneous statement, "Fortunately the judge would make such a decision[.]" To correct her misunderstanding, I explained to Juror 7 at voir dire that–

> [T]he judge in a death penalty case does not decide whether a person should receive life in prison without possibility of release or the death penalty. That's a decision which must be made by the jury, if the jury finds someone guilty of committing a death-eligible murder. So understanding that, do you feel you could make such a decision about whether a defendant should live or die?

(Oct. 11, 2006 Tr. at 67-68.) The juror answered "yes" and explained that her answer was based on her understanding that she would be "given clear-cut instructions as far as what to look for [and] what points have to be met in order to make the determination. So it's not random . . . so yes, I could." (Id. at 68.) Because the juror's statement on her questionnaire was made on the basis of a fundamental misunderstanding as to the penalty-selection process, I find that her

statement at voir dire – made after the court explained that process – is the proper statement to consider in determining whether this juror is "death qualified."

The Government argues that the Fifth Circuit case of United States v. Bernard, 299 F.3d 467 (5th Cir. 2002) is instructive. In that case, the Fifth Circuit ruled that a district court properly struck for cause a juror who had written on a questionnaire, "I do not feel that I have the right to judge whether a person lives or dies. I could not do that." Bernard at 474. The district court struck this juror even though she said at voir dire that she had changed her mind, and that "if the facts were such that they proved that the defendant would need that verdict, then I would give it." Id.

I have reviewed Bernard. I find that it held merely that the district court acted within its discretion in crediting the juror's earlier statement rather than her statement at voir dire, not that the district court was required to excuse the juror for cause. Indeed, the Fifth Circuit noted that "[w]hile the district court's dismissal of a prospective juror on this basis is reviewed for abuse of discretion, we give the court considerable deference because such decisions are based on face-to-face credibility assessments." Bernard at 474 (citation and quotation marks omitted). Bernard's reasoning does not compel this court to excuse Juror 7 for cause.

The Government also argues in support of exclusion that Juror 7 indicated on her questionnaire that she would hold the government to a higher standard of proof than proof beyond a reasonable doubt if the government sought the death penalty. (Answer to Question 66.) At voir dire, I asked this juror if she would do so and she answered, "No. Beyond a reasonable doubt would suffice for that. I would change that and say no, I wouldn't hold them to a higher standard, just beyond a reasonable doubt to prove the person's guilt." (Oct. 11, 2006 Tr. at 69.) I

9

recognize that these answers are contradictory. I find that between the two it is the latter that deserves more weight. I reach this conclusion because the juror had more time to reflect before giving that answer and because I find that her demeanor and tone were credible and nothing about her answer or demeanor suggested that she had a motive to mislead the court.

Because this juror's answers at voir dire provide a better basis for considering whether she should be excluded for cause than do her answers on the questionnaire, I find that she is qualified to serve on the jury. The government's motion to have her excluded for cause is therefore denied.

### B. Juror 31

The Government moved to have Juror 31 excluded for cause on the ground that he is not death qualified. In answering the questionnaire, this juror stated that he is "philosophically and ideologically opposed to the death penalty," believes that "as a society [we] have to be better than that," and believes that "such an irreversible and final penalty [as the death penalty] is untenable in an imperfect justice system." (Answer to Question 58(a).)

Wilson argued that this juror is nevertheless death qualified because he answered "no" to two related questions. The first asked, "Are your views about the death penalty so strong that they could affect your ability to perform your duties as a juror in accordance with your oath?" (Question 62.) The second asked, "Do you have any personal beliefs about what the law is or should be regarding the death penalty that would affect your ability to follow the Court's legal instructions?" (Question 64.)

Those answers were undermined by this juror's statements at voir dire. During voir dire, I reminded him of his answer to Questions 64 and asked if he could "envision any circumstances

in which [he] would consider voting for the death penalty in a case where someone was found guilty of intentional murder" and the alternative was life imprisonment with no possibility of release. (Oct. 12, 2006 Tr. at 312-13.) He answered, "It's hard for me to think of a specific circumstance. I am fairly well opposed to it." (Id. at 313.)

I then reminded him of his answer to Question 62 and stated, "This is not a hypothetical. This is a case where the defendant is accused of death-eligible intentional murder, and if you find him guilty at the trial phase then you will be asked which penalty to impose, then the question is whether you can meaningfully consider the death penalty as a punishment in that circumstance." (Id. at 319-20.) The juror answered, "I would say yes. I probably could, I think. I don't know." (Id. at 320.)

I find that this halting, hesitant, unsatisfying answer indicates that this juror could not meaningfully consider the death penalty as required by Witt. Although certain of his answers suggest that he could set aside his beliefs against the death penalty, I find after questioning this juror in person and examining his answers and demeanor that those answers were inconsistent, equivocal, and not worthy of belief. Based on his consistent, unequivocal statements regarding his beliefs and his inability to clearly state that he could meaningfully consider the death penalty, I find that this juror is not death qualified. I therefore grant the Government's motion to have this juror excluded for cause.

### C. Juror 34

The Government moved to have this juror excluded for cause on the ground that he is not death qualified. I disagree. Unlike Juror 31, this juror explicitly and unequivocally stated in his questionnaire that he had no views, opinions, or beliefs regarding the death penalty. (Answers to

11

Questions 58(a), 59.)  The primary reason he was questioned extensively at voir dire was that he answered "no" to the following question:  "The question whether a defendant should live or die is a moral decision each juror must make himself or herself.  Do you feel you can make such a decision, *i.e.*, about whether a defendant should live or die?"  (Answer to Question 63(a).)  He explained his answer by writing, "I don't think it is my place to decide who lives or dies."  (Id.)

I find that this answer was based on a fundamental misunderstanding regarding the jury's role, rather than on any moral belief that would substantially impair this juror from performing his duties.  Elsewhere in the questionnaire, this juror was asked, "Would your views on how the death penalty is administered in the United States affect your ability to sit as a juror in an individual case where the death penalty is a possible punishment?"  (Question 61(b).)  He answered, "Because at that time it seems to make you the judge decide who lives [sic]."  (Answer to Question 61(b).)  I take this answer – which I concede is not perfectly clear – to mean that the juror's "views on how the death penalty is administered" were that it is the judge rather than the jury who decides whether to impose the death penalty.  When he wrote that it is not "his place to decide who lives or dies," therefore, he was making a practical observation about his role at trial, not a metaphysical observation about his moral standing to sentence someone to death.

My belief that this juror misunderstood the jury's role is augmented by his statements at voir dire.  Most notably, when I reminded him of his answer to Question 63(a), he responded, "I just don't believe it's my job to make that kind of decision."  (Oct. 12, 2006 Tr. at 421.)  My belief is further augmented by the fact that this juror stated that he had no views, opinions, or beliefs regarding the death penalty in response to questions that, unlike Question 61(b), clearly called for moral reflection.  (See Answers to Questions 58(a) and 59.)  In light of these

12

unequivocal statements, it would be illogical to conclude that this juror intended to express in his answer to Questions 63(a) and 61(b) that he had a moral rather than a practical inability to meaningfully participate in the penalty phase of this trial.

At voir dire, I clarified the jury's role during the penalty process and attempted to determine whether this juror was death qualified:

> In the law that applies to this case, if a defendant is found guilty of intentional murder that is subject to the death penalty, the jury, you, then have to consider whether the person should receive the death penalty or whether the person should receive a penalty of life in prison without the possibility of release. Given that and your beliefs, could you meaningfully consider the death penalty in such a case?

(Oct. 12, 2006 Tr. at 429-30) He answered, "Yeah, I believe so." (Id. at 430.) In addition, he stated two other times during voir dire that he could meaningfully consider imposing the death penalty. (Id. at 423.) Based on these answers and the fact that his potentially contrary answers were based on a fundamental misunderstanding, I find that this juror is death qualified. The Government's motion to exclude him for cause is therefore denied.

## IV. Conclusion

For the aforementioned reasons, Wilson's motions are GRANTED with respect to Juror 35 and DENIED with respect to Jurors 3 and 19 and the Government's motions are GRANTED with respect to Juror 31 and DENIED with respect to Jurors 7 and 34. Jurors 7, 19, and 34 are deemed qualified and Jurors 31 and 35 are excluded for cause. Juror 3 will be brought back for

additional voir dire, after which Wilson may renew his motion to have Juror 3 excluded for cause.

SO ORDERED.

Dated: October 20, 2006
      Brooklyn, N.Y.

    /s/ Nicholas Garaufis
NICHOLAS G. GARAUFIS
United States District Judge