UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
UNITED STATES OF AMERICA

                                      **MEMORANDUM & ORDER**

        v.                                          04-CR-1016 (NGG)

RONELL WILSON,

                Defendant.
-------------------------------------------------X
GARAUFIS, District Judge.

This court is currently conducting voir dire in this case, in which the Government seeks the death penalty against Ronell Wilson ("Wilson"). Before the court are Wilson's motions to exclude Jurors 97 and 134 for cause and the Government's motions to exclude Jurors 70, 106, and 114 for cause. The legal and factual background applicable to these motions was set forth in this Court's Order dated October 20, 2006.

For the reasons set forth below, Wilson's motions are DENIED and the Government's motions are GRANTED. Jurors 97 and 134 are qualified to serve. Jurors 70, 106, and 114 are excluded for cause.

**I.     Wilson's Motions**

     **A.     Juror 97**

Wilson moved to have Juror 97 excluded for cause on the ground that he is not life qualified. This juror's eligibility is a moderately difficult question because he articulated a principled, closely held belief favoring the death penalty as a policy matter. Because he indicated repeatedly and credibly that he will nevertheless meaningfully consider imposing a punishment

1

of life without possibility of release in this case, I find that this juror is life qualified and eligible to serve.

Wilson argued that this juror "believes it's appropriate to impose the death sentence on Mr. Wilson to deter others." (Oct. 18, 2006 Tr. at 924-25.) That argument is not supported by the juror's statements, which indicate that he supports the death penalty as a policy matter on the ground of deterrence, but not that he has any desire to execute Wilson in order to deter others. In particular, this juror wrote in his questionnaire, "I think every state should have the death penalty. Maybe there would be less murders. A criminal would think twice before killing someone." (Answer to Question 61(a).) He repeated this statement nearly verbatim at voir dire (Oct. 19, 2006 Tr. at 910), and elaborated by stating that potential murderers "would think in the back of their mind before they pulled the trigger on somebody that if they had the death penalty, they would realize that they would be more or less doing themselves in also, and maybe they would have second thoughts about actually pulling the trigger" (id. at 913).

These general statements about policy do not contradict this juror's sincere, thoughtful statements indicating that he would meaningfully consider imposing a sentence of life imprisonment without possibility of release in this case. Immediately after he made the statements just quoted, he and I had the following discussion:

> Q: Given your values and beliefs, could you meaningfully consider life in prison without the possibility of release for a person found guilty of intentionally murdering two police officers?
>
> A: Yes, I could lean the other way.
>
> Q: All right.
>
> A: I think it, it depends upon the, the degree of the circumstances.

> Q: The first decision the jury will have to make is whether the person is guilty beyond a reasonable doubt of committing the crime charged.
>
> A: Right.
>
> Q: If the jury determines that the defendant is guilty beyond a reasonable doubt of a crime that is eligible for the death penalty, then the jury has to deliberate on what penalty to impose. Would you be willing to consider evidence about the convicted individual's character and the background of this case and listen to argument from the defense that the death penalty should not be imposed in this case before you make your own determination as to what the punishment should be?
>
> A: Of course.
>
> Q: Can you imagine any circumstances in which the defendant has been found guilty of murdering two police officers in which you would not impose the death penalty, but you would impose a penalty of life?
>
> A: Could I think of another circumstance?
>
> Q: No. Could you think of any circumstance where you would impose a life sentence if a person were found guilty of that?
>
> A: Yes, yes.
>
> Q: The court will give you instructions on what you must consider when making your evaluation and your determination as to what the penalty should be. The court will enumerate those factors that you should consider. Will you follow the court's instructions in your deliberations and evaluate all the factors that the court requires you to evaluate before you reach any determination on what the sentence should be?
>
> A: Yes, I would.

(Id. at 910-12.) I find that these answers were sincere and based on this juror's thoughtful reflection about his role as a juror. I therefore find that this juror is life qualified.

Wilson cited as further support for exclusion this juror's statement that if he were accused of a capital crime, he would not be comfortable being tried by a juror holding the views he

articulated in response to Question 68 in the questionnaire. (Id. at 920-21, 925-26.) Question 68 asked, "Do you believe that a sentence of life in prison without the possibility of release is a more severe form of punishment than a sentence of death?" (Question 68.) This juror answered "no" and explained, "In prison he would be sheltered and enjoy some personal benefits out of our tax paying dollars." (Answer to Question 68.)

This juror does not become unqualified by recognizing that he would not want to be tried for a capital crime by a juror holding such a belief about imprisonment. Every potentially death-eligible defendant would prefer to be tried by a jury composed of individuals who did not observe that imprisonment offers "personal benefits out of our tax paying dollars," but there is no right to be tried by such a jury. In addition, this juror answered the question "no," which is the answer Wilson generally seems to prefer.[1]

This court is convinced that Juror 97 favors the death penalty in the sense that he believes it should be available. But this court is equally convinced that this juror was sincere when he stated that were he on the jury, he would consider all evidence presented in the penalty phase – including mitigation evidence favoring a punishment of life imprisonment without possibility of release – and would meaningfully consider voting for that punishment despite supporting the death penalty as a policy matter. This court will not exclude a juror merely for favoring the death penalty as a policy matter, and a juror who cites deterrence as the basis for favoring the death penalty is no less qualified than one who cites a moral or religious basis such as the principle of "an eye for an eye."

---

[1] As discussed in note 2 below, Wilson moved to have Juror 3 excluded for cause on the ground that she answered "yes" to Question 68.

Wilson's motion to have this juror excluded for cause is denied, and this juror is deemed qualified.

**B.      Juror 134**

Wilson moved to have Juror 134 excluded for cause on the ground that he is not life qualified. Wilson's argument is based on the fact that when this juror was asked if he "could meaningfully consider a sentence of life in prison for someone who committed murder intentionally," he answered, "Yes, if he's truly sorry, I can see some remorse in his eyes." (Oct. 19, 2006 Tr. at 1203.) Wilson argued, based on this answer, that this juror would require that a defendant demonstrate remorse in order to avoid the death penalty. (Id. at 1206.)

I disagree. This juror merely answered an open-ended question by stating that he would consider imposing a penalty of life imprisonment without possibility of release on a murderer who showed remorse. He did not state or suggest that he would automatically vote to impose the death penalty in all other circumstances, and there is no basis for inferring that he would.

Wilson also cited this juror's statement that he would have difficulty (1) considering during the penalty phase only those factors that the court instructs him to consider and (2) not considering during the penalty phase factors he is instructed not to consider. (Oct. 19, 2006 Tr. at 1200-01, 1206-07.) But the only factor that this juror affirmatively stated he would like to consider was remorse, which is a permissible consideration under our statutory scheme requiring jurors in capital cases to consider "factors in the defendant's background, record, or character or any [] circumstances of the offense that mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a)(8).

Wilson's argument illustrates the difficulty with considering answers to an open-ended question that asks a juror to describe circumstances in which he would consider imposing a sentence of life imprisonment without possibility of release rather than death. No layperson is likely to answer this question by listing the mitigating factors set forth in 18 U.S.C. § 3592(a). But jurors are not obligated to have prior knowledge of these factors, and if they were then no court would ever successfully empanel a jury in a capital case.

I will continue to ask this open-ended question and the analogous question about circumstances in which the juror would consider voting for the death penalty because I believe that these questions are helpful steps toward determining whether a defendant is life or death qualified. I will, however, be skeptical of arguments that a juror who describes circumstances in which he could consider voting for either punishment is unwilling to consider that punishment in any other circumstances.

I conclude my analysis of this juror's eligibility by quoting the remainder of the answer in which he cited remorse as a consideration: "I believe that life is a valuable thing and should not be taken beforehand and the punishment should also not be taking the life unless it's really that the person is not reformable and that probably it is just going to be a waste of time to have him stay in prison for that long when they can't see any badness in their actions." (Oct. 19, 2006 Tr. at 1203.) This juror also stated, "It would probably weigh on my soul if something like that happened, some quality that is good and you killed the person. That's why I believe that the death penalty is really something you have to observe. But I think that the death penalty is proper in some cases." (Oct. 19, 2006 Tr. at 1206.) I find based on these statements that this juror may be quite reluctant to impose the death penalty. More importantly, I find that he would approach

the decision of whether to impose the death penalty with the seriousness that it merits, a seriousness that satisfies or exceeds the "meaningful consideration" requirement consistently advocated by Wilson.

Wilson's motion to have this juror excluded for cause is denied, and this juror is found qualified to serve.

## II.    The Government's Motions

### A.    Juror 70

The Government moved to have Juror 70 excluded for cause on the ground that she is not death qualified. The Government argued that this juror's "views on the death penalty aren't cause to strike [her], but [her] inability to personally make the decision is." (Oct. 17, 2006 Tr. at 704.) The basis for this argument is the Supreme Court's holding that a juror must "be willing to consider all of the penalties" provided by law and must "not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings." Witherspoon v. Illinois, 391 U.S. 510, 522 n.21 (1968).

At voir dire, I explained to this juror that if this case reaches the penalty phase, it will be the jury's job to determine the appropriate penalty. We then engaged in the following colloquy:

> Q:    Could you describe your views about the death penalty for us in some detail?
>
> A:    Well, like I stated earlier, I don't think it's really my decision. . . . I wouldn't like to be part of the decision-making process of whether a person should live or die because it's not something I think God wants me to do.

> Q: Well, understanding that you don't know the specific circumstances of this case, are you open to the possibility of voting for the death penalty in this case?
>
> A: All I can say is I'll try.
>
> * * *
>
> Q: Can you envision any circumstances where you could consider the imposition of the death penalty?
>
> A: I think if it was the intention of murdering someone without any remorse, taking someone's life, an innocent life, I think that deserves a very stiff punishment, I believe.
>
> * * *
>
> Q: When you say "stiff punishment," in that category of punishment, does that include the death penalty as one choice?
>
> A: Yes.

(<u>Id.</u> at 701-04.)

The juror's statements support the Government's position. When I explicitly asked her if she was open to the possibility of voting for the death penalty, she could not bring herself to answer affirmatively, instead stating, "All I can say is I'll try." When I gave her an opportunity to describe a circumstance in which she could vote for the death penalty, she instead described a circumstance "that deserves a very stiff punishment" but carefully avoided stating that she could personally considering voting for a stiff punishment in that circumstance. Her answer also referred to a "stiff punishment" rather than to the death penalty, even though the latter was clearly the subject of my questions. Her answer to my follow-up question did not erase my concern. Although this juror did not explicitly state that she could never consider voting for the

8

death penalty in any case, this is the only reasonable inference I can draw from her evasive statements.

This court will never excuse a juror for cause simply because she holds general views against the death penalty. Wainwright v. Witt, 469 U.S. 412, 416 (1985). This court will, however, question jurors holding such views to determine whether they are willing to consider voting for the death penalty in this case despite holding such views. When, as here, the answer to that question is no, the juror is not death qualified. Id. at 424. I therefore grant the Government's motion to have Juror 70 excluded for cause.[2]

**B.   Juror 106**

The Government moved to have Juror 106 excluded for cause on the ground that he is not death qualified. This court agrees.

When asked at voir dire if he was "open to the possibility of voting for the death penalty in this case," the juror answered, "I honestly don't know." (Oct. 18, 2006 Tr. at 973.) On his questionnaire, this juror indicated that he could not make a decision about whether a defendant should live or die. (Answer to Question 63(a).) At voir dire, I asked if this answer "fairly represented [his] view that he could not make such a decision." (Oct. 18, 2006 Tr. at 974.) He answered, "I'd say so, yes." (Id.) When the juror later suggested that he might be able to consider imposing the death penalty in murder cases based on "the specifics of the situation," I

---

[2] I note that this juror believes that life imprisonment without possibility of release is a more severe punishment than a sentence of death, a belief I will call "penalty inversion." (Answer to Question 68; Oct. 17, 2006 Tr. at 702.) Wilson, who moved to have Juror 3 excluded for cause on the ground of penalty inversion, nevertheless argued that Juror 70 is qualified. (See Order dated Oct. 20, 2006 at 3-4; Oct. 17, 2006 Tr. at 711-20.) I am troubled by this inconsistency and I encourage the parties to explain their positions on penalty inversion before Juror 3 is brought back for additional voir dire pursuant to the Order dated Oct. 20, 2006.

asked him if he could decide whether a defendant should live or die if the defendant "is guilty of intentionally murdering a police officer or police officers." (Id. at 974-75.) He answered, "I don't think that I could. . . . I have a problem with feeling that I have someone's life within my hands." (Id. at 975.) I found these statements sincere, and I believe that they were based on careful introspection by this juror about his beliefs and abilities. I credit these statements – particularly those given at voir dire – and find that this juror is by his own admission not death qualified.

The Government also argues that this juror is biased in favor of Wilson. In his questionnaire, this juror answered "yes" when asked if he has "any bias, sympathy, or prejudice toward the defendant Ronell Wilson," and explained, "I have sympathy toward Ronell Wilson because he is black. This makes him part of a political minority. I am also part of a political minority in that I am gay." (Answer to Question 46.) At voir dire, I reminded him of this answer and asked, " Will this view affect your ability to follow the court's instructions regarding sympathy, and the instruction is that you are not permitted to allow sympathy to enter into your deliberations, that you must deliberate based on the law as I give it to you and the facts as you find them?" (Oct. 18, 2006 Tr. at 969.) He answered, "Well, I think that it would always be within my mind during the entire situation. I am not sure if I can necessarily override that factor. But I am not sure if it would have like an overwhelming effect on my decisions, on my responses." (Id. at 969-70.)

Later during voir dire, I pointed out that this answer seemed to contradict this juror's answer to Question 57(a), which asks whether the juror "[w]ould . . . have any difficulty following th[e] rule" that "sympathy, bias and prejudice must not enter into the deliberations of

10

the jurors as to whether the guilt of a defendant has been proven beyond a reasonable doubt." (Question 57(a).) This juror answered "no." (Answer to Question 57(a).) At voir dire, I stated, "Considering what you have said earlier about sympathy that you would have for someone who is a minority, do you believe that this answer is accurate?" (Oct. 18, 2006 Tr. at 971.) The juror answered, "I'd say that that answer is, given the other answer I gave, I'd say that this answer is fairly inaccurate." (Id.) As I found when considering this juror's statements about the death penalty, I find his statements about bias are based on careful introspection. I therefore credit those responses and find that they constitute an independent basis for excluding him for cause.

This juror is problematic for another reason that should concern both parties. He stated in his questionnaire that he has "opinions about lawyers that would affect [his] ability to render a fair and impartial verdict," and explained, "I think lawyers are distrustful, which is an opinion that I've gained from media representations."[3] (Answer to Question 25(d).) This is a problem for both parties because it indicates that this juror will not be able to meaningfully consider arguments presented by lawyers for either side. It also indicates that he is unduly influenced by popular culture and stereotypes, a conclusion that is consistent with his admission that he would be biased in favor of Wilson because of his status as a political minority.

Because this juror is not death qualified, is biased in favor of Wilson based on race, and is biased against all lawyers because of a stereotype, the Government's motion to have him excluded for cause is granted.

---

[3] During voir dire, the only media representation he could think of was the movie Jurassic Park. (Oct. 18, 2006 Tr. at 964-65.)

### C. Juror 114

The Government moved to have Juror 114 excluded for cause on the ground that he is not fit to serve on a jury in a case this important. (Oct. 19, 2006 Tr. at 1169-71.) I agree for two reasons.

First, I find that this juror was by his own admission a malingerer in the Army, from which he was released without an honorable discharge. During voir dire, he admitted that he deliberately got himself thrown out of the Army by leaving his base "to go get something to eat" when he was restricted to the base. (Id. at 1150.) He further admitted that he was restricted in the first place because he was overweight and had repeatedly left the base to eat elsewhere rather than comply with a diet imposed upon him. (Id. at 1165.) When asked if he was treated unfairly by his superiors in the Army, this juror answered, "Not really, no," and explained, "I kind of wanted out and being overweight was an easy way to get out." (Id. at 1165-66.) Someone who treats a serious responsibility this cavalierly should not be on a jury that may have to sit for two months and determine whether a human being lives or dies.

Second, I find that this juror demonstrated a clear hostility toward the federal government, including law enforcement and the judiciary, such that he is unfit to serve on a jury in a federal capital case. He manifested his hostility during voir dire, when I asked him to describe his view about the death penalty as imposed on Timothy McVeigh, whom he had invoked in an answer in his questionnaire. At voir dire, he stated that the imposition of the death penalty on McVeigh was "[s]ad, I guess. . . . I mean, I think his actions were a direct result of Waco, which was really poorly handled by the federal government. And then he was executed for his actions. So, it's like a tragedy." (Id. at 1163.) I take this answer to mean that this juror

believes that McVeigh's murder of 168 people working in the Alfred P. Murrah Federal Building in Oklahoma City was either justified or was the fault of the federal government rather than McVeigh, and that McVeigh's death rather than the 168 he caused was the true tragedy.

My finding that this juror is unduly hostile toward the federal government is augmented by his consistently antagonistic attitude toward the court during voir dire. His body language was closed and his tone of voice was condescending and aggressive. He responded to an easily understood question by asking, in an aggressive manner, "Your question to me?" (Id. at 1164.) I therefore find that this juror is not fit to serve in this case, and I grant the Government's motion to have him excluded for cause.

### III. Conclusion

For the reasons set forth above, Wilson's motions are DENIED and the Government's motions are GRANTED. Jurors 97 and 134 are qualified to serve. Jurors 70, 106, and 114 are excluded for cause.

SO ORDERED.

Dated: October 23, 2006  /s/ Nicholas G. Garaufis
      Brooklyn, N.Y.  NICHOLAS G. GARAUFIS
                       United States District Judge