UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA

                              **MEMORANDUM & ORDER**
      v.                                      04-CR-1016 (NGG)

RONELL WILSON,

        Defendant.
-----------------------------------------------------X
GARAUFIS, District Judge.

This court is currently conducting voir dire in a case in which the Government seeks the death penalty against Ronell Wilson ("Wilson"). Before the court are Wilson's motions to have Jurors 189 and 209 excluded for cause and the Government's motions to have Jurors 153, 171, 181, and 224 excluded for cause. The factual background and much of the legal background applicable to these motions was set forth in this Court's Orders dated October 20 and 23, 2006.

For the reasons set forth below, Wilson's motions are GRANTED with respect to Juror 209 and DENIED with respect to Juror 189 and the Government's motions are GRANTED. Juror 189 is therefore qualified to serve and Jurors 153, 171, 181, 209, and 224 are excluded for cause.

**I.    Wilson's Motions**

    **A.    Juror 189**

Wilson moved to have Juror 189 excluded for cause on the ground that he is not life qualified, *i.e.*, that his views in favor of the death penalty would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." (Def.

Challenge Juror No. 189 at 1-2 (quoting <u>Morgan v. Illinois</u>, 504 U.S. 719, 728-29 (1992).) This court disagrees.

Wilson claims that this juror stated he would "probably 'go with the death penalty.'" (Def. Challenge Juror No. 189 at 1 (citing Tr. at 1500).[1]) The juror's actual words were not to that effect. In response to a question about what factors he would consider in choosing a penalty, this juror stated, "I guess you could go – I would probably go the – if the death penalty was the option and that was presented in what I thought was the right way, I guess that." (Tr. at 1500.) This court finds that the juror was not stating that he would probably "go with" the death penalty regardless of what he learned during the penalty phase. Instead, he was explaining to the court that he would probably vote for the death penalty if it "was presented in what [he] thought was the right way," a clear albeit inelegant way of saying that he would probably vote for the death penalty if he were persuaded that it, rather than life imprisonment without possibility of release, were the appropriate punishment in this case.

This understanding is augmented by reading the quoted statement in context. The statement closely followed the question, "What are your views about the death penalty?" (<u>Id.</u> at 1499.) This juror clearly understood that the court was trying to determine whether he would be willing to consider voting for the death penalty should the jury find Wilson guilty of a capital

---

[1] Many of Wilson's citations to the Transcript – including all or nearly all citations relevant to this juror – refer to pages that do not contain the quoted or cited passages. For example, Wilson cited to Tr. at 1476 in support of his claim that Juror 189 said he would probably "go with the death penalty." (Def. Challenge Juror 189 at 1.) Page 1476 of the Transcript contains argument about Juror 171, not Juror 189. Only page 1500 contains any text resembling that which Wilson purports to quote. In considering the motions addressed in this Memorandum and Order, I have independently searched for and found all passages quoted by Wilson. Defense counsel are nevertheless directed to review their citations to the record carefully in the future before submitting them.

crime. He understood the court to be asking the next set of questions – including the question about what factors he would consider in choosing a penalty – for the same purpose, and that is why he answered in terms of the death penalty.

After this juror admitted that he might have misunderstood the question asking what factors he would consider during the penalty phase, I asked him, "Given your values and beliefs, could you meaningfully consider the possibility of voting for life in prison without the possibility of release instead of the death penalty for a person found guilty of intentionally murdering two police officers?" (Id.) He answered, "I guess I could go either way. It depends on the way the facts are presented. I couldn't make that decision now." (Id.) These answers reflect Juror 189's sincere willingness to consider both potential penalties and his belief that it would not be appropriate to choose a penalty before learning of all pertinent evidence and hearing all pertinent arguments.

In arguing that this juror is not life qualified, Wilson also relies on the juror's statement that "if something gets to the point where a death penalty is applicable, it's probably for a good purpose. It probably applies." (Def. Challenge Juror No. 189 at 1-2 (quoting Tr. at 1511).) Again, this quote simply does not support the proposition that this juror "will automatically vote for the death penalty in every case [and] fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to." Morgan v. Illinois, 504 U.S. 719, 729 (1992). Instead, it merely indicates that this juror believes that the law makes the death penalty available – "applicable," in the juror's words – in appropriate circumstances and not in inappropriate circumstances. No reasonable person could understand this juror's use of the word "applicable" to mean "mandatory."

Although the juror's statement supports the court's interpretation and does not support Wilson's interpretation even when read in isolation, reading it in context makes its meaning even clearer:

> Q: Now, you answered this question, "Do you have on views on the death penalty" yes, and then you said, "I'm in total agreement on its use." Then you said, "It is a fair and just punishment for certain crimes." Could you expand on that?
>
> A: If it's something – if something gets to the point where a death penalty is applicable, it's probably for a good purpose. It probably applies. So as a matter – just if it applies for sure or doesn't apply for sure to that situation, but it's probably – it's valid. I believe it's valid.
>
> Q: The court will instruct you if we get to the penalty phase that the death penalty is one option.
>
> A: Right.
>
> Q: And you're not required to find for the death penalty. In fact, you can reject the death penalty.
>
> A: Right.
>
> Q: And you can find for a penalty of life in prison without possibility of release. And that being the case, do you think you can meaningfully consider voting for life in prison without the possibility of release for someone who's killed two undercover – intentionally killed two undercover police officers in the line of duty?
>
> A: Again, I think you take that – I think you balance it when the time comes, you know, when the time comes when everything is presented to you. I can't make that decision right now.
>
> Q: You're not being asked to.
>
> A: I think I could do that, make that decision, but again, everything's got to be presented to me.

(Tr. at 1511-12.) Reading his statements in context, it is clear that this juror believes merely that the death penalty is a "valid" option that he would be willing to consider "when everything is presented" to him, not that it is ever the only option or even the option he is likely to choose.

Wilson also argues that this juror indicated that "it clearly would be the defense's burden to convince the juror to vote for a life sentence" rather than the death penalty. (Def. Challenge Juror No. 189 at 1.) Wilson cites no support for that argument and this court finds none in the record. Wilson also argues that "the juror could give no answer" when asked what factors might be relevant in the penalty phase and "was uninterested in the kind of person the defendant was, his background, or anything else related to the case at hand." (Id.) As this court has already explained, it rejects this argument by negative inference:

> Wilson's argument illustrates the difficulty with considering answers to an open-ended question that asks a juror to describe circumstances in which he would consider imposing a sentence of life imprisonment without possibility of release rather than death. No layperson is likely to answer this question by listing the mitigating factors set forth in 18 U.S.C. § 3592(a). But jurors are not obligated to have prior knowledge of these factors, and if they were then no court would ever successfully empanel a jury in a capital case.
>
> I will continue to ask this open-ended question and the analogous question about circumstances in which the juror would consider voting for the death penalty because I believe that these questions are helpful steps toward determining whether a defendant is life or death qualified. I will, however, be skeptical of arguments that a juror who describes circumstances in which he could consider voting for either punishment is unwilling to consider that punishment in any other circumstances.

(Order dated October 23, 2006 at 6.) Wilson is encouraged to employ this argument in the future only if and when it is supportable.

This court finds that Juror 189 is life qualified. Wilson's motion to have this juror excluded for cause is therefore denied.

### B.     Juror 209

Wilson moved to have Juror 209 excluded for cause on the ground that she is not life qualified. I agree, and I therefore grant that motion.

Whether to exclude this juror presents a difficult question. After considering the totality of her answers, both in her questionnaire and at voir dire, I have decided to exclude her not because I am certain that she "will automatically vote for the death penalty in every case," Morgan, 504 U.S. at 729, but rather because I am unconvinced, despite my extensive efforts to understand this juror's views, that she would not do so.

As the Government correctly notes, this juror made several statements suggesting that she is life qualified. (Govt. Ltr. to Judge Garaufis dated Oct. 30, 2006 ("Govt. Ltr.") at 10.) For example, when asked for her general views about the death penalty, this juror did not express any particular enthusiasm for that punishment and instead answered, "I have no strong feelings toward the death penalty" and "I have nothing against the death penalty." (Tr. at 1641.) When I then asked her if she was "open to the possibility of considering life in prison without the possibility of release instead of the death penalty for a person found guilty of intentionally murdering two police officers," she answered, "Yes." (Id. at 1642.)

This juror then, however, made a series of statements suggesting that she is not life qualified. I asked her, "[W]hat factors would you take into consideration in reaching your conclusion as to which penalty you would impose for intentional murder?" (Id.) She answered, "If those were his direct intentions, to commit a murder, I would give the death penalty." (Id.) This answer, read in isolation, supports excluding this juror on the ground that she "will automatically vote for the death penalty in every case" – or at least in every case of murder –

6

without "consider[ing] the evidence of aggravating and mitigating circumstances as the instructions require [her] to." Morgan, 504 U.S. at 729.

Because this answer seemed to contradict her prior statements, I asked her some more questions hoping to clarify whether this juror should in fact be excluded under Morgan:

> Q: Is there anything that you might consider with respect to . . . a defendant – even if it were his intention to commit the murder – that might cause you to vote for life in prison?
>
> A: If my conscience somehow bothered me, perhaps.
>
> Q: Well, what kind of issue might cause your conscience to bother you about imposing the death penalty?
>
> A: I can't say at the moment.

(Tr. at 1643.)

These answers are not sufficient to support a finding that Juror 209 is life qualified. While it is possible that a willingness to be swayed by a bothered conscience roughly corresponds to a willingness to meaningfully consider the mitigating factors set forth in 18 U.S.C. § 3592(a)(8), this juror did not provide the court any reason to believe this was so in her case, nor did she convince the court by any other means that she would meaningfully consider those factors as reasons to vote for a sentence of life imprisonment rather than death, as the statute requires.

Because a human being's life may be at stake in this case, I will qualify jurors only if I first affirmatively find that they are both life and death qualified. No juror will be found qualified on the mere basis that the party moving for exclusion cannot show beyond all doubt that the juror is not life or death qualified. Although I have been following this standard

7

throughout voir dire, my review of this juror has caused me to confront, directly and for the first time, which of the two just-described standards is proper. I grant Wilson's motion to have Juror 209 excluded for cause.

## II. The Government's Motions

### A. Juror 153

The Government moved to have Juror 153 excluded for cause on two grounds. The first is that this juror is not psychologically and emotionally prepared to serve. The second, which is based in part on the first, is that she is not death qualified.

There is ample support for the argument that this juror is not psychologically and emotionally prepared to serve on this jury. At voir dire, she said the following about the possibility of serving on this jury: "I feel physically I don't know if I can handle this. This is very difficult for me to handle." (Tr. at 1368.) She made numerous similar statements. For example, she stated – without being prompted – that she could not have served as a juror in recent trial of John Gotti, Jr. because "it is too intense." (Id. at 1368-69.) She then noted that this case, because it is a capital case, "is much more intense." (Id. at 1369.) When asked if she could evaluate cooperating witnesses' testimony in accordance with this court's instructions, she answered affirmatively and then articulated an apparent non sequitur: "I don't think I can handle it. I think it is too intense for me." (Id. at 1369.)

After she repeatedly characterized serving on this jury as too "intense," I asked this juror to explain what she meant by "intense." She answered as follows:

> A: This is the first for me. I would be honest again with you, this is the first time I was chosen for this type of case and it has been bothering me since I was called.

> Q: What's bothering you about it?
>
> A: The whole situation of the case.
>
> Q: Which means what?
>
> A: I don't know a lot about it, but knowing that there is the death penalty involved and that my word and everyone else's word could be the deciding factor of what happens, I just feel it is too intense for me. I just can't handle it. I feel very nervous and very uneasy about it.
>
> Q: Have you ever felt this way before about anything?
>
> A Certain things, yes.
>
> Q: Like what?
>
> A: When I found out that my father had passed away.

(Id. at 1373-74.) I take this juror's statements as a whole to be an extended plea not to be seated in this case. Because I believe that her plea is sincere, desperate, and based on emotional and psychological factors that would preclude her from performing her duties as a juror, I will exclude this juror for cause.

I will of course not exclude for cause a juror who merely expresses that the issues this court asks her to consider seem difficult. I am mindful of the Supreme Court's holding that "neither nervousness, emotional involvement, nor inability to deny or confirm any effect [of the possibility of voting for the death penalty] whatsoever is equivalent to an unwillingness or an inability on the part of jurors to follow the court's instructions and obey their oaths[.]" Adams v. Texas, 448 U.S. 38, 50 (1980). Consistent with this holding, I will exclude those jurors who, like Juror 153, clearly demonstrate "an unwillingness or an inability" to follow my instructions and

obey their oaths. I find on this ground that Juror 153 is not qualified to serve and I therefore exclude her for cause.

In addition, I find that this juror is not death qualified. I recognize that her answers suggest that she is not categorically opposed to the death penalty as a policy matter. Most notably, this juror wrote that she believes in the death penalty for crimes that are "heinous" and for which the defendant "has no remorse." (Answer to Question 59.) Her policy views are based at least in part on her belief that the death penalty provides "closure" "to the families touched" by crimes. (Answer to Question 68.) Wilson argued based on these statements that this juror is death qualified because "[s]he said to the court . . . that in certain circumstances she could render the death penalty as the appropriate punishment." (Tr. at 1377.)

The juror's statements do not extend as far as Wilson argues. The statements just quoted – which were not contradicted by any other statements – do not indicate that this juror could or would ever consider voting for the death penalty. In fact, this juror stated, in the course of explaining that the death penalty may be justified, "I don't know if I could be the one to make that judgment, because again it is too intense for me." (Id. at 1371.) For that reason, I asked her, "Understanding you do not know the specific circumstances of this case, are you open to the possibility of voting for the death penalty in this case?" (Id.) She answered, "No." (Id.) When I asked her why, she answered, "[W]hether this person is guilty or not, I cannot have that on my – I just can't – on my heart. I can't do it. I'm being very honest. I just can't." (Id. at 1371-72.) When I then asked if she could imagine any circumstances in which she could vote for the death penalty, she identified only one: "If I had to." (Id. at 1372.)

I credit this juror's claim that she was being honest. Because she will never "have to" vote in favor of the death penalty in this case, I find that she is not capable of considering voting for the death penalty, and that this constitutes an independent ground to exclude her for cause.

**B.     Juror 171**

The Government moved to have Juror 171 excluded for cause on the grounds that she will be unavailable during a portion of this trial and is not death qualified. I find that the former is a sufficient ground to exclude this juror for cause, and I therefore do not reach the more difficult question of whether this juror is death qualified.

This trial is expected to begin in the middle or toward the end of November 2006 and to last until the middle or end of January 2007. I plan to conduct trial Monday through Thursday each week, although not on Thanksgiving or the day before or after that holiday. Juror 171 stated at voir dire that she had recently been offered work directing a theater production outside this district for two weeks beginning November 23, the Monday before Thanksgiving. (Tr. at 1470-71.) This means that she could miss up to six days of trial, a circumstance that is not acceptable to this court as it would require either the trial to be recessed or the replacement of this juror with an alternate juror.

A decision to exclude a juror for cause on the ground of unavailability "is one well within the broad discretion afforded a district court, who in the conduct of a trial before it must carefully consider each juror's well being." U.S. v. Reese, 33 F.3d 166, 173 (2d Cir. 1994) (affirming exclusion for cause under Fed. R. Crim. P. 23 to permit a juror to take a business trip). This court has already excluded for cause – with the consent of both parties – two jurors on the ground of unavailability. Neither of those jurors presented as clear a case for exclusion as does Juror

11

171. The first, Juror 127, stated that she planned to be in India from November 22 until December 12, 2006 in order to prepare for her son's wedding, which is scheduled for July 2007. (Tr. at 1102-03.) Unlike Juror 171, Juror 127 appears to have great latitude to reschedule her departure from this district without compromising its purpose. Both parties nevertheless consented to her exclusion for cause. This court also excluded for cause Juror 150, a college student who said that she planned to play in basketball games outside this district during December. (Id. at 1455.) The parties consented to her exclusion even though she did not state that the games were scheduled for trial dates (as opposed to Christmas, Fridays, or weekends) or that she would suffer any hardship were she to miss these games entirely. (Id. at 1457.)

Juror 171's job will require her to miss as many as six days of trial. As I previously stated, I am not willing to postpone this trial so that Juror 171 can direct a play. (Id. at 1485.) I recognize that because of the nature of her career, she is able to work only when work is available, a variable that is outside her control. After questioning her at voir dire, I conclude that if this juror were required to forego her job in order to serve on this jury, she would feel she were serving under duress. (Id.) Because this juror has clearly expressed her hardship and because the parties do not doubt her sincerity and have already conceded that weaker cases of unavailability constituted grounds for cause, I rule that this juror is excluded for cause and need not return for additional voir dire.

    **C.**    **Juror 181**

The Government moved to have Juror 181 excluded for cause on the ground that she "clearly and unequivocally stated that she would be unable to decide whether the defendant should live or die." (Govt. Ltr. at 6.) This court agrees.

This juror answered "no" in her questionnaire when asked whether she could make a decision "about whether a defendant should live or die." (Answer to Question 63(a).) At voir dire, she affirmed that answer, stating, "I don't believe that I can make that decision." (Tr. at 1568-69.) In addition, this juror answered "yes" when asked whether she would have difficulty following the rule that "sympathy, bias and prejudice must not enter into the deliberations of the jurors as to whether the guilt of defendant has been proven beyond a reasonable doubt." (Answer to Question 57(a); Tr. at 1560.) When I asked her to explain her answer, she stated, "I think I'm at times not able to make a decision on my own as far as if it is going to pertain to something that really matters. I'm not the person to make a decision on my own. A lot of times I rely on other people to make decisions in difficult cases." (Id. at 1561.)

I am aware that, as Wilson points out, this juror also stated that she was open to the possibility of voting for death penalty in this case. (Id. at 1559-60; Def. Opp. to Govt. Challenge Juror No. 181 at 1.) That answer was plainly inconsistent with her statements that she cannot make the decision about whether a defendant should live or die and cannot make decisions about issues that "really matter" or in "difficult cases" and is likely to rely on others to make such decisions for her. When faced with inconsistent statements bearing on a juror's life or death qualification, this court must make a reasoned decision to credit one statement or set of statements over another. In this case, I credit the statements about indecisiveness because they were made numerous times, including after expressing that she was open to the possibility of voting for the death penalty in this case.

I do not credit this juror's potentially death-qualifying statement because it was expressed one time and contradicted repeatedly. In addition to contradicting that statement by expressing a

13

general inability to make a decision, the juror contradicted that statement directly – or at the least declined to affirm it – when she answered "I'm not sure" and "I can't answer" when asked whether she could consider voting for the death penalty in the case of "a young person who has been found guilty of potential murder." (Tr. at 1562.) I asked that question after she stated that the death penalty should not be applied to "a young person."[2] (Id. at 1559.)

Based on the totality of her statements, this court finds that Juror 181 is not able to make the important, difficult decisions that this case may require her to make, including the decision of whether Wilson, if found guilty of capital crimes, should be sentenced to life or death. She is therefore excluded for cause.

### D. Juror 224

The Government moved to have Juror 224 excluded for cause "based on her bias against law enforcement and cooperating witnesses" and on the theory that she is not death qualified. (Govt. Ltr. at 7.) That motion is granted.

There is good reason to find that this juror is biased against law enforcement.[3] Although she indicated on her questionnaire that she held no beliefs that would affect her ability to evaluate the testimony of law enforcement officers fairly and impartially "as long as they are honest" (Answer to Question 51(a)), she stated at voir dire that after she filled out the questionnaire her brother was falsely identified by a law enforcement officer as the driver who

---

[2] Wilson recognizes that in using the phrase "young person" this juror intended to refer to defendants "like Mr. Wilson." (Def. Opp. to Govt. Challenge Juror No. 181 at 1.)

[3] This bias is important both because the victims in this case were law enforcement officers and because the Government is likely to rely to some extent on the testimony of law enforcement officers.

caused a car accident in fact caused by the officer's relative. (Tr. at 1735-37.) When I asked whether her brother's experience would affect her ability to be fair and impartial in considering the testimony of law enforcement witnesses, she answered, "Yes and no." (Id. at 1738.) Although she later made statements suggesting that she might be able to assess the testimony of law enforcement officers fairly and impartially (see id. at 1738-39, 1755-57), I find that this juror's brother's experience and the just-quoted statement suffice to show that she is likely to be impermissibly biased against law enforcement witnesses.

This juror's bias against cooperating witnesses is clearer. In her questionnaire, she wrote that "they are talking only to get a lesser sentence." (Answer to Question 54(a).) After she made similar statements at voir dire (Tr. at 139-40), we had the following discussion:

> Q: Would you be able and willing to fairly and impartially assess the testimony of such a witness in accordance with my instructions?
>
> A: Yeah.
>
> Q: Well, it doesn't sound like a very strong yes to me. I just want to make a record of that. I want to know if you have any doubts about your ability to do that and what they are.
>
> A: Actually, I do. I do have doubts, because I won't be able to make a fair judgment, no, basically.
>
> Q: Why is that?
>
> A: Because you could be saying anything at that point to get out, you know, change the story.

(Id. at 1740.) She later added, "I'm looking at it as far as you're cooperating for a reason, you know. Is it because, you know, you're trying to get yourself out of some kind of thing? I mean, I

15

don't know how to explain this, how to explain it. Living where I live, you know, people say whatever they have to to get out of trouble." (Id. at 1752.)

I find based on these statements that this juror would not be able to fairly and impartially consider the testimony of cooperating witnesses. The ability to do so would of course not require her to set aside a healthy skepticism about cooperators. As the Second Circuit recently explained, "[a] trial judge [should] specifically caution [a] jury to scrutinize the testimony of [a] cooperating witness with an eye to his motivation for testifying and what he stood to gain by testifying." U.S. v. Vaughn, 430 F.3d 518, 523 (2d Cir. 2005). I find, however, that this juror will probably do more than merely "scrutinize" cooperators' testimony. Rather than considering their potential motivations for testifying, she is most likely to disbelieve their testimony automatically based on her belief – expressed unambiguously at voir dire and apparently based on her life experience – that they inherently lack any credibility.[4]

In addition, this court finds that Juror 224 is not death qualified. She made this clear at voir dire:

> Q: Can you envision any circumstance where, after hearing evidence about the convicted individual's character and the background of the case and listening to the argument of the government supporting the death penalty and the defense opposing the death penalty, that you could . . . vote for the death penalty for someone who intentionally murdered two police officers?
>
> A: No.

---

[4] I recognize that juror also provided statements to the contrary (see Tr. at 1752-53), but I find that those statements lack credibility in light of her sincere statements – including explanations as to her reasoning – that she could not consider cooperators' testimony fairly and impartially.

16

(Tr. at 1743.) Wilson argues that this juror merely expressed that voting for the death penalty would make her uncomfortable. (Def. Opposition to Govt. Challenge to Jurors 224 and 227 at 3.) That is not accurate. The juror mentioned her comfort level in response to the court asking why she could not envision circumstances in which she could vote for the death penalty for someone who intentionally murdered two police officers. (Tr. at 1743.) She was therefore not expressing that should could vote for the death penalty even though it was cause her discomfort; she was instead explaining that her potential discomfort would keep her from ever voting for the death penalty.

I recognize that this juror later said that she could vote for the death penalty and added, "but I don't know if I would be comfortable living with that the day afterwards." (Id. at 1744.) At best, this statement contradicts the juror's former statement, in which case I credit the former statement because it was unambiguous and instinctive whereas the latter statement was less clear and was likely an attempt to give the perceived "correct" answer. It is more likely, however, that the latter statement was merely a circumspect version of her earlier answer, and essentially confirmed that she would never be able to consider voting for the death penalty in this case. This interpretation was confirmed when I later asked this juror if she could think of any circumstance in which she "could impose the death penalty as opposed to life in prison for someone who killed intentionally?" (Id. at 1746.) She answered, "I don't know. I don't know. I don't know." (Id.) It is clear to this court that Juror 224 was struggling to articulate a death-qualifying answer, which the court's questioning had led her to believe was what the court wanted. That she could not do so confirms that she is not death qualified.

Wilson also argues that this juror is death qualified because earlier during voir dire she stated that she is "open to the possibility of voting for the death penalty in the case of someone who intentionally murders two police officers." (Def. Opposition to Govt. Challenge to Jurors 224 and 227 at 3 (citing Tr. at 1742).) But when I then asked what she understood by the word "open," she stated, "You know, just hearing everything, all sides, you know, of a story. To be open is you hear all sides of the story." (Tr. at 1742.) This juror's willingness to hear arguments for the death penalty is not equivalent to a willingness to consider voting for it, particular in light of the fact that moments later she explicitly stated that she could not consider voting for it in this case.

Because of this juror's biases against law enforcement and cooperating witnesses and because this juror is not death eligible, the Government's motion to have Juror 224 excluded for cause is granted.

## III. Conclusion

For the reasons set forth above, Wilson's motions are GRANTED with respect to Juror 209 and DENIED with respect to Juror 189 and the Government's motions are GRANTED. Juror 189 is therefore qualified to serve and Jurors 153, 171, 181, 209, and 224 are excluded for cause.

SO ORDERED.

Dated: November 5, 2006         /s/ Nicholas G. Garaufis
       Brooklyn, N.Y.           NICHOLAS G. GARAUFIS
                                United States District Judge