UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
UNITED STATES OF AMERICA

                              **MEMORANDUM & ORDER**

      v.                                  04-CR-1016 (NGG)

RONELL WILSON,

               Defendant.
----------------------------------------------------X
GARAUFIS, District Judge.

This court is currently conducting voir dire in a case in which the Government seeks the death penalty against Ronell Wilson ("Wilson"). Before the court are Wilson's motions to have Jurors 244 and 254 excluded for cause and the Government's motion to have Juror 227 excluded for cause. The factual background and much of the legal background applicable to these motions were set forth in this court's Orders dated October 20, October 23, and November 5, 2006.

For the reasons set forth below, Wilson's motions are GRANTED with respect to Juror 254 and DENIED with respect to Jurors 244 and the Government's motion is GRANTED. Juror 244 is therefore qualified to serve and Jurors 227 and 254 are excluded for cause.

I.      **Wilson's Motions**

      A.      **Juror 244**

Wilson moved to have Juror 244 excluded for cause on the ground that he is not life qualified. That motion is denied.

This juror does not present a close call. He stated unambiguously that he would consider the death penalty only if presented with "the worst of the worst, meaning the worst crime, the worst criminal." (Tr. at 1896.) He then stated that he would "absolutely" consider both potential

1

penalties and that he was "open to the possibility of voting for a sentence of life imprisonment without the possibility of release instead of the death penalty for a person found guilty of intentionally murdering two police officers." (Id. at 1896-97.) These statements are consistent with other statements he made at voir dire. (See, e.g., id. at 1900, 1901.)

In arguing that this juror is not life qualified, Wilson first asserts that the juror would automatically impose the death penalty upon any defendant found guilty of murder. (Id. at 1906.) That assertion simply lacks a basis in the record. Wilson next argues that this juror would be unwilling to consider evidence about Wilson's background in the penalty phase of this trial, if any. (Id.) It is true that this juror stated that the defendant's background "probably wouldn't have any consideration" when I asked him, in the absence of legal instruction, what kind of background evidence would be relevant to him in the penalty phase. (Id. at 1898.) I then, however, told this juror that he must consider certain factors during the penalty phase pursuant to my instructions, and he indicated unambiguously that he would meaningfully consider those factors:

> Q: If you're sitting on the sentencing part of the trial and there's evidence presented about the background of the defendant and the background of the case, I'm going to instruct you that you need to consider certain factors during the sentencing portion of the case, before you make a decision on the penalty[.] . . . Can you do that?
>
> A: Absolutely. I mean, I would listen to his previous background[.] I wouldn't just flat out say yes, I recommend the death penalty. No, that's not what I would do.

(Id. at 1904.) This answer is consistent with the juror's other unequivocal answers to the effect that he would follow the law and the court's instructions. This juror's statements leave no room for Wilson to argue that this is "[a] juror who will automatically vote for the death penalty in

every case [and] will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to." Morgan v. Illinois, 504 U.S. 719, 729 (1992). Juror 244 is therefore qualified. Wilson's motion to have him excluded for cause is denied.

**B.      Juror 254**

Wilson moved to have Juror 254 excluded for cause on the theory that during the penalty phase, if any, he would consider mitigation evidence offered by Wilson to be aggravating. (Def. Challenge Juror 254 at 2.) Wilson correctly notes that treating mitigation evidence as aggravating is impermissible under both the applicable statutory scheme and Supreme Court case law. (See id. (citing 18 U.S.C. § 3592(a)(8) and Zant v. Stephens, 462 U.S. 862, 885 (1983)).) Because I find a strong possibility that this juror would behave as Wilson predicts, I grant Wilson's motion.

In his questionnaire, this juror wrote that the death penalty "can and should be applied to the most severe crimes. If a person murders and is 'insane' (legally) then [the death penalty] should still apply. We don't need vicious murderers or insane murderers." (Answer to Question 58(a).) In order to clarify what this juror meant, I questioned him extensively at voir dire about this statement. I found his answers unsatisfying, such that Wilson's understanding of this juror's views is likely correct. The following question and answer are illustrative:

> Q:      Would you always impose the death penalty for an insane murderer?
>
> A:      I don't think it should be an issue. If it is murder and it's vicious, the insanity plea – insanity issue to me is if you kill someone and it is a vicious manner or crazy, something unreasonable like Manson . . . where there's no reaction, they don't have to react to something or whatever it is,

3

> something they are made – they feel they have to do, to me that would be something that would be automatic to me.

(Tr. at 1982.)

Although this juror had stated earlier in voir dire that he would be able to follow this court's instructions to consider certain factors in the penalty phase (id. at 1977) and would not automatically vote to impose the death penalty (id. at 1978), I find based on the quoted statements from the questionnaire and voir dire that this juror is likely to either (1) automatically vote to impose the death penalty upon a defendant who raises issues of mental impairment in the trial phase or the penalty phase or (2) consider evidence of mental impairment offered by Wilson during the penalty phase to be aggravating. I therefore grant Wilson's motion to have this juror excluded for cause.

## II. The Government's Motion – Juror 227

The Government moved to have Juror 227 excluded for cause on the ground that he is not death qualified. That motion is granted based on the following colloquy:

> Q: [C]ould you envision voting for the death penalty under . . . any circumstances where the person was found guilty of intentional murder?
>
> A: No.
>
> \* \* \*
>
> Q: Are there any circumstances, any kind of crimes where you feel you could possibly vote for the death penalty? Is there any kind of crime that – where you think you could possibly vote for the death penalty?
>
> A: No.

(Tr. at 1783.) These unambiguous answers establish that this juror is "irrevocably committed, before the trial has begun, to vote against the death penalty regardless of the facts and

circumstances that might emerge in the course of the proceedings," Witherspoon v. Illinois, 391 U.S. 510, 523 n.21 (1968), such that his views "would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath,'" Wainright v. Witt, 469 U.S. 412, 424 (1985) (quoting Adams v. Texas, 448 U.S. 38, 45 (1980)).

Wilson argues that this juror is death qualified because he is not "irrevocably committed" to voting against the death penalty and should therefore not be excluded under Witherspoon. That argument mischaracterizes both this juror's views and the law.

This juror's views are unambiguous. As already noted, he stated that he could not vote for the death penalty in any murder case or any other case. The statements Wilson cites do not support a contrary understanding of this juror's views. Wilson writes that this juror (1) "said he would listen to the relevant evidence and argument for and against a death sentence and might be open to imposing it" and (2) said "that he could, in fact, make the decision about whether the defendant should live or die, and that the decision would be based on the evidence he heard and the strength of the Government's case." (Def. Opp. to Govt. Challenges Jurors 224 and 227 at 4 (citing Tr. at 1782-84).) Assuming *arguendo* that this juror said he "might be open" to voting to impose the death penalty, that is not a basis to ignore his unambiguous statements making clear that he could never actually cast such a vote. Similarly, assuming this juror stated that he could choose between sentences of life imprisonment without possibility of release and the death penalty, such a statement does not suggest that he could ever actually vote for the death penalty.

Furthermore, the Supreme Court has explained that a juror can be excluded as not death qualified even if it cannot be demonstrated that the juror is "irrevocably committed" to voting against the death penalty, the standard suggested in footnote 21 of Witherspoon. Instead, a juror

5

can be disqualified for cause if his views about the death penalty "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Adams, 448 U.S. at 45. In Wainright, the Supreme Court left no doubt that this standard differed from that set forth in Witherspoon and that the Adams standard governs:

> [T]he Adams standard is proper because it is in accord with traditional reasons for excluding jurors and with the circumstances under which such determinations are made. . . . Exclusion of jurors opposed to capital punishment began with a recognition that certain of those jurors might frustrate the State's legitimate interest in administering constitutional capital sentencing schemes by not following their oaths. Witherspoon simply held that the State's power to exclude did not extend beyond its interest in removing those particular jurors. But there is nothing talismanic about juror exclusion under Witherspoon merely because it involves capital sentencing juries. . . . Here, as elsewhere, the quest is for jurors who will conscientiously apply the law and find the facts. That is what an "impartial" jury consists of, and we do not think, simply because a defendant is being tried for a capital crime, that he is entitled to a legal presumption or standard that allows jurors to be seated who quite likely will be biased in his favor.
>
> \* \* \*
>
> We therefore take this opportunity to clarify our decision in Witherspoon, and to reaffirm the above-quoted standard from Adams as the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment. That standard is whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." We note that, in addition to dispensing with Witherspoon's reference to "automatic" decisionmaking, this standard likewise does not require that a juror's bias be proved with "unmistakable clarity." This is because determinations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism. What common sense should have realized experience has proved: many veniremen simply cannot be asked enough questions to reach the point where their bias has been made "unmistakably clear"; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings. Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. For reasons that will be developed more

6

fully infra, this is why deference must be paid to the trial judge who sees and hears the juror.

Wainwright, 469 U.S. at 423-26 (footnotes omitted).

Although this court finds that Juror 227 is excludable under Witherspoon based on his likely "automatic" decisionmaking, it notes for the parties' benefit that such a finding is not a necessary condition for ruling that a juror is not death qualified. The Government's motion to have this juror is excluded for cause is granted.

**III. Conclusion**

For the reasons set forth above, Wilson's motions are GRANTED with respect to Juror 254 and DENIED with respect to Jurors 244 and the Government's motion is GRANTED. Juror 244 is therefore qualified to serve and Jurors 227 and 254 are excluded for cause.

SO ORDERED.

Dated: November 6, 2006  /s/ Nicholas G. Garaufis
 Brooklyn, N.Y. NICHOLAS G. GARAUFIS
 United States District Judge