UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA

                                                    **MEMORANDUM & ORDER**

          v.                                        04-CR-1016 (NGG)

RONELL WILSON,

                Defendant.
-----------------------------------------------------X
GARAUFIS, District Judge.

This court is currently conducting voir dire in a case in which the Government seeks the death penalty against Ronell Wilson ("Wilson"). Before the court are Wilson's motions to have Jurors 294, 305, and 337 excluded for cause and the Government's motion to have Jurors 275, and 346 excluded for cause. The factual background and much of the legal background applicable to these motions were set forth in this court's Orders dated October 20, October 23, November 5, and November 6, 2006.

For the reasons set forth below, Wilson's motions are GRANTED with respect to Juror 337 and DENIED with respect to Jurors 294 and 305 and the Government's motions are GRANTED. Jurors 294 and 305 are therefore qualified to serve and Jurors 275, 337, and 346 are excluded for cause.

**I.    Wilson's Motions**

    **A.    Juror 294**

Wilson moved to have Juror 294 excluded for cause, arguing that she is not life qualified because she "was unable to give any reason for voting for a life-without-release penalty option." (Tr. at 2331.) That motion is denied.

1

The colloquy that best supports Wilson's position is the following:

Q: What factors can you think of that you might want to consider in connection with the background of the individual or the circumstances of the case when deciding what the penalty should be?

A: Was this deliberately in cold blood? You know, did he know what he was doing? Who the persons were and [did the defendant] intentionally do what [he] did?

Q: The jury will have already decided that the person committed the crime intentionally.

A: Okay.

Q: So that has already been determined. Are there any factors about the background of the defendant or other circumstances that you can think of?

A: No.

Q: Will you consider all of the factors that the Court directs you to consider before you decide how you will vote at the penalty phase?

A: Yes.

(Tr. at 2324-25.) Based on this exchange, Wilson argued that "when the court asked [this juror] whether she'd hear the background of the defendant and other circumstances she flat out said, 'No.'" (Id. at 2326.) That is not correct. What the juror in fact stated was that she could not, in the absence of legal instruction, think of any factors regarding the defendant's background that she would consider in the penalty phase of this case, if any.

Because this court was concerned that the juror might not be willing to consider the "factors in the defendant's background" that she is obligated to consider, see 18 U.S.C. § 3592(a)(8), I instructed and questioned her further:

Q: It is important that as member of the jury you be open to considering various factors about the background of the defendant and the

circumstances of the case during the penalty phase, because the penalty choices are so serious. And the Court will direct you, instruct you, about this. If the Court instructs you as to certain factors that you must consider, will you consider all of those factors[?]

A: Yes.

Q: Is there anything that would make it uneasy for you to consider whatever the Court asks you to consider?

A: I don't think so.

(Tr. at 2328.) I find based on this exchange that Juror 294 is able and willing to consider all factors that she must consider during the penalty phase of this case, if any, including factors in Wilson's background. The record is simply devoid of evidence to the contrary. Wilson's motion is therefore denied.

### B. Juror 305

Wilson moved to have this juror excluded for cause on the ground that she is not life qualified. (Def. Challenge Juror 305 at 2-3.) That motion is denied.

Wilson relies primarily on this juror's answer to the question, "How would you be able to make the decision whether to impose one [penalty] or the other, do you think?" (Tr. at 2389.) She answered, "It would be hard to say to you without knowing what the circumstances were, without having the whole picture. At this point, I believe in the death penalty. This has nothing to do with what is going on. This is my belief. But between imposing one or the other, if that is what I was going to do, choosing between one and the other, I would go for the death penalty." (Id.) Based on this answer, Wilson characterizes Juror 305 as "a juror who would presume death to be the appropriate sentence for murder, or [would] require the defendant to shoulder the burden of proving that a life sentence is instead warranted." (Def. Challenge Juror 305 at 2.)

3

That characterization is unwarranted. This juror stated, "I would go for the death penalty" only after she was presented with a hypothetical situation in which the Government proved guilt and at least one aggravating factor and Wilson proved no mitigating factors. The court explained to this juror, "You can't get to the penalty phase unless you decide that the person is guilty of the intentional murder of two police officers." (Tr. at 2382.) The court also explained, "in this case, if the defendant is found guilty of intentionally murdering two police officers, the price can be life in prison without the possibility of release or the death penalty." (Id. at 2386.) As I explained after this juror was excused from the courtroom, "that is an extreme crime. And I think most people would say . . . if the death penalty is available, absent any other mitigating facts, I would support the death penalty." (Id. at 2395-96.)

A juror would be perfectly entitled to vote to impose the death penalty in this extreme case. Federal law provides that if the Government proves any aggravating factors, the jury "shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death." 18 U.S.C. § 3593(e). In the extreme hypothetical case posed by this court, the Government proved murder and at least one aggravating factor (multiple killings, see 18 U.S.C. § 3592(c)(16)) and Wilson proved no mitigating factors. Under section 3593(e), therefore, a jury considering this hypothetical case would be permitted to vote to impose the death penalty.

4

In addition, this court finds that Juror 305 was sincere when she indicated, after making the statement relied upon by Wilson, that she could in fact vote for a sentence of life imprisonment for a defendant guilty of murder:

> Q: Would you keep an open mind about the possibility of choosing life in prison as opposed to the death penalty?
>
> A: Yes. Yes, I believe I can keep an open mind.
>
> Q: Do you think there are circumstances where you could vote for life in prison in a case of intentional murder?
>
> A: Depending on the circumstances.
>
> Q: Is that a yes or a no?
>
> A: That is a yes.

(Tr. at 2389-90.) This and other statements persuade the court that this is a thoughtful juror who would follow the court's instructions, including the instruction to consider all factors she is required to consider in the penalty phase of this case, if any, and to meaningfully consider both penalty options. Wilson's motion to have this juror excluded for cause is therefore denied.

**C      Juror 337**

Wilson moved to have this juror excluded for cause on the grounds of undue sympathy for law enforcement and hardship. (Tr. at 2571.) That motion is granted.

This juror told the court that "a very good friend" of his, who is his son's godfather, is a police officer. (Id. at 2564; see also Answer to Question 17.) He indicated in his questionnaire that he would not be affected by any sympathy or bias regarding law enforcement if seated as a juror in this case. (See Answers to Questions 39(a), 42(d), 47, 51(a), 51(b), 53.) At voir dire, however, he explained that this was no longer true:

5

> Q: This case involves the alleged intentional murder of two police officers. Do you think the fact that your very close friend is a police officer would affect your ability to be fair and impartial in this case?
>
> A: You know, after coming the first time, the more time I have to think about it, it's been weighing on me, yes.
>
> Q: And what conclusion did you reach after weighing it?
>
> A: I tried to be fair, I would try to put myself in a neutral plane, but coming back and seeing my friend's face and thinking about it that way – you know.

(Tr. at 2564-65.) I find based on the quoted statements – and not on the mere fact that someone close to this juror works in law enforcement – that this juror is likely to be unduly sympathetic toward law enforcement officers, a class that includes the two victims in this case as well as witnesses for the Government. Wilson's motion to have this juror excluded for cause is therefore granted.

## II. The Government's Motions

### A. Juror 275

The Government moved to have Juror 275 excluded for cause on the ground that he is not death qualified. (Tr. at 2136-39.) That motion is granted.[1]

This juror presents an interesting question because he is not categorically opposed to the death penalty as a policy matter and would be willing to consider voting to impose it in certain cases. As the juror explained, although he "do[es] not feel that any human life should be taken at

---

[1] The Government also argues that exclusion for cause is warranted by this juror's views regarding the executive branch, race, and law enforcement. (Tr. at 2139-40.) Because the juror is clearly excludable based on his inability to consider voting for the death penalty, this court does not reach any potential alternative grounds.

any point" (id. at 2123), "[t]here are certain absolute egregious offenses [for which] I have come to actually feel that the death penalty is an appropriate measure" (id. at 2124).

The question for the court is therefore whether this juror could consider imposing the death penalty if the government proves that Wilson committed any of the capital crimes alleged against him. This juror made clear when questioned about what he meant by the phrase "egregious cases" that he could not do so:

> A: I really feel the death penalty is merited when there has been a premeditated, absolutely malicious plot to destroy an inordinate number of lives.
>
> Q: Like in what kind of a situation?
>
> A: Like a terrorist bombing, like what happened with the Oklahoma City bombing, and interestingly it was that changed my own opinion later when September 11th happened, I found myself reflecting on the Timothy McVeigh execution and although I had lived in a wonderful liberal passive pocket [of Oklahoma] myself, thinking that I'm only – only in favor of life, suddenly I shifted on that and I thought that was a fine punishment for that.
>
> Q: Did you know any of the families who lost someone in Oklahoma City?
>
> A: Yes, I did.

(Id. at 2126-27.)

At this point in voir dire, the juror had demonstrated that he was capable of considering voting for the death penalty in the class of cases involving mass murder or terrorism. Because this juror had not explicitly stated that he would consider voting for the death penalty *only* in those cases – and never in this case – I questioned him further as follows:

> Q: Question 48 [in the jury questionnaire asked,] "Do you have any religious philosophies or moral beliefs that might make you unable to render a guilty verdict?" And you checked yes [and wrote,] "I am against the death

7

penalty for reasons of humanity. Even if I found the defendant guilty, I would not support a penalty of death." Now, is that answer specific to the type of crime which is alleged here as opposed to a crime of mass murder?

A: Yes.

Q: So with respect to the crime that is charged here, which is the intentional murder of two people . . . would you consider the imposition of the death penalty as opposed to life imprisonment?

A: Based on my answer earlier, if the crime is on that scale then yes, I will consider that.

Q: On what scale?

A: On the scale of a premeditation of the taking of multiple human lives.

Q: If it were one human life?

A: No, I would not.

Q: If it's two human lives?

A: I doubt that I would.

Q: How many human lives – I don't want to quantify it, but what is the issue of magnitude that you grapple with when you decide at what point you can set aside your strongly held views about the sanctity of life and impose a penalty of death? That is what I'm driving at. . . . What's your line of demarcation, if you are able to articulate one?

A: I'm not certain that I am able to articulate that. If it has something to do with the intent to cause a widespread ripple effect of pain and suffering for victims, survivors, for social terror, for cultural target numbers, I will say – I would think that it would probably need to be, I'm guessing, upwards of twenty . . . with the intent to kill all twenty of those.

Q: Would a case that involves the murder of two individuals during the sale of illegal weapons, would that fit, possibly, within that category?

A: Possibly, if the sale of those weapons was for – not for a hunting expedition of deer, quail, or something like that. If it was clearly for the purpose of causing that widespread ripple, then yes.

8

| | |
|---|---|
| Q: | So if it were a linkage between the purchase of the weapons and some sort of crime against humanity, basically, is when – |
| A: | Yes. |
| Q: | It couldn't just be for the purpose of making a profit or being involved in drugs, or some other nefarious illegal activity? |
| A: | No. |

*   *   *

| | |
|---|---|
| Q: | I need to ask you again, could you consider imposing a penalty of death in a case that involve the intentional murder of two police officers? |
| A: | I can't answer that without having the other information. |
| Q: | Which information? |
| A: | The information whether or not it was intended, then, to be a crime against humanity and not just two persons. |
| Q: | If there is no evidence that it was intended to be a crime against humanity, what would your answer be then? |
| A: | I could not impose the death penalty on that. |

(Tr. at 2130-33.)

It is clear from this intelligent juror's thoughtful, honest statements that he could consider voting for the death penalty only if the defendant were found guilty of a "crime against humanity," which the juror defines as (1) the intentional killing of at least twenty people (2) with the "intent to cause a widespread ripple effect of pain and suffering for victims [and] survivors," *i.e.*, "social terror." Those are not elements of the capital crimes alleged against Wilson. (See Second Superseding Indictment, Docket Entry No. 179 (citing, among other statutes allegedly violated, 18 U.S.C. §§ 924(j), 1959(a)(1), and 2119(3)).)

9

Federal law requires that a defendant found guilty of a capital crime "be sentenced to death if, after consideration of the factors set forth in section 3592 in the course of a hearing held pursuant to section 3593, it is determined that imposition of a sentence of death is justified." 18 U.S.C. § 3591(a). Because it is the jury that must decide whether or not to impose such a sentence, 18 U.S.C. § 3593(b), and the factors it must consider do not include either of the two elements this juror would require the Government to prove before he would be willing to consider voting to impose the death penalty, see 18 U.S.C. §3592, it is clear that "th[is] juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" Wainright v. Witt, 469 U.S. 412, 424 (1985) (quoting Adams v. Texas, 448 U.S. 38, 45 (1980)); see also Sallahdin v. Gibson, 275 F.3d 1211, 1224-25 (10th Cir. 2002) (affirming trial court's exclusion for cause of a juror who "indicated there must be multiple deaths for him to consider the death penalty" was substantially impaired even though he later "indicated he would set aside his personal beliefs and follow the [court's] instructions"); McFadden v. Johnson, 166 F.3d 757, 759-61 (5th Cir. 1999) (affirming trial court's exclusion for cause of a juror who indicated that he could consider voting for the death penalty if the defendant "killed three, four, or five people" but not if he killed only one); United States v. Moore, 149 F.3d 773, 779-80 (8th Cir. 1998) (affirming trial court's exclusion for cause of a juror who indicated that he could consider voting for the death penalty if the defendant "murdered like maybe 100 or 200 people" but not if he murdered only "one or two").

Wilson does not argue that this juror is qualified because he is willing to consider voting for the death penalty in some class of cases that does not include this case. Instead, Wilson argues that in this case the Government alleges "crimes against humanity" as defined by the

10

juror. (Tr. at 2141-42, 2143-45.) Most notably, Wilson asserts that the Government will try to satisfy the second element this juror would require – intent to cause a "widespread ripple effect" – by introducing victim-impact evidence. (Id. at 2141-42.) Assuming *arguendo* that the Government will in fact offer evidence of the impact Wilson's alleged crimes have had on the victims' families and others, this court has no reason to believe that the Government intends to prove that Wilson's crimes were committed "with the intent to cause" a ripple effect, which is what this juror would require. In addition, it is clear that the Government will not argue that Wilson killed twenty or more people, intentionally or otherwise. Juror 275 is therefore found to be not death qualified, and the Government's motion to having this juror excluded for cause is granted.

### B. Juror 346

The Government moved to have this juror excluded for cause on the grounds that he is not death qualified and that traveling to the courthouse would pose a hardship. The motion is granted on both grounds.

A juror will be excluded for cause when "the juror's views [against the death penalty] would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" Wainwright v. Witt, 469 U.S. 412, 424 (1985) (quoting Adams v. Texas, 448 U.S. 38, 45 (1980)). An example of a substantially impaired juror is one who is "irrevocably committed, before the trial has begun, to vote against the death penalty regardless of the facts and circumstances that might emerge in the course of the proceedings." Witherspoon v. Illinois, 391 U.S. 510, 523 n.21 (1968). This court finds that Juror 346 is substantially impaired.

This juror told the court, "Intellectually, I'm opposed to the death penalty" and explained, "It's unacceptable for me to condone one man's taking of another's life." (Tr. at 2631.) He also indicated twice that he would not be able to decide whether a defendant should live or die. (Answer to Question 63(a); Tr. at 2639.) Based on these answers, I find this juror is irrevocably committed to voting against the death penalty in this case.[2]

I also find that this juror is excludable for cause on the ground of hardship. This juror lives in East Hampton (Tr. at 2640), which is approximately 100 miles from the courthouse in which trial will be conducted. If he drives, he claims it will take him three hours to travel in each direction. (Answer to Question 81.) If he instead travels by public transportation, he will need to wake up at 4:30 am each day of trial and will probably return home after 9:00 pm each day. (Tr. at 2640.) In light of the fact that this juror is sixty-four years old (Answer to Question 4), I find that it would be cruel to require this juror to serve.

Because this juror is found not to be death qualified and because serving as a juror in this case would constitute a hardship, the Government's motion to have this juror excluded for cause is granted.

## III. Conclusion

For the reasons set forth above, Wilson's motions are GRANTED with respect to Juror 337 and DENIED with respect to Jurors 294 and 305 and the Government's motions are

---

[2] Like Juror 275, this juror indicated that he could consider voting for the death penalty in the case of Timothy McVeigh. (Tr. at 2633, 2639.) As explained above, a juror is excludable for cause as not death qualified even if he indicated that he could consider voting to impose the death penalty in some class of cases that does not include this case. Wilson concedes, as he must, that this juror never stated that he could consider voting for the death penalty in this case. (Id. at 2644.)

GRANTED. Jurors 294 and 305 are therefore qualified to serve and Jurors 275, 337, and 346 are excluded for cause.

SO ORDERED.

Dated: November 13, 2006                                  /s/ Nicholas G. Garaufis
       Brooklyn, N.Y.                                      NICHOLAS G. GARAUFIS
                                                           United States District Judge