UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
UNITED STATES OF AMERICA

              **MEMORANDUM & ORDER**
   v.             04-CR-1016 (NGG)

RONELL WILSON,

      Defendant.
----------------------------------------------------X
GARAUFIS, District Judge.

  This court is currently conducting voir dire in a case in which the Government seeks the death penalty against Ronell Wilson ("Wilson"). Before the court are Wilson's motion to have Juror 374 excluded for cause and the Government's motions to have Jurors 361 and 380 excluded for cause. The factual background and much of the legal background applicable to these motions were set forth in this court's Orders dated October 20 and 23 and November 5, 6, and 13, 2006. For the reasons set forth below, all three motions are GRANTED. Jurors 361, 374, and 380 are therefore excluded for cause.

**I. Wilson's Motion – Juror 374**

  Wilson moved to have Juror 374 excluded on the ground that she is not life qualified. That motion is granted.

  This court finds based on the totality of this juror's statements that she is likely to vote to impose the death penalty automatically – rather than after meaningfully considering the alternative punishment of life imprisonment and mitigating factors offered by Wilson – if Wilson is found guilty of any capital crimes. Most important is the following dialogue, which took place at voir dire:

1

> Q: Let's look at this case. In this case if the jury returns a verdict of guilty for the intentional murder of two police officers, would you automatically vote for the death penalty?
>
> A: Probably, yes.
>
> Q: Why?
>
> A: We have to think about friends who are cops and relatives, you would want justice, if somebody killed them you would want them to get punished, whether relatives or good friends.
>
> Q: If the Court instructs you that you have to consider factors about the defendant's background and other circumstances of the case, would you consider those factors before reaching a verdict on the penalty?
>
> A: Obviously, it's only fair that you listen to what they have to say, but in the long run, if the evidence brings them to the verdict of guilty then they should get what they deserve.

(Tr. at 3198-99.) This juror made clear what she meant by the phrase "what they deserve" when she wrote in her questionnaire that the death penalty is "the ideal punishment if you kill someone." (Answer to Question 59.)

This juror did not merely state that she would "probably" vote for the death penalty if Wilson were found guilty. Instead, she stated that she would "probably" *automatically* vote for that penalty. She therefore must be excluded under Morgan v. Illinois, 504 U.S. 719 (1992). Moreover, to the extent that her own words to that effect are not persuasive, this court's finding that the juror would automatically vote to impose the death penalty is augmented by her unsolicited, sincere admission that she would be thinking about friends and relatives who are police officers when determining which penalty should apply. Wilson's motion is granted.

## II. The Government's Motions

### A. Juror 361

The Government moved to have Juror 361 excluded for cause on the ground that he will not follow the law and this court's instructions in either the trial phase or the penalty phase of this case. That motion is granted.

This juror made clear that he would ignore the law whenever it conflicted with his personal notions of what the law should be. For example, he wrote in his questionnaire that when determining guilt or non-guilt, he would apply a more burdensome standard of proof than proof beyond a reasonable doubt if the Government sought the death penalty. (Answer to Question 66.) At voir dire, when I reminded him of this statement and asked if he could follow the law despite having made it, he answered "yes" but added, "I realize the way it's broken down into two separate phases, but just as my own conscience, it is difficult to keep them as two separate phases. You have to see the one has something to do with the other. I mean I think I can keep it separate, but I don't know it's completely that easy to totally separate." (Tr. at 2717-18.) This statement did not inspire me to believe that he could follow the law. He later stated, "Everybody's definition of reasonable doubt is going to be different." (Id. at 2725.) I understood that statement to be an attempt to reconcile his claim that he could follow the law with his determination to instead do what he believes is right. The import of this statement is that he would in fact not follow the law.

This juror also indicated that he would fail to follow the law in the penalty phase of this case, if any, in at least two ways. First, he indicated in his questionnaire and at voir dire that he could consider voting to impose the death penalty only if presented with "hard evidence" of guilt,

which he defined to include DNA evidence and video recordings, but never in a case based on eyewitness testimony and other evidence he does not consider "hard." (Answers to Questions 48(a), 58(a), 58(b), 59, 62, 66, 69; Tr. at 2713, 2715-16.) That approach lacks a basis in the law and would be contrary to this court's instructions.

Second, this juror indicated in his questionnaire that he considers life in prison without the possibility of release to be a more severe punishment than death. (Answer to Question 68.) At voir dire, I informed him that the law deemed death to be the harsher penalty. (Tr. at 2718.) We then had the following conversation:

> Q: Will you follow the court's instructions that the penalty of death is a greater penalty and a penalty of life in prison is not as extreme a penalty?
>
> A: I can try to follow the instructions as they're given, but just for my own belief, I see that opposite, regardless of what the law says. Obviously I would try to go by the law in the case.
>
> Q: But you would have some difficulty doing that?
>
> A: Yes, sir, I would definitely have difficulty doing that.

(Id. at 2718-19.) As this court has previously explained – and as Wilson has repeatedly argued – the danger posed by a juror holding this view, which I call "penalty inversion," is that he may consider mitigating factors to be aggravating, such that evidence of mitigating factors would make the juror more likely to vote to impose the death penalty. (See Order dated October 20, 2006 at 3-4.) Such a juror must be excluded under both statutory law and Supreme Court precedent. See 18 U.S.C. § 3592(a)(8) (requiring jurors to consider "factors in the defendant's background, record, or character or any other circumstance of the offense *that mitigate against imposition of the death sentence*") (emphasis added); Zant v. Stephens, 462 U.S. 862, 885 (1983)

("a jury's decision to impose death" should be set aside if a juror "attaches the 'aggravating' label to . . . conduct that actually should militate in favor of a lesser penalty").

Because I find that this juror would refuse to follow the law whenever it conflicts with his vision of what the law should be, and because such conflicts will arise during this case, the Government's motion to have this juror excluded for cause is granted.

### B. Juror 380

The Government moved to have Juror 380 excluded for cause on two grounds: that he is biased against law enforcement officers – who in this case are both the victims of the crimes alleged and likely witnesses for the Government – and that he has breached his anonymity. The motion is granted on both grounds, each of which would be sufficient on its own to support this decision. This court also find that exclusion is warranted by a third independent ground: this juror's penalty inversion.

Juror 380 stated sincerely and unambiguously that he believes law enforcement officers are biased against African Americans and that this belief would in turn cause him to be biased against law enforcement officers who testify in this case:

> Q: You indicated that you believe that there are certain groups or a group that doesn't receive fair treatment from law enforcement. You [wrote in your questionnaire,] "Originally that distinction would go to me and my people. But since 9/11 that distinction has been handed over to the Arab people." When you say "me and my people," you mean African Americans?
>
> A: Yes, sir.
>
> Q: How do you feel about that?
>
> A: Getting railroaded sometimes in court for absolutely something you're definitely innocent of? It's crazy. It makes you want to hurt people. Makes you want to get at them.

5

Q: Do you think that still is the case for African Americans?

A: Yes, it still happens to some.

Q: Do you think you can put aside your opinions about that and evaluate this case based on the evidence presented during the trial and in accordance with the court's instructions?

A: I believe so, yeah.

Q: You indicated that you have been stopped or questioned by law enforcement on occasion. Could you tell us about those experiences?

A: It's like walking around in the neighborhood and, I don't know, maybe something happened somewhere within the neighborhood and they'll stop anybody. They stop everybody, put you up against the wall. "What you got in your pockets?" I haven't done anything. I'm getting off the bus. I'm coming from work. "You look like so-and-so. You fit a description." Come and find out, nowhere near the description. Stuff like that.

Q: How often does this happen?

A: It's happened to me at least twice.

Q: Recently or in the distant past?

A: In the distant past.

Q: But it happens to others currently, that you know?

A: It happened to my son recently, last year.

Q: Do you think that this treatment is unfair to you and your family?

A: Oh, yes.

Q: Do you think that those experiences would cause you to have a bias or prejudice against law enforcement officers who testify in this case?

> A: I would have to say yes.

(Tr. at 2861-63.) This court cannot qualify a juror who concedes that he will be biased against an entire classes of likely witnesses.

Although this juror later stated that he could disregard his bias against law enforcement officers when considering their testimony (id. at 2873), he undermined that claim when he went on to state that the judiciary works in concert with police in a manner that is biased against African-Americans:

> Q: Do you think that it's more difficult for someone who is accused of killing a police officer to get a fair trial than someone who is just accused of – pardon the expression – ordinary murder?
>
> A: You can call it – the court works with the policemen, so – it's a hard deal.
>
> \*   \*   \*
>
> Q: Do you think there's any likelihood or possibility that because he's accused of killing two police officers that he won't get fair treatment in the criminal justice system?
>
> A: Possibility.

(Tr. at 2875-76.) These statements augment the court's finding that this juror will not be able to evaluate the testimony of law enforcement officers free from bias. No person who sincerely believes that law enforcement and the judiciary work in concert to treat African Americans unfairly as a matter of course could be expected to do so.

This court finds as a second, independent ground for excluding this juror that he compromised his anonymity by listing in his questionnaire – in violation of this court's instructions – the full names of two of his colleagues and one of his friends and the first name of one of his neighbors. (Answers to Questions 31(a), 31(c); Tr. at 2857-58.) This information, in

7

combination with other information disclosed in this juror's questionnaire (such as the neighborhood in which he lives, see Answer to Question 11) is probably sufficient for a motivated individual to determine this juror's identity.

I granted the Government's motion to empanel an anonymous, semi-sequestered jury because I found that (1) Wilson's "criminal history and his participation in a large scale criminal enterprise without question show that he is dangerous," (2) Wilson "through his criminal associates who continue to be at liberty [] is in a position to interfere with the jury," (3) Wilson and his associates have a history of interfering with the judicial process, and (4) the jury should be protected from the intense media interest in this case. (Order dated August 21, 2006 at 5-7.) The Order granting that motion would be hollow if I were to qualify jurors who have made themselves easy to identify.

A third ground exists for excluding this juror. Like Juror 361, this juror is unlikely to follow the law to the extent that it conflicts with his belief that life imprisonment without the possibility of release is a harsher penalty than the death penalty:

> Q: If this case gets to the penalty phase, the law is that the death penalty is a more extreme penalty than life in prison and the parties are going to argue as to what the punishment should be based upon that legal principle. Can you accept the principle for purposes of this case and your deliberations that the death penalty is a more extreme penalty than life in prison?
>
> A: Yeah, it's more extreme. It's a more extreme penalty.
>
> Q: Which do you think is a harsher penalty in terms of the defendant, the death penalty or living your life in prison for years and years?
>
> A: Say it again, please.
>
> Q: Which do you think is a harsher penalty on the defendant, living your life in prison or getting the death penalty?

8

> A: Life in prison is more harsher. Sitting behind bars ain't fun.
>
> Q: Do you think you can put that view aside and make your decision on the penalty based on the principle that the death penalty is a more harsh penalty than life in prison?
>
> A: No. The death penalty to me is more extreme. It ain't harsher because, like I said, it's quick, it's going to bring everything to close now, you know.
>
> Q: Is it the easy way out?
>
> A: In some cases, yeah.

(Tr. at 2870-71.) This juror later stated that he could set this belief aside and follow the law. (Id. at 2873-74.) I nevertheless find a strong possibility that he would impermissibly "attach[] the 'aggravating' label to . . . conduct that actually should militate in favor of a lesser penalty." Zant v. Stephens, 462 U.S. 862, 885 (1983); see also 18 U.S.C. § 3592(a)(8). This juror's personal views on this issue are, like his views regarding law enforcement, closely held and unambiguous. I therefore find it difficult to believe that he could set those views aside, notwithstanding his claim to the contrary.

Because this juror is biased against law enforcement officers and would apply that bias to witnesses in this case, because he has breached his anonymity, and because he would probably be unable to follow the law regarding which available penalty is harsher, the Government's motion to have him excluded for cause is granted.

**III.    Conclusion**

For the reasons set forth above, Wilson's motion to have Juror 374 excluded for cause and the Government's motions to have Jurors 361 and 380 excluded for cause are GRANTED. Jurors 361, 374, and 380 are excluded for cause.


SO ORDERED.

Dated:  November 14, 2006                                         /s/ Nicholas G. Garaufis
        Brooklyn, N.Y.                                            NICHOLAS G. GARAUFIS
                                                                  United States District Judge