UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
UNITED STATES OF AMERICA

                v.

RONELL WILSON,

                Defendant.
----------------------------------------------------X

**MEMORANDUM & ORDER**
04-CR-1016 (NGG)

GARAUFIS, District Judge.

      This court is currently conducting voir dire in a case in which the Government seeks the death penalty against Ronell Wilson ("Wilson") based on allegations that include the murder of two law enforcement officers. Before the court are Wilson's motion to have Jurors 3, 394, and 431 excluded for cause and the Government's motion to have Juror 517 excluded for cause. The factual background and much of the legal background applicable to these motions were set forth in this court's Orders dated October 20 and 23 and November 5, 6, and 13, 14, and 15, 2006. For the reasons set forth below, Wilson's motions are GRANTED with respect to Jurors 3 and 431 and DENIED with respect to Juror 394 and the Government's motion is GRANTED. Jurors 3, 431, and 517 are therefore excluded for cause and Juror 394 is qualified to serve.

**I.    Wilson's Motions**

    **A.    Juror 3**

      Wilson moved to have Juror 3 excluded for cause, arguing that she would not consider evidence of mitigating factors offered by Wilson in the penalty phase of this case, if any. (Tr. at 139-40, 3682; Def. Challenge Juror 3 at 4.) That motion is granted.

1

The Supreme Court has held that jurors may not "refuse to consider, as a matter of law, any relevant mitigating evidence. [They] may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration." Eddings v. Oklahoma, 455 U.S. 104, 114-115 (1982).

In her questionnaire, this juror wrote, "I believe if you take a life, your life can be taken." (Answer to Question 59.) She also wrote that her religion's teaching regarding the death penalty was, "Life for Life." (Answers to Questions 70(a).) When asked whether she agreed with this teaching, she wrote, "Your life for the life you took." (Answers to Questions 70(b).) Because those answers suggested that Juror 3 might vote to impose the death penalty automatically upon a defendant found guilty of murder – without considering factors mitigating against imposition of the death penalty – I asked her, "Do you have some idea of how you would approach the issue of whether someone should be put to death or serve life in prison without the opportunity to be released?" (Tr. at 130.) She answered, "Well, I would think it would have to do with the severity of whatever they are charged with. I have to think about that and everything that went into it, and then make a decision on how strong or how ferocious or whatever, whatever was done, and how it was done and the thinking in how it was done. I'll take all that into consideration." (Id.)

After hearing this answer, Wilson became concerned that Juror 3 would refuse to consider mitigating evidence. (Id. at 133.) I therefore questioned this juror further as follows:

> Q: Now, in the penalty phase, making your decision on the penalty, could you consider life without the possibility of release, taking all the factors into consideration, including facts about the defendant's background, personal background, as well as the facts surrounding the crime?

A: I don't see, really, [t]hat the background has that much to do with it, what they did.

Q: Well, we're beyond the point of what they did.

A: Yes.

Q: It's been proven at that point that the person did this crime.

A: Yes.

Q: But the question now for the jury that has to make a legal and moral judgment as to which penalty to impose in that situation, you would be asked to consider many things, and among them, factors about the background of the defendant. Would you be able to take those into consideration in deciding what the penalty ought to be for that defendant along with everything else that you are required to consider or permitted to consider?

A: Yes.

Q: In that circumstance, could you, based upon considering those factors along with any other factors that you are allowed to consider, could you, based on all those factors, envision voting for a sentence of life in prison without possibility of release?

A: Yes.

(Id. at 138-39.)

Based on these answers, Wilson argued that this juror was not willing to consider mitigating evidence. (Id. at 146-47.) Wilson recognized that this juror made a statement to the contrary, however, and argued that this court should give more credence to the statements indicating an unwillingness to consider mitigation:

> When a federal district court judge asks a juror, who really doesn't understand principles of law or the difference between a trial or a penalty phase, whether she . . . can consider all of the circumstances . . . she's extrapolating [that] as a question of whether she can be fair, and her response to that is, "Yes, I can be fair. I can consider everything." But when she volunteers, in response to a direct question

3

whether or not she can consider a defendant's background in making the decision of life or death, and she says she doesn't see where this has anything to do with the mitigation process, [she cannot serve under Supreme Court case law.]

(Id.)

Because this court was not certain whether Juror 3 was in fact unwilling or unable to consider mitigation evidence, that Juror was invited back for further voir dire. Upon her return, she was questioned as follows:

> Q: As a juror when you are assessing the evidence during a penalty phase, what would you like to know about the background of the defendant or the circumstances of the crime that might help you in deciding which is the more appropriate penalty? What would you like to know?
>
> A: Well, in this case I guess you want to know how the defendant felt about the people in general, if they didn't like him or just, you know, how people is, I don't like certain people and, you know, things like that I like to know. If something like that had something to do why he do what he do. You understand?
>
> Q: It's about something that he's thinking in his mind?
>
> A: Maybe I don't like certain things, when this comes up, I just don't think about it, I just do because I don't really like maybe what these people stand for. Sometimes that has something to do with it and so I like to know about that.
>
> Q: Anything about the crime that you might want to know?
>
> A: I would like to know what happened, and what was it all about, I would like to know that. See why a person would go that far[.]
>
> Q: If I instruct you, you have to consider certain factors about the defendant's background and circumstances of the case, before you make your decision – I won't tell you what decision to make, because that is your decision and it's a very tough decision to have to address – but will you follow my

> instructions and consider all of those factors that I tell you to consider with the rest of the jury?
>
> A: Yes.

(Id. at 3679-81.)

As when she was first questioned, this juror indicated here – though her answers were far from clear – both (1) that she would not consider evidence about Wilson's background and (2) that she would follow this court's instructions to consider Wilson's background and other mitigating factors. Because these answers are contradictory, this court adopts Wilson's argument regarding this juror. This juror repeatedly and instinctively made statements suggesting that she will not consider mitigation. Although I believe she was sincere when she nevertheless said she would follow the court's instructions, I am not sufficiently confident that she would actually do so. Wilson's motion is therefore granted.

**B.     Juror 394**

Wilson moved to have Juror 394 excluded for cause on the ground that, like Juror 3, she would not consider evidence of mitigating factors offered by Wilson in the penalty phase of this case, if any. (Id. at 3711-12.) That motion is denied.

The critical dialogue between this court and Juror 394 was the following:

> Q: Could you meaningfully consider voting for the death penalty instead of life in prison without the possibility of release for a person found guilty of the intentional murder of two police officers?
>
> A: Okay, my answer to that [is], I'm not God, but I feel like if someone killed the officers, rightfully, I think they should be put to death.
>
> Q: Let me put it another way. Are you open to the possibility of voting for life in prison without the possibility of release for someone who has been convicted of intentionally murdering two police officers?

> A: Yes.
>
> Q: What factors or information about the defendant would you want to know before deciding whether to impose the death penalty, which is the harsher penalty, or life in prison, which is the less harsh penalty? What would you want to know about him?
>
> A: I would like to find the reason why did he kill the two police.
>
> Q: Anything about his background, his personal background that you would like to know about him?
>
> A: You say his personal background?
>
> Q: Anything about him?
>
> A: I would like to find out where he came from, maybe what neighborhood he used to live in, stuff like that.
>
> \* \* \*
>
> Q: You mentioned that one of the things you might want to know about the defendant is about his neighborhood. What sorts of things about his neighborhood might be of interest to you when you are considering what the penalty ought to be. Did you have something in mind in particular or not?
>
> A: A lot of crimes happen over there and I would like to know what neighborhood he came from.
>
> Q: You want to know about his surroundings, his life?
>
> A: His surroundings.

(Id. at 3705-06, 3709-10.)

Wilson relies primarily on this juror's statement that "if someone killed the officers, rightfully, I think they should be put to death." (Id. at 3712.) As this court explained in denying

Wilson's motion to have a different juror excluded for cause, that statement does not reflect an impermissible belief:

> [Juror 305] stated, "I would go for the death penalty" only after she was presented with a hypothetical situation in which the Government proved guilt and at least one aggravating factor and Wilson proved no mitigating factors. The court explained to this juror, "You can't get to the penalty phase unless you decide that the person is guilty of the intentional murder of two police officers." The court also explained, "in this case, if the defendant is found guilty of intentionally murdering two police officers, the price can be life in prison without the possibility of release or the death penalty." As I explained after this juror was excused from the courtroom, "that is an extreme crime. And I think most people would say . . . if the death penalty is available, absent any other mitigating facts, I would support the death penalty."
>
> A juror would be perfectly entitled to vote to impose the death penalty in this extreme case. Federal law provides that if the Government proves any aggravating factors, the jury "shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death." 18 U.S.C. § 3593(e). In the extreme hypothetical case posed by this court, the Government proved murder and at least one aggravating factor (multiple killings, see 18 U.S.C. § 3592(c)(16)) and Wilson proved no mitigating factors. Under section 3593(e), therefore, a jury considering this hypothetical case would be permitted to vote to impose the death penalty.

(Order dated November 13, 2006 at 4 (citations to the record omitted).) Because Juror 394 was presented with the same extreme case, she cannot be excluded merely for stating that a defendant found guilty in that extreme case "should be put to death."

Furthermore, this juror stated sincerely and unambiguously that she could meaningfully consider voting for a sentence of life in prison even in the extreme case posed by the court, and that in deciding which penalty to vote for she would like to know about Wilson's background. None of her answers were to the contrary. Based on the totality of this juror's statements, I

7

find that she is life qualified and that she would consider all mitigation evidence offered by Wilson in the penalty phase of this case, if any. Wilson's motion is denied.

### C. Juror 431

Wilson moved to have Juror 431 excluded for cause on the ground of a perceived bias against gang members. (Tr. at 3301-03.) That motion is granted.

This juror indicated in his questionnaire that a close friend or family member was beaten and mugged by a group of people. (Answer to Question 38(a).) When asked if that experience would affect his ability to evaluate evidence in this case fairly and impartially, he answered "yes" and explained, "It's a feeling [I] cannot explain in few words." (Answer to Question 58(e).)

At Wilson's request, I explored this issue further at voir dire:

Q: Why would you not be able to be fair and impartial in this case because your friend got beaten once?

A: I don't know how to explain it, but that's what I feel like someone who have the power, who are in the group, they have that they can do everything and we cannot avoid them.

Q: Who are these people?

A: I don't know.

Q: There is something about this that bothers you. What is it that bothers you? What is it about somebody with power, I don't understand. Who is the person that has the power?

A: It's not any person, suppose any group, if like the group of people like they're protesting, suppose you're going on the street and people are protesting – I don't know. I cannot explain.

(Id. at 3298-99.) Despite my best efforts, I was not able to fully understand the nature of this juror's fear. I am nevertheless convinced, based on his answers and body language, that he

8

harbors a sincere fear of group attacks. Wilson may therefore be correct in arguing that this juror "has a serious issue that has something to do with gangs or groups who apparently victimized his friend and although he wasn't able to explain that, I'm uncomfortable with the idea that he would be a fair juror when he writes there is a concern" about his ability to be fair. (Id. at 3302.)

Although I am not convinced that this juror would be unfair in this case, his ambiguous responses leave that possibility open. Because the Government will argue that Wilson was a gang member and that his crimes were to some degree committed in concert with others, I cannot qualify a juror who may interpret gang affiliation as proof of guilt of some particular criminal act or who may refuse to consider mitigating factors introduced at the penalty stage of this case, if any, if he believes that Wilson is a gang member. Wilson's motion is therefore granted.

## II.     The Government's Motion – Juror 517

The Government moved to have Juror 517 excluded on the ground that she would be biased in favor of a defendant who, like Wilson, is charged with murdering two police officers. That motion is granted.

This juror indicated in her questionnaire that her ex-husband is currently incarcerated for robbery and attempted murder. (Answer to Question 41(c).) At voir dire, she explained that she married her ex-husband after he was incarcerated. (Tr. at 3801-02.) She said they met through her friend – whose husband was also incarcerated – and were married in prison after getting to know each other through correspondence. (Id. at 3801.) After eight years of wedded bliss, during which time this juror visited her husband regularly, she discovered that he was cheating on her, apparently with more than one other woman. (Id. at 3802-03, 3814.) She then divorced him. (Id. at 3802.)

9

The mere fact that this juror married a convicted criminal may not be a basis for finding that she would be biased in favor of Wilson, but when the court considers what her ex-husband did, such bias seems more likely than not:

> Q: I just have a few more questions. You answered the following question, question 81: "Is there any other matter which you should call to the Court's attention which may have any bearing on your qualifications as a juror?" You checked, yes, and you said the incarceration of my ex-husband [who has been] in jail since 1983. Why do you think you needed to bring that to the court's attention?
>
> A: I felt I had to, you know, being this was also a murder case and this is something that he was incarcerated for, attempted murder, so I felt the court had a right to know that I know something about that.
>
> Q: I appreciate that. Let me follow up a little more. You read the transcript of his trial?
>
> A: I had everything, yeah.
>
> Q: In that case, based on what you read and know about it, do you think your ex-husband was treated fairly by the criminal justice system?
>
> A: Yes.
>
> Q: And who was the intended victim of the murder plot in that case?
>
> A: Who was the intended victim?
>
> Q: He attempted murder. Who did he attempt to murder, meaning was it a friend, was it a colleague, someone during a holdup?
>
> A: It was a private detective who got himself involved on his way home from work, heard the shooting going on, and he started getting himself involved and shooting also and there were shots fired back and forth. That's why he got the twenty-five to life, he was shooting at a police officer, instead of seven years for attempted robbery and attempted murder.
>
> Q: He was engaged in an attempted robbery, this private investigator comes along and they had a shoot out?

> A: I guess so. A few people involved in that. It was a Brinks truck in front of a bank, there was more than one person involved in this.
>
> Q: It wasn't a bodega robbery, he was trying to rob a Brinks truck at gun point?
>
> A: Yes.
>
> Q: This fills in some of the blanks.

(Id. at 3812-13.)

The Government alleges that Ronell Wilson murdered two undercover law enforcement officers. This juror married a man after he was convicted – fairly, in her view – of attempting to murder a law enforcement officer. It therefore seems likely that this juror believes there is nothing wrong with attempting to murder law enforcement officers. The true danger is that this juror married her ex-husband not in spite of his conviction but rather because she romanticized the acts underlying his conviction. At the very least, it is safe to assume that between attempting to murder law enforcement officers and conducting an extramarital affair, she believes the latter to be the greater sin.

This court cannot qualify a juror who is likely to treat the very serious allegations raised in this case so lightly, and who is likely to harbor a bias in favor of the defendant.[1] Moreover, based on her demeanor during questioning, the court finds that this juror appears to suffer from an emotional instability and disorientation that would undermine her ability to fairly and impartially consider the evidence in this case. The Government's motion is therefore granted.

---

[1] It is also reasonably possible that because her ex-husband cheated on her, this juror harbors an undue prejudice against those who kill or attempt to kill law enforcement officers.

### III. Conclusion

For the reasons set forth above, Wilson's motions to have jurors excluded for cause are GRANTED with respect to Jurors 3 and 431 and DENIED with respect to Juror 394 and the Government's motion to have Juror 517 excluded for cause is GRANTED. Jurors 3, 431, and 517 are therefore excluded for cause and Juror 394 is qualified to serve.

SO ORDERED.

Dated: November 17, 2006  /s/ Nicholas G. Garaufis
Brooklyn, N.Y.  NICHOLAS G. GARAUFIS
United States District Judge