UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
UNITED STATES OF AMERICA,

            **MEMORANDUM & ORDER**
  v.            **04-CR-1016 (NGG)**

RONELL WILSON,

    Defendant.
----------------------------------------------------X
GARAUFIS, District Judge.

  The Government alleges that Ronell Wilson ("Wilson" or "Defendant") murdered undercover New York Police Department ("NYPD") Detectives Rodney Andrews ("Detective Andrews") and James Nemorin ("Detective Nemorin") on March 10, 2003. Based on these and other allegations, Wilson is charged with two counts of murder in aid of racketeering, two counts of robbery conspiracy, one count of attempted robbery, one count of carjacking, two counts of use of a firearm, and two counts of causing death through use of a firearm. (See Second Superseding Indictment, Docket Entry No. 179.) The Government is seeking the death penalty against Wilson. Trial will begin on November 27, 2006.

  Before the court are two motions submitted by each party. The Government moves for orders (1) directing Wilson to disclose immediately the statutory and non-statutory mitigating factors he intends to establish at the penalty phase of this case, if any, and (2) precluding Wilson from cross-examining Government witnesses about certain subjects. Wilson moves for orders (1) directing the Government to identify, outside the presence of the jury, all "life portrait" photographs it will seek to introduce into evidence and excluding from this trial, including the penalty phase, if any, "all such photographs that are irrelevant, cumulative or otherwise

1

unnecessary" and (2) precluding the Government from offering into evidence a chart containing statistics about firearms recovered by the NYPD.

For the reasons set forth below, the Government's motions are GRANTED in part and DENIED in part and Wilson's motion to preclude "life portrait" photographs is DENIED. The court is not in a position to rule on the Government's motion to preclude Wilson from questioning a particular cooperating witness about the witness's mental health at the time of the events as to which the witness will testify. It will rule on that motion after hearing further from the parties as to what information, if any, would support Wilson's request to permit such questioning. The court will require an offer of proof by the Government, outside the presence of the jury, before ruling on Wilson's motion to preclude introduction of the chart containing statistics about firearms recovered by the NYPD.

**I.  The Government's Motions**

**A.  Mitigating Factors**

The Government moves for "disclosure of the specific mitigating factors upon which the defendant intends to rely during the sentencing phase of the trial." (Govt. Ltr. to Judge Garaufis dated Nov. 20, 2006 at 1.) Such disclosure is not required by statute, although it is not prohibited by any statute.[1] I find that this court has the statutory discretion to grant the Government's

---

[1] The Government is, however, required to disclose the aggravating factors that it intends to prove. Compare 18 U.S.C. § 3592(a) (the finder of fact "shall consider any mitigating factor") to 18 U.S.C. § 3592(c) (the finder of fact "shall consider each of the following [aggravating] factors *for which notice has been given*") (emphasis added); see also 18 U.S.C. § 3593(a)(2) (the Government "shall, a reasonable time before the trial . . . file with the court, and serve on the defendant, a notice setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death"); 18 U.S.C. § 3593(c) (at the penalty phase, "The defendant may present any information relevant

2

motion and that it is appropriate to do so in this case.

In setting forth the procedure that will apply in the penalty phase, federal law provides that "[t]he government and the defendant shall be permitted to rebut any information received at the hearing, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor[.]" 18 U.S.C. § 3593(c). I find that in order for the Government to have the "fair opportunity" required by statute, it is necessary that the Government have notice of the mitigating factors that Wilson intends to prove.

Wilson has been preparing for this trial since he was arrested in March 2003. Two of the three lawyers assigned to represent him have been doing so since he was arraigned in New York Supreme Court, Richmond County. (Sharkey Ltr. to Judge Garaufis dated December 7, 2004 at 1.) They have had an extensive opportunity to develop Wilson's defense, including the identification and preparation of mitigating factors, during that period. It should come as no surprise to Wilson that the Government seeks notice sufficient to permit it to rebut information offered by Wilson in the penalty phase of this case. Furthermore, Wilson will not be prejudiced in any way by providing such notice.

I also find that this court has the authority to order Wilson to provide such notice. Fed. R. Crim. P. 16(d)(1) provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 57(b), entitled, "Procedure When There Is No Controlling Law," provides that "[a] judge may regulate practice

---

to a mitigating factor. The government may present any information relevant to an aggravating factor *for which notice has been provided*") (emphasis added).

3

in any manner consistent with federal law[.]" Because there is no controlling law on the issue of notice to the Government of Wilson's mitigation factors prior to the penalty phase, this court may regulate the parties' practice as to such notice and may grant the Government the discovery it seeks.

Wilson is ordered to provide the Government a list of all mitigating factors that he currently intends to attempt to prove in the penalty phase of this case, if any. Wilson shall provide this list by December 1, 2006. The list shall be sufficiently detailed to make clear the scope of each listed factor. If it becomes necessary for Wilson, based on evidence presented at trial, to introduce evidence of additional factors not contemplated on or before December 1, 2006, he may apply to the court in a timely manner for permission to introduce such evidence.

### B. Cross-Examination

The Government moves to preclude Wilson from asking questions about three subjects on cross-examination. This motion is granted in part and denied in part, and a decision as to one aspect of the motion is deferred pending the introduction of additional information.

#### 1. The Mental Health of a Cooperating Witness

The first subject is the mental health history of a particular cooperating witness.[2] It appears that three categories of mental health history are at issue: the witness's mental health during childhood, the witness's mental health at the time of the events as to which the witness will testify, and the witness's mental health at the time the witness testifies. The Second Circuit has explained that–

---

[2] Because the Government's motion and Wilson's response were filed under seal, I will refer to those subjects generically.

> Evidence of a witness's psychological history may be admissible when it goes to her credibility. See Fed. R. Evid. 611(b). In assessing the probative value of such evidence, the court should consider such factors as the nature of the psychological problem, the temporal recency or remoteness of the history, and whether the witness suffered from the problem at the time of the events to which she is to testify, so that it may have affected her ability to perceive or to recall events or to testify accurately.
>
> The trial court has discretion to limit such evidence if it determines that the probative value of the evidence is outweighed by its potential for unfair prejudice, confusion of the issues, or waste of time. See Fed.R.Evid. 403. Its decisions on these questions will not be overturned in the absence of an abuse of discretion.

U.S. v. Sasso, 59 F.3d 341, 347-348 (2d Cir. 1995) (quotation marks and some citations omitted).

The court first considers the witness's history of childhood mental health problems. Because of the nature of those problems, their temporal remoteness from the events as to which the witness will testify, and the absence of any reason to believe that the witness suffered from them at the time of those events, the witness's childhood mental health problems are not relevant to this case and, if relevant, are more prejudicial than probative. The Government's motion is therefore granted as to this witness's history of childhood mental health problems.

The court next considers the witness's mental health at the time of the events as to which the witness will testify. The parties have not provided sufficient evidence for the court to determine whether there is any basis for Wilson to inquire into the witness's mental health at that time. They are therefore ordered to inform the court by November 27, 2006 what information they have regarding the witness's mental health at the time of the events as to which he will testify. Should there be evidence that the witness suffered from mental health problems at the time of those events, this court may permit Wilson to question the witness about such problems.

5

Finally, the court considers the witness's mental health at the time at which the witness testifies. The Government has provided information suggesting that this witness has suffered from mental health problems since the events as to which the witness will testify. These problems may be relevant to the witness's ability to testify coherently and accurately at trial. The jury is entitled to know whether the witness's ability to do so is impaired. Wilson will therefore be permitted to question this witness as to mental health problems that may affect the witness at the time at which the witness testifies.

### 2. Investigation Into Events Preceding the Murders of Detective Andrews and Nemorim

The second subject of questioning that Government seeks to preclude is an investigation into the events preceding the murders of Detectives Andrews and Nemorin. Based on the Government's representations regarding this investigation, it appears to the court that the investigation, which has been dormant for more than three years, has led to no findings that would be relevant to this case. Moreover, the mere fact of the investigation's existence is prejudicial.

### 3. Information Regarding One of the Victims

The third subject at issue is information potentially damaging to the reputation of one of the murder victims in this case. That information appears to have no relevance to any issue that will be addressed at trial.

For the reasons set forth above, the Government's motion to preclude Wilson from asking questions on cross-examination about the three subjects just described is granted with respect to the cooperating witness's childhood history of mental health problems, the investigation into

events preceding the murders of Detectives Andrews and Nemorin, and information potentially damaging to one of the victims. The motion is denied with respect to the cooperating witness's mental health at the time at which he testifies. The court is not in a position to rule on this motion with respect to the cooperating witness's mental health at the time of the events as to which he will testify. The court will rule on that issue after hearing from the parties.

**II.     Wilson's Motions**

   **A.     "Life Portrait" Photographs**

Wilson moves the court to preclude the Government from introducing into evidence "'life portrait' photographs [of Detectives Andrews and Nemorin] . . . that are irrelevant, cumulative or otherwise unnecessary." (Notice of Motion at 1.) That motion is denied.[3]

At the November 22, 2006 status conference, the Government represented to the court that it intends to introduce a small number of photographs depicting Detectives Andrews and Nemorin from the chest up, dressed in civilian attire. Such photographs are relevant to identifying the Detectives and are not unfairly prejudicial. The court will of course hold the Government to its word and will not permit the introduction of unfairly prejudicial photographs or of a quantity of photographs that constitutes a "needless presentation of cumulative evidence." Fed. R. Ev. 403.

---

   [3] Wilson also moved to preclude the Government from introducing autopsy and crime scene photographs "that are irrelevant, cumulative or otherwise unnecessary" or "unnecessarily gruesome or inflammatory." (Notice of Motion at 1.) This court denied that motion during the November 22, 2006 status conference, at which the court ordered the Government to show Wilson such photographs the day before they are to be offered as evidence. This court will hold the Government to its statement that it will offer only "a select number of autopsy photographs and crime scene photographs." (Govt.'s Response in Opposition to Def.'s Motion to Exclude Photographs at 5.) If the Government offers additional, redundant autopsy or crime scene photographs, Wilson may move to have them excluded.

B.  **Statistics About Firearms Recovered by the NYPD**

Wilson moves the court to preclude the Government from introducing into evidence a chart containing statistics about firearms recovered by the NYPD during the period 2000-2006, which Wilson argues is irrelevant. (Tr. at 4147.) The Government argues that the information in this chart is relevant to Counts Three (Robbery Conspiracy) and Four (Attempted Robbery), which require it to prove an obstruction of, delay of, or effect on interstate commerce. (Id.; see also 18 U.S.C. § 1951(a), (b).)

It is not clear to me how the chart at issue is relevant to the element of interstate commerce. The chart appears to list the makes and calibers of firearms recovered by the NYPD in each year during the period 2000-2006. For example, it indicates that in 2003, the NYPD recovered twenty-nine Smith & Wesson firearms and thirty-eight twenty-two-caliber firearms. Because this information does not appear to relate to whether or not Wilson attempted or conspired to commit a robbery affecting interstate commerce, I will require the Government to make an offer of proof, outside the presence of the jury, as to what its witness will testify regarding this chart.

III.  **Conclusion**

For the aforementioned reasons, the Government's motions are GRANTED in part and DENIED in part and Wilson's motion to preclude the Government from introducing life portrait photographs is DENIED. I will rule on the Government's motion to preclude Wilson from questioning a particular cooperating witness about the witness's mental health at the time of the events as to which he will testify after I hear further from the parties as to this issue. I will rule

on Wilson's motions to preclude the Government from introducing into evidence a chart containing statistics about firearms after the Government makes its offer of proof.[4]

SO ORDERED.

Dated: November 24, 2006  　　　　　　　　　　　　　　/s/ Nicholas G. Garaufis
　　　　Brooklyn, N.Y. 　　　　　　　　　　　　　　　　NICHOLAS G. GARAUFIS
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[4] I previously denied Wilson's motion for an order precluding the Government from offering into evidence (1) handwritten rap lyrics found in Wilson's possession upon his arrest, (2) rap lyrics found on the computer of Omar Green, and (3) letters and rap lyrics seized from the home of Jamal Brown. (Order dated November 22, 2006.) After that Order was issued, Wilson submitted a reply brief in further support of his motion. This court does not typically consider arguments offered after a moving brief and response brief have been filed. I nevertheless reviewed Wilson's reply brief. I find no reason to reconsider my previous Order.