UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,

                                            **MEMORANDUM & ORDER**

        v.                                               04-CR-1016 (NGG)

RONELL WILSON,

               Defendant.
------------------------------------------------------X
GARAUFIS, District Judge.

        The Government alleges that Ronell Wilson ("Wilson") murdered undercover New York Police Department ("NYPD") Detectives Rodney Andrews ("Detective Andrews") and James Nemorin ("Detective Nemorin") on March 10, 2003. Based on these and other allegations, Wilson is charged with two counts of murder in aid of racketeering, two counts of robbery conspiracy, one count of attempted robbery, one count of carjacking, two counts of use of a firearm, and two counts of causing death through use of a firearm. (Second Superseding Indictment, Docket Entry No. 179.) The Government is seeking the death penalty against Wilson. Trial will begin on November 27, 2006.

        Before the court is Wilson's motion to suppress (1) pretrial identifications of him based on a lineup and a photo array and (2) in-court identifications by the witnesses who made those pretrial identifications. For the reasons set forth below, Wilson's motion is DENIED.

**I.     Background**

        On November 30, 2005, Wilson moved this court to hold a Wade hearing, named after U.S. v. Wade, 388 U.S. 218 (1967) (establishing a right to counsel at post-indictment lineups), to determine whether to suppress lineup identifications made on March 12, 2003 – the day of

Wilson's arrest – and a photo array identification made on April 27, 2003. This court granted Wilson's motion and conducted a Wade hearing on October 5, 2006. At that hearing, the Government examined and Wilson cross-examined NYPD Lieutenant David Nilsen ("Lt. Nilsen") about the lineup identifications and retired NYPD Detective Gina O'Keefe ("Detective O'Keefe") about the photo array identification.

## II.     Legal Framework

In cases decided after Wade, the Supreme Court established that a criminal defendant has a due process right not to be identified in court by a witness who first identified him out of court during a procedure "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). The same standard "with the deletion of the word 'irreparable'" applies when determining "the admissibility of testimony concerning the out-of-court identification itself." Neil v. Biggers, 409 U.S. 188, 198 (1972).

In the Second Circuit, an out-of-court identification "will be admissible if (a) the procedures were not suggestive or (b) the identification has independent reliability." Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001); Roldan v. Artuz, 78 F. Supp. 2d 260, 271 (S.D.N.Y. 2000). In other words, even when a procedure is "unnecessarily" or "unduly" suggestive, "a district court may admit the evidence 'if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability.'" U.S. v. Bautista, 23 F.3d 726, 729-30 (2d Cir. 1994) (quoting U.S. v. Simmons, 923 F.2d 934, 950 (2d Cir. 1991)).

Even if a pretrial identification procedure was so suggestive as to be inadmissible, an in-court identification by the same witness – as opposed to in-court testimony about his out-of-

2

court identification – may nevertheless be admitted if it is independently reliable. U.S. v. Thai, 29 F.3d 785, 808 (2d Cir. 1994); United States v. Butler, 970 F.2d 1017, 1021 (2d Cir. 1992). In determining whether the in-court identification is independently reliable, a court must consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Thai, 29 F.3d at 808 (quoting Neil v. Biggers, 409 U.S. at 199-200 (1972)). "A good or poor rating with respect to any one of these factors will generally not be dispositive, and in each case, the question of independent reliability must be assessed in light of the totality of the circumstances[.]" Raheem, 257 F.3d at 135 (citations omitted).

## III. Discussion

### A. The Lineup Identifications

The lineup identifications at issue took place on March 12, 2003 in the presence of Larry Simon, Esq., a lawyer for Wilson. Simon objected at the time the lineup was conducted that the five non-suspects used as "fillers" had darker skin than Wilson and that some of them appeared older than Wilson.[1] (Simon Aff. ¶ 5.) After viewing a photograph of the lineup, this court agreed that the fillers had darker skin than Wilson, but found that they did not appear older than him. (Order dated July 14, 2006 at 28.)

The first question this court must answer is whether the lineup and surrounding procedure were suggestive. "A lineup is unduly suggestive as to a given defendant if he meets the

---

[1] At the Wade hearing, Lt. Nilsen testified that, to his knowledge, Simon raised no objections to the lineup procedure. (Tr. at 49-50.) For the purpose of deciding the present motion, I will assume that Simon did in fact raise the objections he claims to have raised.

3

description of the perpetrator previously given by the witness and the other lineup participants obviously do not." Raheem, 257 F.3d at 134; see also U.S. v. Wong, 40 F.3d 1347, 1359-60 (2d Cir. 1994) ("the principal question in determining suggestiveness is whether the appearance of the accused, matching descriptions given by the witness," stood out from the other participants so as to suggest that the suspect was the culprit) (citation and quotation marks omitted); Solomon v. Smith, 645 F.2d 1179, 1182-84 (2d Cir. 1981); U.S. ex rel. Cannon v. Montanye, 486 F.2d 263, 266-67 (2d Cir. 1973). A difference in skin color does not render a lineup impermissibly suggestive if it does not match the description of the perpetrator previously given by the witness. Roldan, 78 F. Supp. 2d at 273-74. The court finds that the lineup and surrounding procedure used in this case were not suggestive.

During the Wade hearing, the government examined and Wilson cross-examined Lt. Nilsen, who oversaw the conduct of the lineup now at issue as well as the larger investigation into the murders of Detectives Andrews and Nemorin. (Tr. at 26-30.) Lt. Nilsen testified that four witnesses viewed the lineup and that three of them (Captain Vincent DiDonato, Sergeant Richard Abate, and one civilian witness) identified Wilson while the fourth (Officer Joel Six) did not identify anyone. (Id. at 30, 49.) Lt. Nilsen testified that none of the four witnesses was shown any photographs of Wilson prior to the lineup and that on the day the lineup was held, the four witnesses were separated from each other, Wilson, and the fillers before viewing the lineup. (Id. at 41-42.)

During cross-examination, the defense established that prior to identifying Wilson in the lineup, Captain DiDonato saw a photograph of Wilson's co-defendant Michael Whitten and stated that Whitten, not Wilson, might be the person he had seen on March 10, 2003 exiting a car

4

used by Detectives Andrews and Nemorin. (Tr. at 63-64.) This fact may be important at trial because it is a reason to accord Captain DiDonato's identification of Wilson less weight, but it does not render his testimony inadmissible under Simmons and Raheem. For the purpose of deciding the present motion, this court must determine only whether Captain DiDonato's identification was the result of a suggestive procedure. His earlier identification of Whitten makes his subsequent identification of Wilson less credible, but it does not support a finding that the procedure pursuant to which he identified Wilson was suggestive.

Wilson also established that Lt. Nilsen did not ask the witnesses whether they had seen photographs of anyone arrested for the murders of Detective Andrews and Nemorim prior to viewing the lineup. (Tr. at 68.) This omission does not render the lineup procedure suggestive, nor would an affirmative answer to such a question. As noted above, "the principal question in determining suggestiveness is whether the appearance of the accused, matching descriptions given by the witness," stood out from the other participants so as to suggest that the suspect was the culprit. Wong, 40 F.3d at 1359-60 (citation and quotation marks omitted). Absent such a match, a "[d]ifferential in skin color between lineup participants does not violate due process." Roldan, 78 F. Supp. 2d at 273 -274.

The lineup and surrounding circumstances in this case lack the features cited in cases finding suggestiveness. For example, in United States v. Fernandez, 456 F.2d 638 (2d Cir.1972), the Second Circuit held that a photographic array was impermissibly suggestive because (1) witnesses described the suspect as a light-skinned African-American male and (2) of the six photographs presented in the array, only that of the defendant depicted a light-skinned African-

American male. No facts adduced at the Wade hearing in this case permit an inference of such a match between a prior description and the composition of the lineup.

Because I find that the lineup procedure was not suggestive, there is no need to consider whether the identifications made at the lineup were independently reliable, nor is there any reason to consider whether in-court identifications by these witnesses should be permitted under Thai and Butler. In addition, Wilson's request for an independent source hearing as to the lineup procedure is denied. (Tr. at 112.) As another court in this Circuit has explained,

> The purpose of an independent source hearing is to determine whether identification testimony made by a witness under suggestive circumstances has a separate independent source that would render it reliable. An independent source hearing need not be held when identification testimony is simply weak. There must be some sort of police or prosecutorial misconduct before the independent source hearing doctrine is imposed.

Castillo v. Walsh, 443 F. Supp. 2d 557, 569 (S.D.N.Y. 2006) (citations and quotation marks omitted). Here, there is no reason to believe any police or prosecutorial misconduct occurred. Furthermore, when, as here, a "trial court f[inds] no indication of suggestiveness in the pretrial proceedings and determine[s] that trial counsel could address any potential suggestiveness of the in-court identification during the trial proceedings . . . an independent source hearing [i]s not warranted." Id.

### B. The Photo Array

The photo array, conducted on April 27, 2003, depicted six African-American males with dreadlocks, including Wilson. (Order dated July 14, 2006 at 29; Def.'s Ex. 8.) Wilson does not claim that the array's composition was impermissibly suggestive on its face (Def.'s Mem. L. at 6), though he did argue that a hearing was necessary in order to determine whether the

6

identification was conducted in an impermissibly suggestive manner (Order dated July 14, 2006 at 30). This court agreed, ruling that "the most cautious route would be to address this issue at [a] Wade hearing." (Id. at 31.)

"The fairness of a photo array depends on a number of factors, including the size of the array, the manner of presentation by the officers, and the array's content." U.S. v. Maldonado-Rivera, 922 F.2d 934, 974 (2d Cir. 1990). An important "content" requirement is that "if a suspect is described only in terms of one characteristic, the filler photos in any array [sh]ould also portray people having that characteristic." U.S. v. Eltayib, 88 F.3d 157, 166 (2d Cir. 1996). Wilson has not presented any arguments regarding the "size" or "content" factors, and this court finds independently that those factors favor admitting the photo array. This court further finds that the array was not conducted in a suggestive manner.

During the Wade hearing, the government examined and Wilson cross-examined Detective O'Keefe, the officer who along with her then-partner, Detective Wuensch, conducted the photo array on April 27, 2003. (Tr. at 8-10.) Detective O'Keefe testified that the witness shown the array had told the police at an earlier interview that on March 10, 2003 – the day Officers Andrews and Nemorin were murdered – the witness saw his neighbor Omar Green in an elevator with two other men, one of whom the witness recognized but could not name. (Id. at 13.) When shown the photo array, the witness stated that the photo of Wilson depicted that man and signed a copy of the photo array indicating the same. (Id. at 14-17; see also Govt. Ex. 1.)

On cross-examination, the defense established that Detective O'Keefe did not know (1) who assembled the photo array, (2) on what basis that person selected the photos used in the array, (3) whether the witness was contacted by law enforcement between the two interviews, or

7

(4) whether the witness had seen, in the media, pictures of the people arrested for the murder of Detectives Andrews and Nemorin. (Id. at 20, 22.) These facts do not render the photo array suggestive.

As in the case of the lineup procedure, the key question in determining the suggestiveness of this photo array is whether the "defendant . . . meets the description of the perpetrator previously given by the witness and the other . . . participants obviously do not." Raheem, 257 F.3d at 134; see also U.S. v. Wong, 40 F.3d 1347, 1359-60 (2d Cir. 1994). It is not possible for that question to be answered in the affirmative because Wilson does not bear any particular characteristics that the other men in the photo array lack. Therefore, even if the witness was contacted by law enforcement and had seen a picture of Wilson in the newspaper – neither of which seems to have happened – those facts would go to the weight of the witness's testimony, not to its admissibility.

"Where a photographic identification procedure is so suggestive as to lead to a substantial likelihood of irreparable misidentification, the government bears the burden of proving that the in-court identification will not be unduly tainted by the suggestive array based on the totality of the circumstances." U.S. v. Camacho, No. 04-CR-637 (ERK)(JMA), 2005 WL 1594257, at *8 (E.D.N.Y. July 5, 2005) (citing Manson v. Braithwaite, 432 U.S. 98, 114 (1977) and Biggers, 409 U.S. at 199-200) (Korman, C.J.). Because this court has found that the photo array at issue was not suggestive – let alone so suggestive as to lead to a substantial likelihood of irreparable misidentification – there is no need for the government to prove an independent source for an in-court identification.

**IV.     Conclusion**

For the aforementioned reasons, Wilson's motion to suppress pretrial lineup and photo array identifications is DENIED.  His request that the Wade hearing be re-opened so that additional witnesses be called is also DENIED.


SO ORDERED.

Dated:  November 24, 2006                                         /s/ Nicholas G. Garaufis
       Brooklyn, N.Y.                                                  NICHOLAS G. GARAUFIS
                                                                    United States District Judge