UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,

                        v.

RONELL WILSON,

                Defendant.
------------------------------------------------------X

**MEMORANDUM & ORDER**
04-CR-1016 (NGG)

GARAUFIS, District Judge.

The Government alleges that Ronell Wilson ("Wilson" or "Defendant") murdered undercover New York Police Department ("NYPD") Detectives Rodney Andrews ("Detective Andrews") and James Nemorin ("Detective Nemorin") on March 10, 2003. Based on these and other allegations, Wilson is charged with two counts of murder in aid of racketeering, two counts of robbery conspiracy, one count of attempted robbery, one count of carjacking, two counts of use of a firearm, and two counts of causing death through use of a firearm. (See Second Superseding Indictment, Docket Entry No. 179.) The Government is seeking the death penalty against Wilson. Trial began on November 27, 2006.

Before the court is Wilson's oral motion, made after the close of testimony yesterday evening (on the first day of trial) asking the court to modify its Order precluding Wilson from cross-examining cooperating witness Jesse Jacobus ("Jacobus") about Jacobus's childhood history of mental health problems. That Order was based on the following Second Circuit law:

> Evidence of a witness's psychological history may be admissible when it goes to her credibility. See Fed. R. Evid. 611(b). In assessing the probative value of such evidence, the court should consider such factors as the nature of the psychological problem, the temporal recency or remoteness of the history, and whether the witness suffered from the problem at the time of the events to which she is to

1

> testify, so that it may have affected her ability to perceive or to recall events or to testify accurately.
>
> The trial court has discretion to limit such evidence if it determines that the probative value of the evidence is outweighed by its potential for unfair prejudice, confusion of the issues, or waste of time. See Fed.R.Evid. 403. Its decisions on these questions will not be overturned in the absence of an abuse of discretion.

U.S. v. Sasso, 59 F.3d 341, 347 -348 (2d Cir. 1995) (quotation marks and some citations omitted). The court's Order provided as follows:

> Because of the nature of [Jacobus's childhood mental health] problems, their temporal remoteness from the events as to which the witness will testify, and the absence of any reason to believe that the witness suffered from them at the time of those events, the witness's childhood mental health problems are not relevant to this case and, if relevant, are more prejudicial than probative. The Government's motion [to preclude questioning] is therefore granted as to this witness's history of childhood mental health problems.

(Order dated November 24, 2006 at 4-5.)

Last evening, defense counsel orally cited three Second Circuit cases, for the first time, that they now believe should compel this court to reconsider the quoted portion of its earlier Order. In the first of those cases, the Second Circuit stated that "[r]estricting access to medical or psychological records may deny a defendant the right to confrontation because '[e]vidence of a witness's psychological history may be admissible when it goes to her credibility.'" U.S. v. Vitale, 459 F.3d 190, 195-96 (2d Cir. 2006) (quoting Sasso at 347). But the Second Circuit then explained that "the failure to produce a psychiatric report does not in itself effect a constitutional deprivation where the report does not contain evidence of any deep or sustained mental problems which would directly bear upon the credibility of the witness." Vitale at 196 (quotation marks, citation, and ellipses omitted).

2

The childhood records requested by Wilson concern Jacobus's condition when he was twelve years old and younger. How they relate to his current credibility is a mystery to the court. The defense has not credibly demonstrated that Jacobus's condition at age twelve and earlier affected his ability to perceive the events as to which he will testify – which occurred when he was seventeen – or his ability to testify as to those events now that he is twenty. His childhood condition would simply have little if any probative value to the jury hearing this case.

In addition, this court yesterday ordered the Government to disclose to Wilson "all records of Jacobus's mental health created after Jacobus was incarcerated" in 2003. (Order dated November 27, 2006 at 3.) The court explained that the purpose of this Order was to effectuate its earlier Orders that "(1) 'Should there be evidence that the witness suffered from mental health problems at the time of [the events as to which Jacobus will testify], this court may permit Wilson to question the witness about such problems,' and (2) 'Wilson will . . . be permitted to question this witness as to mental health problems that may affect the witness at the time at which the witness testifies.'" (Id. (quoting Order dated November 24, 2006 at 5-6).)

The records created after Jacobus was incarcerated are voluminous. If Jacobus suffered from mental health problems at the time of the events as to which he will testify, or if he now suffers from mental health problems that will prevent him from testifying coherently and accurately, those problems will be reflected in the records created during his incarceration. If, on the other hand, a problem is absent from those records but was reflected in Jacobus's childhood records, it is overwhelmingly likely that Jacobus did not suffer from the problem at any time relevant to this case. Questions about such a problem would therefore be prejudicial and not

probative because they would suggest a current problem where there is no basis to believe one exists.

The second case from this Circuit cited by Wilson is Kyles, in which the Second Circuit stated that "[t]he defendant's interest in cross-examination is heightened when the witness is an accomplice whose testimony could implicate the defendant as a fellow malefactor." United States v. Kyles, 40 F.3d 519, 526 (2d Cir. 1994). This court is clearly bound by that statement, but it fails to see why that statement favors reconsideration of its previous Order. That Order was based on a lack of relevance and a likelihood of undue prejudice. The court is aware of no case law holding or implying that those considerations should be set aside when a defendant questions an accomplice. Moreover, Kyles did not consider mental health records or any analogous records.

The third and final Second Circuit case cited by Wilson is Chnapkova, a medical malpractice case in which the Second Circuit overturned a district court's decision to exclude evidence of mental health problems that preceded trial testimony by five years. Chnapkova v. Koh, 985 F.2d 79, 81-82 (2d Cir. 1993). That case is easily distinguishable:

> The district court's reliance on the Bari and Glover cases to support the conclusion that the treatment here was too remote was ill-advised. In both those cases, the time lapse between the psychiatric treatment and the trial testimony was much greater than the five years here. See Bari, 750 F.2d at 1179 (over ten years between treatment and trial); Glover, 588 F.2d at 878 (twelve years). Additionally, in both Glover and Bari, there was a wealth of other evidence to impeach the witness whose psychiatric history was at issue. See Bari, 750 F.2d at 1179; Glover, 588 F.2d at 878. Here, by contrast, the evidence permitted to impeach the plaintiff was narrowly circumscribed, with not only her hospital records, but evidence of her failure to file tax returns also being excluded.
>
> Apart from their impeachment value, there is yet another – and arguably more important – reason why the hospital records should have been admitted: to support

>   the defense theory that Chnapkova's scarring was the result of surgery performed
>   by someone other than Dr. Koh.

Chnapkova, 985 F.2d at 81-82.

Jacobus's childhood history of mental health problems ended at least seven years before his trial testimony, which places this case somewhere between Chnapkova on the one hand and Bari and Glover on the other. However, this case clearly has more in common with Bari and Glover than with Chnapkova because in this case "there [i]s a wealth of other evidence to impeach the witness whose psychiatric history was at issue." As already noted, this court recently ordered the Government to disclose to Wilson "all records of Jacobus's mental health created after Jacobus was incarcerated" in 2003. (Order dated November 27, 2006 at 3.) Those records are voluminous. In Chnapkova, "by contrast, the evidence permitted to impeach the plaintiff was narrowly circumscribed, with not only her hospital records, but evidence of her failure to file tax returns also being excluded." Finally, Chnapkova explicitly relied on the fact that the records at issue had a purpose other than impeachment. In fact, it appears likely that the Second Circuit would have ruled differently had it not found such a purpose. In this case, Wilson does not suggest that Jacobus's mental health records from childhood have any purpose other than to impeach Jacobus.

Wilson also cites the Eleventh Circuit Lindstrom case. In Vitale, the Second Circuit explained that Lindstrom is distinguishable from cases such as Vitale and this case: "[Lindstrom is] inapposite. In United States v. Lindstrom, 698 F.2d 1154 (11th Cir.1983), the Eleventh Circuit assigned error to a district court's refusal to grant access to psychiatric records specifically because the records 'reveal[ed the] presence and treatment of a continuing mental

5

illness embracing the time period of the alleged conspiracy.' Id. at 1166." Vitale, 459 F.3d at 196. As this court has explained, Jacobus's childhood records do not reveal such an illness, and the Government has been ordered to provide all records that may reveal such an illness.

For the aforementioned reasons, Wilson's motion for reconsideration of this court's Order precluding Wilson from cross-examining Jacobus about Jacobus's childhood history of mental health problems is DENIED. The Government is directed to file under seal a complete set of Mr. Jacobus's mental health records for possible appellate review.

SO ORDERED.

Dated: November 28, 2006  /s/ Nicholas G. Garaufis
      Brooklyn, N.Y.  NICHOLAS G. GARAUFIS
                        United States District Judge