UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA,

                  **MEMORANDUM & ORDER**

      v.                                04-CR-1016 (NGG)

RONELL WILSON,

              Defendant.
-----------------------------------------------------X
GARAUFIS, District Judge.

The Government alleges that Ronell Wilson ("Wilson") murdered undercover New York Police Department ("NYPD") Detectives Rodney Andrews ("Detective Andrews") and James Nemorin ("Detective Nemorin") on March 10, 2003. Based on these and other allegations, Wilson is charged with two counts of murder in aid of racketeering, two counts of robbery conspiracy, one count of attempted robbery, one count of carjacking, two counts of use of a firearm, and two counts of causing death through use of a firearm. (See Second Superseding Indictment, Docket Entry No. 179.) The Government is seeking the death penalty against Wilson. Trial began on November 27, 2006.

**I.    Background**

On June 8, 2006, this court, acting pursuant to Fed. R. Crim. P. 12.2, ordered Wilson to provide to a firewalled Assistant United States Attorney (*i.e.*, an attorney who is not part of the team prosecuting this case in its trial phase[1]) the following items: (1) a written summary of expert testimony that Wilson intends to introduce in the penalty phase of this case, if any, concerning

---

[1] As in the Order dated June 8, 2006, I will refer to the firewalled Assistant United States Attorney as the "Firewalled AUSA" and to the Government attorneys prosecuting this case in its trial phase as the "Government."

1

his mental condition; (2) the results of tests and reports of examinations administered upon Wilson that support the opinions of Wilson's mental condition expert(s); and (3) raw data received by Wilson's mental condition expert(s). (Order dated June 8, 2006 at 26.)

On November 24, 2006, this court, acting pursuant to 18 U.S.C. § 3593 and Rules 16 and 57 of the Federal Rules of Criminal Procedure, ordered Wilson to provide to the Government a list of all mitigating factors that he intends to attempt to prove in the penalty phase of this case, if any. (Order dated November 24, 2006 at 2-4.) Wilson provided such a list to the Government but noted that the list "should not be disclosed to the 12.2 firewalled attorney or experts working with him." (Sealed Wilson Ltr. to Judge Garaufis dated December 1, 2006 at 1.)

On December 6, 2006, the Government indicated that despite Wilson's admonition, it intended to provide Wilson's list of mitigating factors to the Firewalled AUSA. (Tr. at 1769.) Wilson then orally moved the court to preclude the Government from doing so. (Id. at 1770-74.) That motion is DENIED.

**II.     Discussion**

Firewalls such as the one used in this case serve two purposes: (1) "to avoid impermissible use by the government [in the trial phase] of the information obtained from the [mental condition] examinations" and (2) "to prevent delay at the sentencing stage if the defendant [chooses] to introduce evidence regarding mental condition as a mitigating factor." U.S. v. Karake, No. 02-CR-0256 (ESH), 2006 WL 623676, at *1 (D.D.C. March 6, 2006) (citing U.S. v. Johnson, 362 F. Supp. 2d 1043, 1083 (N.D. Iowa 2005); U.S. v. Sampson, 335 F. Supp. 2d 166, 245 (D. Mass. 2004)). These purposes are best served by denying Wilson's motion.

2

The first purpose of the firewall is implicated only when information flows from the Firewalled AUSA to the Government, not vice-versa. Wilson argues that he will be unfairly prejudiced if the Government discloses his mitigating factors to the Firewalled AUSA, but his argument is belied by the only example offered in support. Wilson stated that he has already been prejudiced because the Government questioned both cooperating witnesses who have testified thus far about their histories of family abuse, ostensibly in order to establish a contrast between the effect of abuse on the cooperators and its effect on Wilson. (Tr. at 1771.) This example makes clear that Wilson's concern is the potential improper use of his mitigating factors during the trial phase of this case, a concern not implicated by permitting the Firewalled AUSA to consider a list of Wilson's mitigating factors.[2]

The Government has long been aware of the mental health issues that Wilson intends to raise in the penalty phase of this case. Six months ago, this court, acting pursuant to Fed. R. Crim. P. 12.2(b), ordered Wilson "to inform the Government [of] the kinds of mental health experts [he] anticipates calling at the penalty phase and the nature of the tests those experts have performed or may be expected to perform." (Order dated June 8, 2006 at 7.) The Government

---

[2] The court finds that contrary to Wilson's argument, the Government's questioning of the two cooperators was proper and did not unfairly prejudice Wilson. The first cooperating witness, Jessie Jacobus, admitted on cross-examination that when he was nine years old, he falsely reported that his stepfather held a knife to his throat and threatened to kill him. (Tr. at 689-91.) On re-direct, the Government elicited testimony that Jacobus's stepfather repeatedly abused Jacobus, his mother, and his siblings, thereby properly establishing a motive for Jacobus to tell the lie he described during cross-examination. (Id. at 732-33.) Wilson did not object to that line of questioning. The second cooperating witness, Mitchell Diaz, testified on direct examination that his stepfather abused him and his mother. (Id. at 747-48.) The Government elicited this testimony by asking a mere two questions, which were proper because (1) they helped establish Diaz's background and (2) they reflected the Government's decision, based on Wilson's earlier cross-examination of Jacobus, to raise the subject of abuse before Wilson did.

3

does not, however, have access to the raw data considered by those experts or the opinions they have formed based on that data (id. at 26), and so cannot use that data or those opinions in the trial phase of this case. In addition, neither the Government nor the Firewalled AUSA may use that data or those opinions in the penalty phase unless Wilson first introduces expert evidence relating to a mental condition that bears on the issue of punishment. Fed. R. Crim. P. 12.2(c)(4)(B). Wilson's concern about prejudice is therefore unwarranted.

The second purpose of the firewall – "prevent[ing] delay at the sentencing stage if the defendant [chooses] to introduce evidence regarding mental condition as a mitigating factor," Karake at *1 – is served by permitting the Government to provide Wilson's list of mitigating factors to the Firewalled AUSA. Wilson may introduce mental condition evidence to prove any number of mitigating factors, including impaired capacity to appreciate the wrongfulness of his conduct, 18 U.S.C. § 3592(a)(1), impaired capacity to conform his conduct to the requirements of law, id., unusual and substantial duress, 18 U.S.C. § 3592(a)(2), severe mental or emotional disturbance while committing the offense, 18 U.S.C. § 3592(a)(6), and any "[o]ther factors in the defendant's background, record, or character or any other circumstances of the offense that mitigate against imposition of the death sentence," 18 U.S.C. § 3592(a)(8). Evidence of Wilson's mental condition will obviously be more useful to the Government – and therefore to the jury – if it understands the purpose for which Wilson will introduce that evidence. It would therefore serve the interests of justice to permit the Government to provide the list of Wilson's mitigating factors to the Firewalled AUSA, who will then be in a position to consider whether those factors suggest that some mental examination is or is not warranted.

4

This court must permit the Government "to rebut any information received at the [penalty] hearing" and "fair opportunity to present argument as to the existence of any aggravating or mitigating factor." 18 U.S.C. § 3593(c). If the Firewalled AUSA is not permitted to review Wilson's mitigating factors now, the Government may later find that it needs to conduct additional examinations of Wilson's mental condition in order to rebut information Wilson introduces in the penalty phase. The court would be obligated by statute to permit such examinations. Providing Wilson's mitigating factors to the Firewalled AUSA now may prevent future delays and does not prejudice Wilson in any way. Precluding the Government from providing those factors now would simply be inefficient.

Wilson argues, without citing any support, that "the mitigating factors shouldn't be something that shapes any sort of potential testing that [an] expert for the Government may wish to engage." (Tr. at 1770.) The court disagrees. The purpose of the penalty phase of a death penalty case is to permit the jury to consider all available information about a death-eligible defendant. The governing statute provides that "information may be presented [in the penalty phase] as to any matter relevant to the sentence, including [but not limited to] any mitigating or aggravating factor[.]" 18 U.S.C. § 3593(c). Such information is generally admissible in the penalty phase "regardless of its admissibility under the rules governing admission of evidence at criminal trial[.]" Id.[3] Given these broad, permissive rules favoring presentation of more information rather than less, it is difficult to understand how the court could ever preclude the Firewalled AUSA from conducting examinations designed to help the jury determine "the

---

[3] The lone exception to this rule is that "information may," but need not, "be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c).

existence of any . . . mitigating factor." 18 U.S.C. § 3593(c).  If Wilson believes that the jury should know whether the Government's expert was influenced by Wilson's list of mitigating factors, he may inquire about that subject on cross-examination.

Wilson is concerned that "[t]here are other sorts of tests one could imagine a mental health expert might wish to delve into . . . concerning mitigating factors that have nothing to do with [Fed. R. Crim. P.] 12.2." (Tr. at 1770.)  Wilson has not suggested, however, that he has any basis to believe that the Government's expert will conduct any impermissible tests.  If Wilson has such a basis, he should inform the court, which will of course consider whether any particular examination is permissible.

### III. Conclusion

For the reasons set forth above, Wilson's motion to preclude the Government from providing Wilson's list of mitigating factors to the Firewalled AUSA is DENIED.


SO ORDERED.

Dated: December 8, 2006      /s/ Nicholas G. Garaufis
      Brooklyn, N.Y.     NICHOLAS G. GARAUFIS
           United States District Judge