UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X
UNITED STATES OF AMERICA,

                                                             **MEMORANDUM & ORDER**
       v.                                                       04-CR-1016 (NGG)

RONELL WILSON,

                Defendant.
------------------------------------------------X
GARAUFIS, District Judge.

       The Government alleges that Ronell Wilson ("Wilson") murdered undercover New York Police Department Detectives Rodney Andrews and James Nemorin on March 10, 2003. Based on these and other allegations, Wilson is charged with two counts of murder in aid of racketeering, two counts of robbery conspiracy, one count of attempted robbery, one count of carjacking, two counts of use of a firearm, and two counts of causing death through use of a firearm. (See Second Superseding Indictment, Docket No. 179.) The Government is seeking the death penalty against Wilson. Trial began on November 27, 2006.

       Before the court is the Government's motion "to preclude the defendant from offering expert testimony based on his failure to provide sufficient notice under Rule 16 of the Federal Rules of Criminal Procedure." (Govt. Ltr. to Judge Garaufis dated Dec. 8, 2006 at 1.) That motion is GRANTED with respect to defense expert Professor Payne and DENIED with respect to the defense's non-mental-health expert testimony offered in the penalty phase of this case, if any. The court will rule on the Government's motion with respect to defense experts Professor Miller and Dr. Wetli in a subsequent Memorandum and Order.

I.      **Background**

One week before this trial began, the Government moved the court to order Wilson to provide "a written summary of testimony [he] intends to use as evidence at trial under Rules 702, 703 and 705 of the Federal Rules of Evidence . . . describ[ing] the opinions of the witnesses, the bases and reasons for those opinions and the witnesses' qualifications[.]" (Govt. Ltr. to Judge Garaufis dated Nov. 20, 2006 at 3.) The motion was based on the Government's representation, which Wilson did not and does not dispute, that "[d]espite repeated requests, to date the government has received no such discovery from the defense." (Id.) This court granted the motion, ordered Wilson to provide the requested summary by November 24, 2006, and provided that "Wilson will be prohibited from introducing at trial any material . . . not provided by that date." (Order dated November 22, 2006 at 3 (citing Fed. R. Crim. P. 16(d)(1)&(2)).)

On November 24, 2006, Wilson orally provided the Government notice he later summarized as follows:

> [I]n light of the court's decision to admit various rap lyrics over defense objection, we plan on calling an expert in the field of rap culture to testify about the common use of lyrics suggesting/depicting violence as a defining feature of gangsta rap. We are in the process of confirming the availability of our expert and will provide you with their name and qualifications in short order.

(Wilson Ltr. to Govt. dated Nov. 26, 2006 (memorializing a conversation held on Nov. 24, 2006).)

After the first day of trial, the Government argued that Wilson's disclosure was insufficient:

> [T]he defense has had Mr. Wilson's rap song for three years. They have received, I think it is in the neighborhood of ten requests from us over the course of the litigation of this case for disclosure of Rule 16 material. . . . They have not disclosed that information. Aside from the obvious Daubert issues regarding a

2

> witness like that, they should be precluded today because they've had time, they haven't provided us notice at all as to that witness[.]

(Tr. at 207-08.)

Wilson then filed a letter supplementing his earlier notice as follows:

> We plan on calling an expert in the field of Rap culture to testify about the common use of lyrics suggesting/depicting violence as a defining feature of Gangsta Rap. As we stated yesterday, we are in the process of confirming the availability of our expert and will provide you with their name and qualifications. We expect that to occur by the end of the week.
>
>    \*   \*   \*
>
> The Rap expert is expected to testify that Rap music lyrics often describe violent and sexual acts, and other antisocial behavior, that are not necessarily rooted in actual events. The expert is also expected to testify that Rap music lyrics are often based on imagination and fantasy, rather than on reality. We will update the information as soon as we learn more details.

(Wilson Ltr. to Govt. dated Nov. 27, 2006 at 1.)

On December 6, 2006, Wilson notified the Government that his rap expert would be Professor Yasser Arafat Payne, who teaches in the Black American Studies Program at the University of Delaware. Wilson also provided the Government with Professor Payne's curriculum vitae.

## II.  Discussion

The Federal Rules of Criminal Procedure require a defendant to provide to the Government "a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial" if the defendant requests and receives reciprocal disclosure from the government or the defendant has given notice of an intent to present expert testimony about the defendant's mental condition. Fed. R. Crim. P. 16(b)(1)(C). The written summary "must describe the witness's opinions, the bases and reasons

3

for those opinions, and the witness's qualifications." Id. The purpose of this rule is "to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16, Advisory Committee's Note to 1993 Amendments.

Although this rule includes no specific timing requirements, "it is expected that the parties will make their requests and disclosures in a timely fashion." Id. When a party fails to do so, the court may "order [the non-complying] party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions[.]" Fed. R. Crim. P. 16(d)(2)(A). Alternatively, the court may simply "prohibit that party from introducing the undisclosed evidence[.]" Fed. R. Crim. P. 16(d)(2)(C).

The Government asks the court to prohibit Wilson from introducing two categories of expert testimony. First, the Government seeks to preclude Professor Payne from testifying because "[d]espite the long held knowledge that the government would offer the rap song found on the defendant at the time of his arrest, the defendant did not provide Rule 16 material for this expert by the Court's imposed deadline" and "[n]o summary of this witness's 'expert opinion' or the bases for that opinion have been provided by the defense." (Id. at 3.) Second, the Government seeks to preclude non-mental-health experts from testifying during the penalty phase of this case, if any, because "the defendant has provided no notice whatsoever regarding non-mental health expert witnesses he intends to call during the penalty phase of the trial." (Id. at 4.) I address each category in turn.

4

### A. Professor Payne

Wilson's notice regarding Professor Paine's expected testimony consists solely of the following statements:

- "[W]e plan on calling an expert in the field of rap culture to testify about the common use of lyrics suggesting/depicting violence as a defining feature of gangsta rap." (Wilson Ltr. to Govt. dated Nov. 26, 2006.)

- "We plan on calling an expert in the field of Rap culture to testify about the common use of lyrics suggesting/depicting violence as a defining feature of Gangsta Rap. . . . The Rap expert is expected to testify that Rap music lyrics often describe violent and sexual acts, and other antisocial behavior, that are not necessarily rooted in actual events. The expert is also expected to testify that Rap music lyrics are often based on imagination and fantasy, rather than on reality." (Wilson Ltr. to Govt. dated Nov. 27, 2006 at 1.)

- Professor Payne is expected to "demonstrat[e] that particular violent images and references in [Wilson's] 'raps' were ubiquitous in popular culture during the relevant time period, and, specifically, that certain terms used in the 'rap' lyrics found on Mr. Wilson are quite common in the medium." (Wilson Ltr. to Judge Garaufis dated Dec. 12, 2006 at 3.)

Assuming *arguendo* that these statements individually or collectively satisfy the requirement of "describ[ing] the witness's opinions," it is clear that Wilson has made no attempt at all to describe "the bases and reasons for those opinions" as required by Fed. R. Crim. P. 16(b)(1)(C). For that reason alone, testimony by Professor Payne cannot be admitted.

Furthermore, the little notice that Wilson has provided was offered after the deadline imposed by this court in its Order dated November 22, 2006. That is a separate and independent basis for precluding Professor Payne's testimony. Fed. R. Crim. P. 16(d)(2)(C). The court imposed that deadline because "one of counsel's most basic discovery needs is to learn that an expert is expected to testify. This is particularly important if the expert is expected to testify on matters which touch on new or controversial techniques or opinions." Fed. R. Crim. P. 16, Advisory Committee Notes to 1993 Amendments (citations omitted). Having thwarted the Government's efforts to fulfill its basic discovery needs, thereby violating the Federal Rules of Criminal Procedure and an Order of this court, Wilson cannot expect to introduce a controversial expert opinion which the Government cannot possibly prepare to rebut.

Wilson suggests that he violated the Federal Rules of Criminal Procedure and this court's Order because he "did not receive a ruling on [his] motion to preclude the 'rap' lyrics found on Mr. Wilson and other 'raps' recovered from alleged co-conspirators until November 22, 2006." (Wilson Ltr. to Judge Garaufis dated Dec. 12, 2006 at 3.) That excuse is troubling because Wilson's counsel has known about these lyrics for three and one-half years, should have known that the Government would seek to introduce them into evidence, and should not have assumed that the court would grant Wilson's motion to preclude those lyrics

Wilson has three court-appointed lawyers. Two of them, Kelley Sharkey and Mitchell Dinnerstein, were appointed as lead learned counsel and associate learned counsel, respectively, under 18 U.S.C. § 3005 and 21 U.S.C. § 848(q)(4) because of their Herculean efforts to master the facts of this case. In their own words–

> [S]ince Mr. Wilson's [March 2003] arraignment on New York State charges, [we have] worked extensively on this case. We have conducted a thorough investigation in preparation for both the guilt and penalty trials. We have built relationships with Mr. Wilson, his family, and other potential witnesses. We have analyzed, indexed, and digested thousands of pages of discovery and mitigation records. We have engaged in extensive motion practice in state court, much of it on issues that will likely also be litigated in the federal case[.]
>
> *   *   *
>
> [We] have conducted an extensive street investigation, including canvassing the neighborhood where the crime occurred and interviewing potential witnesses. . . . We have also received approximately 5,000 pages of discovery, including DNA testing, crime scene investigations, hair and fiber comparisons, footwear impressions, autopsy reports, fingerprint analysis, ballistic examinations, approximately 50 hours of video tape, and gun residue pattern analysis. All have been reviewed and indexed. Where appropriate, we have initiated consultations with experts.

(Sharkey Ltr. to Judge Garaufis dated Dec. 7, 2004, Docket No. 11 at 1-2; see also Order dated Feb 8, 2005 at 8-11.) Given all of this investigating, relationship-building, analyzing, reviewing, and consulting, it is impossible to believe that Wilson's lawyers did not consider before December 8, 2006 – three and one-half years after Wilson's arraignment – that the Government would seek to introduce into evidence handwritten rap lyrics found in Wilson's pocket upon his arrest that include statements such as [sic throughout] "Come teast Rated[1] U Better have that vast and dat Golock[2] / Leavea 45 slogs in da back of ya head cause I'm getting dat bread I ain't goin stop to I'm dead" in a case in which Wilson faces the death penalty for allegedly executing two police officers by shooting them in their heads.

---

[1] The Government alleges that Wilson used the alias "Rated R." (See Second Superseding Indictment, Docket No. 179.)

[2] Police officers are assigned firearms manufactured by Glock. (Tr. at 2194.)

Wilson's third lawyer, Ephraim Savitt, a former Assistant United States Attorney in this district, was appointed lead trial counsel in this case because he "is an experienced federal criminal defense attorney who has been appointed as learned counsel in a number of federal capital cases in this district, including one tried to verdict" and because he "assured the court that he will apply his previous experience as learned counsel to the case and 'assume responsibility' for assisting Sharkey in navigating the federal procedures that will be relevant to her duties as lead learned counsel." (Order dated Feb 8, 2005 at 3, 11-12.) In light of Sharkey's and Dinnerstein's longstanding knowledge of the facts of this case and Savitt's thorough familiarity with the Federal Rules of Criminal Procedure, this court does not believe that it was impossible for Wilson to notify the Government before December 8, 2006 of his intention to introduce Professor Payne's expert testimony.

Finally, it is worth noting that Professor Payne's testimony might be inadmissible even if it were properly noticed. Wilson's counsel admitted yesterday that it has not conducted any research into this issue. The court has, and it finds that no court on the Second Circuit or any other circuit has considered whether to permit an expert in hip hop culture to testify that an ostensible handwritten confession to certain aspects of a charged crime is "not necessarily rooted in actual events" and is instead "based on imagination and fantasy, rather than on reality." (Wilson Ltr. to Govt. dated Nov. 27, 2006 at 1.) Furthermore, Wilson asks the court to certify that Professor Payne is an expert under Fed. R. Ev. 702 even though Wilson has not provided the court or the Government with any basis for the opinions as to which Professor Payne will testify. This makes it impossible to conduct the analysis required by Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), particularly given the novel nature and proposed

application of Professor Payne's claimed expertise. It is of course one function of Fed. R. Crim. P. 16 to facilitate such an analysis when admissibility is contested.

To be sure, expert testimony about hip hip culture can clearly "assist the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Ev. 702, in certain categories of cases. For example, such testimony has been admitted in copyright cases. In BMS Entertainment/Heat Music LLC v. Bridges, No. 04 Civ. 2584 (PKC), 2005 WL 1593013 (S.D.N.Y. July 7, 2005) defendants Ludacris and Kanye West contended "that key portions of plaintiffs' composition are unoriginal" because the composition "uses what is known as a call-and-response format." BMS at *3. In support, defendants' expert, Dr. Tricia Rose, a professor who studies African-American culture and hip hop music, testified that the call-and-response format is "a foundational element in virtually all West African derived musics." Id.; see also Boone v. Jackson, No. 03 Civ. 8661 (GBD), 2005 WL 1560511, at *2 (S.D.N.Y. July 1, 2005) (in a copyright case against Fabolous and Pharell Williams, who argued that "there are no actionable similarities between" their song and that written by plaintiffs, defendants' expert testified that "the similarities that are present are commonplace within the rap genre").

Such testimony is also admitted in trademark cases. For example, in Sunenblick v. Harrell, 895 F. Supp. 616 (S.D.N.Y. 1995) a record company specializing in jazz sued a record company specializing in hip hop because both companies featured the word "Uptown" in their names. The plaintiff called Dr. Rose (the expert later used by Ludacris and Kanye West in BMS) to testify that "conceptually, the word 'Uptown' captures more than any one form of jazz or even jazz generally. Rather, although 'Uptown' may have originally had a more direct association

9

with the jazz scene of the 1930's and 1940's, it has since evolved into a term embracing a 'hip', 'cool', or if you will, electric, urban black culture." Id. at 625.

This case is different. Wilson's lyrics are not offered in order to prove substantial similarity to other lyrics, nor is their secondary meaning at issue. Instead, the Government offers Wilson's lyrics because "[t]hese lyrics, written in the two days following the murders of the victims and at a time when Wilson knew he was wanted by police for these crimes, constitute a direct and damning admission of Wilson's guilt." (Govt. Ltr. to Judge Garaufis dated Nov. 21, 2006 at 2.) If Wilson wishes to argue that the lyrics are impressionistic and therefore carry little weight, he may do so. It is the jury's job to determine whether to believe such an argument, however, and it would be counterproductive to permit an expert to function as a "thirteenth juror" in resolving this issue.

### B. Non-Mental-Health Experts

The Government seeks to preclude Wilson's non-mental-health experts from testifying during the penalty phase of this case, if any, because "the defendant has provided no notice whatsoever regarding non-mental health expert witnesses he intends to call during the penalty phase of the trial." (Govt. Ltr. to Judge Garaufis dated Dec. 8, 2006 at 4.) As Wilson correctly notes, his "disclosure obligations [regarding non-mental-health experts] are not triggered under Rule 16 unless and until the government has first complied with a defense demand for expert disclosure." (Wilson Ltr. to Judge Garaufis dated Dec. 12, 2006 at 1 (citing Fed. R. Crim. P. 16(b)(1)(C)(i)).) Because Wilson has represented, and the Government does not dispute, that the Government has not yet responded to Wilson's demand for such disclosure (Wilson Ltr. to Judge Garaufis dated Dec. 12, 2006 at 1), the court will not preclude Wilson from offering testimony of

non-mental-health experts in the penalty phase of this case.³ The court does, however, order Wilson and the Government to provide each other notice of non-mental-health witnesses they intend to call in the penalty phase of this case, if any, by December 15, 2006.⁴ Each party will be precluded from offering testimony by non-mental-health witnesses not noticed by that date.

## III. Conclusion

For the reasons set forth above, the Government's motion to preclude Wilson from offering expert testimony is GRANTED with respect to defense expert Professor Payne and DENIED with respect to the defense's non-mental-health experts testimony offered in the penalty phase of this case, if any. The court orders Wilson and the Government to provide each other notice of non-mental-health witnesses they intend to call in the penalty phase of this case, if any,

---

      ³      It is not clear whether the court has the authority at this time to preclude Wilson from offering non-mental-health testimony in the penalty phase. As noted throughout this Memorandum and Order, the Federal Rules of Criminal Procedure permit this court to prohibit Wilson from introducing undisclosed evidence when Wilson's failure to disclose constitutes a failure to comply with Rule 16. Fed. R. Crim. P. 16(d)(2)(C). Wilson's failure to disclose expert testimony would seem to constitute a violation of the requirement that he provide notice of "testimony that [he] intends to use under Rules 702, 703, or 705 of the federal Rules of Evidence as evidence at trial[.]" Fed. R. Crim. P. 16(b)(1)(C). But federal law provides that in the penalty phase of a death penalty case, "[i]nformation is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials." 18 U.S.C. § 3593(c). Because Wilson may, in the penalty phase, offer testimony that does not satisfy Fed. R. Ev. 702, 703, or 705, it may be the case that Fed. R. Crim. P. 16 does not require him to provide notice of "expert" testimony he intends to offer in the penalty phase. This would mean that the court could not sanction him for failing to comply with Rule 16 merely because he has not provided such notice. The court reaches no conclusion on this issue, however, as it has not been argued or briefed and its resolution is not necessary to the court's decision.

      ⁴      It is clear that the court has the authority to issue such an order pursuant to Fed. R. Crim. P. 16(d)(1), which provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." That Rule does not distinguish in any way between evidence offered in the trial phase and evidence offered in the penalty phase.

by December 15, 2006.  Each party will be precluded from offering non-mental-health witness testimony in the penalty phase of this case by witnesses not noticed by that date.

SO ORDERED.

Dated: December 13, 2006  　　　　　　　　　　　/s/ Nicholas G. Garaufis  
　　　　Brooklyn, N.Y.　　　　　　　　　　　　NICHOLAS G. GARAUFIS  
　　　　　　　　　　　　　　　　　　　　　　United States District Judge