UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA,

                          v.

RONELL WILSON,

                   Defendant.
-----------------------------------------------------X

**MEMORANDUM & ORDER**
04-CR-1016 (NGG)

GARAUFIS, District Judge.

      A jury has found Ronell Wilson guilty of the following capital crimes: two counts of murder in aid of racketeering, one count of carjacking, and two counts of causing death through use of a firearm.[1] These charges were based on Wilson's March 10, 2003 execution of undercover New York City Police Department Detectives Rodney Andrews and James Nemorin, whom he was attempting to rob of the $1,200 they planned to use to purchase a firearm from Wilson and his fellow members of the Stapleton Crew street gang. (See Order dated January 9, 2007 at 3-7.) The Government is seeking the death penalty against Wilson. The parties have finished presenting their evidence in the penalty phase and will present their penalty-phase closing arguments on January 29, 2007.

      Wilson has provided the court a list of thirty-five mitigating factors for inclusion in the court's jury charge. The Government has moved the court to preclude mitigating factors that were not previously noticed and to combine mitigating factors that are elements of previously noticed factors. For the reasons set forth below, that motion is GRANTED in part and DENIED in part.

---

[1] The jury also found Wilson guilty of two counts of robbery conspiracy, one count of attempted robbery, and two counts of using a firearm in furtherance of crimes of violence.

**I. Background**

Shortly before the trial phase of this case commenced, the court ordered Wilson to disclose to the Government the mitigating factors he intended to prove in the penalty phase of this case should he be found guilty of any capital crimes. (See Order dated Nov. 24, 2006 at 2-4.) The court provided that "[i]f it becomes necessary for Wilson, based on evidence presented at trial, to introduce evidence of additional factors . . . he may apply to the court in a timely manner for permission to introduce such evidence." (Id. at 4.)

Pursuant to the court's Order, Wilson disclosed that he intended to prove thirty mitigating factors, each of which he identified and briefly described. (See Wilson Ltr. to Judge Garaufis dated Dec. 1, 2006 (listing twelve non-mental-health mitigating factors); Wilson Ltr. to Judge Garaufis dated Jan. 7, 2007 (listing eighteen mental-health mitigating factors).)

After the parties finished presenting evidence in the penalty phase, but before they made their closing arguments, Wilson filed the following list of thirty-five mitigating factors for inclusion in the court's jury charge:

1. Ronell Wilson was twenty years old on March 10, 2003.

2. If he is not sentenced to death, Ronell Wilson will be incarcerated for the rest of his life in prison without possibility of release or parole.

3. A sentence of life imprisonment without possibility of release is a harsh sentence.

4. Ronell Wilson's parents were substance abusers which resulted in poor parenting.

5. During his formative years, Ronell Wilson experienced an unstable and chaotic living environment.

6. As a young child Ronell Wilson was separated from his mother and siblings.

7. Throughout his childhood, Ronell Wilson was saddened by his separation from his family.

8. Ronell Wilson's father took no responsibility for raising him.

9. During his early childhood, Ronell Wilson was exposed to an unsafe and unsanitary home environment.

10. At age 21 months, Ronell Wilson contracted bacterial meningitis.

11. As a result of contracting bacterial meningitis, Ronell Wilson was hospitalized for over two weeks.

12. Throughout his childhood, Ronell Wilson lived in overcrowded homes.

13. Throughout his childhood, Ronell Wilson was exposed to his mother's and aunt's drug use and their acts of violence against each other.

14. As he was growing up, Ronell Wilson was exposed to drugs and violence in his community.

15. Ronell Wilson grew up in poverty and deprivation.

16. At age 6, Ronell Wilson was admitted to the emergency room for psychiatric care on 12/21/88.

17. At age 6, Ronell Wilson was admitted to the children psychiatric unit at Elmhurst hospital on two occasions, the first from 1/25/89 to 2/21/89 and the second from 4/27/89 to 6/7/89.

18. While at the psychiatric hospital, Ronell Wilson told treatment staff that he wanted to die.

19. Throughout his childhood, Ronell Wilson was prescribed medication by mental health professionals.

20. As a child, Ronell Wilson was told by his mother and brother not to take his prescribed medications.

21. Ronell Wilson was again admitted to the children's psychiatric unit of Elmhurst Hospital at the age of eleven, from 10/26/93 to 11/30/93.

22. Ronell Wilson has a history of depression.

23. Ronell Wilson performed well below grade level in school.

24. Ronell Wilson was placed in Special Education classes.

25. Ronell Wilson's poor performance in school was affected by negative influences in his home life.

26. Ronell Wilson's scores on standardized intelligence test are below average.

27. Ronell Wilson has a loving relationship with his family members.

28. Ronell Wilson has family members who would suffer grief and loss if he were executed.

29. Ronell Wilson has adjusted well to federal prison.

30. Others who are equally culpable in the crimes relating to the murders of Detectives Andrews and Nemorin will not be sentenced to death.

31. Others who are equally culpable in the crimes relating to the murders of Detectives Andrews and Nemorin are eligible to be released from prison some day.

32. Ronell Wilson takes responsibility for his actions.

33. Ronell Wilson has remorse for the murder of Detectives Andrews and Nemorin.

34. There are other factors in Ronell Wilson's background that mitigate against the imposition of the death penalty.

35. There are other circumstances in this case that mitigate against the imposition of the death penalty.

These thirty-five factors are not merely the original thirty factors plus five additional factors. Rather, some original factors have been withdrawn; others have been re-styled as

multiple factors; and some new, previously unnoticed factors have been added. The Government has moved the court to recombine factors that were originally noticed as single factors and to preclude those factors that were not previously noticed.

## II. Discussion

During the penalty phase, "information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under [18 U.S.C.] section 3592." 18 U.S.C. § 3593(c). Section 3592(a) lists seven mitigating factors and also provides that the jury may consider "[o]ther factors in the defendant's background, record, or character or any other circumstances of the offense that mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a)(8). Section 3592(c) lists sixteen aggravating factors that may be presented in homicide case and also provides that "[t]he jury . . . may consider whether any other aggravating factor for which notice has been given exists." After the parties present their evidence and make their closing arguments, the jury must "consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death." 18 U.S.C. § 3593(e).

Before turning to the factors at issue, the court notes that its rulings are governed by two principles derived from the Federal Death Penalty Act. The first is that the parties' efforts to list aggravating and mitigating factors should not turn into an arms race. This court will instruct the jury, pursuant to 18 U.S.C. § 3593(e) and the request of both parties, that the process of weighing aggravating and mitigating factors against each other in order to determine the proper

5

punishment is not a mechanical process, and that the jury should not reach a decision by merely counting aggravating and mitigating factors. Rather, the court will instruct, the jury should consider the weight and value of each factor found to exist. This instruction is necessary because in its absence, a juror may deem the number of factors offered by each party to be determinative. The court is concerned, however, that even after this instruction is given, a juror or jurors may be swayed by the quantity of the factors offered rather than by their quality.

Wilson seems to have offered his mitigating factors in the spirit of an arms race. Many of the "factors" offered by Wilson are facts, not factors. The Government's list of aggravating factors presents a useful contrast. The Government alleges, for example, that Wilson faces contemporaneous convictions for other serious acts of violence. This aggravating factor is based, with respect to each capital count, on the fact that Wilson has been convicted of the other counts charged in this case. The Government has not divided this factor by the number of other counts so as to increase the quantity of its aggravating factors without increasing their quality.

Similarly, the Government alleges that Wilson represents a continuing danger to the lives and safety of other persons, and offers four categories of proof of that aggravating factor. One such category is Wilson's alleged continuing pattern of violence, including his juvenile and adult criminal acts. But the Government does not ask the court to instruct the jury as to each of those criminal acts. Given the proof offered in the penalty phase of this case, doing so could increase the number of aggravating factors significantly without increasing their quality or weight.

Wilson, on the other hand, has chosen to list separately the various discrete facts about his life he wishes to offer in mitigation, even when those facts seem to amount to a single factor. For example, each of factors 16, 17, 18, and 21 alleges an instance or instances of Wilson's

childhood hospitalization for psychiatric care. The court sees no reason to instruct the jury as to each instance rather than simply instructing the jury that during Wilson's childhood, he was hospitalized for psychiatric care. Of course, the defense may, during its closing argument, argue that this factor is satisfied by the separate hospitalizations the defense would have the court charge. That is, the court is not precluding the defense from describing, during its summation, any evidence relevant to any mitigating factor. The court is merely seeking to streamline its charge so as to prevent the jury, which will receive a copy of the court's charge, from entering its deliberations with a list of aggravating factors in one hand and a list of mitigating facts (rather than factors) in the other.

The second principle governing the court's rulings is that notice of mitigating and aggravating factors is necessary in order to ensure that the jury receives the most complete, reliable information available. The Federal Death Penalty Act provides that "[t]he government and the defendant shall be permitted to rebut any information received at the hearing, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death." 18 U.S.C. § 3593(c). The court ordered Wilson to disclose his mitigating factors in order to permit the rebuttal contemplated in this provision. The court will therefore strike mitigating factors that were not previously noticed unless the defense had good cause for not providing notice or the inclusion of the factor will not prejudice the Government. However, the court is reluctant to strike any previously noticed factors, or to combine previously noticed factors with each other.

The following factors will be presented to the jury in the form in which they were submitted by the defense: 1, 2, 9, 15, 19, 22, 23, 24, 25, 26, 29, 30, 32, and 33. Other than factor 2, each of these factors was noticed previously. Factor 2 ("If he is not sentenced to death, Ronell Wilson will be incarcerated for the rest of his life in prison without possibility of release or parole") will be included in the court's charge because the Government has not been prejudiced by Wilson's failure to notice it.

The following factors are precluded because they were not noticed previously and their inclusion in the jury charge would prejudice the Government: 3, 7, 8, 12[2], and 20. Although some or all of these factors allege facts that were within the Government knowledge, the Government presented its case and rebutted Wilson's case under the impression that Wilson would not seek to offer those facts as freestanding mitigating factors.

Factors 4, 5, and 6, which allege that Wilson's family life was unstable, will be combined into a single factor, as they were when they were originally noticed.

Factors 10 and 11, which concern Wilson's contraction of bacterial meningitis at the age of twenty-one months, will be combined into a single factor. Wilson consents to this combination.

Factors 13 and 14, which allege that Wilson was exposed to drugs and violence, will be combined into a single factor, as they were when originally noticed.

Factors 16, 17, 18, and 21, which concern Wilson's hospitalization for psychiatric care, will be combined into a single factor in order to decrease the risk that the jury will weigh these factors by counting them rather than by considering their quality. Wilson consents to the

---

[2] Wilson consents to the preclusion of factor 12.

combination of factors 17 and 18 but ostensibly opposes the combination of factors 16 and 21 with each other or with 17 and 18. As explained above, Wilson may of course refer to the facts he alleged as factors 16, 17, 18, and 21 when arguing to the jury that he has proven the combined factor.

Factors 27 ("Ronell Wilson has a loving relationship with his family members") and 28 ("Ronell Wilson has family members who would suffer grief and loss if he were executed") will combined into a single factor. Factor 27 was previously noticed. Factor 28 was not, but that omission has not prejudiced the Government.

Factor 31 is precluded because its inclusion would violate this court's oral Order of January 24, 2007, which provided (1) that Wilson may argue, in mitigation, that other defendants who are equally culpable in Wilson's crimes will not be punished by death and (2) that Wilson may not present evidence of the other defendants' actual sentences.[3] That Order was based on the plain language of 18 U.S.C. § 3592(a)(4) and on the need to prevent the jury from considering sentences that may reflect factors the jury should not consider, such as plea bargaining and cooperation.

Factors 34 ("There are other factors in Ronell Wilson's background that mitigate against the imposition of the death penalty") and 35 ("There are other circumstances in this case that mitigate against the imposition of the death penalty") will be combined into a single factor in order to comport with statutory language. See 18 U.S.C. § 3592(a)(8) (directing the jury to

---

[3] The Government has stipulated that no other people involved in the crimes charged in this case have been or will be sentenced to death. The court will instruct the jury that it must not speculate as to the actual sentence received by any other person involved in the crimes charged in this case or the reasons for their sentences.

consider, in addition to certain enumerated mitigating factors, "[o]ther factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence").

## III. Conclusion

For the aforementioned reasons, the court will instruct the jury to consider the following twenty mitigating factors:

1. Ronell Wilson was twenty years old on March 10, 2003.

2. If he is not sentenced to death, Ronell Wilson will be incarcerated for the rest of his life in prison without possibility of release or parole.

3. Ronell Wilson's parents were substance abusers which resulted in poor parenting, an unstable and chaotic living environment, and separation of his family.

4. During his early childhood Ronell Wilson was exposed to an unsafe and unsanitary home environment.

5. At age 21 months, Ronell Wilson contracted bacterial meningitis and, as a result, was hospitalized for over two weeks.

6. Ronell Wilson was exposed to drugs and violence as a child and adolescent.

7. Ronell Wilson grew up in poverty and deprivation.

8. During his childhood, Ronell Wilson was admitted to hospitals on at least four occasions for psychiatric care.

9. Throughout his childhood, Ronell Wilson was prescribed medication by mental health professionals.

10. Ronell Wilson has a history of depression.

11. Ronell Wilson performed well below grade level in school.

12. Ronell Wilson was placed in Special Education classes.

13. Ronell Wilson's poor performance in school was affected by negative influences in his home life.

14. Ronell Wilson's scores on standardized intelligence tests are below average.

15. Ronell Wilson has a loving relationship with his family members, who will suffer grief and loss if he is executed.

16. Ronell Wilson has adjusted well to federal prison.

17. Others who are equally culpable in the crimes relating to the murders of Detectives Andrews and Nemorin will not be sentenced to death.

18. Ronell Wilson takes responsibility for his actions.

19. Ronell Wilson has remorse for the murder of Detectives Andrews and Nemorin.

20. There are other factors in Ronell Wilson's background and other circumstances of his offenses that mitigate against the imposition of the death penalty.

Wilson previously indicated that he may wish to strike his factor 30 (which is now the court's factor 17) if the court precluded his factor 31. The court has precluded Wilson's factor 31. If Wilson now wishes to strike his factor 30 (which is now the court's factor 17), he must so inform the court by January 27, 2007 at 5:00 pm.

SO ORDERED.

Dated: January 26, 2007            /s/ Nicholas Garaufis
    Brooklyn, N.Y.            NICHOLAS G. GARAUFIS
                                               United States District Judge