UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

UNITED STATES OF AMERICA

        -against-                               Docket No.  04 CR 1016 (NGG)

RONELL WILSON,

        Defendant.

----------------------------------------------------------X

# DEFENDANT RONELL WILSON'S MEMORANDUM OF LAW IN OPPOSITION TO GOVERNMENT'S SECOND MOTION REGARDING RULE 12.2 DISCOVERY AND PROCEDURES, AND IN SUPPORT OF CROSS MOTION TO PROHIBIT GOVERNMENT FROM RETAINING OR CONSULTING WITH ANY EXPERT IT HIRED IN CONNECTION WITH THE 12.2 NOTICE FILED IN THE PRIOR PROCEEDING

DAVID M. STERN
Rothman Schneider Soloway & Stern
100 Lafayette St., Suite 501
New York, New York  10013

COLLEEN QUINN BRADY
99 Hudson St., 8th fl.
New York, New York  10013

*Attorneys for Defendant
Ronell Wilson*

BEVERLY VAN NESS, Of Counsel
January 2012

## INTRODUCTION

Mr. Wilson's death sentence has been vacated by the Court of Appeals and the case remanded to this Court. Mr. Wilson's new trial counsel were appointed in April 2011.

We are currently investigating whether to seek a hearing to determine if Mr. Wilson is a person with mental retardation and, therefore, ineligible for execution under <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002). The Court has issued a scheduling order concerning the <u>Atkins</u> claim.[1] On January 11, 2012, the government moved for certain discovery related to a potential penalty phase proceeding. This memorandum is submitted in opposition to all of the government's requests. It is also submitted in support of the defense application to preclude the government from retaining or consulting with its prior 12.2 experts in this case.

## ARGUMENT

**The government's motion to require the defense to file a Rule 12.2 notice in tandem with the <u>Atkins</u> schedule is unwarranted, and its claim of prejudice is baseless.**

Preliminarily, the government is muddling together two distinct issues and proceedings. The first is an <u>Atkins</u> claim, which is a pre-trial determination by the Court as to whether capital punishment is barred in this case. If it is, there will be no re-trial concerning Mr. Wilson's punishment – he will be sentenced to life in prison without the possibility of parole. Rule 12.2 of the Federal Rules of Criminal Procedure comes into play only if the <u>Atkins</u> claim is denied after a hearing. If so, defense counsel will decide if they intend to introduce expert evidence of Mr. Wilson's mental condition at a penalty re-trial. If such notice is filed, and the defense confirms

---

[1] The Court's schedule retains the items included on the schedule that had been jointly proposed to it by the parties, relating to the mental retardation issue alone, but shortens the time frame. The defense has submitted an <u>ex parte</u> letter asking the Court to reconsider its schedule.

2

its intent to adduce such proof, it will be presented to the jurors as mitigating evidence, which they may weigh against the aggravating factors in deciding to impose a life or death sentence on Mr. Wilson.

Rule 12.2 does not apply to an <u>Atkins</u> hearing. The rule was extended to capital punishment proceedings in 2002. <u>See</u> Rule 12.2(b)(2). The commentary to that amendment expressly notes that it was added to require notice "of an intent to present expert evidence of the defendant's mental condition <u>during a capital sentencing proceeding</u>." If a defendant establishes that he is ineligible for the death penalty under <u>Atkins</u>, there will, perforce, be no "capital sentencing proceeding."[2]

In addition, there is no reason to provide 12.2 notice concerning a mental retardation claim. By requesting an <u>Atkins</u> hearing, the defense will have specified the precise "mental condition" at issue. The government need not speculate about the nature of the disability, and the scientific literature and case law defining this condition are equally available to both sides.

In this case, moreover, the government has already worked out the notice it wants, and an agreed to timeline, in the <u>Atkins</u> schedule it jointly proposed to the Court (<u>see</u> Pacer # 597). <u>With the government's prior consent,</u> the schedule provides a date by which each side will simultaneously provide notice of their hearing experts' identity, the experts' CV's, and the tests each party intends to administer to Mr. Wilson. The defense will also provide a description of the tests that have already been administered by defense experts at the time of the disclosure date,

---

[2] The amended text of 12.2(c)(2) and (3), which refers back to the notice to be provided under rule 12.2(b)(2) discussed above, also authorizes disclosure of expert reports and examinations only after "the defendant confirms an intent to offer <u>during sentencing proceedings</u> expert evidence on mental condition" (emphasis added). An <u>Atkins</u> hearing before the Court, not a jury, is not a "sentencing proceeding."

as well as a summary of their expected opinions. And, in recognition that the mental retardation claim may require the retention of additional experts and/or additional testing, the schedule also allows each side to modify its notice if further investigation so warrants.

The suggestion in the government's motion that it is disadvantaged by not receiving 12.2 notice with respect to the <u>Atkins</u> claim is, therefore, completely disingenuous. In fact, the terms of the schedule the government has already agreed to are far more detailed than the text of Rule 12.2 requires. 12.2 notice is accordingly redundant with respect to mental retardation: the government will obtain discovery it has already agreed to in accordance with a timeline to be monitored by the Court.

Next, the government asks the Court to require defense counsel to file 12.2 notice for a possible penalty re-trial on the same track as it provides discovery for an <u>Atkins</u> claim. It argues that Mr. Wilson "has had since 2004 . . . to investigate every conceivable issue related to his mental health, and additional delays are unwarranted" (Pacer # 599, pp. 4-5). It acknowledges, but ignores, that Mr. Wilson has new trial counsel, appointed only nine months ago. He also has a new mitigation specialist. Prior to our appointment, we had never before met a single witness for the defense, actual or potential. We are reviewing material gathered by the prior defense team and continue to seek additional evidence. We are certainly not wedded to the presentation that was made by prior counsel: the Court needs no reminding that that presentation ended with the imposition of a death sentence. Instead, we must look at the government's evidence in aggravation, and all possible evidence that could be presented in mitigation -- including whatever mental condition evidence we find and evaluate -- and decide on our own strategy.

The government cannot charge the new defense team with comprehensive knowledge of

all that went on before, and its assertion that we have had sufficient time to provide 12.2 notice next month -- or at any time in the foreseeable future -- must be rejected. The government also fails to acknowledge that the defense team has been focused on the viability of an Atkins claim since almost the beginning of our representation. Some of the evidence we are reviewing, and some of the witnesses we have spoken to, are certainly sources of mitigation. But our primary focus is on mental retardation, which is an extremely complicated issue, factually and forensically. The summary response to this part of the government's motion, therefore, is that we are unprepared to provide 12.2 notice for purposes of a penalty proceeding, and will be until the mental retardation issue is resolved.

Moreover, there is no basis for the government's inflammatory speculation about "piecemeal notice" and unwarranted delay (Pacer # 599, p. 4). If we decide, should a penalty re-trial become necessary, to re-litigate mental retardation before the jury, the government will be fully prepared on that issue as soon as our 12.2 notice is filed, as well as on any other expert opinion subjects that are aired at the Atkins hearing. In the unlikely event that we uncover additional mental condition evidence not addressed at the hearing, the parties will expeditiously litigate the parameters of discovery. The government's claim that it will be prejudiced if it does not receive 12.2 notice next month (Pacer # 599, p. 5) – some ten months before a new penalty proceeding could start even pursuant to the Court's current scheduling order – is as unsupportable as its other claims.

Finally, although the government cites this Court's prior 12.2 decision in its motion (see p. 3, referencing Pacer # 103, which was published at 494 F.Supp.2d 348), it ignores the Court's denial then of the similar discovery it now seeks. In item (2) of its Introduction, the government

5

seeks discovery by February 15, 2012 of "the identities of any defense mental health experts, their qualifications, the tests they have administered – or will administer – in evaluating the defendant, a brief general summary of the topics to be addressed so the government may determine the areas in which its experts must be versed, and the identities of any lay witnesses whom these experts intend to rely on in forming their opinions about the defendant's mental condition, in connection with" a notice under Rule 12.2(c)(2) that it asks the Court to order the defense to file by February 1, 2012 (Pacer # 599, p. 2; see id., p. 5). In its June, 2006, order, responding to a similar request for detailed discovery (see Pacer #103, pp. 3-4), the Court surveyed both the scheme set forth in Rule 12.2 and relevant case law. It then ruled that the government's requests were premature.

More specifically, the Court did not require the defense to disclose "the kinds of mental health experts it anticipates calling at the penalty phase and the nature of the tests those experts have performed or may be expected to perform" until the end of June, 2006 (Pacer #103, p. 7). That date was three months before the scheduled start of jury selection (see id., p.14). In its current motion, the government seeks this information eight months before the start of jury selection as set forth in the Court's current scheduling order (Pacer # 598, p. 2). The government has not only failed to acknowledge this prior time line, it has also failed to articulate why it now needs almost three times the amount of notice in order to prepare for a second penalty hearing. If anything, the government is entitled to less notice than before, since it has already been exposed to a detailed evidentiary presentation of Mr. Wilson's life at the first proceeding.

In addition, the additional discovery the government now seeks is, in essence, a request for a summary of defense experts' opinions and the underlying basis for it. This is incompatible

6

with the procedures set forth in Rule 12.2, which – only after the defendant confirms an intention to submit mental condition evidence at a penalty proceeding – requires the government to disclose its experts' "results and reports" first, before the defense is required to furnish the same. Moreover, and again, the government ignores this Court's prior 12.2 order. It did direct the defense to provide certain additional 12.2 discovery, but only to the firewalled government attorney, and <u>no earlier than three months</u> before the expected start of the penalty trial (Pacer #103, pp. 12-15). The government's current request is for disclosure to the trial prosecutors some <u>ten months,</u> at least, before a penalty re-trial would begin, assuming one is necessary. Again, the government does not acknowledge the Court's prior analysis or time line, or assert any basis for virtually immediate discovery as it now requests. Its requests are extraordinarily premature and should be denied. Respectfully, it is too early for the Court to set disclosure deadlines concerning possible 12.2 evidence.

> **The government's motion to require the defense to provide a list of mitigating factors it intends to present is premature and must be denied.**

The government asks the Court to require defense counsel to provide a list of the specific statutory and non-statutory mitigating factors Mr. Wilson intends to offer by February 15th (Pacer #599, pp. 9-10). For reasons previously argued with respect to its request for 12.2 notice and discovery at this juncture, this motion should be denied. The government has a list of the mitigating factors submitted at the prior penalty phase, and the penalty transcript. Thus, it already has a vast amount of information about Mr. Wilson's life and a host of possible reasons which may be proffered in support of a life sentence. We are not in a position to compile a new

7

list of mitigating factors until our investigation is complete, which it is not. We are investigating an <u>Atkins</u> claim.

The government's request for such an advance disclosure is also unprecedented. Tellingly, it offers no principled justification for it. In fact, although it neglects to acknowledge this, in the prior proceeding this Court did not require the prior defense team to disclose a list of mitigating factors until six weeks before the penalty phase began: it ordered disclosure by December 1, 2006 (<u>see</u> Pacer # 259, p. 4), and opening statements at penalty were made on January 16, 2007. The government now asks for disclosure on February 15th, when the penalty proceeding – if it is held at all – cannot start until December at the earliest pursuant to the Court's current scheduling order. The government's request must be denied.

**The government cannot be permitted to review any material disclosed in connection with the 12.2 notice filed by prior defense counsel, nor may the prosecutors consult with any of the experts it previously retained.**

As the Court is aware, we wrote a letter to the government on December 5, 2011, outlining our view that the materials disclosed to the government in connection with the 12.2 notice filed by prior counsel, and all interviews by government experts in connection with it, and all reports and underlying data generated by government and defense mental condition experts, should remain sealed.

This letter (the Stern Letter) is attached to the government's current motion, and we incorporate it by reference in this memorandum so that we do not burden the Court with repetition. Indeed, the government concedes the validity of our claim in principal part: the prosecutors state that they have refrained from reviewing the 12.2 material, and do not ask to do

8

so unless and until current defense counsel files another Rule 12.2 notice (Pacer # 599, pp. 6-7).

We have already argued in this memorandum why Rule 12.2 does not apply to a claim of mental retardation litigated at an Atkins hearing, and why the jointly-proposed Atkins schedule provides at least as much notice and discovery with respect to that claim as Rule 12.2 would. We have also explained why the defense will be unable to decide whether to file a 12.2 notice for penalty re-trial purposes for many months to come, and why its inability to do so does not prejudice the government in any way. In light of the government's concession cited above, it is clear that there is only one motivation for its application to force us to file a second 12.2 notice: the prosecutors want to review the 12.2 material generated during the first proceeding. They must not be permitted to do so, or to consult with any expert who was privy to this material.

The government claims we have offered "neither legal authority or practical rationale" to support our position (Pacer #599, p. 7). On the contrary, we have relied on the text of and commentary to Rule 12.2 itself, the Fifth and Sixth Amendments to the Constitution, and Estelle v. Smith, 451 U.S. 454 (1981) (Stern letter, pp. 3-4). It is the government's papers which are devoid of support. As the government acknowledges in its motion (pp. 7-8), it retained four experts in connection with the 12.2 notice previously filed, one of whom, Dr. Welner, interviewed Mr. Wilson in order to prepare his report. Dr. Welner consulted with other members of The Forensic Panel, Drs. Greiffenstein, Brodie and Foote, who issued their own reports. Thus, all of these individuals were privy to statements made by Mr. Wilson during his lengthy interview, and to each other's impressions and findings, as well as a number of documents disclosed by the defense solely in connection with Rule 12.2. Many of these documents, in turn, were generated by medical and mental health personnel over the course of

9

Mr. Wilson's life, and are thus subject to the doctor-patient or psychotherapist-patient privilege.

Mr. Wilson withdrew his 12.2 notice. He offered no expert testimony about mental condition at the penalty proceeding. Accordingly, none of the statements he made, or any of material generated by the experts, can be introduced against him or used in any fashion by the government. See Rule 12.2(c)(4); United States v. Harding, 219 F.R.D. 62, 64 (S.D.N.Y. 2003) (Rule 12.2(c)(4) "prohibits use against [defendant] of any fruits of the government's psychiatric examination 'except on an issue regarding mental condition on which [he] . . . has introduced . . . evidence requiring notice under Rule 12.2(a) or (b)(1)'" or (b)(2)). This includes its use by the government at a penalty re-trial to establish its noticed aggravating factors – such as future dangerousness – or to rebut any mitigating factors the defense submits. If the prosecutors are permitted to review this material, and to talk to experts previously retained in connection with the Rule 12.2 notice, Mr. Wilson's privileges will be unfairly breached. In addition, the defense will have to seek a hearing pursuant to Kastigar v. United States, 406 U.S. 441 (1972). The government will bear the burden of proving that none of the 12.2 material was used to derive any of the proof it presents at an Atkins hearing or a penalty re-trial, and that none of its witnesses were tainted by their knowledge of this material. See United States v. Ebbers, 458 F.3d 110, 118 (2d Cir. 2006).

The government does not address these principles and concerns, which were included in the Stern Letter. Instead, it simply suggests that any evidence – even privileged material, disclosed on a limited and conditional basis – is at least potentially relevant, both to mental retardation and to any conceivable mental condition which might be the subject of a future 12.2 notice. We recognize that the definition of "relevant" is broad, but it is not all-encompassing.

Moreover, the definition cannot embrace privileged material absent clear proof that the privilege has been waived. See In re Sims, 534 F.3d 117, 131-32 (2d Cir. 2008) (holding that defendant did not waive psychotherapist-patient privilege because he did not put privileged communications in issue to support his claim); see also Slutzker v. Johnson, 393 F.3d 373, 389 (3d Cir. 2004) (witness who has waived Fifth Amendment privilege in one part of the proceeding is not estopped from asserting it again as to the same matter in a subsequent proceeding in the same case).

In Sims, an inmate brought a § 1983 action against corrections officers for their excessive use of force. When the District Court ruled that he had to disclose privileged psychiatric treatment records, he successfully sought a writ of mandamus to set aside the order. The Court of Appeals held that the defendant had not sought to use the privileged material in support of his claim, nor otherwise attempted to use the privilege as both a shield and a sword. 534 F.3d at 131-32. Here, the defendant withdrew his prior 12.2 notice and did not present any expert testimony on mental condition at the penalty proceeding. His interview with Dr. Welner, the reports generated by the experts, and all material disclosed solely for 12.2 purposes must, therefore, remain sealed unless and until he opens the door to its disclosure.

Mr. Wilson will be protected by such sealing. His Fifth and Sixth Amendment rights will be secured, as well as the confidentiality of privileged documents. The government, in turn, will suffer no prejudice or disadvantage: to the extent that any of the 12.2 material is provided to defense experts involved in the Atkins investigation, and they make a diagnosis of mental retardation, the material will be disclosed to the government for review by its experts. Similarly, materials reviewed by government experts in reaching their opinion will be disclosed to the

defense. Discovery will thus be provided in a controlled and orderly fashion, without any risk that any prior12.2 material, or its fruits, will be used against Mr. Wilson as the case progresses. See Rule 12.2(c)(4).

The government instead seeks <u>immediate</u> access to all of the material associated with the withdrawn 12.2 notice. Since the prosecutors here have properly refrained from reviewing this material to date, they can only speculate about its relevance to mental retardation (they cannot even do that much with respect to any other mental condition, since no new 12.2 notice has been filed or is even contemplated at this juncture). Given the express language of Rule 12.2 and its purposes – one of which is to safeguard the defendant's Fifth Amendment rights – and the other authorities cited above, the prosecutors should not be licensed to engage in a fishing expedition with respect to confidential material. They will obtain all the discovery they are entitled to in connection with an <u>Atkins</u> claim, and similarly as to any mental condition evidence covered by a new Rule 12.2 notice if one is filed. To avoid any improper use, direct or derivative, of the prior 12.2 materials, those materials must remain sealed, and the government experts who were privy to them barred from the case.

### There are additional reasons to preclude the government from retaining or consulting with Dr. Welner and other members of The Forensic Panel.

Ordinarily, a party is free to select the expert(s) of its choice. For the reasons previously stated, we believe there is a legal impediment to the government's retention of the four experts from The Forensic Panel that it previously employed in this case. In addition, with respect to an <u>Atkins</u> claim, specifically, there is reason to doubt their competence. First, none of these experts, including Dr. Welner, include mental retardation as an area of expertise according to The

12

Forensic Panel website. Indeed, only one of the 30 individuals listed on the site claims expertise in this field, Dr. Seward, and it is one of eight areas specified.

Second, although Dr. Greiffenstein does not claim any special expertise in mental retardation, he did testify for the government at a federal <u>Atkins</u> hearing in 2009. Significantly, his testimony was thoroughly discredited: among other criticisms, the Court found Greiffenstien to be "especially lacking in credibility," "highly tendentious and at times disingenuous and misleading," and "a very biased witness" who "undertook a results-driven evaluation designed to . . . [conclude] that Defendant is not mentally retarded"; the Court also found that the witness had relied upon "techniques of dubious validity." <u>United States v. Shields</u>, unpublished decision dated May 11, 2009, pp. 9-12 (W.D.Tenn.) (a copy of this decision is submitted with this memorandum).

The second government expert witness in <u>Shields</u>, Dr. Joel Morgan, was deemed "more objective" by the Court, but his credibility was held to be tarnished by his endorsement of Dr. Greiffenstein's work (<u>id.</u>, p. 12). Both men were (and remain) affiliated with The Forensic Panel and Dr. Morgan "thus has an obvious pecuniary interest in approving of Dr. Greiffenstein's efforts so that they will both receive forensic consulting work in the future" (<u>id.</u>). Dr. Welner conferred with both men in that case, and concurred in the finding that Shields was not mentally retarded (<u>id.</u>, p. 7). The Court disagreed, and disqualified the defendant from execution.

Finally, Dr. Welner has engaged in questionable behavior in this case, which further undermines the integrity of his panel: for purposes of promoting The Forensic Panel for pecuniary gain, he and the other three government experts have breached the confidentiality of the Rule12.2 notice and taken an adversarial position against the defense. In the "about us"

13

portion of his business's website is a list of "selected cases." It includes the following:

> ## U.S. vs. Wilson
> The Forensic Panel acted as the principal mental health witnesses for the prosecution in the capital murder sentencing phase of a defendant who had killed two police officers, later writing a rap song about his exploits. The defense raised psychiatric, neuropsychological, neuroradiology, and psychological testing issues, all of which were reviewed by The Forensic Panel. The interviews, test interpretation, and reports prepared by The Forensic Panel led the defense to withdraw their mental health expert witnesses to avoid exposure to rebuttal. Mr. Wilson was the first capital sentence in federal court in New York in many decades.

This summary identifies subjects which the experts had considered on a confidential basis, as to which not a single "mental health witness[]" testified since the Rule 12.2 notice was withdrawn. It reveals that the government experts engaged in a factual and forensic investigation which – the website claims – debunked bogus defense contentions. It asserts that the only reason the defense did not proceed with their claims was the superior work of The Forensic Panel, which would have exposed the invalidity of the proposed mental health mitigation evidence. It is unlikely that prior defense counsel ever so advised Dr. Welner. Moreover, it is very likely that were other explanations for the curtailment of 12.2 testimony, such as a desire to avoid a battle of the experts, and the diversion of jurors' attention from what the Court of Appeals characterized as Mr. Wilson's "Dickension upbringing." United States v. Wilson, 610 F.3d 168, 177 (2d Cir. 2010). The website's summary also adopts the government's theory that the rap song Mr. Wilson possessed upon arrest referenced the murders of which he was accused. This was a disputed issue at trial, and the jury never made a finding on the point.

The Panel is now on record as a partisan in this case, with a vested interest in countering the defense case.

## CONCLUSION

For the reasons stated, Mr. Wilson respectfully asks this Court to deny the government's motion in all respects, to order all material disclosed or generated during the prior 12.2 proceedings to be sealed, and to prohibit the government form retaining or consulting with any of the mental condition experts it used.