UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA,

              -against-

RONELL WILSON,

              Defendant.

**MEMORANDUM & ORDER**

**04-CR-1016 (NGG)**

------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

      By Order dated February 2, 2012, the court modified the schedule for proceedings necessary for the resolution of Defendant's forthcoming motion pursuant to Atkins v. Virginia, 536 U.S. 304 (2002). (Order of Feb. 2, 2012 (Docket Entry # 618).) In that Order, the court also addressed several issues that the parties raised with respect to the sequence of other aspects of this case, beyond the Atkins motion. Specifically, the court held that "resolution of the Atkins claim should precede litigation of other mental health issues" and denied the Government's request to compel Defendant to immediately: "(1) file Rule 12.2 notice of [his] intent to present expert testimony during the penalty phase retrial on any mental condition . . . ; (2) provide discovery regarding mental health experts, any tests they will administer, and the topics they will address; and (3) provide a list of mitigating factors Defendant intends to establish at trial." (Id. at 1; see also Gov't Mot. (Docket Entry # 599) at 2.)

      The court now addresses the parties' arguments regarding the permissibility of the Government's reliance on experts and materials disclosed to firewalled counsel in advance of the penalty phase of Defendant's 2006 capital trial, pursuant to Federal Rule of Criminal Procedure 12.2. The court entertained oral argument on these questions of first impression today.

1

I.  **BACKGROUND**

Defendant Ronell Wilson was tried before this court for capital-eligible crimes arising from the murder of two New York City Police Officers. In December 2006, the jury found Defendant guilty and voted to impose the death penalty. (See Jury Verdict (Docket Entry # 351).) Although Defendant's convictions stand, the Second Circuit Court of Appeals overturned the sentence of death and remanded the case to this court for trial of a new penalty phase. United States v. Wilson, 610 F.3d 168 (2d Cir. 2010). Defendant is represented by new counsel in this penalty phase "re-trial."

In advance of Defendant's 2006 trial, his then-attorneys filed notice pursuant to Federal Rule of Criminal Procedure 12.2 that they intended to present expert evidence related to Defendant's mental condition during the penalty phase of that proceeding. This notice did not relate to an Atkins claim. On June 8, 2006, the court ruled on discovery and procedural issues surrounding this mental condition evidence. (Order of June 8, 2006 (Docket Entry # 103).) The court held, inter alia, that a Government "taint team" from a different United States Attorney's Office should be appointed to oversee the Government's mental condition rebuttal case prior to the beginning of the penalty phase. (Id.) The court further held that, pursuant to Federal Rule of Criminal Procedure 16(b)(1), defense counsel was required to disclose to the firewalled Government attorneys certain information related to defense experts' analysis no later than three weeks before the beginning of trial. (Id. (requiring disclosure of written summary of expert testimony Defendant planned to introduce, all raw data obtained by defense experts, and the results of tests and expert reports).)

Consistent with Rule 12.2, both firewalled Government counsel and the 2006 defense team had experts conduct tests and prepared to testify. Among the materials to which firewalled Government counsel gained access at that time were "a videotaped interview of Mr. Wilson by Michael Welner, the reports and related materials that were submitted by prosecution experts (Dr. Welner, Jonathan Brodie,

2

Manfred Greiffenstein and William Foote), and the reports and associated data that were submitted by defense experts (Sandy Drob and Monte Bushbaum)." (Dec. 5, 2011 Letter from David Stern to AUSA Jason Jones ("Stern Letter") (Docket Entry # 599-1, attached as Ex. A to Gov't Mot.) at 1.) Defendant subsequently withdrew his intent to offer expert evidence about his mental condition, and this information was never presented in the penalty phase of the trial. The expert materials disclosed in connection with that aspect of the proceeding remain under seal; the Government team assigned to Defendant's penalty phase re-trial has not reviewed them.

Pursuant to Rules 12.2 and 16, the current Government attorneys now seek access to the materials disclosed to firewalled counsel in connection with the 2006 Rule 12.2 notice. (Gov't Mot. at 2, 5-9; see also Gov't Reply (Docket Entry # 613); Gov't Letter of Feb. 2, 2012 (Docket Entry # 616).) Although the court has ruled that Defendant need not file his new Rule 12.2 notice, if any, until after the resolution of the Atkins claim, the Government maintains that dissolution of the firewall is warranted; it argues that the materials produced by its previous experts are relevant to an Atkins determination as well as to other mental conditions covered by Rule 12.2. (See Gov't Letter of Feb. 2, 2012.) Defendant opposes the Government's motion, arguing that disclosure of these materials would violate Rule 12.2 as well as Defendant's Fifth and Sixth Amendment rights. (Def. Mem. (Docket Entry # 612) at 8-12; see also Stern Letter; Def. Response (Docket Entry # 615); Def. Letter of Feb. 2, 2012 (Docket Entry # 617).) Defendant further argues that the Government should be prohibited from consulting with its previously retained experts in connection with the Atkins motion or any other part of the penalty phase re-trial. (Def. Mem. (Docket Entry # 612) at 12-14.)

## II. DISCUSSION

### A. Disclosure of Mental Condition Evidence Produced in Accordance with Defendant's Prior 12.2 Notice

The court must first address whether the lead Government attorneys in this case may access expert reports and other materials, including the videotaped interview with Defendant, that were produced to firewalled prosecutors in advance of the 2006 penalty phase. This material was created in conformance with Rule 12.2, and the same Rule governs its disclosure and use. See Fed. R. Crim. P. 12.2.[1]

Rule 12.2(c)(2) provides that "results and reports" of expert mental examinations conducted in connection with this Rule "must be sealed and must not be disclosed . . . unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition." Fed. R. Crim. P. 12.2(c)(2); (see also Order of June 8, 2006 at 2 ("Rule 12.2 prohibits disclosure to prosecutors of any 'results and reports' of mental examinations conducted by government experts until two things happen: (i) the defendant is found guilty, and (ii) the defendant confirms his intent to rely on mental condition evidence during the penalty phase").) There is no question that Defendant in this case has been found guilty; the court must now decide whether the second pre-requisite has been met. Specifically, the court must decide whether—as the Government urges—the presentation of mental condition evidence in connection with Defendant's Atkins claim occurs in the context of a "sentencing proceeding[]" within the meaning of Rule 12.2.

Interpretation of Rule 12.2(c)(4), which governs the introduction of material produced under Rule 12.2, requires a similar inquiry. This subsection prohibits the Government from introducing this

---

[1] The June 8, 2006 Order discusses the statutory scheme and timing of disclosures under Rule 12.2 in greater detail; the court will not repeat that discussion here.

material, or any fruits of thereof, unless one of four specific preconditions is met.[2] The Government may rely on this evidence only where the defendant has introduced (1) evidence of incompetence; (2) evidence of insanity, pursuant to 12.2(a); (3) expert evidence relating to the defendant's "mental disease or defect or any other mental condition" bearing on the issue of guilt, pursuant to 12.2(b)(1); or (4) "expert evidence in a capital sentencing proceeding requiring notice under Rule 12.2(b)(2)." Fed. R. Crim. P. 12.2(4). Rule 12.2(b)(2) requires a defendant to provide timely notice if he "intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of punishment in a capital case." Fed. R. Crim. P. 12.2(b)(2).

It is clear that the first three possibilities are inapplicable here.[3] Again, though, the court must decide whether Defendant's Atkins notice amounts to notice of an intention to introduce expert evidence

---

[2] Rule 12.2(c)(4) subsection reads as follows:

> (4) *Inadmissibility of a Defendant's Statements.* No statement made by a defendant in the course of any examination conducted under this rule (whether conducted with or without the defendant's consent), no testimony by the expert based on the statement, and no other fruits of the statement may be admitted into evidence against the defendant in any criminal proceeding except on an issue regarding mental condition on which the defendant:
>
> > (A) has introduced evidence of incompetency or evidence requiring notice under Rule 12.2(a) or (b)(1), or
> >
> > (B) has introduced expert evidence in a capital sentencing proceeding requiring notice under Rule 12.2(b)(2).

Fed. R. Crim. P. 12.2(c)(4).

[3] Defendant has not asserted an insanity defense, and the guilt phase of this proceeding is long over. As to competency, the court is cognizant that Atkins claims bear some similarity to claims of incompetence. Like a claim of incompetence, a claim of mental retardation can be raised by defense counsel and decided prior to trial; and, a successful showing of either of these conditions makes a defendant ineligible for the death penalty. However, the Supreme Court has made clear that a showing of mental retardation is distinct from a showing of incompetency:

> *Mentally retarded persons frequently know the difference between right and wrong and are competent to stand trial.* Because of their impairments, however, by definition they have diminished capacities to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others. There is no evidence that they are more likely to engage in criminal conduct than others, but there is abundant evidence that they often act on impulse rather than pursuant to a premeditated plan, and that in group settings they are followers rather than leaders. *Their deficiencies do not warrant an exemption from criminal sanctions, but they do diminish their personal culpability.*

5

regarding his mental condition in a "capital sentencing proceeding." The Government urges the court to read the Atkins determination as part of a "capital sentencing proceeding" whereas Defendant argues that an Atkins decision is, in essence, a pretrial determination not covered by Rule 12.2.

The court agrees that the proceedings surrounding Defendant's claim of mental retardation under Atkins are prior to and distinct from the "capital sentencing proceeding[s]" that Rule 12.2 contemplates. Pursuant to the Federal Death Penalty Act, a capital defendant must be subjected to a "separate sentencing hearing" following the jury's determination of guilt. 18 U.S.C. § 3593(b). The language and history of Rule 12.2 indicate that the Rule refers to this type of separate hearing. For instance, the 2002 Advisory Committee Notes state that:

> The proposed change in Rule 12.2(c)(2) adopts the procedure used by some courts to seal or otherwise insulate the results of the examination until it is clear that the defendant will introduce expert evidence about his or her mental condition at a capital sentencing hearing; i.e., after a verdict of guilty on one or more capital crimes, and a reaffirmation by the defendant of an intent to introduce expert mental-condition evidence in the sentencing phase.

Comm. Notes on Rules—2002 Amendments (citing United States v. Beckford, 962 F. Supp. 748 (E.D. Va. 1997)). The court finds that this phrase—"capital sentencing proceeding"—as used in Rule 12.2 was intended to refer to the penalty phase of a capital trial, not to an Atkins proceeding.

The court is sensitive to the special posture of this penalty-phase retrial and notes that it is only the unusual circumstances of this case that have created a situation in which the Atkins determination occurs long after the jury's determination of guilt. In the more typical case, a court's evaluation of a defendant's mental retardation claim would occur prior to both the guilt and the penalty phases of a capital jury trial—making any argument that the Atkins determination was part of a "capital sentencing proceeding" untenable. The court will not strain to read the clear language of Rule 12.2 to account for

---

Atkins v. Virginia, 536 U.S. 304, 318 (2002).

this the unusual circumstances of this case—circumstances that the Advisory Committee did not itself contemplate.[4]

Due to Rule 12.2's strict prohibition on the disclosure and use of expert mental condition evidence outside of the circumstances it enumerates, the court denies the Government's motion for access to previously disclosed, sealed information.[5] In connection with the instant Atkins determination, the Government may not rely on expert reports or other materials produced to firewalled prosecutors in advance of the 2006 penalty phase, subject to further order of the court.

### B. Government's Reliance on Previously Retained Experts

The court grants Defendant's to prohibit the Government from relying on its previously retained experts, including Dr. Welner, in preparing for the Atkins hearing. Given that Rule 12.2 prohibits the disclosure of materials created and relied on by these experts, the court finds that the potential for the spillover of information generated in connection with the 2006 12.2 notice would create substantial risks in terms of both potential prejudice to Defendant and expenditure of the court's time should Kastigar hearings become necessary. See Kastigar v. United States, 406 U.S. 441 (1972). On the other hand, prohibiting the Government from relying on these experts does not prejudice its ability to prepare a rebuttal case with regard to the Atkins motion; the court has no doubt that the Government is capable of finding other suitable experts.[6]

---

[4] Nothing in the Rule refers specifically to an Atkins determination, let alone an Atkins determination in the context of a penalty phase after remand. Rule 12.2 was revised in 2002, the same year that the Supreme Court issued its decision in Atkins v. Virginia. Perhaps due to that timing, the amendments to the Rule do not explicitly contemplate Atkins determinations. The court is hopeful that future amendments to the Rule will provide greater clarity and guidance on this issue. In the meantime, the court must take seriously the Rule's specific prohibition on disclosure and use of expert mental condition evidence outside of the circumstances for which it *does* provide.

[5] Because it finds that Rule 12.2 prohibits the Government's reliance on the expert evidence at issue, the court need not address Defendant's argument that the Fifth and Sixth Amendments also demand such a result.

[6] Nor should this requirement—that the Government find new mental health experts to aid it in preparing for litigation of Defendant's Atkins claims—result in delays. In the court's previous Order, the court not only extended the Atkins motion schedule, but also specifically instructed the Government to prepare for the possibility that it would need to rely on a new set of experts. (See Order of Feb. 2, 2012 at 2, n.4.)

7

As to Defendant's argument that the previously retained experts are not competent to participate in *any* aspect of the penalty phase retrial, this argument is premature. Should this case proceed beyond the Atkins determination, the court will consider the parties' motions about experts on which they may seek to rely in preparing to re-try the penalty phase before a jury. Defendant is free to raise this issue at the appropriate time, if he so chooses.

### III.  CONCLUSION

The Government's Motion for immediate access to materials disclosed in connection with his 2006 Rule 12.2 notice is DENIED. The Government may not review this material or rely on its previously retained experts in connection with Defendant's Atkins claim. Defendant's motion to prohibit reliance on the Government's previously retained at any point in this litigation, including after resolution of the Atkins claim, is DENIED without prejudice.

SO ORDERED.

Dated:  Brooklyn, New York  
February 13, 2012

/s/ Nicholas G. Garuafis  
NICHOLAS G. GARAUFIS  
United States District Judge

8