D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

UNITED STATES OF AMERICA

-against-

RONELL WILSON,

Defendant.

------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**04-CR-1016 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

The Government has made two requests. First, it asks the court to order Defendant

Ronell Wilson to provide immediate notice of his intent to produce evidence relating to any

mental condition at the retrial of his death penalty phase, pursuant to Federal Rule of Criminal

Procedure 12.2. Contrary to the Government's assertion, this request is properly construed as a

motion for reconsideration of an Order the court issued on February 2, 2012, and it is DENIED.

Second, the Government asks the court to enter an order allowing the Government's experts to

speak with any individual who has knowledge of Wilson's mental capacity, including doctors,

counselors, and social workers. Because Wilson has waived his psychotherapist-patient

privilege for the purposes of his Atkins[1] motion, this request is GRANTED for those purposes.

I.      **RULE 12.2 NOTICE**

In January 2012, the Government asked the court to compel Wilson to immediately file

Rule 12.2 notice of his intent to present expert testimony on any mental condition during the

penalty phase retrial. (Gov't Jan. 12.2 Mot. (Docket Entry # 599) at 2.) On February 2, 2012,

the court denied that motion because it agreed with Wilson "that resolution of the Atkins claim

---

[1]      Atkins v. Virginia, 536 U.S. 304 (2002).

should precede litigation of other mental health issues, as this claim is potentially dispositive of the penalty phase of this case." (Feb. 2 Order (Docket Entry # 618) at 2.) The court then set a schedule for proceedings related to Wilson's Atkins motion. (Id. at 2-3.) On February 13, the court further clarified that "Defendant need not file his [ ] Rule 12.2 notice, if any, until after resolution of the Atkins claim." (Feb. 13 Order (Docket Entry # 625) at 3.)

More than six months later, by letter dated August 22, 2012, the Government asked the court to "order the defendant to provide notice pursuant to Federal Rule of Criminal Procedure 12.2 by September 5, 2012." (Gov't 12.2 Ltr. (Docket Entry # 838) at 1.) Wilson opposed this request. (Def. 12.2 Ltr. (Docket Entry # 843).) At a status conference on August 30, 2012, the Government represented that it did not view its August 22 request for 12.2 notice as a motion for reconsideration of the February 2 Order. (See Conf. Tr. at 7, 15.) It argued that although the February 2 Order "made sense at the time," the parties "didn't realize that all this time was going to be passed" before the Atkins hearing would occur, and so its request was "simply for [Wilson] to file the Rule 12.2 notice to prevent further delay in this case." (Id. at 8, 15-16.)

But the court did not simply reject the Government's request for *immediate* 12.2 notice on February 2; it ruled that Wilson would not be required to provide 12.2 notice *until* the resolution of the Atkins claim. (Feb. 2 Order at 2 ("[R]esolution of the Atkins claim should precede litigation of other mental health issues . . . .").) In its subsequent February 13 Order, the court made clear once again that "Defendant need not file his [ ] Rule 12.2 notice, if any, until *after resolution of the Atkins claim.*" (Feb. 13 Order at 3 (emphasis added).) The Government's instant request that immediate 12.2 notice be given, if granted, would of course require Wilson to file his 12.2 notice before resolution of his Atkins claim, contrary to the February 2 Order.

The court rejects the Government's argument that its request should not be deemed a motion for reconsideration because the parties did not realize in February 2012 that the Atkins motion would take so long to resolve. (See Conf. Tr. at 16.) For one thing, this argument is (if anything) simply a *ground* for reconsidering the court's previous decision. But more fundamentally, the parties and the court surely knew in February that a great deal of time would pass before the resolution of the Atkins motion because the court's February 2 Order *scheduled* the Atkins hearing for September 17, 2012. (See Feb. 2 Order at 3.) That date is less than two months before the date that the Atkins hearing is currently scheduled to begin—November 13— and it was pushed back to that date only as a result of *joint* requests by the parties. (See Def. Ltr. of July 17, 2012 (Docket Entry # 804) (joint request for postponement of the hearing date); Minute Entry of July 30, 2012 (Docket Entry # 810) (scheduling hearing for November 5); Gov't Ltr. of Aug. 15, 2012 (Docket Entry # 817) (requesting one-week adjournment of hearing date to November 13); Order of Aug. 15, 2012 (Docket Entry # 823) (granting request).) The Government appears to be suggesting that the court's February 2 Order was somehow nullified (and is thus no longer law of the case) because the Atkins hearing is now scheduled (as a result of the parties' joint requests) to occur nine months rather than seven months from the time of the February 2 Order. It is wrong.

Because the Government's request is undoubtedly a motion for reconsideration, the court applies the "strict" standard for such motions set forth in this Circuit's case law. Schrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995). Such motions may be granted (1) if the court overlooks critical facts; (2) if it overlooks controlling decisions that could have changed its decision, see id.; (3) in light of an intervening change in controlling law; (4) in light of new

3

evidence; (5) to correct clear error; or (6) to prevent manifest injustice, see Virgin Atl. Airways v. Nat'l Mediation Bd., 965 F.2d 1245, 1255 (2d. Cir. 1992).

The only possible ground for the Government's motion that the court can discern from its submissions and its statements at the status conference is that there is "new evidence" of the amount of time it would take to resolve Wilson's Atkins motion.[2]  As discussed above, however, the court was fully aware in February that Wilson's Atkins motion would take until at least September to litigate, but nonetheless concluded that he should not be required to provide 12.2 notice until after the resolution of his motion. (See Feb. 2 Order at 2-3; Feb. 13 Order at 3.)  The two-month postponement of the Atkins hearing that has resulted from the parties' joint requests for adjournment does not affect the conclusion that the court reached in February.

Indeed, the arguments the parties have presented in connection with the Government's recent request for 12.2 notice are essentially identical to those they presented in January.  The Government continues to argue that Wilson's failure to provide 12.2 notice will force the Government to seek an adjournment of the penalty phase retrial after the Atkins hearing, resulting in further delays. (Gov't 12.2 Ltr. at 1; cf. Gov't 12.2 Jan. Mot. at 4 ("If the defendant is permitted to provide piecemeal notice, first of mental retardation and later of some other mental condition or conditions, the government will be forced to retain additional experts related to the latter, and this case will be delayed yet again.").)  For one thing, the court agrees with Wilson that permitting him to wait until after the Atkins hearing to provide 12.2 notice (if any) will not necessarily cause significant delays because, in the course of the Atkins proceedings, the Government will receive—and has already received—far more information about Wilson's mental condition than it would be entitled to receive under Rule 12.2. (See Def. 12.2 Ltr. at 2.)

---

[2]     Because the court interprets the Government's motion to be based upon changed factual circumstances, it will not deny the motion on the grounds of untimeliness. See Local Crim. R. 49.1(d) (motion for reconsideration shall be filed within fourteen days of original order).

But even assuming delay would occur, Wilson has represented—as he did in January—that he will not be able to state in good faith whether he intends to introduce expert evidence on any mental disease, defect, or other condition at trial until he sees the evidence adduced at the Atkins hearing. (See Def. 12.2 Ltr. at 2; Conf. Tr. at 11-12; cf. Def. Jan. 12.2 Mem. (Docket Entry # 612) at 5.) The court continues to take Wilson at his word and agrees that Rule 12.2 contemplates notice of a *present intention* to introduce mental health evidence, not mere acknowledgement of a possibility that such an intention may later be formed.

The court has recently issued an opinion in this case finding that the Government had failed to assert a valid ground for a different motion for reconsideration related to Rule 12.2. (See June 22 Mem. & Order (Docket Entry # 782) at 5-10.) The Government now attempts again to avoid this Circuit's stringent standards for departing from the law of the case by characterizing what is clearly a motion for reconsideration as something else. But these standards are not mere formalism; they are crucial to ensuring the finality of a court's decisions and the conservation of scarce judicial resources. See In re Health Mgmt. Sys., Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000). The court appreciates that the unique procedural posture of this case—an Atkins proceeding sandwiched between a finding of guilt and a potential capital sentencing proceeding—creates novel legal questions and practical difficulties for both parties. But when the court has considered and resolved an issue, that ruling is the law of the case regardless of whether one or both of the parties disagrees with it, and may not be reconsidered absent "extraordinary circumstances." Marrero Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004). The Government's request is denied.

5

## II.    PSYCHOTHERAPIST-PATIENT PRIVILEGE

Next, the Government asks the court to "enter an order allowing the government's experts to speak with any individual who has knowledge of the defendant's mental capacity, including doctors, counselors, and social workers." (Gov't Priv. Ltr. (Docket Entry # 846) at 1.) Its request will be granted.

This issue arose when the Government contacted the Metropolitan Detention Center ("MDC") to set up an interview between the Government's expert, Dr. Robert L. Denney, and two MDC employees: Officer Bret Somerville, Wilson's former counselor, and Dr. Lorie Nicholas, a psychologist. (Gov't Priv. Ltr. at 1; Def. Priv. Ltr. (Docket Entry # 850) at 1.) The MDC advised the Government that the MDC required either a release from Wilson's counsel or a court order before permitting Dr. Denney to meet with MDC personnel. (Gov't Priv. Ltr. at 1.) The Government advised Wilson's counsel, David Stern, of the MDC's position, and Mr. Stern told the Government that although he had no objection to Dr. Denney speaking to Officer Somerville, he would not consent to the interview of Dr. Nicholas until he had an opportunity to interview her to determine the content, frequency, and nature of her communications with Wilson, and to confer with Wilson to determine whether he would be willing to waive his psychotherapist-patient privilege as to Dr. Nicholas. (Id. at 1-2; Def. Priv. Ltr. at 1.)

On August 28, 2012, the Government wrote a letter to the court arguing that "by filing an Atkins claim, the defendant has put his mental condition at issue and thus waived his psychotherapist-patient privilege," and asking the court to "clarify[]" this fact so that its experts would be allowed "unfettered access to any individual who has knowledge of the defendant's mental capacity." (Gov't Priv. Ltr. at 1, 3.) Wilson has submitted a letter opposing the

6

Government's request and arguing that he did not waive the psychotherapist-patient privilege.[3] (Def. Priv. Ltr.)

Federal Rule of Evidence 501 provides that "the privilege of a [ ] person . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." In Jaffee v. Redmond, 518 U.S. 1 (1996), the Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501." Id. at 15. This privilege is "rooted in the imperative need for confidence and trust" between a psychotherapist and her patient. Id. at 10. The Court further recognized that the privilege extends to communications in the course of psychotherapy between a patient and all licensed mental health professionals, including psychiatrists, psychologists, and social workers, id. at 15, but not to non-mental health providers, see id. at 10; EEOC v. Nichols Gas & Oil, Inc., 256 F.R.D. 114, 119 (W.D.N.Y. 2009).

---

[3]    Wilson's letter at times suggests—without arguing explicitly—that his communications with Dr. Nicholas may be protected by the Fifth and Sixth Amendments in addition to the psychotherapist-patient privilege. (See Def. Priv. Ltr. at 1 ("We do not know whether [Dr. Nicholas's conversations with Wilson] were compelled."); id. at 2 ("[N]one of the cases [the Government cites] stands for the sweeping proposition . . . that filing a claim relating to a specific mental condition . . . operates as a waiver of all privileged communications with a psychotherapist or other mental health professional . . . whether they were compelled or voluntary, or whether the defendant was advised that any statements he made were not confidential and could be used against him." (citing Estelle v. Smith, 451 U.S. 454, 461-69 (1981))).) Based on the information that has been provided to the court, however, it does not appear that Wilson's Fifth and Sixth Amendment rights would be implicated by the Government speaking with Dr. Nicholas. As the Government points out (see Gov't Priv. Ltr. at 2), Estelle applies not to third-party interviews but to court-ordered psychiatric tests of a defendant. See 451 U.S. at 468 ("A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding."). Wilson does not claim that his meetings with Dr. Nicholas were conducted at the direction of the Government, and the Government's letter implies that they were not. (See Gov't Priv. Ltr. at 3 n.4.) Therefore, even if Wilson has preserved his Fifth Amendment privilege, it would not appear to protect statements Wilson made to Dr. Nicholas. Cf. Estate of Fisher v. C.I.R., 905 F.2d 645, 649 (2d Cir. 1990) ("The danger of self-incrimination must be real, not remote or speculative."). Nevertheless, out of an abundance of caution, the court makes clear that its ruling today relates only to Wilson's waiver of the psychotherapist-patient privilege, not to Wilson's Fifth and Sixth Amendment rights. If either party understands that Wilson was in fact compelled by the Government to submit to a psychiatric examination, that party must bring this fact to the court's attention.

The Jaffee Court noted that, "[l]ike other testimonial privileges, the patient may of course waive the protection" of the psychotherapist-patient privilege. Jaffee, 518 U.S. at 15 n.4. And since Jaffee, "courts that have considered the question have generally held that a plaintiff who . . . puts his or her mental state at issue . . . waives the psychotherapist-patient privilege." Oliphant v. Dep't of Transp., 171 F. App'x 885, 888 (2d Cir. 2006); see, e.g., Doe v. Dairy, 456 F.3d 704, 718 (7th Cir. 2006); Schoffstall v. Henderson, 223 F.3d 818, 822 (8th Cir. 2000); Woodall v. Pitchard, No. 08-CV-6228 (JWF), 2012 WL 1113605, at *2 (W.D.N.Y. Mar. 30, 2012); Sunegova v. Vill. of Rye Brook, No. 09-CV-4956 (KMK), 2011 WL 660424, at *10 (S.D.N.Y. Dec. 22, 2011); Jacobs v. Conn. Cmty. Tech. Colls., 258 F.R.D. 192, 195 (D. Conn. 2009). The privilege is deemed waived in such circumstances because of the unfairness that would result "from a party's advancing a claim to a court . . . while relying on its privilege to withhold from a litigation adversary materials that the adversary might need to effectively contest or impeach the claim." John Doe Co. v. United States, 350 F.3d 299, 303 (2d Cir. 2003); see also Kronenberg v. Baker & McKenzie LLP, 747 F. Supp. 2d 983, 989 (N.D. Ill. 2010) ("[W]aiver is based upon the obvious principle of fairness that a party cannot inject his or her psychological treatment, conditions, or symptoms into a case and expect to be able to prevent discovery of information related to those issues." (internal quotation marks omitted)). These principles apply both in civil cases where a plaintiff brings a claim for damages based on his mental state and in criminal cases where the defendant places his mental state at issue by raising an affirmative defense. See United States v. Sturman, No. 96-CR-318 (BSJ), 1998 WL 126066, at *3 (S.D.N.Y. Mar. 20, 1998) ("Examples of waiver [of the psychotherapist-patient privilege] include a civil plaintiff who brings a claim for mental and emotional distress and a criminal

defendant who pleads insanity." (citing 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence §§ 504.01, 504.07(7) (2d ed. 1997))).[4]

The court will assume that Wilson's communications with MDC employees are protected by the psychotherapist-patient privilege. Cf. Cuoco v. U.S. Bureau of Prisons, No. 98-CV-9009 (WHP), 2003 WL 1618530, at *2 (S.D.N.Y. Mar. 27, 2003). But there can be no doubt that Wilson has placed his mental condition at issue by filing his Atkins motion. Indeed, Wilson's mental condition—i.e., whether he is mentally retarded—is *all* that is at issue in the Atkins proceedings. Thus, based on the principles discussed above, the Government should be given an opportunity to speak with individuals with knowledge of Wilson's mental state for the purposes of contesting his Atkins motion. See John Doe Co., 350 F.3d at 303.

Nevertheless, Wilson makes three arguments for why he has not waived his psychotherapist-patient privilege.

First, Wilson relies upon the Second Circuit's decision in In re Sims, 534 F.3d 117 (2d Cir. 2008), for the propositions that the psychotherapist-patient privilege "'promotes sufficiently important interests to outweigh the need for probative evidence'"; that "[a] party 'may forfeit a privilege by exposing privileged evidence, but do[es] not forfeit one merely by taking a position that the evidence might contradict'"; and that "courts should give a lay party 'extra leeway' before finding a waiver.'" (Def. Priv. Ltr. at 2-3 (quoting Sims, 534 F.3d at 130-33).) Sims, however, is of no help to Wilson.

---

[4]     In Sturman, the court distinguished psychiatric evidence offered in a criminal case to prove an *affirmative defense* from psychiatric evidence offered to negate an element of the Government's *direct case*, and held that a defendant's provision of Rule 12.2 notice of an intent to offer the latter form of evidence does not operate as a waiver of the psychotherapist-patient privilege. 1998 WL 126066, at *4. Although the court is aware of no case on the issue, it has no difficulty concluding that an Atkins motion is more akin to an affirmative defense than to a rebuttal of the Government's direct case, and the parties do not suggest otherwise. Because it is the Government that brings its direct case against a defendant, it would not be fair to say that a defendant who attempts to rebut it has affirmatively placed his mental state at issue. On the other hand, a defendant does affirmatively inject his mental state into a case by raising an Atkins claim and, as with the insanity defense, bears the burden of proving that claim. See United States v. Davis, 611 F. Supp. 2d 472, 474 (D. Md. 2009).

In Sims, the Second Circuit reversed a district court's order requiring a plaintiff who had asserted excessive force claims that did *not* include allegations of emotional injury to disclose his mental health records to the defendants. 534 F.3d at 120, 142. Specifically, the Second Circuit concluded that the district court had abused its discretion by holding that the plaintiff, who had requested and was denied counsel and then reluctantly appeared pro se at a deposition, had waived the privilege by offering testimony about communications he had with mental health professionals. Id. at 136, 138, 142. The court first rejected the argument that "anybody who requests damages for pain and suffering has waived the psychiatric privilege" because such a holding "would disregard the principle that '[p]arties . . . do not forfeit a privilege merely by taking a position that the evidence might contradict.'" Id. at 141 (internal quotation marks omitted) (quoting United States v. Salerno, 505 U.S. 317, 323 (1992)). The court then concluded that the plaintiff had not forfeited his privilege for several reasons, including: (1) that he had never alleged any emotional injury in his pleadings; (2) that his only statements concerning emotional injury were made during responses to questions asked at his deposition, in which he had reluctantly appeared pro se; (3) that the deposition testimony would not be admitted at trial unless required by the defendants' own submissions; and (4) that the plaintiff had withdrawn any claim of mental injury beyond "garden variety" claims, i.e., those "ordinarily associated with a conventional claim for pain and suffering."[5] Id. at 120, 142.

Wilson's case is easily distinguishable from Sims. Unlike the plaintiff in Sims, who had never alleged any emotional injury in his pleadings, had never intended to place his mental or

---

[5]     Until Sims, "two divergent views [had] existed within the Second Circuit concerning the circumstances necessary to effect a waiver of the psychotherapist privilege": (1) "the 'broad' view," under which "the mere allegation of emotional distress was viewed as sufficient"; and (2) "the 'narrow' view," under which "a plaintiff [wa]s deemed not to have waived the privilege by alleging only 'garden variety' emotional distress," as opposed to "claims for more 'severe' emotional distress, such as those involving diagnoses of a specific psychiatric disorder." Jacobs, 258 F.R.D. at 195-96. Sims adopted the narrow view of waiver. See 534 F.3d at 120, 141-42; Jacobs, 258 F.R.D. at 196.

emotional state at issue, and had withdrawn any claim of mental injury that he had made at his deposition, Wilson has clearly and deliberately placed his mental state at issue by filing his Atkins motion and continues to pursue that motion. Cf. In re Consol. RNC Cases, 2009 WL 130178, at *7 (S.D.N.Y. Jan. 8, 2009) (distinguishing Sims based on the fact that the plaintiffs had "affirmatively pleaded claims of emotional distress and mental or psychological injury," had "s[ought] damages based upon those claims," and had not renounced the claims). Wilson made his Atkins motion through his experienced counsel, in contrast to the pro se plaintiff in Sims. Cf. id. at *7. And Wilson's claim that he is mentally retarded is not of the "garden variety." "Garden variety claims refer to claims . . . for nothing more than the distress that any healthy, well-adjusted person would likely feel as a result of being [ ] victimized," as opposed to claims involving a "specific psychiatric disorder." Willey v. Kirkpatrick, No. 07-CV-6484 (CJS) (MWP), 2011 WL 4368692, at *3 (W.D.N.Y. Sept. 19, 2011); see also Flowers v. C.O. Owens, 274 F.R.D. 218, 225-26 (N.D. Ill. 2011) (collecting various definitions of "garden variety" emotional injury); Jacobs, 258 F.R.D. at 195-96; Kunstler v. City of N.Y., No. 04-CV-1145 (RWS) (MHD), 2006 WL 2516625, at *9 (S.D.N.Y. Aug. 29, 2006). Wilson's alleged mental retardation is surely a specific psychiatric disorder, thus placing his case outside of the Sims exception and into the normal rule that putting one's mental state at issue in a lawsuit waives the psychotherapist-patient privilege.

Wilson's second argument is that he has "fil[ed] a claim relating to a specific mental condition"—mental retardation—which should not operate "as a waiver of all privileged communications with a psychotherapist or other mental health professional no matter what the topic of the communications." (Def. Priv. Ltr. at 2.) Wilson suggests that, if the Government is permitted to question his psychotherapists at all, its questions should be strictly limited to those

that directly reference whether he is mentally retarded—such as "does he seem retarded, does he say things that are retarded," or "do you think he's retarded"—and should not probe into other areas generally related to Wilson's mental state. (Conf. Tr. at 22-23.)

The court disagrees. Determining whether Wilson is mentally retarded will be a highly complex matter and will be potentially informed by a wide variety of details on his mental state. As the Supreme Court made clear in Atkins, "clinical definitions of mental retardation require not only subaverage intellectual functioning but also significant limitations in adaptive skills such as communication, self-care, and self-direction that became manifest before age 18." 536 U.S. at 318; see also American Association on Mental Retardation, Mental Retardation: Definition, Classification, and Systems of Supports 8 (10th ed. 2002) ("Mental retardation is a disability characterized by significant limitations both in intellectual functioning and in adaptive behavior as expressed in conceptual, social, and practical adaptive skills."); American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 42 (4th ed. 2000) ("Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting."). Thus, many topics about Wilson's mental state are potentially relevant to whether he is retarded, and the law does not require the Government to parse out precisely which questions would be informative of this issue and those that would not before asking. See John Doe Co., 350 F.3d at 303 (party who places mental state at issue may not rely upon psychotherapist-patient privilege "to withhold from a litigation adversary materials that the adversary *might* need to effective contest or impeach the claim" (emphasis added)); Kronenberg, 747 F. Supp. 2d at 989 (N.D. Ill. 2010) ("[A] party cannot inject his or psychological treatment, conditions, or symptoms into a case and

expect to be able to prevent discovery of information *related* to those issues." (emphasis added) (internal quotation marks omitted)). As long as the Government's questions of Wilson's psychotherapists are reasonably related to whether he is retarded, they are permissible.

Finally, Wilson argues that he "has not relied on any of his conversations with Dr. Nicholas to support his Atkins claim." (Def. Priv. Ltr. at 2.) But that is irrelevant. What matters is that Wilson has placed his mental state at issue; that decision waives his privilege and entitles the Government to speak with persons who may have knowledge of his mental state in order to rebut his claim of mental retardation, whether or not Wilson himself intends to rely upon those individuals. Cf. Cuoco, 2003 WL 1618530, at *3 ("That [plaintiff] chooses to not call her psychotherapists at trial is of no moment [to whether she waived the psychotherapist privilege]. . . . Because [plaintiff] can establish her emotional distress claim through her own testimony, defense counsel has a right to inquire into [her] past[] for the purpose of showing that her emotional distress was caused at least in part by other events and circumstances." (internal quotation marks, citation, and alterations omitted)).

## III.    CONCLUSION

The Government's request that Wilson be ordered to provide immediate Rule 12.2 notice is DENIED. The court holds that Wilson has waived any psychotherapist-patient privilege for the purposes of his Atkins motion, and it is accordingly ORDERED that the Government be permitted to speak with any individual who has knowledge of Wilson's mental capacity for the purposes of that motion, including doctors, counselors, and social workers; the Government must inform the court, however, if it wishes to speak to any person whose knowledge came from

13

compelled communications.  (See supra n.3.)

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      September 7, 2012

NICHOLAS G. GARAUFIS
United States District Judge