UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

UNITED STATES OF AMERICA

                                                 **MEMORANDUM & ORDER**

                                                 **04-CR-1016 (NGG)**

-against-

RONELL WILSON,

                     Defendant.

-----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Ronell Wilson faces a penalty phase proceeding during which a jury will determine whether he should be sentenced to death or life in prison. Prospective jurors will begin completing questionnaires on April 3, 2013. Voir dire is scheduled to begin April 17, 2013. The penalty phase itself is to begin on May 20, 2013, or as soon as possible after voir dire is complete. Wilson has filed three motions: (1) a request that the court order the Government to determine the source of a recent news article; (2) a motion to restrain the parties from speaking to the press; and (3) a motion to appoint a consultant to help him determine whether to file a motion for a change of venue. For the reasons set forth below, Wilson's first motion is DENIED; his second and third are DENIED WITHOUT PREJUDICE.

**I.    MOTION TO IDENTIFY THE SOURCE OF A NEWS ARTICLE**

Wilson seeks an order that instructs the Government to "determine whether the person providing information to the press regarding [his case] is a government employee." (Feb. 25, 2013, Def. Ltr.[1] at 1.) This request is denied.

---

[1]    Wilson filed his first two motions under seal, but did not provide a reason for doing so. (See Feb.

1

Specifically, Wilson requests that the Government be ordered to root out the source of a recent news article because "it appears that th[e] information [reported in the article] was known only to the government, and never used in open court." (Id.) He is mistaken—without crediting the accuracy of the news article, there are many people outside of the Government who may have first-hand knowledge of, or later become aware of, this alleged information, and who may have been the source.[2] And whether the penalty phase jury will hear testimony regarding this information may be the subject of a motion in limine in this proceeding. The court will not needlessly divert the Government's attention at this critical juncture. This motion is therefore denied.

## II. MOTION TO PREVENT ALL PARTIES FROM SPEAKING TO THE PRESS

Wilson also asks that the court restrain the parties from speaking to any member of the press regarding this case. (See Feb. 25, 2013, Def. Ltr. at 1.) This request is denied without prejudice.

Before the court may impose any sort of "gag order," it must, among other things, determine whether "other available remedies would effectively mitigate the prejudicial publicity." In re App. of Dow Jones & Co., 842 F.2d 603, 611 (2d Cir. 1988); see also Local Crim. R. 23.1(h) (requiring that before imposing an order governing "extrajudicial statements," the court "shall consider whether such an order will be necessary to ensure an impartial jury and must find that other, less extreme available remedies, singly or collectively, are not feasible or would not effectively mitigate the pretrial publicity and bring about a fair trial"). These possible

---

25, 2013, Def. Ltr. (Dkt. 1016).) The court addresses these motions in this unsealed Memorandum and Order because there is no reason to keep the matter from public view. If anything, the public has a right to know about these issues. Cf. United States v. Quattrone, 402 F.3d 304, 312 (2d Cir. 2005) (Sotomayor, J.) ("[T]he lack of notice or opportunity to be heard normally renders a prior restraint invalid.").

[2]   The court accepts the Government's proffer that it is unaware of this source. (See Feb. 26, 2013, Gov't Ltr. (Dkt. 1030) at 1.)

measures include a change of venue; trial postponement; a searching voir dire; emphatic jury instructions; emphatic warnings to the press and parties; an anonymous jury; and sequestration of jurors.  See Sheppard v. Maxwell, 384 U.S. 333, 358-63 (1966); Quattrone, 402 F.3d at 311-12; Dow Jones, 842 F.3d at 611; see also Local Crim. R. 23.1(h) ("Among the alternative remedies [for the court to] consider[] are:  change of venue, postponing the trial, a searching voir dire, emphatic jury instructions, and sequestration of jurors.").

At this stage, the court is convinced that an appropriate combination of these "alternative remedies" will mitigate any prejudicial effects of the recent publicity on this case.  Most importantly, the court is prepared to conduct an exhaustive jury selection process to empanel a fair and impartial jury.  The questionnaire will inquire as to each prospective juror's exposure to the news coverage on this case.  The court is also prepared to question each prospective juror that has been exposed to such coverage to determine whether she is able to put aside anything she may have seen and decide the issues solely based on the evidence presented at the penalty phase.  Based on the court's experience in selecting death penalty juries (including one in this case that was also exposed to substantial pre-trial publicity), it believes that, at least given the press coverage to date, this process alone will root out any and all bias.[3]  Cf. United States v. Fell, 531 F.3d 197, 211 (2d Cir. 2008) ("[T]here will be situations where the trial judge is left with the

---

[3] In fact, the court has already taken measures to ensure Wilson's Sixth Amendment rights.  At the February 14, 2013, status conference, for example, the court strongly encouraged counsel for the Government, counsel for Wilson, and the press to minimize any negative pre-trial publicity that may frustrate the ability to select a fair and impartial jury.  They are reminded of this suggestion, and of Local Criminal Rule 23.1, which, among other things, instructs any "lawyer[,] . . . non-lawyer personnel employed by a lawyer's office[,] . . . and government agents and police officers[] not to release or authorize the release of non-public information or opinion which a reasonable person would expect to be disseminated by means of public communication . . . if there is a substantial likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice."  Local Crim. R. 23.1(a).  Also, the court has already ordered that the jury in this case be anonymous and semi-sequestered.  The court will emphatically instruct the jury to avoid and disregard all media reports on this case.  And if necessary, the court is prepared to take further measures, including, but not limited to, a change of venue.

3

definite impression that a prospective juror would be unable to faithfully and impartially apply the law. This is why deference must be paid to the trial judge who sees and hears the juror."); United States v. Quinones, 511 F.3d 289, 302-305 (2d Cir. 2007). Accordingly, Wilson's motion for an order directing all parties not to speak to the press is denied without prejudice. If circumstances change significantly, Wilson may renew this motion.

## II.  MOTION TO APPOINT A CONSULTANT

On February 27, 2013, Wilson requested that the court appoint a consultant to help determine whether to file a motion a motion for a change of venue. (Feb. 27, 2013, Def. Ltr.[4] (Dkt. 1031) at 1-2.) This request is denied without prejudice.

"'[T]he key to determining the appropriateness of a change of venue is a searching voir dire.'" United States v. Sabhnani, 599 F.3d 215, 234 (2d Cir. 2010) (quoting United States v. Yousef, 327 F.3d 56, 155 (2d Cir. 2003)); see also United States v. Stevens, 83 F.3d 60, 66 (2d Cir. 1996) ("The jury that was selected was composed of individuals who maintained that, although they had heard of the case through media reports, they nevertheless believed they could reach a verdict based solely on the evidence presented to them in the courtroom. This is what the law requires."). And as set forth above, a searching voir dire is one of the best ways to guard against any prejudicial effects of pre-trial publicity.

Therefore, as jury selection progresses, the parties and the court will be in a better position to determine whether a change of venue is necessary. Thus, to expeditiously resolve

---

[4]  This request was filed ex parte and under seal. But given the discussion in open court at the February 14, 2013, status conference regarding Wilson's potential desire to file a motion for a change of venue, the court's generic characterization of this request need not be so filed. Cf. 18 U.S.C. § 3599(f) ("No ex parte . . . request [for an appointment of a consultant or expert] may be considered pursuant to this section unless a proper showering is made concerning the need for confidentiality.").

4

this case, Wilson may file a motion for change of venue only *after* voir dire has begun.[5] If he still believes that such a motion may be worthwhile, he may renew his request for a consultant. Thus, this motion is denied without prejudice.

**IV.   CONCLUSION**

For the reasons set forth above:  (1) Wilson's request that the court order the Government investigate into the source of a recent news article is DENIED; (2) Wilson's request for an order restraining any party from speaking to the press is DENIED WITHOUT PREJUDICE; and (3) Wilson's request that the court appoint a consultant to help him determine whether to file a motion for a change of venue is DENIED WITHOUT PREJUDICE.

SO ORDERED.

                                                                                      /s/ Nicholas G. Garaufis

Dated:  Brooklyn, New York                                NICHOLAS G. GARAUFIS
         February 28, 2013                                    United States District Judge

---

[5] It should be noted that at the February 14, 2013, status conference, Wilson explicitly asked that the court determine when he should file any motion for a change of venue.  Although the court initially suggested that he prepare to file the motion before jury selection began, for the reasons set forth above, the court believes that efficiency favors delaying any such motion at least until voir dire has begun.