UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

-against-

**04-CR-1016 (NGG)**

RONELL WILSON,

               Defendant.

-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is Defendant Ronell Wilson's motion for an order (1) requiring the Government to make an offer of proof detailing its intended evidence of Wilson's alleged membership in the Bloods; and (2) limiting the Government's presentation of such evidence at the penalty phase re-trial. For the reasons set forth below, Wilson's request that the Government provide more specific disclosure is DENIED, and his motion to limit its presentation is GRANTED IN PART and DENIED IN PART.

**I.    BACKGROUND**

The Government has noticed its intent to prove Wilson's future dangerousness, in part, through his membership in the Bloods street gang. (See Notice of Intent to Seek the Death Penalty (Dkt. 174) ¶ 3(d); Oct. 1, 2006, Gov't Ltr. (Dkt. 180) at 3.)

Prior to his first trial, on December 20, 2006, Wilson moved to exclude all evidence concerning his alleged membership in the Bloods because "Mr. Wilson cannot be held responsible for the conduct of the Bloods as a whole, and the scope of the criminal activities perpetrated by its members, in which he played no part." (Def. Mot. in Limine (Dkt. 279) at 9.) Wilson asked that if his motion were denied, the court hold a hearing where "the government

1

should be directed to make a detailed offer of proof as to the evidence it intends to introduce on the issue, which must be narrowly focused on Mr. Wilson's own conduct and 'future dangerousness' and not the conduct and dangerousness of the Bloods generally." (Id. at 9-10.) He also asked that the Government make a detailed offer of proof concerning the testimony of Investigator William Sheridan of the New York City Department of Corrections, who had been noticed as an expert on the Bloods street gang. (See id. at 10.)

On January 9, 2007, the court largely denied Wilson's motion. United States v. Wilson, 493 F. Supp. 2d 491 (E.D.N.Y. 2007). The court held that "[b]ecause the Government is offering future dangerousness as an aggravating factor, it is clear that as a general matter that some proof of Wilson's membership in the Bloods is relevant in the penalty phase of this case." Id. at 501. Based on the Government's representation, the court was satisfied that the Government intended to "prove future dangerousness using Wilson's actual conduct as a Blood, not merely by describing the conduct of other Bloods." Id. Thus, this evidence was "relevant," id. (citing Dawson v. Delaware, 503 U.S. 159, 166 (1992)), and its probative value was not outweighed by the "danger, if any, of creating unfair prejudice, confusing the issues, or misleading the jury," id. at 501 (citing 18 U.S.C. § 3593(c)). But the court stressed that "proof of Wilson's Bloods membership is admissible only if it is tailored to Wilson's future dangerousness, as opposed to the dangerousness of the Bloods in general." Id. at 501. It cautioned that that "if the Government's proof conflates Wilson's individual characteristics with those of his associates in the Bloods, then that proof will not be admitted." Id.

On March 26, 2013, in advance of the penalty phase re-trial, Wilson has moved again to limit the Government's evidence concerning his alleged membership in the Bloods. (Def. Bloods Mem. (Dkt. 1079).) Specifically, Wilson requested that the court order that the

2

Government be "limit[ed] to 'using Wilson's actual conduct as a Blood, not merely by describing the conduct of other Bloods . . . [and only] briefly present information to the jury regarding Wilson's membership in the Bloods in support of the future dangerousness aggravating factor.'" (Id. at 2-3 (citation omitted).) Wilson also requests a "detailed offer of proof from the government concerning its intended Bloods presentation," including the expected testimony of Investigator Sheridan, who the Government has again noticed as a potential expert (see Mar. 21, 2013, Gov't Ltr. (Dkt. 1072)). (Def. Bloods Mem. at 3.) This, Wilson argues, will enable him to "seek preclusion of the evidence as violative of due process[,] the Eighth Amendment," and 18 U.S.C. § 3593(c). (Id. at 4.)

On April 2, 2013, the Government opposed Wilson's motion. (Gov't Bloods Opp'n (Dkt. 1089).) The Government does not dispute that its evidence must specifically relate to Wilson's own conduct, but contends that, taken together, the following "provide[] the defendant with notice of proof that is specifically tailored to the defendant's future dangerousness, not a general statement about the dangers of the Bloods gang": (1) the Government's disclosures before the first trial; (2) the transcript and exhibits introduced at the first trial; (3) its recent description of the evidence it intends to introduce in support of the future dangerousness aggravating factor; and (4) additional information concerning Investigator Sheridan's testimony disclosed in its opposition to the instant motion. (See id. at 5.)

## II. DISCUSSION

### A. Appropriate Disclosure

As the court has previously indicated, the Government is not required to provide hyper-specific information about the evidence it intends to introduce at the penalty phase. (Apr. 1, 2013, Mem. & Order (Dkt. 1088) at 12-13.) Rather, the Government must only provide

"sufficient notice of aggravating factors to enable [Wilson] to respond and to prepare his case in rebuttal." (Id. at 13 (quoting United States v. Wilson, 493 F. Supp. 2d 364, 377 (E.D.N.Y. 2006)).)

Here, the Government's disclosures concerning its presentation of Wilson's alleged membership in the Bloods and Investigator Sheridan's testimony is sufficient. As to the former, Wilson has at his disposal the transcript and exhibits from the prior trial, and the Government's various letters that detail Wilson's conduct as a member of the Bloods and how this bears on his alleged future dangerousness. (See Gov't Bloods Opp'n; Mar. 18, 2013, Gov't Ltr. (Ex. A to Def. Disclosure Mem. (Dkt. 1069-1)); Oct. 1, 2006, Gov't Ltr.) Although not always including specific dates and names, the Government's disclosures give a fair picture of Wilson's alleged Bloods membership—and are certainly more detailed than the disclosure provided before the first trial. This enables Wilson to rebut the Government's presentation concerning the Bloods, which, as discussed below, must be tied to Wilson's own conduct and propensity for future danger.

As to Investigator Sheridan's expected testimony, the Government has stated that he will speak to "prison gangs in general[,] the hierarchy and structure of the Bloods gang in prison, as well as the methods and ability of Bloods to communicate with each other inside and outside of prison[, and] the significance of the defendant's tattoos, and how they relate to his gang affiliation." (Mar. 21, 2013, Gov't Ltr. at 1; see also Gov't Bloods Opp'n at 4.) The Government also provided Investigator Sheridan's resume. (See Mar. 21, 2013, Gov't Ltr. at 1.) Given the court's ruling below narrowing the scope of Investigator Sheridan's testimony, this disclosure is more than sufficient to allow Wilson a fair opportunity to rebut his claims.[1] See

---

[1] Wilson intimates that Inspector Sheridan should not be permitted to testify because "his alleged expertise is with the New York City correctional system [and] has no apparent experience with or expertise concerning the

Fed. R. Crim. P. 16(a)(1)(G) ("[T]he government must give to the defendant a written summary of any testimony that the government intends to use under [the evidentiary rules pertaining to expert witnesses] during its case-in-chief at trial.").

B. **Admissibility of Evidence Concerning the Bloods**

Wilson requests that the Government's evidence concerning his alleged membership in the Bloods street gang be "narrowly focused on Mr. Wilson's own conduct and 'future dangerousness' and not the conduct and dangerousness of the Bloods generally." (Bloods Mem. at 3-4.) He argues that this limitation is necessary in order to protect his constitutional rights and to ensure that such evidence is not "outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." (Id. at 2-4 (quoting 18 U.S.C. § 3593(c)).) The Government does not dispute that its evidence should be tied to Wilson's own conduct, but argues that the Bloods evidence introduced at the first trial and "the additional Bloods evidence disclosed on March 18, 2013 is limited solely to evidence of the *defendant's* actual conduct as a Blood, as opposed to merely describing the conduct of the Bloods in general." (Gov't Bloods Opp'n at 5-6 (emphasis in original).)

Two principles inform the admissibility of evidence at a capital penalty phase. First, the Supreme Court has noted that under the Constitution, "[t]he finality of the death penalty requires a 'greater degree of reliability' when it is imposed." Murray v. Giarratano, 492 U.S. 1, 8-9 (1989) (citation omitted); see also United States v. Fell, 531 F.3d 197, 207 (2d Cir. 2008) (recognizing the "heightened reliability standards required in capital trials"). Similarly, the Federal Death Penalty Act ("FDPA") provides that "[i]nformation is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that

---

operations of the Bloods in United States penitentiaries, where Mr. Wilson will be incarcerated after he is sentenced." (Def. Bloods Mem. at 5.) Wilson is free to raise such issues on voir dire when the Government offers Inspector Sheridan as an expert, or on cross-examination.

5

information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). This standard is more restrictive (i.e. it excludes more evidence) than Federal Rule of Evidence 403, which provides that the court may exclude relevant evidence if its probative value is "substantially" outweighed by "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[2] Fed. R. Evid. 403.

Second, the Supreme Court has also indicated that so long as evidence is not unduly prejudicial, "it is desirable for the jury to have as much information before it as possible when it makes the sentencing decision." Gregg v. Georgia, 428 U.S. 153, 204 (1976); see also Fell, 360 F.3d at 143 ("[T]he Supreme Court has . . . made clear that in order to achieve such 'heightened reliability,' *more* evidence, not less, should be admitted on the presence or absence of aggravating and mitigating factors . . . ." (emphasis in original)).

As it did before the first trial, the court believes that the Government's intended presentation regarding Wilson's alleged membership in the Bloods in support of the future dangerousness aggravating factor "is relevant . . . and that the probative value of the Government's proof outweighs the danger, if any, of creating unfair prejudice, confusing the issues, or misleading the jury." Wilson, 493 F. Supp. 2d at 501 (citing 18 U.S.C. § 3593(c)); see Dawson, 503 U.S. at 166 ("In many cases . . . associational evidence might serve a legitimate purpose in showing that a defendant represents a future danger to society. A defendant's membership in an organization that endorses the killing of any identifiable group, for example,

---

[2] While courts often note that the FDPA's evidentiary standard, unlike Rule 403, omits the word "substantially," see, e.g., Fell, 360 F.3d at 145, few note that Rule 403 actually provides three additional factors to weigh against a piece of evidence's probative value: "undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403. Congress's omission of these terms in the FDPA might be read to imply a more lenient evidentiary standard than is ordinarily discussed. But see id. ("[T]he balancing test set forth in the FDPA is, in fact, more stringent than its counterpart in the FRE . . . ."). Nonetheless, the court will apply the "more stringent" FDPA evidentiary standard.

might be relevant to a jury's inquiry into whether the defendant will be dangerous in the future."). The court also believes that most of the evidence detailed in the Government's submissions specifically relates to Wilson's own conduct and his propensity for future dangerousness. Cf. United States v. Cisneros, 363 F. Supp. 2d 827, 840 (E.D. Va. 2005) ("[The proposed aggravating factor] makes generalized statements about MS-13 as a group, including allegations of MS-13 engaging in uncharged murders and assaults, that are difficult, if not impossible, to cross-examine and which do not refer to [the defendant's] individual acts or intentions in joining the gang."). Even if a particular piece of evidence is not inherently violent (e.g. the display of gang signs), it is probative of Wilson's future dangerousness because it increases the likelihood that Wilson (1) is a member of the Bloods; (2) has strong allegiance to the organization; and (3) is willing to order or carry-out specific acts of violence in the gang's name in prison. See Dawson, 503 U.S. at 166; Wilson, 493 F. Supp. 2d at 501-02.

Generic descriptions of other Bloods members' violent acts, however, are not admissible. See Wilson, 493 F. Supp. 2d at 501-02; Cisneros, 363 F. Supp. 2d at 840. While Investigator Sheridan may be entitled to give some context to explain how Wilson's conduct relates to his future dangerousness, the Government may not elicit evidence that merely speaks generally to the future dangerousness of other incarcerated Bloods members. In other words, the Government may introduce evidence that describes Wilson's conduct and its potential implications for future dangerousness, but may not elicit proof that his activities are indicative of future dangerousness solely because they demonstrate his membership in the Bloods, which is generally believed to be a violent gang. For instance, Investigator Sheridan's expected testimony concerning "the function and role of gangs in a prison setting, and the ability of incarcerated Bloods members to order and carry out acts of violence both inside and outside prison," if not

7

tailored to Wilson's specific activities, is likely inadmissible. (Gov't Bloods Opp'n at 4; cf. id. at 7-8 (arguing that certain background evidence "is relevant to put the defendant's conduct in context and to explain the significance of the defendant's actions to the jury").) Conversely, specific evidence interpreting the meaning of certain letters or phone calls is quite probative of whether Wilson poses a future danger in prison and is not unduly prejudicial. (See id. at 4, 7-8.) The court will carefully administer this standard to balance the Government's right to present its case against the risk of admitting overly prejudicial or otherwise inadmissible evidence.[3]

## III. CONCLUSION

For the reasons set forth above, Wilson's motion for an order: (1) directing the Government to provide more specific disclosure regarding its intended evidence detailing Wilson's alleged membership in the Bloods is DENIED; and (2) limiting the Government's presentation of such evidence is GRANTED IN PART and DENIED IN PART.

SO ORDERED.

Dated: Brooklyn, New York
April 4, 2013

/s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge

---

[3] Wilson has "reserve[d] the right to seek preclusion of the evidence as violative of due process and the Eighth Amendment, and also because 'its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.'" (Def. Bloods Mem. at 5.) While he is free to do so, the court's ruling should guide the parties' expectations of the admissibility of specific pieces of evidence relating to Wilson's alleged Bloods membership, and should also prevent needless motions and objections.