UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

-against-

**04-CR-1016 (NGG)**

RONELL WILSON,

       Defendant.

-----------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

  Before the court is Defendant Ronell Wilson's motion to strike Jurors #359, #386, and #432 for cause because they may have participated in, or been exposed to, limited intra-juror conversations about the case during voir dire. For the reasons set forth below, Wilson's motion is DENIED WITHOUT PREJUDICE.

**I. BACKGROUND**[1]

  The court is currently conducting oral voir dire to select a jury that will decide whether Wilson will be sentenced to death or to life in prison without the possibility of release at an upcoming penalty phase re-trial scheduled to begin on June 24, 2013.

  On April 30, 2013, the court qualified Jurors #359, #386, and #432 on consent of the parties. (Apr. 30, 2013, Hr'g Tr. at 956:23-957:1, 973:2-5, 1056:23-1057:1.) After these jurors were qualified, the court began oral voir dire of Juror #442. The court asked, as it does of all prospective jurors, "[s]ince [he] filled out the questionnaire, [did he have] any conversations regarding the case or . . . [has] he read or seen or otherwise heard about the case?" (Id. at

---

[1] The court will discuss only the background pertinent to the issues addressed in this opinion. Additional background can be found in the Second Circuit's decision in this case. See United States v. Whitten, 610 F.3d 168, 173-77 (2d Cir. 2010).

1

1061:15-17.) Juror #442 replied, "Yeah, I know a little more. Especially sitting in the back room all together. We talked a little bit about it." (Id. at 1061:18-20.) Upon further inquiry, Juror #442 stated that the discussions concerned the "general facts about the case. Nobody was really familiar with it, but the general information that people knew about the case." (Id. at 1061:22-24.) When asked to name one piece of information he learned from these conversations, Juror #442 replied, "That he was—the defendant was already convicted and there was a mistrial or something and we're doing it again, how that worked." (Id. at 1061:25-1062:4.) According to Juror #442, the comments were "[j]ust general conversation" that no one in particular had initiated. (Id. at 1062:8-10.) Juror #442 stated that the prospective jurors spoke about "tons of things" unrelated to this case, and clarified that they did not "really" discuss "facts about the case. Just general statements about the case. That is public. Like what you guys instructed us at the beginning of it, we talked a little about that." (Id. at 1067:24-1068:1, 1068:13-22.)

Wilson subsequently moved to exclude the jurors qualified that day—Jurors #359, #386, and #432—because they were either exposed to improper discussions, during which they had formed improper opinions about the case, or disobeyed the court's instructions. (See id. at 1069:21-1070:19.) The Government opposed. (Id. at 1070:20-1072:7.)

## II. STANDARD OF REVIEW

To begin, it is important to note that "'[i]t has never been the law of this circuit that the trial judge must admonish the jurors not to discuss the case among themselves, although it has been the practice of most of the judges to suggest that it is advisable to refrain from such discussion until the case is concluded." United States v. Abrams, 137 F.3d 704, 708 (2d Cir. 1998) (quoting United States v. Viale, 312 F.2d 595, 602 (2d Cir. 1963)).

If jurors do discuss the case prematurely contrary to the court's instructions, the court has "broad flexibility" in undertaking the "delicate and complex task" of addressing such misconduct. United States v. Farhane, 634 F.3d 127, 168 (2d Cir. 2011) (citations omitted). This discretion is particularly broad "'when the alleged prejudice results from statements by the jurors themselves, and not from media publicity or other outside influences.'" United States v. Peterson, 385 F.3d 127, 134 (2d Cir. 2004) (quoting United States v. Cox, 324 F.3d 77, 86 (2d Cir. 2003)); see also United States v. Siegel, 271 F. App'x 115, 118 (2d Cir. 2008); Cox, 324 F.3d at 86 ("'[I]ntra-jury communications pose a less serious threat to a defendant's right to an impartial trial than do extra-jury influences, and therefore district courts are entitled to even greater deference in their responses to them than in responses to outside influences.'" (quoting United States v. Bertoli, 40 F.3d 1384, 1394 (3d Cir. 1994) (alteration in original)).

The court's discretion includes "the decision whether or not to question jurors to determine more about possible misconduct, because 'any such investigation is intrusive and may create prejudice by exaggerating the importance and impact of what may have been an insignificant incident.'" Siegel, 271 F. App'x at 117 (quoting Abrams, 137 F.3d at 708). "In many instances, the court's reiteration of its cautionary instructions to the jury is all that is necessary." United States v. Thai, 29 F.3d 785, 803 (2d Cir.1994); cf. Farhane, 634 F.3d at 169 ("We have recognized that, in appropriate circumstances, confirmation of a juror's ability to follow cautionary instructions can indicate the lack of harm from misconduct."). Thus, while "a court looking into juror misconduct must investigate and, if necessary, correct a problem, it must also avoid tainting a jury unnecessarily.' '[I]n this endeavor, sometimes less is more.'" Peterson, 385 F.3d at 135 (quoting Cox, 324 F.3d at 88).

**III.    DISCUSSION**

Wilson moves to strike Jurors #359, #386, and #432 for cause.  That motion is denied without prejudice.

Although Juror #442 revealed that some prospective jurors violated the court's instructions not to discuss the case, the court believes excusing the otherwise-qualified jurors is not necessary or even prudent.  For one thing, it is uncertain whether Jurors #359, #386, and #432 participated in the discussions described by Juror #442.  Even if they did, Juror #442 credibly reported that the prospective jurors did not discuss the case in any detail, but simply mentioned "general facts," such as, "the defendant was already convicted and there was a mistrial or something"—information that is undisputed.[2]  (Apr. 30, 2013, Hr'g Tr. at 1061:22-1062:4; see also id. at 1068:13-22 ("Just general statements about the case.  That is public.  Like what you guys instructed us at the beginning of it, we talked a little about that.").)  Even if these discussions occurred, and even if Jurors #359, #386, and #432 were participants, any such occurrence hardly can be said to evince any prejudice to Wilson.  Cf. Peterson, 385 F.3d at 135 ("Not every comment a juror may make to another juror about the case is a discussion about a defendant's guilt or innocence that comes within a common sense definition of deliberation."); People v. Mejias, 2013 WL 1875303 (N.Y. May 7, 2013) ("Premature deliberation by a juror, by itself, does not render a juror grossly unqualified.").

Moreover, any discussions these particular jurors may have had are extremely unlikely to affect their ability to properly execute their duties at trial.  Juror #442 emphasized that the prospective jurors that day spoke about "tons of things" unrelated to this case, diminishing the

---

[2]    Not only is this information undisputed, with the parties' consent a detailed description of the facts of the case has been presented to the prospective jurors on at least four different instances—before they filled out their questionnaires; in their questionnaires; during the court's instructions to the entire voir dire panel; and during the individual voir dire sessions.

significance of any improper comments. (Apr. 30, 2013, Hr'g Tr. at 1067:24-1068:1.) Also, these discussions took place nearly two months before the penalty phase re-trial is scheduled to begin, minimizing the likelihood that any discussions will affect these prospective jurors' ability to properly consider the evidence presented at trial. See Abrams, 137 F.3d at 708-09 ("[A]ny impact on the defendant's right to a fair trial from premature discussion among jurors on the first day of trial was minimal . . . .").

Given these apparently innocuous events, the court believes that calling Jurors #359, #386, and #432 to court for a third time solely to inquire into the specific nature of their conversations (if any) would do more harm than good. To have these jurors miss a day of work and return for questioning on the nature of their conversations might "magnify the episode" and force them to recall whatever may have discussed (which, by now, has likely dissipated from their minds). Id. at 708-09. Thus, further inquiry into the matter could taint these jurors unnecessarily. See Peterson, 385 F.3d at 135 ("'[A]ny such investigation is intrusive and may create prejudice by exaggerating the importance and impact of what may have been an insignificant incident.'" (citation omitted); Abrams, 137 F.3d 704 ("[A]ny impact on the defendant's right to a fair trial from premature discussion among jurors on the first day of trial was minimal, and any questioning of jurors was likely to be intrusive and to magnify the episode.").

However, in an abundance of caution, the court will address the potential juror misconduct when all the qualified prospective jurors return to court for the parties' exercise of their peremptory strikes. Before the entire venire is brought into the courtroom, the court will individually interview Jurors #359, #386, and #432 to determine whether they recall the conversations described by Juror #442, and if so, whether those conversations might affect their

ability to be fair and impartial.³ Wilson may then renew his request to excuse Jurors #359, #386, and #432.

Although the court is aware that Jurors #359, #386, and #432 may have disregarded one of the court's instructions, this procedure will both ensure that pre-conceived opinions about the case (if any) are disregard and not magnify the incident. See Peterson, 385 F.3d 127, 135 ("'[W]hile a court looking into juror misconduct must investigate and, if necessary, correct a problem, it must also avoid tainting a jury unnecessarily.' Thus, '[i]n this endeavor, sometimes less is more.'" (quoting Cox, 324 F.3d at 88) (alterations in original)).

## IV. CONCLUSION

Wilson's motion to strike Juror #359, #386, and #432 for cause is DENIED WITHOUT PREJUDICE.

SO ORDERED.

Dated: Brooklyn, New York  
      May 13, 2013

    /s/ Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge

---

³ The court will also strongly instruct these jurors (in addition to the entire venire) again not to discuss the case.