UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

-against-

**04-CR-1016 (NGG)**

RONELL WILSON,

      Defendant.

----------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Before the court are Defendant Ronell Wilson's motion to strike for cause Juror #1224 and the Government's motion to strike for cause Juror #1230. For the reasons set forth below, Wilson's motion is DENIED and the Government's motion is GRANTED.

**I. BACKGROUND**[1]

The court is currently conducting oral voir dire to select a jury that will decide whether Wilson will be sentenced to death or to life in prison without the possibility of release at an upcoming penalty phase re-trial scheduled to begin on June 24, 2013.

**A. Juror #1224**

Acknowledging that Juror #1224 provided answers that on their face are qualifying, Wilson moves to strike Juror #1224 not based on his responses but because of his "affect." Wilson asserts that Juror #1224 appeared to be laughing during portions of voir dire, implying that the juror does not appreciate the gravity of the case. The Government opposes, stressing that Juror #1224's answers were qualifying and arguing that Juror #1224 exhibited "nervous

---

[1] The court will discuss only the background pertinent to the issues addressed in this opinion. Additional background can be found in the Second Circuit's decision in this case. See United States v. Whitten, 610 F.3d 168, 173-77 (2d Cir. 2010).

1

laughter" but appeared to respect the seriousness of this case.

### B. Juror #1230

The Government moves to strike Juror #1230 on the ground that she cannot be fair and impartial. Specifically, it argues that Juror #1230's feelings regarding her husband's narcotics conviction, which was prosecuted by the United States Attorney's Office for the Eastern District of New York and resulted in an approximately three-year prison term and subsequent deportation, reveal a bias against the Government. Wilson counters that this juror repeatedly affirmed that her husband's case would not affect her impartiality, and argues that her questionnaire responses on the issue were not inconsistent with those provided at voir dire.

## II. STANDARD OF REVIEW

### A. Ability to Follow the Court's Instructions

A prospective juror may be dismissed for cause where her "inconsistent positions" make it "unlikely that she w[ill] follow[] the court's instructions if empaneled." United States v. Fell, 531 F.3d 197, 216 (2d Cir. 2008). This is because "'there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. This is why deference must be paid to the trial judge who sees and hears the juror.'" Id. at 211 (quoting Witt, 469 U.S. at 424-26). A prospective juror may be struck on these grounds "even when the juror 'indicated some degree of willingness to put aside personal biases,'" id. at 213 (citation omitted), since "a juror's voir dire responses that are ambiguous or reveal considerable confusion may demonstrate substantial impairment," id. at 215. See also Uttecht v. Brown, 551 U.S. 1, 18 (2007) ("[A juror's] assurances that he would consider imposing the death penalty and would follow the law do not overcome the reasonable inference from his other statements that in fact he would be substantially impaired in this case

. . . .").

**B.    Bias**

A prospective juror may be excused for cause based on many forms of bias. As the Second Circuit has explained,

> Juror partiality can . . . take various forms: actual, implied, or inferred. See United States v. Torres, 128 F.3d [38,] 43 [(2d Cir. 1997)]. Actual bias is "bias in fact," id., generally evidenced by "express proof," such as a juror's admission to "a state of mind prejudicial to a party's interest." United States v. Haynes, 398 F.2d [980,] 984 [(2d Cir. 1968)]. Implied bias is "bias conclusively presumed as a matter of law" from circumstances in which an average person in the position of the prospective juror would be prejudiced. United States v. Torres, 128 F.3d at 45. Inferred bias exists "when a juror discloses a fact that bespeaks a risk of partiality sufficiently significant to warrant granting the trial judge discretion to excuse the juror for cause, but not so great as to make mandatory a presumption of bias." Id. at 47.

United States v. Quinones, 511 F.3d 289, 301 (2d Cir. 2007). "While blunt acknowledgment of bias may support removal without further inquiry, the more ambiguous a prospective juror's responses, the more useful demeanor, and thus oral inquiry, become in allowing a trial judge to identify partiality warranting removal for cause." Id. at 301-02.

As to "inferred bias," "there exist a few circumstances that involve no showing of actual bias, and that fall outside of the implied bias category, where a court may, nevertheless, properly decide to excuse a juror." Id. at 46-47. "[O]nce facts are elicited that permit a finding of inferable bias, then, just as in the situation of implied bias, the juror's statements as to his or her ability to be impartial become irrelevant." Id. at 47.

**III.    DISCUSSION**

**A.    Juror #1224**

Wilson moves to strike Juror #1224 for cause. That motion is denied.

As Wilson concedes, Juror #1224's answers provided both in his questionnaire and at

3

voir dire reflect a qualified capital juror. (See, e.g., Questionnaire Response #39, #41, #46(b); May 17, 2013, Hr'g Tr. at 2568:1-11 (when asked whether he "would vote to impose a life sentence" if he "decide[s] that the mitigating evidence is such that the appropriate sentence is a life sentence without the possibility of release for the killing of these two police detectives," answering, "Yes, I think I would, Your Honor. Yes, under those circumstances."); see also id. at 2577:19-20 ("I would definitely weigh everything and consider it, yes.").) Wilson argues, however, that Juror #1224 must be struck for cause because his demeanor at voir dire reflects a lack of appreciation of the importance of this case. The court disagrees.

Although Juror #1224 did at times seem to smile during voir dire, the court found him to be a thoughtful juror who understood that this case involves the imposition of the most severe punishment provided by law and seemed to appreciate the gravity of the situation. Juror #1224 did not appear flippant or treat these proceedings with disrespect. The few moments in which Juror #1224 smiled are properly attributed to nervousness, not lack of sensitivity. Accordingly, the court believes that Juror #1224 appreciates the significance of this case, and will follow the court's instructions to make his own personal, moral judgment about whether to impose a death sentence. Wilson's motion is therefore denied.

  **B. Juror #1230**

The Government moves to strike Juror #1230 for cause. That motion is granted.

In her questionnaire, Juror #1230 was asked whether any of her family members or close friends have "ever been accused of, charged with, or convicted of any crime, or been the subject of a criminal investigation, other than a minor traffic violation." (Questionnaire Response #67(a).) Juror #1230 checked the "Yes (family)" box and explained, "husband; 2007(8); ICE; deported to Colombia; distributing narcotics." (Id.; id. at #67(b).) She was then asked whether

4

she felt this person was "justly investigated, accused, charged or convicted." (Id. #67(c).) Juror #1230 checked both the "Yes" and "No" boxes, explaining, "given the nature that [her husband] was photographed with a friend and an undercover ICE agent; I do not know if he knew what was going on. ICE says he did; my husband says he did not." (Id.)

Based on this response, at voir dire the court asked whether Juror #1230 believed that her husband (from whom she is now separated and seeking a divorce) was "unfairly deported." (May 17, 2013, Hr'g Tr. at 2597:1-7.) Juror #1230 replied, "I can't really answer that only to the fact that I don't know the details. As much as I tried to talk to him, he didn't want to tell me anything so I'm not, I—I can't answer that." (Id. at 2597:8-11.) The court then asked whether Juror #1230 believed that this experience "might have some effect on [her] ability to be fair and impartial in considering the testimony of law enforcement officers who are probably likely to testify in this case," to which she replied, "No." (Id. at 2597:12-17.) Minutes later, the prospective juror appeared very upset and on the verge of tears. The court then asked if Juror #1230 needed a break; she replied in the affirmative. (See id. at 2598:14-23.)

Later, the court again inquired about Juror #1230's husband, asking, "was your husband arrested for a drug crime," to which she answered, "According to the ICE agent and the photograph, yes." (Id. at 2602:10-13.) Given this ambiguous response, the court asked whether her husband had been prosecuted criminally, which Juror #1230 affirmed. (See id. at 2602:16-17.) The court asked if he had been prosecuted in the Eastern District of New York, which Juror #1230 confirmed. (Id. at 2602:18-20.) After further questioning, Juror #1230 finally revealed that her husband had pled guilty, served nearly three years in prison, and, most remarkably, that she had attended her husband's arraignment in the Eastern District courthouse. (See id. at 2602:21-2603:15.)

5

Having finally ascertained the complete story surrounding Juror #1230's husband, the court asked whether she believed that he was "appropriately treated by law enforcement and by the courts." (Id. at 2603:16-17.) She replied, "Yes." (Id. at 2603:18.) Upon further questioning, however, Juror #1230 stated that she believed her husband was arrested because he did not want to provide law enforcement with information about an acquaintance, and that he pled guilty only in hopes of receiving a shorter prison sentence. (See id. at 2606:11-21, 2607:12-20.) Moreover, Juror #1230 agreed that law enforcement arrested her husband "just to get him to give some information," and when asked whether he was "possibly unfairly targeted by the ICE agents to just get some information," she replied, "Yes. They did tell him that they don't want to arrest him. They just want to get the guy that was in the picture, this friend." (Id. at 2607:2-10.)

Given this exchange, the court believes that Juror #1230 is impermissibly biased against the Government in this case. See Torres, 128 F.3d at 47 (explaining "implied bias"). As the court noted at voir dire, it is troubled by the gaping omissions in Juror #1230's questionnaire. When asked whether any family member had been convicted of a crime, Juror #1230 mentioned only that her husband had been deported, not that he had been charged by the United States Attorney's Office for the Eastern District of New York in the Eastern District courthouse, pled guilty, served nearly three years in prison, and *then* been deported to Colombia. (See Questionnaire Response #67.) Similarly, when the court first broached the subject, Juror #1230 did not volunteer these details or the fact that she had attended her husband's arraignment in this very courthouse. This hesitation, although perhaps understandable, further demonstrates that she could not be impartial in this case.

Additionally, although Juror #1230 claimed that she could be fair and impartial in this

6

case, she believed that her husband had been "unfairly targeted by ICE agents."  (See May 17, 2013, Hr'g Tr. at 2607:2-10.)  This fact alone permits "an inference that [she] would not be able to decide the matter objectively," rendering her comments concerning her claimed impartiality "irrelevant."  Torres, 128 F.3d at 47.  Finally, the court notes that Juror #1230's demeanor during voir dire suggested that she was nervous, unsettled, and incapable of maintaining impartiality during the trial.  Indeed, shortly after the court first asked about her husband's criminal case, Juror #1230 became extremely shaken, so much so that she quickly accepted the court's offer of a break.

For these reasons, the court believes that despite her statements to the contrary, Juror #1230's feelings concerning her husband's criminal case—which was prosecuted by the very same office representing the Government in this action—are such that she could not be a fair and impartial juror.  The Government's motion is therefore granted.

**IV.    CONCLUSION**

Wilson's motion to strike Juror #1224 is DENIED.  The Government's motion to strike Juror #1230 is GRANTED.

SO ORDERED.

|  |  |
|---|---|
| Dated: Brooklyn, New York<br>May 21, 2013 | /s/ Nicholas G. Garaufis<br>NICHOLAS G. GARAUFIS<br>United States District Judge |