UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

   UNITED STATES OF AMERICA

                                        **MEMORANDUM & ORDER**

        -against-                           **04-CR-1016 (NGG)**

   RONELL WILSON,

                   Defendant.

-------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

     Before the court are Defendant Ronell Wilson's motions to strike Juror #1763 and Juror #1775 for cause. For the reasons set forth below, Wilson's motion to strike Juror #1763 is GRANTED and his motion to strike Juror #1775 is DENIED.

## I.    BACKGROUND[1]

     The court is currently conducting oral voir dire to select a jury that will decide whether Wilson will be sentenced to death or to life in prison without the possibility of release at an upcoming penalty phase re-trial scheduled to begin on June 24, 2013.

### A.    Juror #1763

     Wilson moves to strike Juror #1763 for two reasons. First, he argues that this prospective juror's views on race and her feelings concerning her father's former employment as an auxiliary police offer evince bias. Second, Wilson argues that Juror #1763 cannot properly consider evidence about Wilson's background as mitigation. The Government opposes this motion, and argues that Juror #1763 did not exhibit any bias or any inability to properly consider mitigation

---

[1]     The court will discuss only the background pertinent to the issues addressed in this opinion. Additional background can be found in the Second Circuit's decision in this case. See United States v. Whitten, 610 F.3d 168, 173-77 (2d Cir. 2010).

evidence.

### B. Juror #1775

Concerning Juror #1775, Wilson argues that one response provided at voir dire indicates that this prospective juror is incapable of meaningfully considering background evidence in mitigation. The Government contends that Wilson misinterprets this one answer, and stresses that Juror #1775 repeatedly expressed an ability to consider all forms of mitigation evidence.

## II. STANDARD OF REVIEW

### A. Bias or Partiality

A prospective juror may be excused for cause based on many forms of bias or partiality. As the Second Circuit has explained,

> Juror partiality can . . . take various forms: actual, implied, or inferred. See
> United States v. Torres, 128 F.3d [38,] 43 [(2d Cir. 1997)]. Actual bias is "bias in
> fact," id., generally evidenced by "express proof," such as a juror's admission to
> "a state of mind prejudicial to a party's interest." United States v. Haynes, 398
> F.2d [980,] 984 [(2d Cir. 1968)]. Implied bias is "bias conclusively presumed as a
> matter of law" from circumstances in which an average person in the position of
> the prospective juror would be prejudiced. United States v. Torres, 128 F.3d at
> 45. Inferred bias exists "when a juror discloses a fact that bespeaks a risk of
> partiality sufficiently significant to warrant granting the trial judge discretion to
> excuse the juror for cause, but not so great as to make mandatory a presumption
> of bias." Id. at 47.

United States v. Quinones, 511 F.3d 289, 301 (2d Cir. 2007). "While blunt acknowledgment of bias may support removal without further inquiry, the more ambiguous a prospective juror's responses, the more useful demeanor, and thus oral inquiry, become in allowing a trial judge to identify partiality warranting removal for cause." Id. at 301-02.

### B. Consideration of Mitigation Evidence

To be a qualified juror in a capital case, a person must, among other things, be open to considering relevant mitigation evidence. "[T]he sentencer [may not] refuse to consider, *as a*

*matter of law*, any relevant mitigating evidence. . . . The sentencer . . . may determine the weight to be given relevant mitigating evidence[, b]ut [it] may not give it no weight by excluding such evidence from [its] consideration." Eddings v. Oklahoma, 455 U.S. 104, 113-14 (1982) (emphasis in original); see also 18 U.S.C. § 3592(a) ("In determining whether a sentence of death is to be imposed on a defendant, the finder of fact *shall consider* any mitigating factor . . . ." (emphasis added)); cf. Morgan v. Illinois, 504 U.S. 719, 729 (1992) (stating that a defendant may challenge for cause a "juror who will automatically vote for the death penalty in every case [because he] will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do"). Similarly, a death-eligible defendant is entitled to have the jury "consider[], as a mitigating factor, any aspect of [his] character or record and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Lockett v. Ohio, 438 U.S. 586, 604 (1978) (emphasis removed).

## III.   DISCUSSION

### A.   Juror #1763

Wilson moves to strike Juror #1763 for cause. That motion is granted.

On her questionnaire, Juror #1763 was asked whether information about childhood experiences should be "considered when making a decision about the death penalty versus life without the possibility of release." (Questionnaire Response #46(b).) She checked "No," and explained, "As an adult, you can use your brain, even if bad things happened to you as a child." (Id.) At voir dire, the court read this response to Juror #1763 and asked whether this is her "general view about childhood experiences," to which Juror #1763 replied, "Yes." (June 3, 2013, Hr'g Tr. at 3625:8-15.) The court then asked Juror #1763, "if the Court permits [her] to hear evidence of childhood experiences, could [she] give meaningful consideration to those

experiences since it's being provided to [her] by the Court in the trial," to which she answered, "Yes, I would consider that." (Id. at 3625:16-20.) Juror #1763 was also able identify certain evidence about a person's childhood that "might be significant": "I think maybe things that have to do with parents. Like if a parent is not in a child[]'s life or multiple parents in a child[]'s life. And maybe the parents died violently in some way. I think those are the things that I would probably consider." (Id. at 3625:21-3626:2.)

However, the court later asked whether Juror #1763 "would be able to consider growing up circumstances for someone who [was] 20 [years old] when he committed the murders." (Id. at 3632:7-10.) She replied,

> I think 20 is an adult at that point. . . . I could think about it. But I do think that you're 20, you should be able to think on your own. It's not someone who's—you know, you're 14 when it happens, then I think I would think differently about it. At the age of 20, I think you're an adult. As an adult you kind of know what has happened in your past and you can comprehend it. If you—you know, let's say things happened you, you didn't have a great childhood, you can still do good. That bad childhood would not impact every decision.

(Id. at 3632:11-22.) The court followed-up this response by asking, "[i]f [she] received a substantial amount of evidence about childhood experiences that impacted behavioral decisions later on, [does she] think [she] could meaningfully consider those even in the case of a 20-year-old," to which Juror #1763 replied, "I could consider that." (Id. at 3632:23-3633:2.)

This exchange leaves the court with little confidence that Juror #1763 would be able to meaningfully consider mitigation evidence given that Wilson was 20 years old at the time of the murders. Importantly, Juror #1763's demeanor during this answers—especially regarding her second answer—demonstrated substantial reservation about considering childhood experiences. Although Juror #1763 initially contradicted her questionnaire response that indicated she would not consider Wilson's childhood experiences (see id. at 3625:16-20), Juror #1763 vacillated and

could not unequivocally state that she would consider such evidence given Wilson's age (see id. at 3632:11-12 ("I think 20 is an adult at that point.")).  Her later response indicating an ability to consider such evidence was given tentatively and does not overcome her repeated answers illustrating her hesitation in considering childhood experiences for a defendant who was 20 years old at the time of the crime.  (See, e.g. id. at 3625:8-15; 3632:11-22; Questionnaire Response #46(b).)

Moreover, unlike many other jurors who initially indicated that they would not consider childhood experiences but were qualified, Juror #1763 is *not* confused about the difference between using childhood experience to excuse a crime as opposed to mitigate against a death sentence.  Juror #1763 believes that once an individual turns a certain age, a troubled upbringing should have no bearing on what sentence to impose because "you kind of know what has happened in your past and you can comprehend it."  (June 3, 2013, Hr'g Tr. at 3632:18-20; see also Questionnaire Response #46(b).)  The court is left with the firm impression that Juror #1763 believes that once someone becomes an adult, childhood experiences are entirely irrelevant to a sentencing determination.

Accordingly, Wilson's motion is granted.

**B.    Juror #1775**

Wilson moves to strike Juror #1775 for cause.  That motion is denied.

Wilson's motion rests on a single response provided at oral voir dire.  Having been asked to explain his belief that a defendant's childhood experiences shape a person's character but do not provide an "excuse for wrongdoing" (see Questionnaire Response #46), Juror #1775 stated, "I understand that certain things happen earlier in life, you know, shape what people become.  I don't think if someone has a rough childhood that they should get some sort of free pass for

wrongdoings committed later in life. I would try to take everything into consideration" (June 3, 2013, Hr'g Tr. at 3697:1-6). At defense counsel's request, the court later asked Juror #1775 whether his use of the term "free pass" would "foreclose the possibility of imposing a life sentence for someone who committed intentional murder." (June 3, 2013, Hr'g Tr. at 3709:14-17.) He replied,

> That is right, I don't think that would be a free pass. What I meant by that was just because someone had a troubled youth does not mean that they should receive a lighter sentence than someone who committed the same crime or . . . had a privileged background. So the crime is the same. So just because someone had an underprivileged youth to me does not mean that somehow, with all things under consideration, shouldn't be a consideration for a lesser sentence.

(Id. at 3709:18-3710:2.) Wilson argues that this statement alone depicts Juror #1775's "world view" that is incompatible with meaningfully considering background mitigation evidence. He is mistaken.

First, the court did not interpret this response to indicate Juror #1775's opposition to the consideration of background mitigation evidence. Rather, the court believed that Juror #1775 stated that imposing a life sentence for a defendant who had a troubled upbringing would *not* be a "free pass." (See id. at 3709:18-19 ("That is right, I don't think that would be a free pass.").) The court understood Juror #1775 to mean that an underprivileged background would not automatically warrant a lighter sentence. Moreover, Juror #1775's last statement, though perhaps ambiguous because he used a double negative, indicates that an underprivileged upbringing *should* be a sentencing consideration. (See id. at 3709:24-3710:2 ("So just because someone had an underprivileged youth to me *does not* mean that somehow, with all things under consideration, [that] *shouldn't* be a consideration for a lesser sentence." (emphases added)).) The court believes that these responses, viewed in the context of Juror #1775's repeated, clear, and consistent answers stating that he would evaluate all forms of mitigation evidence, indicate

his ability to properly considering background evidence as a mitigating factor.  See Uttecht v. Brown, 551 U.S. 1, 7 (2007) ("[W]hen there is ambiguity in the prospective juror's statements, 'the trial court, aided as it undoubtedly [is] by its assessment of [the venireman's demeanor], [is] entitled to resolve it in favor of the State.'" (quoting Wainwright v. Witt, 469 U.S. 412, 434 (1985)) (alterations in original)).

Second, even if this exchange suggested an inability to meaningfully consider background mitigation evidence, this lone colloquy does not overcome Juror #1775's repeated, confident, and unambiguous statements to the contrary.  (See, e.g., June 3, 2013, Hr'g Tr. at 3697:7-14 ("THE COURT:  Okay.  You were also asked as a follow up.  [I]n your view should such information [concerning childhood experiences] be considered when making a decision about the death [penalty] versus life without the possibility of relief?[ Y]ou said, []Yes.  It should be considered to evaluate frame and state of mind circumstances.[]  Is that your view?  PROSPECTIVE JUROR:  Yes."); id. at 3703:24-3704:5 ("THE COURT:  You may hear some evidence having to do with the fact that the defendant grew up in several high crime communities.  Would you be able to give that meaningful consideration as part of your consideration of what the sentence should be?  PROSPECTIVE JUROR:  Yes."); id. at 3709:2-9 ("THE COURT:  Now you understand that the defendant was a young adult when he committed these murders.  He was 20 years old.  You will be asked to consider information about his growing-up years, his teenage years.  Would you be able to meaningful consider all of that information for someone who has committed the murders at age 20?  PROSPECTIVE JUROR:  Yes."); id. at 3710:23-3711:3 ("THE COURT:  You understand, of course, that all of the lawyers here are advocates.  So each side has an objective here.  So that you are going to have advocates on both sides arguing to you.  Will you give fair and full consideration to what both sides argue

at the end of the case?  PROSPECTIVE JUROR:  Yes."); see also id. at 3697:5-6 ("I would try

to take everything into consideration."); id. at 3697:15:-3698:2 ("THE COURT:  Okay.  Is there

anything about a person's childhood who committed the acts of murder when he was twenty

years old.  Is there anything about a person's childhood that would be of particular interest to

you, just as a hypothetical situation?  PROSPECTIVE JUROR:  I am trying to think.  The

different experiences someone might have had as a child might lead them to take a certain action

in a situation that they felt they were—I don't know.  I would say that there are things that might

have happened in a person's life that can contribute to their frame of mind or state of mind that I

would not be aware of, obviously, until I have observed the circumstances."); id. at 3710:18-22

("THE COURT:  All right.  Well, in this case there may be some evidence presented about

mental issues.  If it is presented, could you meaningful consider that and weigh it to the extent

that you think it deserves consideration?  PROSPECTIVE JUROR:  Yes."); Questionnaire

Response #41, #46.)  These many qualifying answers, and the demeanor in which they were

provided, give the court full confidence that Juror #1775 could meaningfully and properly

consider all forms of mitigation evidence, including childhood experiences.  Accordingly,

Wilson's motion is denied.

IV.     **CONCLUSION**

        Defendant Ronell Wilson's motion to strike Juror #1763 is GRANTED and his motion to

strike Juror #1775 is DENIED.

        SO ORDERED.

                                                        _/s/ Nicholas G. Garaufis_
Dated: Brooklyn, New York                               NICHOLAS G. GARAUFIS
       June 5, 2013                                     United States District Judge