UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

-against-

**04-CR-1016 (NGG)**

RONELL WILSON,

                Defendant.

----------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

      Before the court are the parties' proposed preliminary jury instructions. For the reasons set forth below, the court will issue the attached preliminary jury charge.

**I.    BACKGROUND**[1]

      Defendant Ronell Wilson has proposed that the court instruct the jury before the beginning of the penalty phase re-trial about how the trial will proceed. (Def. Prelim. Charge (Dkt. 1262).) The Government consents to the majority of Wilson's proposals—which were modeled after the instructions provided to the original jury at the start of the first penalty phase—but objects to (1) language indicating that a life sentence is the "presumptive" sentence and, relatedly, that the Government must prove beyond a reasonable doubt that the aggravating factors outweigh the mitigating factors; and (2) information concerning the consequences of a non-unanimous jury. (Gov't Prelim. Charge Opp'n (Dkt. 1279).)

**II.    DISCUSSION**

      The attached preliminary instructions generally speak for themselves. As two discrete

---

[1]    The court will discuss only the background pertinent to the issues addressed in this opinion. Additional background can be found in the Second Circuit's decision in this case. See United States v. Whitten, 610 F.3d 168, 173-77 (2d Cir. 2010).

1

legal disputes have arisen, however, the court will analyze these below.

### A. The Presumption of Life and Weighing the Factors

The parties have hotly contested whether there is a presumption in favor of a life sentence under the Federal Death Penalty Act ("FDPA") and, relatedly, whether a jury must find that the aggravating factors outweigh the mitigating factors beyond a reasonable doubt. (See Apr. 23, 2013, Def. Ltr. (Dkt. 1125); Apr. 24, 2013, Gov't Ltr. (Dkt. 1126); May 12, 2013, Def. Ltr. (Dkt. 1172); May 15, 2013, Gov't Ltr. (Dkt. 1186); May 20, 2013, Def. Ltr. (Dkt. 1198).) Wilson argues that because the FDPA requires that in order to impose a death sentence a jury must find that the proven aggravating factors "sufficiently outweigh" any established mitigating factors, a life sentence is the "presumptive" sentence. (See, e.g., Apr. 23, 2013, Def. Ltr. at 1-3.) The Government contests that the FDPA does not create such a presumption and specifically objects to the following proposed preliminary jury instruction:

> As I indicated to you during selection, your decision regarding whether to impose a sentence of death or life imprisonment is a personal, moral decision that each of you must make individually. I instruct you that the government must prove to each of you, individually and beyond a reasonable doubt, that a sentence of death should be imposed in this case. Life imprisonment is presumed to be the appropriate sentence unless the government meets this burden.

(Gov't Prelim. Charge Opp'n at 5 (quoting Def. Prelim. Charge at 5).)

Under the FDPA, the Government must prove beyond a reasonable doubt: (1) any of the threshold culpability factors set forth in 18 U.S.C. § 3591(a)(2); (2) at least one statutory aggravating factor identified in 18 U.S.C. § 3592(c); and (3) any other aggravating factor not provided by statute for which notice has been given, see 18 U.S.C. § 3592(c). (See generally May 24, 2013, Mem. & Order (Dkt. 1221) at 3-5.) If the jury has found that the Government has met its burden as to the threshold culpability factor and at least one statutory aggravating factor, it must then decide whether (1) "all the aggravating factor or factors found to exist *sufficiently*

2

*outweigh* all the mitigating factor or factors found to exist *to justify a sentence of death*" or (2) in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to *justify a sentence of death*." 18 U.S.C. § 3593(e) (emphases added). From this, Wilson argues that the jury must find that the aggravating factors outweigh the mitigating factors *beyond a reasonable doubt*, and relatedly, that there is a presumption in favor of a life sentence. (See Def. Prelim. Charge at 3, 5 ("I instruct you that the government must prove to each of you, individually and beyond a reasonable doubt, that a sentence of death should be imposed in this case. Life imprisonment is presumed to be the appropriate sentence unless the government meets this burden.").) He is mistaken.

Statutory interpretation "depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." Kasten v. Saint-Gobain Performance Plastics Corp., 131 S.Ct. 1325, 1330 (2011) (internal quotation marks omitted). Looking first to its text, the court notes that the FDPA provides that in order for a jury to impose a death penalty, it must conclude that the aggravating factors "sufficiently outweigh" any proven mitigators to "justify a sentence of death." 18 U.S.C. § 3593(e). The statutory text does not specify that the Government must prove beyond a reasonable doubt that the aggravating factors outweigh the mitigating factors (if any), as Wilson argues. Rather, the statute states only that the aggravating factors—which must have been proven beyond a reasonable doubt—must be sufficiently significant to "justify a sentence of death." Id. By its own terms, then, the FDPA does not force the Government to prove that the aggravators outweigh the mitigators beyond a reasonable doubt.

This result is further supported by the surrounding statutory language. Congress specifically placed the burden of proving aggravating and mitigating factors on the Government

3

and the defense, respectively. See 18 U.S.C. § 3593(c). In delineating the jury's weighing process, however, Congress did not identify any similar burden of proof. This strongly indicates that Congress knowingly omitted the phrase "beyond a reasonable doubt" from the weighing process provision. See Sebelius v. Cloer, --- S. Ct. ---, 2013 WL 2149791, at *6 (May 20, 2013) ("We have long held that '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" (quoting Bates v. United States, 522 U.S. 23, 29-30 (1997)) (alteration in original)). Wilson's reading of the FDPA would insert powerful language that Congress clearly knew how to employ into a sentence in which it does not exist. This would amount to a judicial amendment of carefully prescribed legislation.

The purpose of the FDPA also cuts against Wilson's novel statutory reading. Burdens of proof are often employed to help a jury ascertain a verifiable fact, i.e., whether the defendant did or did not commit a crime. But the weighing process of the FDPA governs a unique role of any jury: determining whether a defendant should be sentenced to death. This is not a matter that is either true or not true. Rather, each juror must make a moral judgment about whether a defendant should be executed. To require the Government to prove that the defendant should be sentenced to death beyond a reasonable doubt is illogical and conflates truth-seeking with balancing moral values. As the court in United States v. Sampson, 335 F. Supp. 2d 166 (D. Mass. 2004), put it:

> [T]he sentencing decision in a capital case is, in its most important respects, fundamentally different than any other task that a jury is called upon to perform in our criminal justice system. The jury is not acting as a finder of fact. Rather, it is exercising discretion in sentencing that is ordinarily exercised by judges. Whether a jury's sentencing decision is right or wrong is not something that is capable of proof in the traditional sense.

Id. at 238. Accordingly, the court will instruct the jurors precisely how Congress provided: that

4

they may only sentence Wilson to death if (1) the aggravating factors "sufficiently outweigh" the mitigating factors to "justify a sentence of death"; or (2) in the absence of any mitigating factors, the aggravating factors alone "justify a sentence of death." See 18 U.S.C. § 3593(e).

Having concluded that the FDPA does not require a jury to find that the aggravating factors outweigh the mitigating factors beyond a reasonable doubt, it follows that it would be improper to instruct the jury that a life sentence is the "presumptive" sentence. Again, Congress specifically omitted the word "presumption" from the FDPA. It specified the weighing process that governs when a life or death sentence is appropriate, see 18 U.S.C. § 3593(e), but failed to fashion a particular burden of proof—such as the beyond a reasonable doubt standard—that would signal that the use of the word "presumptive" is appropriate. Thus, the court will not insert a word that carries significant weight into the FDPA absent any indication it should do so. See Cloer, 2013 WL 2149791, at *6; see also Franklin v. Lynaugh, 487 U.S. 164, 179 (1988) ("[W]e have never held that a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required.").

Moreover, the use of the word "presumptive" in the jury charge is particularly inappropriate because presumptions typically govern a jury's determination of whether a *fact* exists. See Black's Law Dictionary 1304 (9th ed. 2009) (defining "presumption" as "[a] legal inference or assumption that *a fact exists*, based on the known or proven existence of some other *fact or group of facts*" (emphases added)). But as explained above, the moral determination of whether a defendant deserves to be sentenced to death is not a fact; it is a personal judgment that each juror reaches individually. To use "presumption"—a word fraught with legal implications and great potential to confuse the jury—is inapt.[2]

---

[2] Wilson's citation to Kansas v. Marsh, 548 U.S. 163 (2006) (see Apr. 23, 2013, Def. Ltr. at 2), is unpersuasive. There, the Supreme Court rejected a challenge to Kansas's capital punishment scheme that required

For these reasons, the court declines to give Wilson's proposed instruction outlined above.[3]

B. **Description of the Requirement of Unanimity**

The Government objects to the following portion of Wilson's proposed preliminary jury instructions:

> Only if you unanimously agree that the aggravating factors unanimously found are sufficient to justify a sentence of death and sufficiently outweigh the mitigating factors may the defendant be sentenced to death. If, after weighing the aggravating and mitigating factors, one or more of you determines that a sentence of death is not justified, the Court shall impose upon the defendant a sentence of life imprisonment without the possibility of release.

(Gov't Prelim. Charge Opp'n at 1-2 (quoting Def. Prelim. Charge at 3-4, 5).) It argues that these instructions encourage a deadlocked jury and run afoul of the Supreme Court's decision in Jones v. United States, 527 U.S. 373 (1999), and the Second Circuit's opinion in this case, see Whitten, 610 F.3d 168. The court agrees.

In Jones, the defendant requested that the court instruct the jury that "'[i]n the event, after due deliberation and reflection, the jury is unable to agree on a unanimous decision as to the sentence to be imposed, you should so advise me and I will impose a sentence of life imprisonment without the possibility of release.'" 527 U.S. at 379. The Supreme Court recognized that under the FDPA, if a jury cannot reach a unanimous decision, the court must

---

the imposition of the death penalty if the weight of the aggravating factors equaled that of the mitigation factors. 548 U.S. at 171-79. In doing so, it rejected the notion that the statute created a "general presumption in favor of the death penalty" because the Government bore the burden of proving (1) the existence of the aggravating factors; and (2) that the aggravating factors were not outweighed by the mitigating factors. See id. at 174-79. True, in dicta the court characterized Kansas's scheme as one "dominated by the presumption that life imprisonment is the appropriate sentence for a capital conviction." Id. at 178. But at most this implies that a presumption in favor of a life sentence is *sufficient*, but not constitutionally *necessary*. Indeed, the Court later described a life sentence as the "default" option. Id. at 179. Neither comment governs the appropriate instruction to be given in a case under the FDPA.

[3] Although the court will not give the entire instruction detailed above, it will instruct (with the Government's consent) that the decision of whether to impose the death penalty is an individual, personal, moral judgment. (See Prelim. Jury Instr. at 6.)

6

impose a lesser sentence (here, life in prison without the possibility of release). "Nevertheless, [it held that] the Eighth Amendment does not require that the jurors be instructed as to the consequences of their failure to agree."[4] Id. at 381. It reasoned that "the proposed instruction has no bearing on the jury's role in the sentencing process. Rather, it speaks to what happens in the event that the jury is unable to fulfill its role." Id. at 382. Such an instruction was particularly inappropriate because the Supreme Court has "never suggested . . . that the Eighth Amendment requires a jury be instructed as to the consequences of a breakdown in the deliberative process. On the contrary, [it has] long been of the view that '[t]he very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves.'" Id. (quoting Lowenfield v. Phelps, 484 U.S. 231, 238 (1988)) (alteration in original).

The Second Circuit recognized the importance of Jones when it affirmed this court's decision to not include a similar instruction in this very case. In Whitten, the Second Circuit first established that "[a] capital defendant is not entitled to a jury instruction on the effect of deadlock." 610 F.3d at 203 (citing Jones, 527 U.S. at 389-90). It then summarily dismissed Wilson's contention that there was any "reasonable likelihood" that the jury misunderstood that Wilson could only be sentenced to death or life in prison without the possibility of release. Id. (quoting Jones, 527 U.S. at 389-90).

With these rules of law in mind, the court declines to go beyond the requirements of the Federal Death Penalty Act and the Constitution and instruct the jury of the consequences of a breakdown in deliberations. "The very object of the jury system is to secure unanimity by a

---

4     The Court also declined to exercise its supervisory powers to require that federal courts give such an instruction because, in part, "[i]n drafting the [Federal Death Penalty] Act, Congress chose not to require such an instruction." See Jones, 527 U.S. at 383.

7

comparison of views, and by arguments among the jurors themselves." Allen v. United States, 164 U.S. 492, 501 (1896). This system renders the jury's verdict "the conscience of the community on the ultimate question of death," Lowenfield, 484 U.S. at 238, which the Supreme Court has described as a "strong" Government interest, Jones, 527 U.S. at 382 (quotation omitted). Accordingly, the court declines to instruct the jury about the consequences of deadlock, and will adhere to the language of the Federal Death Penalty Act by instructing the jurors as follows:

> The jury shall then consider whether the aggravating factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factors alone are sufficient to justify a sentence of death. Based upon this consideration, the jury by unanimous vote shall determine whether the defendant should be sentenced to death or to life in prison without the possibility of release.

See 18 U.S.C. § 3593(e).[5]

Wilson argues that given the questionnaire and colloquy at voir dire, omitting information about the consequences of a non-unanimous jury will confuse the jurors. True, the questionnaire informed the jury that "[i]f even one juror concludes that death is not appropriate, then the judge will impose a sentence of life imprisonment without the possibility of release." (Questionnaire (Dkt. 1051) at 2; see also id. ("[I]f one or more jurors find that a sentence of life imprisonment without the possibility of release is the appropriate sentence[,] the judge will impose a sentence of life imprisonment without the possibility of release.").) The court also told some prospective jurors that a unanimous jury is required to impose the death penalty.

Nonetheless, the court is convinced that omitting similar information from the actual jury

---

[5] The court notes a preliminary jury charge that properly delineates the FDPA's weighing standard (such as this one) obviates Wilson's concern that certain prospective jurors who expressed some likelihood that they might vote for the death penalty in this case would "enter[] the penalty hearing without an understanding that the government is required to meet its statutory burdens before a sentence of death may be imposed." (Apr. 23, 2013, Def. Ltr. at 2 (arguing that prospective jurors such as Juror #823 are unqualified).)

8

charges will not improperly confuse the jury.[6]  For one thing, the court repeatedly stressed that the jury's ultimate decision must be made after hearing all the evidence *and the court's instructions on the law*, clearly implying that comments made during the jury selection process did not constitute legal instructions.  Additionally, the court's preliminary instructions make clear that the jury's true deliberative role *begins* with those instructions, not before.  Moreover, it must be stressed that the court is not contradicting anything the jurors have previously heard; it is only omitting limited information.  Finally, even assuming that the jurors are confused as to the consequences of non-unanimity, this does not constitute error because "[t]o show that 'the instructions and decision forms' confused the jury, a defendant must demonstrate that 'there is a reasonable likelihood that the jury has applied the challenged instruction *in a way that violates the Constitution*.'"  Whitten, 610 F.3d at 203 (quoting Jones, 527 U.S. at 389-90) (emphasis added).  But as set forth above, Wilson has no constitutional right to inform the jury of the consequences of a deadlock, see Jones, 527 U.S. at 381, and there is no chance that the jury will be confused as to what are the only possible sentences in this case.

### III. CONCLUSION

For the reasons set forth above, the court will administer the attached preliminary jury charge at the start of the penalty phase re-trial.

SO ORDERED.

Dated: Brooklyn, New York  
June 20, 2013

/s/ Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge

---

[6] Indeed, in this case the Second Circuit upheld the court's final jury instructions, which did not include any mention of the consequences of non-unanimity, even though the court's *preliminary* instructions did.

9