UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

-against-

**04-CR-1016 (NGG)**

RONELL WILSON,

                Defendant.

----------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is the Government's motion in limine to (1) introduce evidence that Defendant Ronell Wilson stuck out his tongue at his victims' families after the original jury read its death verdict; and (2) prevent the defense from denying that Wilson's crimes were "premeditated." For the reasons set forth below, the Government's motion to introduce evidence of Wilson's conduct at the original penalty phase is GRANTED IN PART and its motion to prevent the defense from arguing that Wilson did not act premeditatedly is DENIED AS MOOT.

**I.    BACKGROUND**[1]

    **A.    Government's Motion Concerning Lack of Remorse**

The Government has noticed its intent to offer testimonial and documentary evidence establishing "that the defendant stuck his tongue out at the victims' family members after the death penalty verdicts were read aloud in court." (Gov't Tongue Mem. (Dkt. 1291) at 1.) Wilson objects to the introduction of such evidence, arguing that the "ambiguity of the gesture," as reflected by certain media reports of the incident, reflects its minimal probative value. (Def.

---

[1]     The court will discuss only the background pertinent to the issues addressed in this opinion. Additional background can be found in the Second Circuit's decision in this case. See United States v. Whitten, 610 F.3d 168, 173-77 (2d Cir. 2010).

1

Tongue Opp'n (Dkt. 1302) at 2.) He therefore argues that this evidence must be excluded under both the Constitution and the Federal Death Penalty Act. (See id.)

B.  **Premeditation**

The Government seeks to preclude the defense from arguing that Wilson's crimes were not "premeditated" because such assertion would be inconsistent with the prior jury's guilty verdict. (Gov't Premed. Mem. (Dkt. 1287).) Wilson "agrees that the guilt-phase jury made a finding of premeditation and has never intended to challenge that finding." (Def. Premed. Opp'n (Dkt. 1294).) He notes, however, that "neither case law nor the charge given to the guilt-phase jury required a finding that [he] had deliberated for any particular period of time." (Id. at 1.)

## II.  ADMISSIBILITY OF EVIDENCE AT A CAPITAL PENALTY PHASE

Two principles inform the admissibility of evidence at a capital penalty phase. First, the Supreme Court has noted that under the Constitution, "[t]he finality of the death penalty requires a 'greater degree of reliability' when it is imposed." Murray v. Giarratano, 492 U.S. 1, 8-9 (1989) (citation omitted); see also United States v. Fell, 531 F.3d 197, 207 (2d Cir. 2008) (recognizing the "heightened reliability standards required in capital trials"). Similarly, the FPDA provides that "[i]nformation is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). This standard is more restrictive (i.e., it excludes more evidence) than Federal Rule of Evidence 403, which provides that the court may exclude relevant evidence if its probative value is "*substantially* outweighed" by "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added).

Second, the Supreme Court has indicated that so long as evidence is not unduly prejudicial, "it is desirable for the jury to have as much information before it as possible when it makes the sentencing decision." Gregg v. Georgia, 428 U.S. 153, 204 (1976); see also United States v. Fell, 360 F.3d 135, 143 (2d Cir. 2004) ("[T]he Supreme Court has . . . made clear that in order to achieve such 'heightened reliability,' *more* evidence, not less, should be admitted on the presence or absence of aggravating and mitigating factors . . . ." (emphasis in original)). Nevertheless, trial courts retain the "traditional authority" to "exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." Lockett v. Ohio, 438 U.S. 586, 604 n.12 (emphasis removed).

## III. DISCUSSION

### A. Wilson Sticking Out His Tongue

Two competing considerations govern the admissibility of Wilson's conduct after the original jury read its death verdict. On the one hand, evidence that Wilson stuck out his tongue at members of his victims' families could be extremely probative of his lack of remorse for his crimes, which, in turn, evinces his future dangerousness. See United States v. Mikos, 539 F.3d 706, 723 (7th Cir. 2008) (Posner, J., concurring in part and dissenting in part) ("What would demonstrate a lack of remorse would be statements (such as bragging about the murder), *gestures*, laughter as the murder was described or a grieving relative testified, or *facial expressions that indicated that the defendant had indeed no regret about having committed the murder*." (emphases added)); United States v. Johnson, No. 01-CR-3046 (MWB), 2013 WL 163463, at *34 (N.D. Iowa, Jan. 16, 2013) (authorizing the use of a free-standing lack of remorse non-statutory aggravating factor because the Government had identified, among other things, evidence of the defendant's "facial expressions" made while she discussed the murders).

3

However, it is not entirely certain that Wilson made the gesture with the requisite intent to demonstrate a lack of remorse.[2] Multiple media outlets covering the original trial reported that Wilson stuck out his tongue only after his family members berated the jurors and the victims' families, who had expressed joy at the reading of the death verdict. See, e.g., Michael Brick, A Moment in Court, an Impact Less Fleeting, N.Y. Times, February 4, 2007. Some also questioned Wilson's intent in making the act. See id. The inherent uncertainty in Wilson's motivation counsels against its admission for if Wilson did not intend to express a lack of remorse, the danger of unfair prejudice and confusing the jury would be substantial. See 18 U.S.C. § 3593(c).

Given this ambiguity, the court ordered the parties to submit "written proffers detailing the intended testimony each would introduce to prove (or rebut) that Wilson demonstrated a lack of remorse when he stuck out his tongue." (June 19, 2013, Order (Dkt. 1305).) The Government indicated its intent to call four witnesses: a retired detective who saw the gesture and "interpreted the defendant's act as a taunt or a mockery aimed at the victim's families"; the victims' widows, who will testify that Wilson stuck out his tongue at them and their families, and that "the defendant's actions were undoubtedly intentional and patently offensive to the families"; and a sketch artist who "personally observed" the act and who believed that the "defendant's act was so significant to her that she prepared a sketch of the defendant in a manner consistent with what she witnessed." (June 20, 2013, Gov't Ltr. (Dkt. 1309) at 1-2.) The Government also noticed its intent to introduce the sketch as an "immutable piece of documentary evidence not subject to the same challenges as witness testimony."[3] (Id. at 2.)

---

[2] Notably, no one disputes that Wilson in fact made the gesture.

[3] Wilson did not submit his own written proffer in response to the court's order. Because the Government's proffer was made ex parte, Wilson was not privy to the specifics of the Government's intended evidence. (He was,

4

Considering this record, the court believes that introduction of Wilson's conduct immediately after the first jury read its death verdict, as modified below, is sufficiently reliable and probative. See 18 U.S.C. § 3593(c); Fell, 531 F.3d at 207. The victims' widows will testify that Wilson looked in their direction and stuck out his tongue at them, understanding the act to be "intentional and patently offensive." (June 20, 2013, Gov't Ltr. at 1.) This is strong evidence that Wilson, having just been sentenced to die for the murder of two individuals, has no remorse for his crimes. Because Wilson demonstrated a disregard for his penalty—indeed, the most severe penalty—a reasonable jury could infer that he is more likely to commit serious acts of violence in the future because he would not sufficiently consider any possible punishment before acting. (See Notice of Intent to Seek the Death Penalty (Dkt. 174) at 4 (defining "Lack of Remorse" to be a subset of the future dangerousness aggravating factor).)

On the other side of the balancing equation, if only the victims' widows are permitted to testify for the Government, the risk of unfair prejudice, confusion of the issues, or misleading the jury is minimal. See 18 U.S.C. § 3593(c). As the intended targets of Wilson's act, these witnesses were in the best position to observe and ascertain the meaning of Wilson's gesture. They can readily testify as to how they interpreted Wilson's conduct, which directly reflects on his intent. By contrast, the retired detective and sketch artist were not the targets of Wilson's alleged act, and therefore are far less likely to have meaningful insight into his intent. And the sketch itself depicts only the artist's perception of a momentary event.[4]

Although he has not indicated that he might, Wilson is of course free to call other

---

however, aware of the general nature of such testimony given the contents of the Government's initial motion.) Having now read the description of the Government's likely witnesses, if Wilson believes that he can sufficiently rebut such evidence to render the incident either (1) unreliable, see Fell, 531 F.3d at 207, or (2) unduly prejudicial, see 18 U.S.C. § 3593(c), he may so inform the court by June 24, 2013, at 9:30 a.m.

4      In addition to having little probative value, the sketch itself is highly prejudicial as it seems to depict the defendant sticking out his larger-than-life tongue directly at the artist.

5

witnesses to testify that sticking out his tongue was a juvenile act devoid of malicious intent. He can also cross-examine the victims' widows on their ability to observe Wilson's gesture or their possible bias. This, however, concerns the evidence's weight, not its admissibility.

Ultimately, the court believes that the probative nature of Wilson's act, as depicted by the victims' families, is highly probative of his lack of remorse, his disregard for consequences, and, in turn, his future dangerousness. Because only those who believe they were the recipients of the act will testify, this probative value outweighs any potential for unfair prejudice, confusion of the issues, or misleading the jury. See 18 U.S.C. § 3593(c). Accordingly, the Government's motion to include such evidence is granted as modified above.

### B. Premeditation

The parties agree that Wilson cannot argue that his crimes were not "premeditated." (Gov't Premed. Mem.; Def. Premed. Opp'n.) The parties also agree that Wilson may argue that he did not plan his crimes extremely far in advance. (See Gov't Premed. Mem. at 8 ("While it may be fair for the defendant to assert that the murders were not the result of a grand plan that he devised days, weeks or months before committing them, he should not be allowed to argue to this jury that they were not 'premeditated.'"); Def. Premed. Opp'n at 1-2 ("[N]either case law nor the charge given to the guilt-phase jury required a finding that Mr. Wilson had deliberated for any particular period of time. . . . Defense counsel will make appropriate arguments based on these principles.").)

Based on these representations, the Government's motion is denied as moot.

### IV. CONCLUSION

For the reasons set forth above, the Government's motion in limine to introduce evidence of Wilson's conduct immediately after the first death verdict was announced is GRANTED IN

6

PART. The Government's motion to preclude the defense from arguing that the murders were not premeditated is DENIED AS MOOT.

SO ORDERED.

Dated: Brooklyn, New York
June 21, 2013

/s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge