UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

-against-

**04-CR-1016 (NGG)**

RONELL WILSON,

      Defendant.

------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

  Before the court are three issues concerning the final jury charge and Defendant Ronell Wilson's motion to introduce the fact that Paris Bullock, a co-defendant, was sentenced by this court to twenty-five years in prison to run concurrently with a sentence imposed in New York State court. For the reasons that follow and as set forth in the final jury charge and special verdict form issued contemporaneously with this Memorandum and Order, (1) Wilson's motion to exclude the future dangerousness subfactors is DENIED; (2) the Government's motion to include an instruction concerning the proper use of evidence concerning Wilson's childhood records is DENIED; and (3) Wilson's motion to alter the special verdict form is DENIED. Additionally, Wilson's motion to introduce evidence concerning whether Bullock's federal sentence runs concurrently with his state sentence is DENIED. Finally, the court has reconsidered a previous ruling about an instruction relating to the Attorney General.

**I. BACKGROUND**

  The court is currently presiding over Wilson's penalty phase re-trial in which the jury will decide whether he will be sentenced to death or to life in prison without the possibility of release.

1

Three unresolved issues concerning the final jury charge arose at the charge conference held on July 22, 2013: First, Wilson asks that the court not instruct the jury about the future dangerousness subfactors identified in the Government's Notice of Intent to Seek the Death Penalty. He contends that these subfactors are merely the Government's theories to prove future dangerousness, and are properly the subject of argument, not the jury charge. The Government contends that the subfactors set forth a framework for the jury to properly weigh the future dangerousness non-statutory aggravating factor.

Second, the Government has asked for an instruction directing the jury not to consider Wilson's psychiatric history or other mitigation case as evidence of a mental condition or defect. Given the stipulation that the parties executed at the original trial, the Government is concerned that the extensive psychiatric and educational records already introduced may cause the jury to speculate as to whether Wilson suffers from a mental disease or defect.

Third, Wilson seeks to remove certain instructions in the special verdict form instructing the jury how to proceed in its deliberations. The Government opposes this request.

Finally, Wilson has moved to introduce evidence that the twenty-five year federal prison sentence imposed upon Paris Bullock runs concurrently with an eighteen year prison term administered in New York State Court relating to the same crime. The Government does not consent to informing the jury that the two sentences run concurrently, and asks that the jury only be told that Bullock was sentenced to twenty-five years in prison.

## II. DISCUSSION

### A. Future Dangerousness Subfactors

Wilson moves exclude the future dangerousness subfactors in the final jury charge on the ground that this will improperly bolster the Government's contention that those subfactors are

indicative of future dangerousness. This motion is denied.

The subfactors identified by the Government in its Notice of Intent to Seek the Death Penalty are allegations that may evidence Wilson's future dangerousness. To avoid any possibility that the jury may interpret the court's reading of these subfactors as endorsing the Government's allegations, the court will simply instruct the jury that the Government "argues" that Wilson's future dangerousness "may be evidenced by" the four "allegations." (See Final Jury Charge, at 14.) Accordingly, the jury will be provided with a structure through which they can properly weigh that aggravating factor, but will be expressly instructed that the subfactors—and their correlation with future dangerousness—are merely allegations.[1]

### B. Instruction Concerning Mitigation Evidence

The Government's motion to instruct the jury concerning the proper use of Wilson's mitigation evidence—specifically his psychiatric and educational records—is denied.

The jury will be instructed numerous times that Wilson committed the crimes intentionally, voluntarily, and premeditatedly, and it is axiomatic that jurors are presumed to follow the court's instructions. See United States v. Williams, 690 F.3d 70, 77 (2d Cir. 2012). Moreover, the jury will be instructed that mitigation evidence need not have any nexus to Wilson's culpability or the crimes charged, further assuring that the jury will be able to understand that his childhood problems do not relate to whether he had a mental defect at the time of the crime. Thus, there is little reason to specifically instruct the jury on how to interpret Wilson's mitigation evidence.

Moreover, the court has specifically permitted the Government to introduce rebuttal expert testimony about Wilson's mental condition if it believed that Wilson had injected that

---

[1] The court has removed the portion of subfactor (d) defining the Stapleton Crew and the Bloods as criminal street gangs as set forth in 18 U.S.C. § 521(a). This provision would require the court to set forth the statutory definition of criminal street gangs, which is far more confusing than it is helpful.

3

issue into the trial.  (See Apr. 1, 2013, Mem. & Order (Dkt. 1088) at 3-9.)  What the Government cannot do is seek to *instruct* the jury about the proper use of mitigation evidence where there is a small likelihood that it will be misinterpreted and where such an instruction might interfere with the jury's ability to properly consider and weigh the mitigating factors.  Accordingly, the Government's motion is denied.

### C. Alter the Special Verdict Form

Wilson seeks to remove two instructions in the special verdict form that inform the jury that if it does not find the existence of a preliminary intent factor or a statutory aggravating factor, it should cease deliberations.  Wilson argues that this is confusing since, at Wilson's request, the jury will be instructed to find such factors as proven.  This request is denied.

Although Wilson may wish to stipulate to certain factors, the jury is still statutorily (and likely constitutionally) required to make certain findings before a sentence of death may be imposed.  See 18 U.S.C. §§ 3591(a); 3592(c); 3593(d); 3593(e).  As drafted, the form will ensure that such findings are made; if not, Wilson cannot be sentenced to death.  Thus, the court will not make any substantive changes to the special verdict form.

### D. Paris Bullock's Sentence

Wilson's motion to introduce into evidence the particulars surrounding Paris Bullock's federal sentence for his role in this crime is denied.

On August 2, 2006, the court sentenced Bullock to twenty-five years in prison to run concurrently with his sentence imposed in state court relating to the same misconduct.  Although not required to do so, the court accepted the parties' agreed upon sentence of twenty-five years.  Given the severity of this crime, the court was authorized to sentence Bullock to life in prison.

Introducing the fact that Bullock's federal sentence runs concurrently with his state

4

sentence would confuse the issues and mislead the jury; it therefore must not be admitted. See 18 U.S.C. § 3593(c). To speculate about why Bullock and the Government agreed to a concurrent sentence would improperly distract the jury from the issues at hand. Similarly, disclosing that the two sentences run concurrently would require examination into the court's motivation behind sentencing Bullock to twenty-five years in prison. And perhaps most importantly, the fact remains that Bullock must serve twenty-five years in prison pursuant to his federal conviction regardless of his state sentence. For instance, if he were to successfully challenge his state sentence on collateral review, Bullock would still be forced to serve the remainder of his twenty-five year sentence in federal custody. Indeed, the court fully intended that Bullock serve twenty-five years in prison when it imposed his federal sentence regardless of the state sentence. Accordingly, any inference by the jury that Bullock's federal sentence was intended to only "add seven years" to the state sentence—which is very likely if Wilson's motion is granted—is unfounded.

For these reasons, introduction of such evidence fails the balancing test of 18 U.S.C. § 3593(c). Wilson may only introduce the fact that Bullock was sentenced to twenty-five years in prison.

### E. Instruction Concerning the Attorney General

Having reconsidered its previous ruling, the court believes that at this stage, an instruction relating to the Attorney General's authorization of this prosecution is unnecessary. The risk of confusing the jurors and potentially interfering with the jury's deliberations outweighs any added clarity that the instruction may provide. However, should the defense mention the Attorney General at all during its closing argument, upon application of the Government, the court will not hesitate to administer the requested instruction in the final jury

charge.

## III. CONCLUSION

For the reasons set forth above, the court will administer the attached final jury charge and provide the attached special verdict form. Also, Wilson's motion to introduce evidence about the fact that Paris Bullock's federal sentence runs concurrently with his state sentence is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
       July 22, 2013

/s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge