UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
RONELL WILSON

Plaintiff(s),

-against-

UNITED STATES OF AMERICA

Defendant(s).

MEMORANDUM & ORDER
04-CR-1016 (NGG)
18-CV-6765 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner Ronell Wilson brings this *pro se* petition for a writ of habeas corpus to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (*See* Pet. (Dkt. 1557).) Wilson argues that he is entitled to relief on 11 grounds that encompass claims of ineffective assistance of counsel, violations of due process, and prosecution based on impermissibly vague statutes. (*See generally id.*) The Government has submitted an opposition to Wilson's petition. (*See* Gov't Opp. (Dkt. 1567).) For the following reasons, the Petition is DENIED.

## I.   BACKGROUND

### A.   Procedural History

Wilson was indicted and convicted on ten counts for his role in the murder and robbery of New York Police Department Detectives James Nemorin and Rodney Andrews. (*See* Pet. at ECF 23-24.) On March 10, 2003 Detectives Nemorin and Andrews conducted an undercover operation in which they acted as buyers of illicit firearms. *See United States v. Whitten*, 610 F.3d 168, 172 (2d Cir. 2010). During the sale, Wilson shot and killed the officers at point blank range. *Id.* at 215 (Livingston, J., concurring in part). At trial, the jury found Wilson guilty of ten counts, for: murder in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(1) (Counts One and Two); Hobbs Act robbery, conspiracy, and attempt, in violation of 19 U.S.C. § 1951(a) (Counts

1

Three, Four, and Nine); carjacking, in violation of 19 U.S.C. § 2119(3) (Count Five); use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1) (Count Six and Ten); and causing the death through the use of a firearm, in violation of 18 U.S.C. § 924(j) (Counts Seven and Eight). (*See* Judgment (Dkt. 407) at 1.) Wilson was sentenced to death on five counts (Counts One, Two, Five, Seven, and Eight), and additionally sentenced to two life sentences (Counts Six and Ten), and multiple 20-year terms of incarceration (Counts Three, Four, and Nine). (*Id.* at 2-3.)

Wilson appealed, arguing on twelve grounds that there were deficiencies in both the guilt and penalty phases of the trial. *See Whitten*, 610 F.3d at 173. The Second Circuit rejected his arguments concerning the guilt phase, affirming the district court's convictions. *Id.* However, the Second Circuit vacated his death sentence, finding that the prosecution had violated Wilson's Fifth and Sixth Amendment rights, and it remanded his case to this court for a retrial of the penalty phase. *See id.* In 2013, a jury again sentenced Wilson to death on five counts. (Special Jury Verdict Form (Dkt. 1437).) Then, in 2016, following the Supreme Court's decision in *Hall v. Florida*, 572 U.S. 701 (2014), this court vacated Wilson's death sentences and converted his five death sentences into sentences of life imprisonment. *United States v. Wilson*, 170 F. Supp. 3d 347, 350 (E.D.N.Y. 2016). Wilson is currently subject to consecutive life sentences on Counts One, Two, Five, Six, Seven, Eight, and Ten, as well as 20-year terms of incarceration on Counts Three, Four, and Nine. (*See* Judgment; Amended Judgment (Dkt. 1536).)

## B. Wilson's 28 U.S.C § 2255 Motion

Wilson challenges his convictions on 11 grounds: (1) ineffective assistance of trial counsel during the guilt and penalty phases; (2) the Government violated due process during summation in

the guilt phase; (3) the Government violated due process by using false or misleading forensic evidence; (4) Wilson's sentences on Counts Three, Four, Six, Nine, and Ten violate the Fifth, Sixth, and Eighth Amendments for being multiplicitous; (5) the life sentences given to Wilson at the 2016 resentencing were imposed contrary to due process; (6) Wilson's convictions on Counts Six, Seven, Eight, and Ten are based on impermissibly vague statutes; (7) Wilson did not receive a fair trial in this venue; (8) the imposition of life sentences on the movant was unconstitutional because of Wilson's intellectual disabilities; (9) ineffective assistance of appellate counsel during the first appeal; (10) ineffective assistance of counsel during second trial; and (11) ineffective assistance of counsel during second appeal. (*See generally* Pet.) Wilson further contends that his motion for relief under § 2255 is timely. (*Id.* at ECF 90.)

## II.  LEGAL STANDARD

Section 2255 allows prisoners in federal custody to move to vacate, set aside or correct sentences that are imposed in violation of the Constitution or laws of the United States or are otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Because of society's interest in finality of criminal convictions, prisoners seeking habeas relief "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).[1] Habeas relief is an "extraordinary remedy," and is not available if the petitioner failed to apply for relief to the sentencing court, or if that court denied relief. *United States v. Simmons*, No. 17-CR-785-2 (NSR), 2023 WL 4625008, at *1 (S.D.N.Y. July 18, 2023); 28 U.S.C. § 2255(e).

---

[1] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

## III. DISCUSSION

Wilson challenges his conviction at trial on both ineffective assistance (Grounds One, Nine, Ten, and Eleven) and due process grounds (Grounds Two, Three, Four, and Seven). (*See generally* Pet.)

Wilson failed to bring the due process claims (Grounds Two, Three, Four, and Seven) on direct appeal and has therefore waived these arguments. *Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[C]laims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice."). But the court construes *pro se* petitions liberally. *See Lopez v. United States*, No. 16-CR-00403-5 (JFB), 2021 WL 4820620, at *3 (E.D.N.Y. Oct. 15, 2021). Grounds Two, Three, Four, and Seven only remain if the failure to bring these claims on direct appeal was a result of ineffective assistance of counsel. *See Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010). Therefore, the underlying assertions are incorporated into Grounds One and Nine, which challenge the effectiveness of trial and appellate counsel during the guilt phases. (*See generally* Pet.) The grounds are therefore analyzed through the ineffective assistance of counsel framework below. *See Zelaya-Romero v. United States,* No. 15-CR-174 (LGS), 2023 WL 3001871, at *7 (S.D.N.Y. Apr. 19, 2023).

Normally, a petitioner procedurally defaults on his claims when he could have but did not raise them on direct appeal. *Yick Man Mui*, 614 F.3d at 54. But when a petitioner claims his constitutional rights were violated *and* that his lawyer was inadequate—another constitutional violation—so that the petitioner could not have probably safeguarded those rights at trial, it would be perverse to rule that the petitioner waived those claims. Therefore, because Wilson claims ineffective assistance of counsel at both the trial and appellate level, and the court construes liberally his claims based on Fifth, Sixth, and Eight Amendment violations

(Grounds Two, Three, Four, and Seven)[2] and incorporates them into the ineffective assistance of counsel framework. However, as detailed below, Wilson fails to satisfy his burden in showing that his trial and appellate counsel were inadequate.

### A. Challenges Based on Ineffective Assistance of Counsel (Grounds One, Two, Three, Four, and Seven, Nine, Ten, and Eleven)

The Supreme Court laid out a two-part test for determining whether a defendant's Sixth Amendment right to effective assistance of counsel has been violated in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail, the defendant must show both (1) that the representation "fell below an objective standard of reasonableness under prevailing professional norms," and (2) that the ineffective representation caused prejudice to the defendant. *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 687-88). In assessing the objective standard of reasonableness, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, and that "counsel must have wide latitude in making tactical decisions." *Henry*, 409 F.3d at 63. In order for ineffective assistance to cause prejudice, "the question to be asked . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. Because the record is full of evidence of Wilson's guilt, he must overcome

---

[2] Wilson also challenges his sentencing under the Fifth, Sixth, and Eighth Amendment in Grounds Five and Six. Because Wilson challenges these sentences and claims that he was not given notice of appeal, (Pet. at ECF 58) they are analyzed separately.

a high burden to show that his counsel was ineffective. (*See* Sentencing Statement (Dkt. 405) at 2 ("Ronell Wilson's guilt has been proven not merely beyond a reasonable doubt, but beyond all doubt.").)

Wilson is unable to show that his counsel's conduct fell below professional norms, nor that he was prejudiced by any of his counsel's conduct.

### 1.    Guilt Phase

Regarding the guilt phase of the trial, Wilson puts forth three main arguments for what the trial counsel should have done but failed to do. First, Wilson argues that his trial counsel should have called and investigated more witnesses. Second, he argues that his trial counsel should have objected to the jury being given the full indictment during deliberations because it contained unproven allegations. Third, Wilson faulted his trial counsel for not investigating his intellectual disability and the role it may have played as a defense. Wilson's due process arguments about the Government's remarks during summation, the use of forensic evidence, the venue, and the multiplicitous counts (Grounds Two, Three, Four, and Seven) are incorporated into the ineffective assistance of counsel analysis.[3] The court addresses each of these ineffective assistance arguments below.

### 2.    Witnesses

Courts applying *Strickland* are deferential to defense lawyers' decisions about strategy at trial, including which witnesses to put before the jury. *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005). This is particularly true when the witnesses are averse to

---

[3] The claims made under Grounds Three, Four, and Seven are similar to those that Wilson includes to argue that his trial counsel was ineffective. (Pet. at ECF 37-47). Because of the overlap, the claims are all analyzed together.

the defendant and the defense counsel is unsure how the witnesses might testify. *Id.* Decisions about whether to call a witness are questions that "courts are ill-suited to second-guess." *United States v. Luciano,* 158 F.3d 655, 660 (2d Cir.1998).

Wilson argues that his trial counsel should have more thoroughly investigated or cross-examined witnesses against him and called certain witnesses to testify. (Pet. at ECF 31-37.) But this court "may not use hindsight to second-guess [the lawyers'] strategy choices." *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir. 1994). The court's review of a defense counsel's trial strategy is deferential, and will not find that the assistance was ineffective if there is a legitimate justification for the decision. *See Greiner,* 417 F.3d at 322-23. Trial counsel could have reasonably determined that Wilson's co-conspirators who were Government witnesses would not have evidence that would show Wilson's innocence, as Wilson alleges here. Indeed, Wilson's own trial counsel disclaims any knowledge of exculpatory evidence that Wilson relies on for this claim. (Ex. B to Gov't Opp. (Dkt. 1567-2) at ¶¶ 7-10.) Trial counsel's decisions about which witnesses to call were tactical, and Wilson is unable to show that they fell below the norms of professional conduct as required under the *Strickland* test.

### 3.    Full indictment

Wilson argues that the inclusion of allegations in the Indictment exposed jurors to unproven facts, and that his counsel's lack of objection is sufficient to establish ineffective assistance of counsel. (Pet. at ECF 43-44.) However, the Second Circuit has "long recognized that trial courts may, in their discretion, permit the jury to take a copy of the indictment into the jury room, after taking care to instruct the jury that the indictment is not to be considered evidence." *United States v. Esso,* 684 F.3d 347, 350 (2d Cir. 2012).

In this case, this court instructed the jury that "[t]he indictment is only an accusation" and "is not evidence and you are to give it

no weight in arriving at your verdict." (Trial Tr. (Dkt. 394) at 3340:23-25.) It later stated that "[d]ocuments referred to but not admitted in evidence" should not be relied on in deciding the facts. (*Id.* at 3344:20-3345:2.) Because the Second Circuit allows district courts to permit juries to take a copy of the indictment into deliberations, as long as there is a warning about what evidence can be the basis for a decision, *see Esso*, 684 F.3d at 350, the trial counsel's failure to object to this practice did not fall below the norms of professional responsibility.

### 4. Wilson's intellectual disabilities[4]

In the guilt phase, Wilson contends that had his trial counsel investigated further his intellectual disability, he could have argued that Wilson acted in self-defense and focused on his subjective beliefs during the encounter with the police officers. (*Id.* at ECF 46-47.) With this argument, Wilson is attempting to change the theory of his defense. In the guilt phase of the trial, Wilson insisted that he did not pull the trigger. *Whitten*, 610 F.3d at 174. For Wilson's proposed self-defense theory based on his intellectual disability to be persuasive, he would have to admit to pulling the trigger, effectively conceding his primary defense. Wilson's counsel noted that this argument would not be persuasive because the forensic evidence showed that the police officers were killed at point blank range from behind, and so his decision to decline to pursue the self-defense theory as a matter of trial strategy was reasonable. (Ex. B to Gov't Opp. at ¶ 11); *see also Greiner*,

---

[4] Wilson makes two separate claims about how his counsel's failure to investigate his intellectual disabilities provided him with inadequate counsel. First, in the guilt phase, he argues that his counsel performed deficiently because failure to investigate his intellectual disabilities because it prevented him from raising a self-defense claim. (Pet. at ECF 46-47.) Second, in the penalty phase, his counsel was deficient because they did not investigate his intellectual disabilities and explain how they impacted his culpability. (*Id.* at ECF 44-46.) The guilt phase claim is analyzed here while the sentencing phase claim is analyzed below.

417 F.3d at 323 (noting that courts give deference to counsel's trial tactics). Because the change in trial strategy is one that was unlikely to be persuasive, Wilson is unable to show prejudice from the failure to investigate Wilson's intellectual disabilities in the guilt phase.

5.   Remarks during summation

Wilson argues in Ground Two that five aspects of the Government's summation during the guilt phase was improper. (Pet. at ECF 50-52.) Because the court interprets *pro se* complaints liberally, the following analysis assumes that Wilson argues that his counsel's failure to raise the following arguments is evidence of ineffective assistance of counsel, even though Wilson does not himself argue that his counsel was deficient on these bases. First, Wilson objects to the Government's assertion that Wilson knew that the victims were law enforcement officers. (*Id.* at ECF 50.) Second, he objects to the Government's statement of the burden of proof to call witnesses. (*Id.*) Third, he objects to the use of Wilson's rap lyrics to imply future dangerousness. (*Id.*) Fourth, he objects to the claim that Wilson hated the police. (*Id.* at ECF 51.) And finally, he objects to the reference of the victims' children. (*Id.*)

The trial counsel's failure to object to any of these aspects of the Government's summation did not fall below the objective standard of professional conduct or cause prejudice.

Wilson argues that the Government raised the fact that Wilson knew that the victims were law enforcement officers for the first time in summation, giving the defense no opportunity to respond. Under the fair response doctrine, "where the defense summation makes arguments and allegations against the government, the prosecutor may respond to them in rebuttal." *United States v. Tocco*, 135 F.3d 116, 130 (2d Cir. 1998). Here, the defense brought up whether Wilson knew the victims were police officers in its summation, (Trial Tr. (Dkt. 393) at 3242:23-

3243:10), and the prosecution responded properly with evidence that suggested that Wilson knew that the victims were police officers. (*Id.* at 3302:13-3305:11.) An objection on this basis would thus have been futile.[5]

Wilson asserts that the Government misstated the burden on the defense to call witnesses. But the Government explicitly stated the opposite: "[t]he defense has no burden in this courtroom or any courtroom in this country. They can sit back and they don't have to call anyone. The burden is on the Government. It is our burden to prove the defendant guilty." (*Id.* at 3188:25-3189:4.) This was in no way a misstatement warranting an objection.

Wilson next contends that the use of his rap lyrics inflamed the jury by pointing to his future dangerousness. But the Government used the lyrics as evidence of guilt and to identify him as the shooter. (*Id.* at 3183:1-3186:8.) The Government similarly provided evidence for the assertion that Wilson would gain status and fame for killing police. (*Id.* at 3205:13-3206:21.)

Finally, Wilson claims that his counsel's failure to object to the reference to the victims' children improperly inflamed the jury and demonstrates ineffective assistance. But his trial counsel made that exact objection, (*see id.* at 3315:18-3316:17), and so Wilson has waived this argument. *See Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992). However, Wilson also argues that his appellate counsel was ineffective, and because *pro se* applications for relief are construed liberally, the court incorporates Wilson's argument into the ineffective assistance of appellate

---

[5] Indeed, Wilson's trial counsel did bring it up and the objection was rejected. (*See* Trial Tr. (Dkt. 393) at 3314:9-22) Because the *pro se* petition is construed liberally and Wilson alleges ineffective assistance of appellate counsel as well, we assume that Wilson is arguing that his appellate counsel was ineffective for failing to raise this issue.

counsel argument (Ground Nine). Wilson's argument still does not prevail.

A prosecutor is not precluded from "vigorous advocacy" in summation. *United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995). Reference to the harm caused by the defendant's conduct, when taken in the context of the summation as a whole, do not improperly inflame the jury. *See Ogletree v. Graham*, 559 F. Supp. 2d 250, 259 (N.D.N.Y. 2008) (noting that description and photos of pregnant victim did not improperly inflame the passions). This court also instructed the jury to not rely on sympathy when making their decision, providing a safeguard against statements that could be construed as inflaming the jury. (Trial Tr. at 3340:15-18; *id.* at 3346:12-24.); *see also Ogletree*, 559 F. Supp. 2d at 260 (noting, when discussing prejudice resulting from a description and photos of the pregnant victim, that the trial court properly instructed the jury to exclude sympathy from the decision-making process).

Finally, even if the government's summation improperly inflamed the jury and his appellate counsel failed to raise the issue on appeal, Wilson is unable to show that he was prejudiced. The mention of the children of the victims did not cause prejudice because of the overwhelming evidence against him. (*See* Sentencing Statement (Dkt. 405) at 2 ("Ronell Wilson's guilt has been proven not merely beyond a reasonable doubt, but beyond all doubt.").)

Counsel could therefore not be faulted for failing to object during the summation, and Wilson's ineffective assistance of counsel based on his trial counsel's conduct the during the summation fails.

### 6. Use of forensic evidence

Wilson argues that his counsel was ineffective because they failed to present their own expert witness on DNA analysis and failed

to request a *Daubert* hearing to challenge the qualifications of the Government's DNA expert. (Pet. at ECF 37-39; *see also id.* at ECF 52-53 (Ground Three).) Both arguments fail to show that Wilson's counsel's conduct fell below the standard of reasonableness.

Professional standards do not require defense counsel to present expert testimony to rebut the government's expert. *See, e.g., Momplaisir v. Capra*, 718 F. App'x 91, 92-93 (2d Cir. 2018) (Summary Order) (addressing a 28 U.S.C. § 2254 petition); *Adams v. Keyser*, No. 16-CV-129 (GBD) (AJP), 2018 WL 2089337, at *6 (S.D.N.Y. May 3, 2018). Vigorous cross-examination is sufficient. *See Nicolescu v. United States*, No. 15-CV-756 (VLB), 2021 WL 917157, at *13 (D. Conn. Mar. 10, 2021). This is particularly true when there is the possibility that a defense expert could corroborate the Government expert's testimony. *See id.*

Wilson alleges that the Government's use of DNA was false or misleading, and contends that his counsel fell below the standard of reasonableness because a defense expert could have fully educated the jury on mixed DNA and the statistical probability that the DNA found on the glove could have come from someone else. (Pet. at ECF 38.) However, Wilson provides no evidence that the Government's DNA analysis was false or misleading beyond the conclusory assertion in his petition. Defense counsel's decision to decline to hire their own expert therefore was professionally reasonable, as it avoided further discussion of evidence that was harmful to the defense and it avoided the risk of creating a duplicity of evidence against Wilson.

Further, Wilson is unable to show prejudice from his counsel's decision to not call a DNA expert. He argues that a DNA expert could fully educate the jury and discuss the "statistical likelihood that such DNA could have come from someone else." (*Id.* at ECF 38.) Even if, *arguendo*, Wilson's counsel had decided to hire a rebuttal expert who said that there was a probability that the DNA was not Wilson's, there was enough evidence elsewhere in

the record from eyewitnesses and cooperating co-conspirators that a jury could have reached the same conclusion.

Wilson similarly argues that his trial counsel was ineffective for not requesting a *Daubert* hearing. (*Id.* at ECF 38-39.) The *Daubert* standard governs admissibility of expert testimony under Federal Rule of Evidence 702. *See generally Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Under *Daubert*, the district court acts as a "gatekeeper" to ensure that expert testimony is both reliable and relevant. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). The district court's goal as gatekeeper is the ensure that "the courtroom door remains closed to junk science." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).

DNA analysis, including "touch" DNA analysis,[6] is a commonly used forensic technique and frequently survives *Daubert* motions. *See United States v. Morgan*, 53 F. Supp. 3d 732, 740-47 (S.D.N.Y. 2014). Trial counsel's decision to not pursue a motion that is frequently denied falls squarely within the standard of reasonableness, and therefore cannot be the basis for an ineffective assistance of counsel claim.

### 7.   Change of venue

Wilson argues that he suffered prejudice because the negative pretrial publicity that he faced in New York meant that he could not be tried by an impartial jury, in violation of the Sixth Amendment. (Pet. at ECF 44; *see also id.* at ECF 70-71 (Ground Seven).) Because Wilson waived this issue by failing to raise it on direct appeal, *Massaro*, 538 U.S. at 504, it is analyzed through the ineffective assistance of counsel framework—the court will only find

---

[6] "Touch" DNA analysis is also known as "low copy number" or "LCN" analysis. 4 Mod. Sci. Evidence § 30:13 (2022-2023 Edition).

for Wilson if the failure to object to venue fell below the standards of reasonableness for the profession and it prejudiced Wilson.

Courts have "rarely found" that pretrial publicity "so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community." *United States v. Volpe*, 42 F. Supp. 2d 204, 216 (E.D.N.Y. 1999). Failure to move for a form of relief that is seldom granted falls squarely within the realm of reasonable conduct, and cannot be the basis for an ineffective assistance of counsel claim. *See Weingarten v. United States*, 865 F.3d 48, 53 (2d Cir. 2017) ("The Supreme Court long ago made clear that the Sixth Amendment does not require counsel to raise every non-frivolous argument a client requests.").

Wilson does not take issue with the voir dire or jury selection process, nor does he argue that any specific instance of negative press actually prejudiced the jury. In essence, Wilson argues that pretrial publicity creates a presumption of a lack of impartiality. (Pet. at ECF 44.) However, in *Skilling v. United States*, the Supreme Court disagreed, stating that "pretrial publicity—even pervasive, adverse publicity—does not inevitably lead to an unfair trial." 561 U.S. 358, 384 (2010). The Court instead listed four factors to determine whether negative press improperly infected the impartiality of the pool of potential jurors: (1) the size and characteristics of the community in which the crime occurred; (2) the nature of the news coverage, including whether it contained a confession or blatantly prejudicial information; (3) the delay between the coverage of the crime and the trial; and (4) whether the jury issued a split verdict, thereby suggesting impartiality. *Id.* at 382-84.

On balance, these factors suggest negative press coverage did not give rise to constitutional deficiencies. Wilson's case took place in New York, the country's largest city. The Eastern District of New

York covers 8 million people,[7] larger than the population of Houston, which the Court in *Skilling* believed to be large enough to empanel 12 impartial jurors. 561 U.S. at 382. Wilson has not pointed to extremely prejudicial pretrial publicity, like a confession or admission of guilt, that is difficult to "shut from sight." *Id.* And there was a significant delay—three years—between the negative coverage of the murder and the Wilson's trial. Wilson does not point to any coverage of the trial itself that could have affected the impartiality of the jurors. There was no split verdict—the jury found Wilson guilty on every count—so this factor is at best neutral. (*See* Judgment at 1.) But considering all the *Skilling* factors, Wilson is unable to show that his counsel's conduct was unreasonable for failing to move to change the venue of the trial, and his ineffective assistance of counsel claim along this basis fails.

### 8.   Multiplicitous counts

Wilson further argues that the Indictment was impermissibly multiplicitous in violation of the Double Jeopardy Clause of the Fifth Amendment because Counts One, Two, Six, Seven, and Eight all punish the same underlying conduct. (Pet. at ECF 39-43; *see also id.* at ECF 53-54 (Ground Four).) Specifically, Wilson argues that Counts Six, Seven, and Eight all cover the same conduct and so the three life sentences should only be one life sentence. (*Id.* at ECF 39-42.) And he argues that Counts Seven and Eight cover the same conduct as Counts One and Two. Wilson waived this argument by not raising it on direct appeal, *Massaro*, 538 U.S. at 504, and so must show that his counsel's failure to raise it is evidence of ineffective assistance. He is unable to make this showing because he is unable to show prejudice from the alleged deficiency.

---

[7] United States District Court, Eastern District of New York, https://www.nyed.uscourts.gov/ (last visited Sept. 28, 2023).

In his petition, Wilson states that "there is a reasonabl[e] proba-
bility that the outcome would be different because Movant would
only face two judgments of conviction . . . where he now has four
convictions." (Pet. at ECF 43.) Even if Wilson were to successfully
argue that Counts Six, Seven, and Eight were multiplicitous, he
would, as he concedes, only succeed in removing three of his
seven life sentences. He has therefore failed to show prejudice
from any of his counsels' allegedly deficient performance. *See
Kassir v. United States*, 3 F.4th 556, 561-62 (2d Cir. 2021).

9.    Penalty Phase

The court next turns to ineffective assistance in the penalty
phase. Wilson was sentenced to death in 2007, and then sen-
tenced to death again at a second sentencing, after remand from
the Second Circuit, in 2013. In 2016, after the Second Circuit
directed the court to consider whether Wilson was eligible for the
death penalty in light of the Supreme Court's opinion in *Hall v.
Florida*, 572 U.S. 701 (2014), *see United States v. Wilson*, No. 13-
3566, Dkt. 43 (2d Cir. June 25, 2014), this court reduced Wil-
son's five capital sentences on Counts One, Two, Five, Seven and
Eight to life in prison. (*See* Amended Judgment.)

Wilson asserts that his counsel's conduct during his first sentenc-
ing[8] in 2007 (Grounds One and Nine) was deficient because
counsel should have explored his intellectual disabilities, counsel
should have prepared a sentencing presentation and counsel
should have objected to the lack of a Presentence Investigation
Report, the district court's sentencing calculations, and the dis-
trict court's failure to provide reasons for the sentences imposed.
(Pet. at ECF 44-46, 47-49, 83-84.)

---

[8] In Grounds Five and Eight, Wilson challenges the constitutionality of his
resentencing in 2016. (Pet. at ECF 54-59, 71-81.) These are addressed be-
low in Part III.B.

16

The mandatory minimum sentence on Counts One and Two, murder in-aid-of racketeering in violation of 18 U.S.C. § 1959(a)(1), is life imprisonment. 18 U.S.C. § 1959(a)(1). Therefore, Wilson cannot show prejudice from any ineffective assistance of counsel in the penalty phase, as he is currently serving the mandatory minimum sentence. *See United States v. Sharpley*, 399 F.3d 123, 124 (2d Cir. 2005) (finding no prejudice in sentencing when the sentence received was the mandatory minimum); *United States v. Monroe*, No. 08-CR-200, 2012 WL 13081499, at *9 (N.D.N.Y. July 12, 2012) (same, regarding ineffective assistance of counsel claim). The minimum possible sentence Wilson could have received was life imprisonment, notwithstanding any deficient performance by his counsel. An ineffective assistance claim predicated on the penalty phase thus fails.

### 10.    Other Arguments (Grounds Ten and Eleven)

Wilson faults his second trial counsel for not filing a § 2255 petition and for failing to raise objections to the convictions based on statutes that were ruled unconstitutionally vague in *Johnson v. United States*, 576 U.S. 591 (2015). (Pet. at ECF 84-85.) But a § 2255 petition is for post-conviction relief, and indeed cannot be filed until after direct appeals are complete. *See United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal."). And *Johnson* and its progeny were not decided until after Wilson's second sentencing in 2013. *See generally* 576 U.S. 591. Wilson's counsel at his second trial therefore could not have been deficient for failing to move on these bases.

### B. Challenges to 2016 Resentencing (Grounds Five and Eight)

Wilson further alleges that his constitutional rights were violated during his resentencing that vacated the death sentence and imposed a life sentence. (Pet. at ECF 54-59; 71-81.) In 2016, on remand from the Second Circuit after the Supreme Court's decision in *Hall v. Florida*, 572 U.S. 701 (2014), this court ruled that Wilson was ineligible for the death sentence because of an intellectual disability. *United States v. Wilson*, 170 F. Supp. 3d 347, 350 (E.D.N.Y. 2016). The court then vacated Wilson's death sentence and replaced it with a sentence of life imprisonment. (*See* Amended Judgment.) Wilson asserts that the life sentences were imposed without due process, including not receiving the presentence investigation report, being denied a sentencing proceeding and not being given a statement of reasons for the sentence (Ground Five), and the imposition of a life sentence on someone with an intellectual disability violates the Eighth Amendment (Ground Eight). Wilson failed to raise these grounds on direct appeal and has therefore waived the arguments. *See Massaro*, 538 U.S. at 504.

### 1. Sentencing Procedure (Ground Five)

Wilson argues that he was not given notice of his right to appeal, and that therefore he could not have waived these arguments on appeal. (Pet. at ECF 58.) But the March 15, 2016 Amended Judgment referenced the March 29, 2007 Judgment and Order, and so ordered that all other conditions of the original judgment remained in effect. (Amended Judgment at 2.) The March 29, 2007 Judgment explained the right to appeal and provided notice that the time to appeal is limited. (Judgment at 4.)

However, even if there were insufficient notice of appeal, the error is harmless because Wilson was sentenced to a mandatory minimum sentence of life imprisonment for murder in-aid-of

racketeering. 18 U.S.C. § 1959(a)(1). *See also United States v. Sharpley*, 399 F.3d 123, 124 (2d Cir. 2005) (finding no prejudice in sentencing when the sentence received was the mandatory minimum); *Monroe*, 2012 WL 13081499, at *9. Had Wilson timely appealed and successfully sought a new sentencing hearing, this court would have been forced to implement, at minimum, the same sentence.

> 2.   Life Sentence with Intellectual Disability (Ground Eight)

Wilson further argues that the Supreme Court's 2012 decision in *Miller v. Alabama*, 567 U.S. 460 (2012) precludes the imposition of a life sentence in this case. (Pet. at ECF 71-78.) In *Miller,* the Court held that imposing a life sentence without parole on a juvenile violated the Eighth Amendment's prohibition on cruel and unusual punishment. 567 U.S. at 479. Justice Kagan, writing for the Court, explained that children are constitutionally different from adults because they have diminished culpability and greater potential for reform, and are for those reasons less deserving of punishment. *Id.* at 471. This is true in part because human brain continues to develop through adolescence. *Id.* In particular, the part of the brain responsible for impulse control is fundamentally different in juveniles and adults. *Id.*

Wilson argues that the same logic should apply to his case because of research that shows that the human brain continues to develop until the age of 25. (Pet. at ECF 71-78.) At the time he murdered Detectives Andrews and Nemorin, Wilson was twenty years old. (Letter Providing Expert Report of Dr. Shapiro (Dkt. 961).) He was also found to have an intellectual disability such that he was ineligible for the death penalty under *Atkins v. Virginia*, 536 U.S. 304 (2002). *See United States v. Wilson*, 170 F. Supp. 3d 347, 350 (E.D.N.Y. 2016). Because part of the rationale for restricting life sentences without parole for juveniles is based on diminished culpability, Wilson contends that his intellectual

disability combined with age warrants extending *Miller*. However, Wilson's argument fails because it is squarely in contradiction with the law of the Second Circuit.

In *United States v. Sierra,* the Second Circuit rejected an opportunity to extend *Miller* beyond the age of 18. *See* 933 F.3d 95, 97 (2d Cir. 2019). In that case, the defendants, aged between 18 and 22, made an argument similar to Wilson's in the present case: scientific research showed that biological factors diminish moral culpability into the early 20s, and so the protections of the Eighth Amendment should extend beyond the age of 18. *Id.* The panel in the Second Circuit rejected this argument, saying that the Supreme Court had drawn a line at age 18 for the Eighth Amendment context. *Id.* In applying the Eighth Amendment, courts look to age rather than conduct an investigation into actual maturity. *Id.* Because Wilson's theory goes directly against relevant case law in the Second Circuit, his argument in Ground Eight fails.

### C.  Vagueness Challenges (Ground Six)

Wilson challenges his sentences on Counts Six, Seven, Eight, and Ten on the grounds that the underlying statutes are unconstitutionally vague, pursuant to *Johnson v. United States,* 576 U.S. 591 (2015) and *United States v. Davis,* 139 S. Ct. 2319 (2019). (*See* Pet. at ECF 59-70; Aug. 3, 2019 Letter to the Court (Dkt. 1562).) Wilson is serving life sentences for Counts One, Two, Five, Six, Seven, Eight, and Ten. (*See* Judgment; Amended Judgment.) Under the concurrent sentence doctrine, the court declines to reach the merits of Wilson's vagueness challenges.[9]

---

[9] Despite the name, the Second Circuit has held that the concurrent sentence doctrine also applies to collateral challenges to a conviction "for which the sentence runs consecutively to one or more unchallenged life sentences." *Al-'Owhali v. United States,* 36 F.4th 461, 467 (2d Cir. 2022).

The concurrent sentence doctrine, similar to the harmless error doctrine, conserves judicial resources and gives discretion to courts to avoid reaching the merits of a claim where the defendant is subject to identical concurrent sentences and a "ruling in the defendant's favor would not reduce the time he is required to serve." *Kassir v. United States*, 3 F.4th 556, 561-62 (2d Cir. 2021). The court "must foresee with reasonable certainty that the defendant will suffer no adverse collateral consequences from the court's decision to leave his conviction and sentence unreviewed." *Id.* at 561. In *Kassir*, the Second Circuit noted that the following five factors may be useful in determining whether to apply the concurrent sentence doctrine: (1) the petitioner's eligibility for parole; (2) the future application of recidivist statutes for future offenses; (3) the petitioner's credibility in future trials; (4) the possibility of pardon; and (5) the societal stigma of the conviction. 3 F.4th at 568.

Here, Wilson challenges his life sentences on Counts Six, Seven, Eight, and Ten. The government concedes that Wilson's life sentence on Count Ten should be vacated (Gov't Opp. at 53.). Even if his life sentence on Count Ten were vacated, he would still be serving six unchallenged life sentences rather than the original seven. (Pet. at ECF 59-60.) None of the factors articulated in *Kassir* point towards review of Wilson's vagueness argument.

Wilson is charged with federal crimes, and "there is no parole in the federal system." *United States v. Delgado*, 971 F.3d 144, 159 (2d Cir. 2020). Wilson is currently serving seven life sentences, so the risk of applying a recidivism statute in a future criminal proceeding is low. *See Kassir*, 3 F.4th at 568. The life sentences under Counts Six, Seven, Eight, and Ten are not relevant to impeaching Wilson's character in potential future trials given the unchallenged life sentences on Counts One, Two, and Five, and the chances of a future pardon are not likely to turn on whether or not Wilson is serving six or seven life sentences. Finally, Wilson

is not likely to face any societal stigma from serving seven life sentences instead of six, especially in light of the highly publicized underlying conduct that led to his conviction. The court therefore exercises its discretion under the concurrent sentence doctrine to decline to reach the merits of Wilson's vagueness argument (Ground Six). *See also Muyet v. United States,* No. 95-CR-941 (LAP), 2023 WL 170869, at *5 (S.D.N.Y. Jan. 12, 2023); *United States v. Krasniqi,* No. 10-CR-464 (GHW) (GWG), 2022 WL 1739142, at *8 (S.D.N.Y. May 31, 2022), R&R adopted 2022 WL 2663826 (July 8, 2022).

The court notes that Wilson's claim about the vagueness of the statute is a matter of law that can be brought at a later point without any risks to the collection of evidence or determination of fact. As the Second Circuit acknowledges in *Kassir*, it is possible that there will be a new rule of constitutional law that could invalidate all seven of Wilson's life sentences. 3 F.4th at 568-69. In that case, Wilson's vagueness challenges could be brought along with the new challenges based on a new rule of constitutional law so that all the challenges could be brought before the court at the same time.

## IV.  CONCLUSION

For the foregoing reasons, Wilson's motion for relief on Grounds One, Two, Three, Four, Five, Seven, Eight, Nine, Ten, and Eleven are DENIED with prejudice, and Wilson's motion for relief on Ground Six is DENIED without prejudice. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

Dated:     Brooklyn, New York
           September 29, 2023

                                        s/Nicholas G. Garaufis

                                        NICHOLAS G. GARAUFIS
                                        United States District Judge